UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>dELiA*s, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 14-23678 (RDD)<br><br>Joint Administration Requested |

**INTERIM ORDER (I) AUTHORIZING DEBTORS TO OBTAIN
POSTPETITION FINANCING AND USE CASH COLLATERAL,
(II) GRANTING ADEQUATE PROTECTION, (III) SCHEDULING A
FINAL HEARING, AND (IV) GRANTING CERTAIN RELATED RELIEF**

THIS MATTER having come before the Court upon the motion (the "**DIP Motion**") by dELiA*s, Inc., a Delaware corporation (the "**Lead Borrower**"), dELiA*s Distribution Company, a Delaware corporation, A Merchandise, LLC, a Delaware limited liability company, dELiA*s Operating Company, a Delaware corporation, dELiA*s Retail Company, a Delaware corporation, dELiA*s Assets Corp., a Delaware corporation, dELiA*s Group Inc., a Delaware corporation, AMG Direct LLC, a Delaware limited liability company, and DACCS, Inc., an Ohio corporation, each as a debtor and debtor in possession (collectively the "**Debtors**") in the above-captioned Chapter 11 cases (collectively, the "**Cases**"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 507 of title 11 of the United States Code, (11 U.S.C. §§ 101, *et seq.*, as amended, the "**Bankruptcy Code**"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and S.D.N.Y. Bankr. L.R. 4001-2, seeking entry of an interim order (this "**Interim Order**") *inter alia*:

(i)        authorizing the Lead Borrower, dELiA*s Distribution Company, A Merchandise, LLC, dELiA*s Operating Company, dELiA*s Retail Company, dELiA*s Group Inc., and AMG Direct LLC to obtain, as co-borrowers (collectively, the "**Borrowers**"), secured, superpriority postpetition financing (the

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  dELiA*s, Inc. (7172); dELiA*s Distribution Company (9076); A Merchandise, LLC (7639); dELiA*s Operating Company (3765); dELiA*s Retail Company (0036); dELiA*s Group Inc. (4035); AMG Direct, LLC (9236); dELiA*s Assets Corp. (3754); DACCS, Inc. (0225).  The mailing address for the Debtors, solely for purposes of notices and communications, is:  50 West 23rd Street, New York, NY 10010.

"**DIP Facility**"), and guaranteed by dELiA*s Assets Corp. and DACCS, Inc. (collectively, the "**Guarantors**"), consisting of a senior secured super-priority revolving credit facility, pursuant to the terms and conditions of that certain Debtor-In-Possession Credit Agreement (as amended, supplemented, restated, or otherwise modified from time to time, the "**DIP Credit Agreement**") by and among the Debtors, the Lenders party thereto (the "**DIP Lenders**" and each a "**DIP Lender**"), and Salus Capital Partners, LLC, as Administrative and Collateral Agent (the "**DIP Agent**") for the DIP Lenders, substantially in the form of <u>Exhibit 1</u> attached to this Interim Order; and

(ii)    authorizing the Debtors to execute and deliver the DIP Credit Agreement and all other related documents and agreements, including security agreements, deposit account control agreements, pledge agreements, guaranties and promissory notes (collectively, the "**DIP Loan Documents**") and to perform such other acts as may be necessary or desirable in connection with the DIP Loan Documents;[2] and

(iii)    granting allowed superpriority administrative expense claim status in each of the Cases and any Successor Cases (as defined herein) to all obligations owing under the DIP Credit Agreement and the other DIP Loan Documents to the DIP Agent (collectively, and including all "Obligations" as described in the DIP Credit Agreement, the "**DIP Obligations**"), subject to the priorities set forth herein; and

(iv)    authorizing the Debtors to use in accordance with the Budget (as defined below) "Cash Collateral," as defined in section 363(a) of the Bankruptcy Code, that the Debtors are holding or may obtain, pursuant to the Bankruptcy Code Section 361 and 363 and Bankruptcy Rules 4001(b) and 6004; and

(v)    granting to the DIP Agent automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting Cash

---

[2] Capitalized terms used but not defined have the meanings given to them in the DIP Loan Documents.

EAST\87360601.4

Collateral (other than cash in Excluded Accounts), which liens shall be subject to the priorities set forth herein; and

(vi)    authorizing and directing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under each of the DIP Loan Documents as they become due, including, without limitation, continuing commitment fees, closing fees, servicing fees, audit fees, structuring fees, monitoring and exit fees, the reasonable fees and disbursements of the DIP Agent's attorneys, advisers, accountants, and other consultants, and all related expenses of the DIP Agent, all to the extent provided by and in accordance with the terms of the respective DIP Loan Documents and this Interim Order; and

(vii)    authorizing and directing the Debtors to pay in full the Prepetition Obligations (as defined herein) upon entry of the Final Order (as defined herein) and as set forth herein, subject to the rights of parties in interest described in paragraphs 33 and 34 of this Interim Order; and

(viii)    providing adequate protection to the Prepetition Secured Creditors (as defined herein) to the extent set forth herein; and

(ix)    vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Interim Order; and

(x)    granting related relief; and

(xi)    scheduling a final hearing (the "**Final Hearing**") to consider the relief requested in the DIP Motion and approving the form of notice with respect to the Final Hearing.

The Court having considered the DIP Motion, the *Declaration of Edward Brennan Pursuant to Local Bankruptcy Rule 1007-2 and in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), including the DIP Motion, the exhibits attached thereto, the DIP Loan Documents, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held by the Court on the DIP Motion on December 9, 2014 (the "**Interim Hearing**"); and notice of the Interim Hearing having been given in accordance with Bankruptcy Rules 4001(b), (c) and (d), 9014, and Local

Bankruptcy Rule 2002-1; and the Interim Hearing to consider the interim relief requested in the DIP Motion having been held and concluded; and all objections, if any, to the interim relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that, pursuant to Bankruptcy Rule 4001(c)(2), granting the interim relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates pending the Final Hearing, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors and equity holders, and is essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor; and

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM HEARING BY THE DEBTORS, INCLUDING THE SUBMISSION OF DECLARATIONS AND THE REPRESENTATIONS OF COUNSEL, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.     _Petition Date_.  On December 7, 2014 (the "**Petition Date**"), each of the Debtors filed a separate voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "**Court**") commencing these Cases.

B.     _Debtors in Possession_.  The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

C.     _Jurisdiction and Venue_.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b), over these cases, the DIP Motion, and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Cases and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     _Committee Formation_.  As of the date hereof, the Office of the United States Trustee (the "**U.S. Trustee**") has not yet appointed any official committee in these Cases pursuant to section 1102 of the Bankruptcy Code (each, a "**Statutory Committee**").

E.     _Debtors' Stipulations_.  After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties in interest as set forth in paragraph 33 herein, the Debtors (on behalf of and for themselves and not their estates) admit, stipulate, acknowledge and agree that (collectively, paragraphs E(i) through E(v) below are referred to herein as the "**Debtors' Stipulations**"):

(i)     _Prepetition Credit Documents_.  As of the Petition Date, the Debtors had outstanding secured debt to Salus Capital Partners, LLC, as administrative agent and collateral agent (in such capacity, the "**Prepetition Agent**") for various lenders (collectively, together with the Prepetition Agent, the "**Prepetition Secured Creditors**" and each a "**Prepetition Secured Creditor**"), pursuant to that certain Credit Agreement dated as of June 14, 2013, by and between Lead Borrower and each of the other Debtors and the Prepetition Agent (as amended, modified and supplemented from time to time, the "**Prepetition Credit Agreement**" and together with all related documents, instruments, guaranties and agreements, the "**Prepetition Credit Documents**").

(ii)     _Prepetition Obligations_.  As of the Petition Date, the aggregate outstanding principal amount owed by the Debtors under the Prepetition Credit Documents was not less than $18,520,584 (collectively, together with any interest, fees (including, without limitation, any early termination and prepayment fees), costs and other charges or amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition Credit Documents, including all "Obligations" as described in the Prepetition Credit Agreement, and all interest, fees, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "**Prepetition Obligations**").  As more fully set forth in the Prepetition Credit Documents, prior to the Petition Date, the Debtors granted first-priority security interests in and liens on substantially all personal and real property of the Debtors, including, without limitation, owned real estate, accounts, inventory, equipment and general intangibles (collectively, the

5

"**Prepetition Collateral**") to the Prepetition Agent (for the ratable benefit of the Prepetition Secured Creditors) (collectively, the "**Prepetition Liens**") to secure repayment of the Prepetition Obligations.

(iii)    *Validity, Perfection and Priority of Prepetition Liens and Obligations.*    The Debtors (for themselves and their estates only, and without limiting the rights of other parties in interest under paragraphs 33 and 34 of this Interim Order), and the Prepetition Secured Creditors acknowledge and agree that:  (a) as of the Petition Date, the Prepetition Liens on the Prepetition Collateral are valid, binding, enforceable, non-avoidable and properly perfected, (b) as of the Petition Date, the Prepetition Liens have priority over any and all other liens, if any, on the Prepetition Collateral, subject only to certain other liens otherwise permitted by the Prepetition Credit Documents (to the extent any such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable and senior in priority to the Prepetition Liens as of the Petition Date, the "**Prepetition Permitted Liens**") and otherwise had priority over any and all other liens on the Prepetition Collateral;[3] (d) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors; (e) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or the Prepetition Obligations exist, and no portion of the Prepetition Liens or the Prepetition Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (f) the Debtors and their estates have no claims, objections, challenges, causes of actions, and/or choses in action, including without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code, against any of the Prepetition Secured Creditors or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors or employees arising out of, based

---

[3] For purposes of this Interim Order, Prepetition Permitted Liens shall include all liens that were valid, senior, enforceable, nonavoidable, and perfected under applicable law as of the Petition Date.  Nothing herein shall constitute a finding or ruling by this Court that any such Prepetition Permitted Liens are valid, senior, enforceable, perfected or non-avoidable.  Moreover, nothing herein shall prejudice the rights of any party in interest including, but not limited, to the Debtors, the DIP Agent, and any Statutory Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such Prepetition Permitted Lien and/or security interest.

upon or related to the Prepetition Credit Documents; (g) as of the Petition Date, the value of the Prepetition Collateral securing the Prepetition Obligations exceeded the amount of those obligations, and accordingly the Prepetition Obligations are allowed secured claims within the meaning of section 506 of the Bankruptcy Code, in a principal amount of not less than $18,520,584 as of Petition Date, together with accrued and unpaid and hereafter accruing interest, fees (including, without limitation, reasonable attorneys' fees and related expenses), costs and other charges.

(iv)    *Cash Collateral*.  The Debtors represent that all of the Debtors' cash, including the cash in their deposit accounts (other than Excluded Accounts), wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral and is Prepetition Collateral of the Prepetition Secured Creditors.

(v)    *Default by the Debtors*.  The Debtors acknowledge and stipulate that the Debtors are in default under the Prepetition Credit Documents.

F.    <u>*Findings Regarding the Postpetition Financing*</u>.

(i)    *Request for Postpetition Financing*.  The Debtors seek authority to (a) enter into the DIP Facility on the terms described herein and in the DIP Loan Documents, (b) repay any remaining balance of the Prepetition Obligations upon entry of the Final Order and as otherwise set forth herein, and (c) use Cash Collateral on the terms described herein to administer their Cases and fund their operations. At the Final Hearing, the Debtors will seek final approval of the proposed postpetition financing arrangements and use of Cash Collateral arrangements pursuant to a proposed final order (the "**Final Order**"), which shall be in form and substance acceptable to the DIP Agent.  Notice of the Final Hearing and Final Order will be provided in accordance with this Interim Order.

(ii)    *Need for Postpetition Financing and Use of Cash Collateral*.  The Debtors' need to use Cash Collateral and to obtain credit pursuant to the DIP Facility is immediate and critical in order to enable the Debtors to continue operations and to administer and preserve the value of their estates.  The ability of the Debtors to finance their operations, maintain business relationships, to pay their employees,

7

protect the value of their assets and otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, their creditors and equity holders, and the possibility for a successful administration of these Cases.  The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or to maintain their properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(iii)    *No Credit Available on More Favorable Terms*.  Given their current financial condition, financing arrangements, and capital structure, the Debtors are unable to obtain financing from sources other than the DIP Agent on terms more favorable than the DIP Facility.  The Debtors have been unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors have also been unable to obtain credit:  (a) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  Financing on a postpetition basis is not otherwise available without granting the DIP Agent, (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth herein, (2) superpriority claims, and (3) the other protections set forth in this Interim Order.

(iv)    *Use of Proceeds of the DIP Facility*.  As a condition to entry into the DIP Credit Agreement, the extensions of credit under the DIP Facility and the authorization to use Cash Collateral, the DIP Agent requires, and the Debtors have agreed, that proceeds of the DIP Facility shall be used (a) for the repayment in full in cash of the Prepetition Obligations upon entry of the Final Order (other than contingent indemnification obligations) as provided in a payoff letter to be prepared by the Prepetition Agent (the "**Payoff Letter**", the form of which has been approved by the DIP Agent), and, (b) in a manner consistent with the terms and conditions of the DIP Loan Documents and in accordance with the budget (a copy of which is attached as <u>Exhibit 2</u> hereto, as the same may be modified from time to time

8

consistent with the terms of the DIP Loan Documents, and subject to such variances as may be permitted thereby, the "**Budget**"), solely for (i) post-petition operating expenses and other working capital, (ii) certain transaction fees and expenses, (iii) permitted payment of costs of administration of the Cases, including professional fees, (iv) Prepetition Agent Adequate Protection Payments, and (v) as otherwise permitted under the DIP Loan Documents, as applicable.  The repayment of the Prepetition Obligations as set forth herein is necessary, as the Prepetition Agent has not otherwise consented to the use of Cash Collateral or the subordination of its liens to the DIP Liens, and the DIP Agent is not willing to provide the DIP Facility unless the Prepetition Obligations (other than contingent indemnification obligations) are paid in full entry of the Final Order (subject to the terms of the Payoff Letter) and as otherwise set forth herein.  Such payments will not prejudice the Debtors or their estates, because payment of such amounts is subject to the rights of parties in interest under paragraphs 33 and 34 herein.

(v)    *Application of Proceeds of DIP Collateral*.  As a condition to entry into the DIP Loan Documents, the extension of credit under the DIP Facility, and the authorization to use Cash Collateral, the Debtors and the DIP Agent have agreed that the proceeds of DIP Collateral (as defined herein) shall be applied in accordance with paragraph 18 of this Interim Order.

G.    *Adequate Protection*.    The Debtors shall pay to the Prepetition Agent the amounts required under the Payoff Letter upon the entry of the Final Order and as otherwise set forth herein.  The Prepetition Agent and the other Prepetition Secured Creditors shall receive (i) subject to the priorities set forth in paragraphs 12 and 13 below, the Adequate Protection Liens (as defined herein) to secure the Prepetition Obligations (including, without limitation, the "Surviving Obligations" (as defined in the Payoff Letter)) and Adequate Protection Superpriority Claims (as defined herein) with respect to the Prepetition Obligations (including, without limitation, the Surviving Obligations), and (ii) additional adequate protection in the form of (A) payment of the Prepetition Obligations from the proceeds of the DIP Collateral as set forth in paragraph 18(a) below and (B) payments in the amount of interest (which

shall be payable at the default rate under the Prepetition Credit Agreement), fees[4], costs, expenses (including attorneys' fees and expenses), indemnities and other amounts with respect to the Prepetition Obligations when due in accordance with the Prepetition Credit Documents (collectively, the "Prepetition Agent Adequate Protection Payments"). For the avoidance of doubt, the Adequate Protection Liens and the Adequate Protection Superpriority Claims each shall be junior in all respects to the DIP Liens and the DIP Carve Out, and the Adequate Protection Superpriority Claims are junior in all respects to the DIP Superpriority Claim (as defined herein).

H.      *Sections 506(c) and 552(b)*.   In light of the DIP Agent's agreement to subordinate its liens and superpriority claims, as applicable, to the DIP Carve Out (as defined herein) the Debtors request that, upon entry of the Final Order, the DIP Agent is entitled to a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code, and (b) any "equities of the case" claims under section 552(b) of the Bankruptcy Code.

I.      *Good Faith of the DIP Agent*.

(i)      *Willingness to Provide Financing*.  The DIP Agent has indicated a willingness to provide financing to the Debtors subject to:  (a) the entry of this Interim Order and the Final Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Loan Documents and the payoff of the Prepetition Obligations as set forth in this Interim Order; and (c) entry of findings by this Court that such financing is essential to the Debtors' estates, that the DIP Agent is extending credit to the Debtors pursuant to the DIP Loan Documents in good faith, and that the DIP Agent's claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant to this Interim Order and the DIP Loan Documents will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Interim Order or any other order.

---

[4] As of the Petition Date, the Prepetition Credit Documents shall be deemed amended to eliminate any commitment fee that would accrue and be payable following the Petition Date, subject to entry of this Interim Order.

EAST\87360601.4

(ii)    *Business Judgment and Good Faith Pursuant to Section 364(e)*.  The extension of credit under the DIP Facility reflects the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and is supported by reasonably equivalent value and consideration.  The DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors and the DIP Agent.  The use of Cash Collateral and credit to be extended under the DIP Loan Documents shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the DIP Agent is therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Interim Order.

J.      *Notice*.  Notice of the Interim Hearing and the emergency relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including:  (i) the U.S. Trustee for the Southern District of New York; (ii) the Internal Revenue Service; (iii) the parties included on the Debtors' consolidated list of fifty (50) largest unsecured creditors; (iv) counsel to each of the Prepetition Agent; (v) counsel to General Electric Capital Corporation as the issuer of the prepetition letter of credit agreement ; (vi) the United States Attorney for the Southern District of New York, (vii) the U.S. Securities and Exchange Commission; and (viii) those parties who have filed a notice of appearance and request for service of pleadings in these Cases pursuant to Bankruptcy Rule 2002.  The Debtors have made reasonable efforts to afford the best notice possible under the circumstances and such notice is good and sufficient to permit the interim relief set forth in this Interim Order, and no other or further notice is or shall be required.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.      <u>Interim Financing Approved</u>.  The DIP Motion is granted on an interim basis, the Interim Financing (as defined herein) is authorized and approved on an interim basis, and the use of Cash

11

Collateral on an interim basis is authorized, subject to the terms and conditions set forth in this Interim Order.

2.    <u>Objections Overruled</u>.    All objections to the Interim Financing to the extent not withdrawn or resolved are hereby overruled.

**DIP Facility Authorization**

3.    <u>Authorization of the DIP Financing, DIP Loan Documents and Payoff Letter</u>.    The Debtors are expressly and immediately authorized and empowered (i) to execute and deliver the DIP Loan Documents and the Payoff Letter, (ii) to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Interim Order, the DIP Loan Documents, the Budget and the Payoff Letter, (iii) to deliver all instruments and documents that may be necessary or required for performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in and provided for by this Interim Order and the DIP Loan Documents, and (iv) subject to the rights of third parties pursuant to paragraphs 33 and 34 below and entry of the Final Order, to pay and perform all obligations under the Payoff Letter in accordance with the terms set forth therein and in this Interim Order, including to provide for (x) the releases in favor of the Prepetition Secured Creditors and each of their related parties and (y) repayment in full in cash of the Prepetition Obligations (other than the Surviving Obligations), subject only to the ability of the Court to unwind the repayment of the Prepetition Obligations in the event there is a successful Challenge to the validity, enforceability, extent, perfection and priority of the Prepetition Secured Creditors' claims or liens. The Debtors are hereby authorized to pay the principal, interest, fees, expenses and other amounts described in the DIP Loan Documents as such become due and without need to obtain further Court approval, including, without limitation, closing fees, unused facility fees, continuing commitment fees, monitoring and exit fees, servicing fees, audit fees, structuring fees, the reasonable fees and disbursements of the DIP Agent's and the DIP Lenders' attorneys, advisers, accountants, and other consultants, whether or not the transactions contemplated hereby are consummated, all to the extent provided in the DIP Loan Documents, with invoices to be provided in accordance with paragraph 26 below.  All collections and proceeds, whether from ordinary

12

course collections, asset sales, debt issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by this Interim Order and the DIP Loan Documents. Upon execution and delivery, the DIP Loan Documents shall represent valid and binding, and joint and several, obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms. Upon execution and delivery, the Payoff Letter shall represent a valid and binding obligation of the Debtors, enforceable against each of the Debtors and their estates in accordance with its terms, but subject only to the rights of third parties pursuant to paragraphs 33 and 34 below.

4.      <u>Authorization to Borrow</u>. Until the Termination Date (as defined in the DIP Credit Agreement), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Loan Documents, the DIP Facility, and this Interim Order, and in order to prevent immediate and irreparable harm to the Debtors' estates, the Debtors are hereby authorized to request extensions of revolving credit under the DIP Facility up to an aggregate principal amount of $20,000,000 at any one time outstanding (the "**Interim Financing**").

5.      <u>DIP Obligations</u>. The DIP Loan Documents and this Interim Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which DIP Obligations shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee or other estate representative appointed in the Cases, or any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases (collectively, "**Successor Cases**"). Upon entry of this Interim Order, the DIP Obligations will include all loans and any other indebtedness, indemnities or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the DIP Agent under the DIP Loan Documents or this Interim Order, including, without limitation, all principal, accrued interest, costs, fees, expenses, indemnities and other amounts owed pursuant to the DIP Loan Documents, and shall be joint and several obligations of the Debtors in all respects.

6.      <u>Postpetition Liens and Collateral</u>.

13

(a)        Effective immediately upon the entry of this Interim Order, pursuant to sections 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agent (for itself and the ratable benefit of the DIP Lenders) is hereby granted, continuing valid, binding, enforceable, non-avoidable and automatically and properly perfected postpetition security interests in and liens on (collectively, the "**<u>DIP Liens</u>**") any and all presently owned and hereafter acquired assets and real and personal property of the Debtors, including, without limitation, the following (the "**<u>DIP Collateral</u>**"):

(i)        all Accounts[5];

(ii)        all Goods, including Equipment, Inventory and Fixtures;

(iii)        all Documents, Instruments and Chattel Paper;

(iv)        all Letters of Credit and Letter-of-Credit Rights;

(v)        all Securities Collateral;

(vi)        all Investment Property;

(vii)        all Intellectual Property Assets;

(viii)        all Commercial Tort Claims (including, without limitation, those described in Section V of the Perfection Certificate);

(ix)        all General Intangibles (including, without limitation, all Payment Intangibles);

(x)        all Deposit Accounts (including, without limitation, the Concentration Account);

(xi)        all Supporting Obligations;

(xii)        all money, cash or cash equivalents;

(xiii)        all credit balances, deposits and other property now or hereafter held or received by or in transit to the DIP Agent or at any other depository or other institution from or for the account of any Debtor, whether for safekeeping, pledge, custody, transmission, collection or otherwise;

(xiv)        all proceeds of leases of real property and all owned real property;[6]

---

[5]  All defined terms in the description of DIP Collateral shall have the meanings ascribed thereto in the DIP Loan Documents.  All terms not specifically defined in the DIP Loan Documents shall have the meanings ascribed to such terms in Article 8 or 9 of the Uniform Commercial Code, as applicable.

(xv)    effective upon the entry of the Final Order, all claims or causes of action or the proceeds thereof to avoid a transfer of property (or an interest in property) or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including, without limitation, chapter 5 and section 724(a) of the Bankruptcy Code (the "**Avoidance Actions**");

(xvi)   effective upon the entry of the Final Order, the Debtors' rights under section 506(c) and section 550 of the Bankruptcy Code and the proceeds thereof;

(xvii)  to the extent not otherwise described above, all receivables and all present and future claims, rights, interests, assets and properties recovered by or on behalf of any Debtor;

(xviii) all books, records, and information relating to any of the foregoing and/or to the operation of any Debtor's business, and all rights of access to such books, records, and information, and all property in which such books, records and information are stored, recorded and maintained; and to the extent not otherwise included or specifically excluded, all other personal property of the Debtors, whether tangible or intangible and all Proceeds and products of each of the foregoing and all accessions to, substitutions and replacements for, and rents, profits and products of each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty payable to such Debtor from time to time with respect to any of the foregoing; provided, that notwithstanding anything to the contrary contained in this Interim Order, the DIP Liens shall not extend to, and the term "DIP Collateral" shall not include, any Excluded Property (as defined in the DIP Loan Documents).

(b)    Effective upon the entry of the Interim Order, (i) all DIP Liens and the DIP Carve Out shall each be and remain at all times senior to the Prepetition Liens, and all existing blocked account agreements, deposit account control agreements, securities account control agreements, credit card acknowledgements, credit card agreements, collateral access agreements, landlord agreements, warehouse agreements, bailee agreements, carrier agency agreements, customs broker agency agreements,

---

[6]  For the avoidance of doubt, the DIP Liens extend only to the proceeds of leased real property and are not direct liens on the Debtors' leases of real property unless such liens are expressly permitted pursuant to the underlying lease documents.

EAST\87360601.4

subordination agreements and freight forwarder agreements constituting Prepetition Credit Documents, and all existing Uniform Commercial Code filings and all existing filings with the United States Patent and Trademark Office or the United States Copyright Office with respect to the recordation of an interest in the intellectual property of the Debtors which were filed by the Prepetition Agent, shall be deemed to be delivered and/or filed in connection with the DIP Facility, shall constitute DIP Credit Documents and shall remain in full force and effect without any further action by the Debtors, the DIP Agent or any other person, (ii) any and all references in any such agreements or documents to the "Credit Agreement" shall hereafter be deemed to mean and refer to the DIP Credit Agreement, and (iii) any and all references in any such agreements or documents to the "Loan Documents" shall hereafter be deemed to mean and refer to the DIP Loan Documents, in each case as amended, modified, supplemented or restated and in effect from time to time.

7. <u>DIP Lien Priority</u>.

(a) *DIP Liens*. The DIP Liens shall be junior only to the (i) DIP Carve Out, (ii) the Prepetition Permitted Liens, and (iii) valid, enforceable non-avoidable liens in existence and senior in priority to the Prepetition Credit Agreement as of the Closing Date, and shall otherwise be senior in priority and superior to the Prepetition Liens, the Adequate Protection Liens (as defined herein) and Adequate Protection Superpriority Claims (as defined herein) and any other security, mortgage, collateral interest, lien or claim on or to any of the DIP Collateral.

(b) Other than as set forth herein or as further ordered by the Court, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases. The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to cases under Chapter 7 of the Bankruptcy Code (or in any other Successor Cases), and/or upon the dismissal of any of the Cases or Successor Cases. The DIP Liens shall not be subject to challenge under sections 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and

16

preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu* with or senior to the DIP Liens.

(c)    *Prepetition Liens*.  For the avoidance of doubt, the Prepetition Liens shall be junior to the (i) DIP Carve Out; (ii) DIP Liens; (iii) the Adequate Protection Liens described in paragraph 12 below; (iv) the Adequate Protection Superpriority Claims; and (v) Prepetition Permitted Liens.

8.    <u>DIP Superpriority Claim</u>.

(a)    *DIP Agent Superpriority Claim*.  Upon entry of this Interim Order, the DIP Agent (for itself and the ratable benefit of the DIP Lenders) is hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (collectively, the "**DIP Superpriority Claim**") for all DIP Obligations.  The DIP Superpriority Claim shall be subordinate only to the DIP Liens, the DIP Carve Out and Prepetition Permitted Liens, and shall otherwise have priority over any and all administrative expenses of the kinds specified in or ordered pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code.

(b)    *Priority of DIP Superpriority Claim.*  The DIP Superpriority Claim shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof, subject only to the payment in full in cash of the DIP Obligations, the DIP Carve Out and amounts secured by the Prepetition Permitted Liens.  If necessary, upon entry of the Final Order, the DIP Superpriority Claim shall be payable from or have recourse to Avoidance Actions.

9.    <u>No Obligation to Extend Credit</u>.  The DIP Agent and the DIP Lenders shall not have any obligation to make any loan or advance under the DIP Loan Documents unless all of the conditions precedent to the making of such extension of credit or the issuance of such letter of credit under the applicable DIP Loan Documents and this Interim Order have been satisfied in full or waived by the DIP Agent in its Permitted Discretion.

10.    <u>Use of DIP Facility Proceeds</u>.  From and after the Petition Date, the Debtors shall use advances of credit under the DIP Facility only for the purposes specifically set forth in this Interim Order,

17

the DIP Loan Documents, the Payoff Letter, and the Budget and shall be subject at all times to compliance with the Budget (including, without limitation, to make Prepetition Agent Adequate Protection Payments).

**Authorization to Use Cash Collateral**

11.      Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Interim Order and the DIP Loan Documents, and in accordance with the Budget and subject to such variances as may be permitted thereby, the Debtors are authorized to use Cash Collateral until the Termination Date; provided, however, that during the Remedies Notice Period (as defined herein) the Debtors may use Cash Collateral in accordance with the terms and provisions of the Budget solely to meet payroll and related expenses, and for other expenses approved critical to the preservation of the Debtors and their estates as agreed by the DIP Agent in its Permitted Discretion.  Nothing in this Interim Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business (which shall be subject to further Orders of this Court), or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Interim Order, the DIP Loan Documents, and in accordance with the Budget.

12.      Payoff Letter, Adequate Protection Payments and Adequate Protection Liens.

(a)      *Prepetition Agent – Payoff Letter*.  Each of the Debtors and the Prepetition Agent shall comply with the terms and provisions of the Payoff Letter.  The Debtors' residual interest in any amounts payable or potentially payable to any of them under the terms of the Payoff Letter shall be subject to the DIP Liens in accordance with the priorities set forth in this Interim Order and the DIP Loan Documents.

(b)      *Prepetition Agent – Adequate Protection Payments*.  The Prepetition Agent and the other Prepetition Secured Creditors shall receive adequate protection in the form of the Prepetition Agent Adequate Protection Payments.

(c)      *Prepetition Agent – Adequate Protection Liens*.  The Prepetition Agent (for the ratable benefit of the Prepetition Secured Creditors) is hereby granted valid and perfected replacement

EAST\87360601.4

and additional security interests in, and liens on all of the Debtors' right, title and interest in, to and under all DIP Collateral (the "**Adequate Protection Liens**").  The Adequate Protection Liens granted to the Prepetition Agent shall secure only the Prepetition Obligations (including, without limitation, the Surviving Obligations).  The Adequate Protection Liens are and shall be valid, binding enforceable and fully perfected as of the date hereof and subordinate and subject only to (i) the DIP Liens, (ii) the Permitted Prior Liens, and (iii) the DIP Carve Out.

(d)    *Treatment of Adequate Protection Liens.*    Other than as set forth herein or as further ordered by the Court, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases.  The Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to cases under Chapter 7 of the Bankruptcy Code (or in any other Successor Cases), and/or upon the dismissal of any of the Cases or Successor Cases.

13.    Adequate Protection Superpriority Claims.

(a)    *Superpriority Claim of Prepetition Agent*.    As further adequate protection of the interests of the Prepetition Agent with respect to the Prepetition Obligations (including, without limitation, the Surviving Obligations), the Prepetition Agent (for the ratable benefit of the Prepetition Secured Creditors) is hereby granted an allowed administrative claim against the Debtors' estates under sections 503 and 507(b) of the Bankruptcy Code (the "**Adequate Protection Superpriority Claims**") to the extent that the Adequate Protection Liens do not adequately protect against any diminution in the value of the Prepetition Secured Creditors' interests in the Prepetition Collateral.

(b)    *Priority of Adequate Protection Superpriority Claims*.    The Adequate Protection Superpriority Claims shall be junior to the DIP Carve Out and the DIP Liens, the DIP Superpriority Claim and the Adequate Protection Liens and shall otherwise have priority over administrative expenses of the kinds specified in or ordered pursuant to sections 503(b) and 507(b) of the Bankruptcy Code.

**Provisions Common to DIP Financing and Use of Cash Collateral Authorizations**

14.     <u>Amendments</u>.  The DIP Loan Documents may from time to time be amended, modified or supplemented by the parties thereto without notice or a hearing if:  (i) in the reasonable judgment of the Debtors and the DIP Agent, the amendment, modification, or supplement (A) is not prejudicial in any material respect to the rights of third parties, and (B) has been consented to by the DIP Agent, and (ii) a copy (which may be provided through electronic mail or facsimile) of the form of amendment, modification or supplement is provided to counsel for any Statutory Committee and the U.S. Trustee at least two (2) Business Days prior to the effective date of the amendment, modification or supplement.

15.     <u>Budget Maintenance</u>.  The Budget and any modification to, or amendment or update of, the Budget shall be in form and substance reasonably acceptable to the DIP Agent and approved by the DIP Agent in its Permitted Discretion.  The Debtors shall comply with and update the Budget from time to time in accordance with the DIP Loan Documents (provided that any update shall be in form and substance reasonably acceptable to the DIP Agent and approved by the DIP Agent in its Permitted Discretion), but in any event not less than on a weekly basis (with delivery to the DIP Agent on or before Wednesday of each week and to counsel for any Statutory Committee each week after delivery to the DIP Agent).

16.     <u>Modification of Automatic Stay</u>.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Interim Order, including, without limitation, to:  (a) permit the Debtors to grant the DIP Liens, the Adequate Protection Liens, the DIP Superpriority Claim, and the Adequate Protection Superpriority Claims; and (b) authorize the Debtors to pay, and the DIP Agent and Prepetition Secured Creditors to retain and apply, payments made in accordance with the terms of this Interim Order.

17.     <u>Perfection of DIP Liens and Adequate Protection Liens</u>.

(a)     *Automatic Perfection of Liens*.  This Interim Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing

statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, collateral access agreement, customs broker agreement or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens, or to entitle the DIP Agent or the Prepetition Secured Creditors to the priorities granted herein.  Notwithstanding the foregoing, the DIP Agent is authorized to file, as it in its Permitted Discretion deems necessary, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence any of the DIP Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create, perfect or enforce the DIP Liens.  The Debtors are authorized to execute and deliver promptly upon demand to the DIP Agent all such financing statements, mortgages, control agreements, notices and other documents as the DIP Agent may reasonably request.  The DIP Agent, in its Permitted Discretion, may file a photocopy of this Interim Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.

18.    Application of Proceeds of DIP Collateral.  As a condition to the entry into the DIP Loan Documents, the extension of credit under the DIP Facility and the authorization to use Cash Collateral, the Debtors have agreed that the proceeds of DIP Collateral shall be applied as follows:

(a)    (i) all payments received by the DIP Agent in respect of any DIP Obligation and all funds transferred and credited to the "Concentration Account" maintained by the Debtors at JPMorgan Chase Bank, N.A. and (ii) all net proceeds from any Disposition of DIP Collateral (including, without limitation, payments received pursuant to the Sale Agency Agreement (as defined in the DIP Credit Agreement)), each shall be applied, subject to the DIP Carve Out, in accordance with the DIP Credit Agreement (including, without limitation, Sections 2.05 and 8.03 thereof) or, to the extent the DIP Credit

Agreement does not direct the application of such amounts, as follows: *first*, to payment of the Prepetition Obligations in accordance with the terms of the Prepetition Credit Documents, *second*, to payment of the costs and expenses of the DIP Agent and DIP Lenders, including Credit Party Expenses payable and reimbursable by the Debtors under the DIP Credit Agreement and the other DIP Loan Documents; *third*, to payment of fees and interest with respect to the DIP Obligations, *fourth*, to payment of all other DIP Obligations in accordance with the DIP Loan Documents, and *fifth*, to the Debtors' operating account, or for the account of and paid to whoever may be lawfully entitled thereto.  As between the DIP Lenders, nothing provided herein shall be deemed to modify the allocation of the proceeds of DIP Collateral set forth in the DIP Loan Documents.

(b)     The Debtors shall not, directly or indirectly, voluntarily purchase, redeem, defease, prepay any principal of, premium, if any, interest or other amount payable in respect of any indebtedness prior to its scheduled maturity, other than the DIP Obligations and the Prepetition Obligations (each in accordance with the DIP Loan Documents, the Payoff Letter and this Interim Order) and other obligations authorized by an order of the Court.

19.     <u>Proceeds of Subsequent Financing</u>.  If the Debtors, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in these Cases or any Successor Cases shall obtain credit or incur debt pursuant to sections 364(b), 364(c) or 364(d) of the Bankruptcy Code in violation of the DIP Loan Documents at any time prior to the repayment in full of all DIP Obligations and the termination of the DIP Agent's and the DIP Lenders' obligations to extend credit under the DIP Facility, including subsequent to the confirmation of any plan of reorganization or liquidation with respect to any or all of the Debtors and the Debtors' estates, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied as set forth in paragraph 18(a) herein;

20.     <u>Maintenance of DIP Collateral</u>.  Until the payment in full in cash of all DIP Obligations and the termination of the DIP Agent's and the DIP Lenders' obligations to extend credit under the DIP Facility, as provided therein, the Debtors shall:  (a) insure the DIP Collateral as required under the DIP

Facility; and (b) maintain the cash management system which has been agreed to by the DIP Agent or as otherwise required by the DIP Loan Documents.

21.     <u>Disposition of DIP Collateral; Rights of DIP Agent</u>.  Unless otherwise authorized by the Court, the Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral except as permitted by the DIP Loan Documents.  Nothing provided herein shall limit the right of the DIP Agent or the DIP Lenders to object to any proposed disposition of the DIP Collateral.

22.     <u>Termination Date</u>.  On the Termination Date, (i) all DIP Obligations shall be immediately due and payable, subject to the payment of any unfunded amounts of the DIP Carve Out, and all commitments to extend credit under the DIP Facility will terminate, and (ii) all authority to use Cash Collateral derived from the proceeds of DIP Collateral shall cease, <u>provided</u>, <u>however</u>, that during the Remedies Notice Period (as defined herein), the Debtors may use Cash Collateral solely as set forth in paragraph 11 herein.

23.     <u>Events of Default</u>.  The occurrence of an "Event of Default" under the DIP Credit Agreement (unless the DIP Agent, in its sole discretion, elects to waive such Event of Default) shall constitute an event of default under this Interim Order (each, an "**Event of Default**").

24.     <u>Rights and Remedies Upon Event of Default</u>.

(a)     *DIP Facility Termination.*       Immediately upon the occurrence and during the continuance of an Event of Default, the DIP Agent may in its discretion (i) declare the DIP Facility terminated (such declaration, a "**Termination Declaration**") or (ii) send a reservation of rights notice to the Debtors, which notice may advise the Debtors that any further advances under the DIP Facility will be made in the sole discretion of the DIP Agent.  Upon the issuance of a Termination Declaration, at the DIP Agent's option: (I) all or any portion of the Commitment of the DIP Agent and DIP Lenders to make loans or otherwise extend credit may be suspended or terminated; (II) all DIP Obligations may be deemed immediately due and payable; and (III) after expiration of the Remedies Notice Period, any right or ability of the Debtors to use any Cash Collateral may be terminated, reduced or restricted by the DIP Agent, provided that, during the Remedies Notice Period, the Debtors may use Cash Collateral solely in

23

accordance with paragraph 11 of this Interim Order.  With respect to the DIP Collateral, following the

Termination Declaration, subject to the Remedies Notice Period, the DIP Agent, the DIP Lenders and the

Prepetition Agent  may exercise all rights and remedies available to them under the DIP Loan Documents

or the Prepetition Credit Documents, as applicable, or applicable law against the DIP Collateral.  Without

limiting the foregoing, the DIP Agent, the DIP Lenders and the Prepetition Agent may, subject to the

Remedies Notice Period, (i) enter onto the premises of any Debtor in connection with an orderly

liquidation of the DIP Collateral; and/or (ii) exercise any rights and remedies provided to DIP Agent, the

DIP Lenders or the Prepetition Agent under the DIP Loan Documents or the Prepetition Credit

Documents, as applicable, or at law or equity, including all remedies provided under the Bankruptcy Code

and pursuant to this Interim Order and the Final Order.  Following the termination of the Remedies

Notice Period, the DIP Agent or the Prepetition Agent may require the Debtors to seek authority from the

Court to retain an Approved Liquidator for the purpose of conducting a liquidation or "going out of

business" sale and/or the orderly liquidation of the DIP Collateral and, if Debtors refuse to seek such

authority, the DIP Agent or the Prepetition Agent shall be entitled to seek such authority directly.

Notwithstanding of the rights and remedies set forth herein or in the DIP Credit Agreement or the DIP

Loan Documents, the DIP Agent's and each DIP Lender's right to use or occupy any of the Debtors'

leased premises in connection with the exercise of any right or remedy upon the occurrence of an Event of

Default shall be limited to (i) the existing rights of the DIP Agent, each DIP Lender, and the applicable

landlord under applicable non-bankruptcy law, (ii) the written consent of the applicable landlord, or (iii)

the further order of the Court upon motion and notice appropriate under the circumstances.

        (b)     *Notice of Termination*.  Any Termination Declaration shall be given by facsimile

(or other electronic means, including electronic mail) to counsel to the Debtors, counsel to any Statutory

Committee, and the U.S. Trustee (the earliest date any such Termination Declaration is made shall be

referred to herein as the "**Termination Declaration Date**").  The DIP Obligations shall be due and

payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the fifth

(5th) day following the Termination Declaration Date, except as provided in paragraphs 11 and 24 of this

Interim Order.  Any automatic stay otherwise applicable to the DIP Agent, the DIP Lenders and the Prepetition Agent is hereby modified so that five (5) business days after the Termination Declaration Date (the "**Remedies Notice Period**"), the DIP Agent, the DIP Lenders and the Prepetition Agent shall be entitled to exercise all rights and remedies against the DIP Collateral in accordance with the DIP Loan Documents or the Prepetition Credit Documents, as applicable, and this Interim Order and shall be permitted to satisfy the DIP Superpriority Claim and the DIP Liens and the Adequate Protection Liens and Adequate Protection Superpriority Claims of the Prepetition Agent, subject only to the DIP Carve Out.  During the Remedies Notice Period, the Debtors shall be entitled to seek an emergency hearing with the Court for the sole purpose of contesting whether an Event of Default has occurred and/or is continuing; provided, that in the event the Debtors seek such an emergency hearing and the Court is unable to schedule such a hearing during the five (5) business day period described above, the Remedies Notice Period shall be tolled until the date on which the Court enters an order with respect to whether an Event of Default has occurred and/or is continuing.  Unless the Court determines during the Remedies Notice Period that an Event of Default has not occurred and/or is not continuing, the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice or order and the DIP Agent, the DIP Lenders and the Prepetition Agent shall be permitted to exercise all remedies set forth herein, in the DIP Credit Agreement, the DIP Loan Documents, the Prepetition Credit Documents and as otherwise available at law against the DIP Collateral, without further order of or application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the DIP Collateral or any other rights and remedies granted to (x) the DIP Agent with respect thereto pursuant to the DIP Credit Agreement, the other DIP Loan Documents, or this Interim Order and (y) the Prepetition Agent with respect thereto pursuant to the Prepetition Credit Agreement, the other Prepetition Credit Documents, or this Interim Order.

25.    Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or Stay of this Interim Order.  The DIP Agent and each DIP Lender have acted in good faith in connection with this

25

Interim Order and their reliance on this Interim Order is in good faith.  Based on the findings set forth in

this Interim Order and the record made during the Interim Hearing, and in accordance with section 364(e)

of the Bankruptcy Code, in the event any or all of the provisions of this Interim Order are hereafter

modified, amended or vacated by a subsequent order of this Court, or any other court, the DIP Agent and

each of the DIP Lenders shall be and are entitled to the protections provided in section 364(e) of the

Bankruptcy Code.   Any such modification, amendment or vacatur shall not affect the validity and

enforceability of any advances previously made or made hereunder, or lien, claim or priority authorized

or created hereby, provided that the Interim Order was not stayed by court order after due notice had been

given to the DIP Agent at the time the advances were made or the liens, claims or priorities were

authorized and/or created.  Any liens or claims granted to the DIP Agent and the DIP Lenders hereunder

arising prior to the effective date of any such modification, amendment or vacatur of this Interim Order

shall be governed in all respects by the original provisions of this Interim Order, including entitlement to

all rights, remedies, privileges and benefits granted herein, provided that the Interim Order was not stayed

by court order after due notice had been given to the DIP Agent and each DIP Lender at the time the

advances were made or the liens, claims or priorities were authorized and/or created.

26.    <u>DIP and Other Expenses</u>.  The Debtors are authorized and directed to pay all reasonable

and documented out-of-pocket expenses of (x) the DIP Agent and the DIP Lenders in connection with the

DIP Facility (including, without limitation, expenses incurred prior to the Petition Date), as provided in

the DIP Loan Documents, and (y) the Prepetition Agent (including, without limitation, expenses incurred

prior to the Petition Date) as provided in the Prepetition Credit Documents, whether or not the

transactions contemplated hereby are consummated, including, without limitation, reasonable legal,

accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and

expenses of other consultants, and indemnification and reimbursement of fees and expenses, upon the

Debtors' receipt of invoices for the payment thereof.  Payment of all such fees and expenses shall not be

subject to allowance by the Court and professionals for the DIP Agent, the DIP Lenders and the

Prepetition Agent shall not be required to comply with the U.S. Trustee fee guidelines.  Notwithstanding

the foregoing, at the same time such invoices are delivered to the Debtors, the professionals for the DIP Agent, the DIP Lenders and the Prepetition Agent shall deliver a copy of their respective invoices to counsel for any Statutory Committee and the U.S. Trustee, redacted as necessary with respect to any privileged or confidential information contained therein. Any objections raised by the Debtors, the U.S. Trustee or any Statutory Committee with respect to such invoices within ten (10) business days of the receipt thereof will be resolved by the Court. In the event of any objection, the provisions of section 107 of the Bankruptcy Code and Rule 9018 of the Federal Rules of Bankruptcy Procedure shall apply. Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtors. Notwithstanding the foregoing, the Debtors are authorized and directed to pay on the Closing Date all reasonable fees, costs and expenses of the DIP Agent, the DIP Lenders and the Prepetition Agent incurred on or prior to such date without the need for any professional engaged by the DIP Agent, the DIP Lenders or the Prepetition Agent to first deliver a copy of its invoice as provided for herein.

27.      <u>Indemnification</u>.

(a)      The Debtors shall indemnify and hold harmless the DIP Agent and its shareholders, members, directors, agents, officers, subsidiaries and affiliates, successors and assigns, attorneys and professional advisors, in their respective capacities as such, from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, whether groundless or otherwise, and reasonable costs and expenses incurred, suffered, sustained or required to be paid by an indemnified party of every nature and character arising out of or related to the DIP Loan Documents, or the DIP Facility or the transactions contemplated thereby and by this Interim Order, whether such indemnified party is party thereto, as provided in and pursuant to the terms of the DIP Loan Documents and as further described therein and herein, or in connection with these Cases, any plan, or any action or inaction by the Debtors, in each case except to the extent resulting from such indemnified party's gross negligence or willful misconduct as finally determined by a final non-appealable order of a court of competent jurisdiction. The indemnity includes indemnification for the DIP Agent's exercise of discretionary rights granted under the DIP Facility. In all such litigation, or the preparation therefor, the

27

DIP Agent shall be entitled to select its own counsel and, in addition to the foregoing indemnity, the Debtors agree to promptly pay the reasonable fees and expenses of such counsel.

(b)     *DIP Indemnity Account.*  Upon the earlier to occur of (i) the payment in full, in cash of all amounts due to the DIP Agent and DIP Lenders under the DIP Loan Documents or (ii) the conclusion of the Remedies Notice Period, the Debtors shall pay an amount equal to the lesser of (x) $100,000 and (y) the then unused portion of the $650,000 fee cap referenced in the definition of Credit Party Expenses, from proceeds of the DIP Collateral into an indemnity account (the "**DIP Indemnity Account**") subject to first priority liens of the DIP Agent.  The DIP Indemnity Account shall be released and the funds applied in accordance with paragraph 18 of this Interim Order upon the receipt by the DIP Agent and each DIP Lender of releases from the Debtors and their estates acceptable to the DIP Agent and each DIP Lender in their sole discretion approved by a final Order of this Court.

28.     Proofs of Claim.  Any order entered by the Court in relation to the establishment of a bar date for any claims (including without limitation administrative claims) in any of the Cases or Successor Cases shall not apply to the DIP Agent, DIP Lenders or the Prepetition Secured Parties.  Neither DIP Agent nor the Prepetition Agent will be required to file proofs of claim or requests for approval of administrative expenses in any of the Cases or Successor Cases, and the provisions of this Interim Order relating to the amount of the DIP Obligations, the DIP Superpriority Claim, the Prepetition Obligations and the Adequate Protection Superpriority Claim shall constitute timely filed proofs of claim and/or administrative expense requests.

29.     Rights of Access and Information.  Without limiting the rights of access and information afforded the DIP Agent and the DIP Lenders under the DIP Loan Documents, the Debtors shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Agent and DIP Lenders reasonable access to the Debtors' premises and their books and records in accordance with the DIP Loan Documents, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.  In addition, the Debtors authorize their independent certified public accountants, financial advisors, investment bankers and consultants to cooperate, consult

EAST\87360601.4

with, and provide to the DIP Agent all such information as may be reasonably requested with respect to the business, results of operations and financial condition of any Debtor.

30.     <u>DIP Carve Out</u>.

(a)     *DIP Carve Out*.  As used in this Interim Order, the "**<u>DIP Carve Out</u>**" means, collectively, the sum of: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to 28 U.S.C. §1930(a) and Section 3717 of title 31 of the United States Code, and (ii) upon the occurrence of any Event of Default and delivery of a Carve-Out Trigger Notice, and solely to the extent provided for in the Budget and approved by the Bankruptcy Court, an aggregate amount not to exceed the sum of (A) the amount of expenses under clause (i) above plus (B) $400,000, which amount may be used subject to the terms of this Interim Order or the Final Order, as applicable, to pay (A) Allowed Professional Fees and the reimbursement of expenses of the Statutory Committee, any consumer privacy ombudsman appointed and any Chapter 7 trustee, in each case, incurred after the delivery of a Carve-Out Trigger Notice, to the extent permitted by this Interim Order or the Final Order, as applicable, and (B) any Allowed Professional Fees of Case Professionals incurred but unpaid prior to the receipt of the Carve-Out Trigger Notice.  No portion of the DIP Carve Out, nor any cash collateral or proceeds of the DIP Loans may be used in violation of this Interim Order, including paragraph 31 hereof.

(b)     *No Direct Obligation to Pay Professional Fees or Committee Expenses*.  The DIP Agent, the DIP Lenders, and the Prepetition Secured Creditors shall not be responsible for the funding, direct payment or reimbursement of any fees or disbursements of any Case Professionals or any Committee Expenses incurred in connection with the Cases or any Successor Cases.  Nothing in this Interim Order or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders, or the Prepetition Secured Creditors in any way to pay compensation to or to reimburse expenses of any Case Professional (including any Committee Expenses), or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.  Nothing in this Interim Order or otherwise shall be construed to increase the DIP Carve Out if actual (i) Allowed Professional Fees of any Case Professional

or (ii) Committee Expenses are higher in fact than the estimated fees and disbursements reflected in the Budget.

(c)      *Payment of DIP Carve Out*.   Upon the occurrence of the Termination Date, the DIP Obligations, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and the Adequate Protection Superpriority Claims shall be subject to the payment of the unfunded amount of the DIP Carve Out.   The funding of the DIP Carve Out shall be added to and made a part of the DIP Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this Interim Order, the DIP Loan Documents, the Bankruptcy Code and applicable law.

31.      <u>Limitations on the DIP Facility, the DIP Collateral, the Cash Collateral and the Case Professionals DIP Carve Out</u>.   Unless otherwise ordered by the Court or consented to by the DIP Agent, and subject to entry of a Final Order, the DIP Facility, the DIP Collateral, the Cash Collateral and the DIP Carve Out may not be used:  (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to or against the interests of the Prepetition Secured Creditors, the DIP Agent or the DIP Lenders or their rights and remedies under the DIP Loan Documents, the Prepetition Credit Documents, or this Interim Order or the Final Order, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief, (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the DIP Obligations, the Prepetition Obligations, (iii) for monetary, injunctive or other affirmative relief against the DIP Agent, the DIP Lenders, the Prepetition Secured Creditors, or their respective collateral, (iv) preventing, hindering or otherwise delaying the exercise by the DIP Agent, the DIP Lenders, or the Prepetition Secured Creditors of any rights and remedies under this Interim Order or the Final Order, the DIP Loan Documents, the Prepetition Credit Documents, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the DIP Agent upon any of the DIP

30

Collateral, by the Prepetition Agent with respect to its Adequate Protection Liens, or (iv) to pursue litigation against any Prepetition Secured Creditor; (b) to make any distribution under a plan of reorganization in any Chapter 11 Case; (c) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body; (d) to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests in any of the Debtors; (e) objecting to, contesting, or interfering with, in any way, the DIP Agent's or the DIP Lenders' enforcement or realization upon any of the DIP Collateral once an Event of Default has occurred, except as provided for in this Interim Order or Final Order, or seeking to prevent the DIP Agent from credit bidding in connection with any proposed plan or reorganization or liquidation or any proposed transaction pursuant to section 363 of the Bankruptcy Code; (f) using or seeking to use Cash Collateral while the DIP Obligations or the Prepetition Obligations remain outstanding in a manner inconsistent with the Budget; (g) using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the DIP Agent; (h) incurring Indebtedness (as defined in the DIP Credit Agreement) outside the ordinary course of business, except as permitted under the DIP Loan Documents; (i) objecting to or challenging in any way the claims, liens, or interests held by or on behalf of the DIP Agent or Prepetition Agent; (j) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under Chapter 5 of the Bankruptcy Code, against the DIP Agent, the DIP Lenders, or the Prepetition Secured Creditors; or (k) prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the DIP Obligations, the Prepetition Obligations, the DIP Liens, the Prepetition Liens or any other rights or interests of the DIP Agent, the DIP Lenders, or the Prepetition Secured Creditors.

32.    <u>Payment of Compensation</u>.   Nothing herein shall be construed as a consent to the allowance of any professional fees or expenses of any Case Professionals or shall affect the right of the DIP Agent or any of the DIP Lenders to object to the allowance and payment of such fees and expenses.

33.    <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.

31

(a)      The stipulations, findings, representations and releases contained in this Interim Order, the Payoff Letter or the DIP Loan Documents with respect to the Prepetition Secured Creditors and the Prepetition Obligations shall be binding upon all parties-in-interest, any trustee appointed in these cases and any Statutory Committee (each, a "**Challenge Party**"), unless and solely to the extent that (i) the Debtors received from a Challenge Party notice of a potential Challenge (defined below) during the Challenge Period (defined below) and (ii) the Court rules in favor of the plaintiff in any such timely and properly filed Challenge.  For purposes of this paragraph 33: (a) "**Challenge**" means any claim or cause of action against any of the Prepetition Secured Creditors on behalf of the Debtors or the Debtors' creditors and interest holders, or to object to or to challenge the stipulations, findings or Debtors' Stipulations set forth herein, including, but not limited to those in relation to:  (i) the validity, extent, priority, or perfection of the mortgage, security interests, and liens of any Prepetition Secured Creditor; (ii) the validity, allowability, priority, or amount of the Prepetition Obligations (including any fees included therein); (iii) the secured status of the Prepetition Obligations; (iv) any liability of any of the Prepetition Secured Creditors with respect to anything arising from any of the respective Prepetition Credit Documents; or (v) the releases set forth in the DIP Loan Documents; and (b)  "**Challenge Period**" means the time period for the Statutory Committee or other party in interest to commence, or to file a motion to obtain authority to commence, any related proceedings which shall be the earlier of  (i) sixty (60) days following  the date of entry of the Final Order, if a Statutory Committee is appointed and (ii) seventy-five (75) days following the date of entry of the Final Order, if a Statutory Committee is not appointed in the Chapter 11 cases..

(b)      During the Challenge Period, a Challenge Party shall be entitled to determine whether a basis to assert a Challenge exists.  If a Challenge Party identifies a basis to assert a Challenge, it must notify the Debtors, the DIP Agent and the Prepetition Secured Creditors during the Challenge Period of its demand that the Debtors initiate an action or adversary proceeding relating thereto and from the date that the Debtors, the DIP Agent and the Prepetition Secured Creditors are so notified, the Debtors shall have seven (7) days to notify the Challenge Party of whether the Debtors intend to initiate such action (or

EAST\87360601.4

a settlement in lieu of an adversary) and fifteen (15) days to initiate such action. If the Debtors notify such Challenge Party that the Debtors do not intend to initiate an action, settlement, or adversary proceeding, the Challenge Party shall have ten (10) days from the receipt of such notice to seek standing to initiate an action or adversary proceeding. Nothing herein shall be deemed to grant standing in favor of any Challenge Party absent further order of this Court. The Debtors, if timely notified of a potential Challenge and if such Challenge is commenced in a timely manner as set forth herein, shall retain authority to prosecute, settle or compromise such Challenge in the exercise of their business judgment and subject to any applicable further order of court.

(c)     Upon the expiration of the Challenge Period without the filing of a Challenge (the "**Challenge Period Termination Date**"): (A) any and all such Challenges and objections by any party (including, without limitation, any Statutory Committee, any Chapter 11 trustee, and/or any examiner or other estate representative appointed in these Cases, and any Chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived, released and barred, (B) all matters not subject to the Challenge, and all findings, Debtors' Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to each Prepetition Secured Creditors' claims, liens, and interests shall be of full force and effect and forever binding upon the Debtors, the Debtors' bankruptcy estates and all creditors, interest holders, and other parties in interest in these Cases and any Successor Cases; and (C) any and all claims or causes of action against any of the Debtors or the Prepetition Secured Creditors relating in any way to the Debtors or the Prepetition Credit Documents shall be forever waived and released by the Debtors' estates, all creditors, interest holders and other parties in interest in these Cases and any Successor Cases.

34.     Reservation of Rights:  Notwithstanding anything to the contrary contained in this Interim Order, in the event there is a timely and successful Challenge by any party in interest (in accordance with paragraph 33 hereof), this Court may unwind the repayment of the Prepetition Obligations and order the repayment of such amount to the extent that such payment resulted in the payment of any Prepetition Obligations consisting of an unsecured claim or other amount not allowable

under section 502 of the Bankruptcy Code.  Notwithstanding the foregoing, a successful Challenge shall not in any way affect the validity, enforceability or priority of the DIP Obligations or the DIP Liens unless otherwise ordered by the Court.

35.     <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Interim Order does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

36.     <u>Section 506(c) Claims</u>.  Upon entry of the Final Order, no costs or expenses of administration which have been or may be incurred in the Cases at any time shall be charged against the DIP Agent, the DIP Lenders or the DIP Collateral, the Prepetition Secured Creditors or the Prepetition Liens pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise.

37.     <u>No Marshaling/Applications of Proceeds</u>.  Upon entry of the Final Order, neither the DIP Agent, the DIP Lenders, nor the Prepetition Secured Creditors shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral.

38.     <u>Section 552(b)</u>.  The DIP Agent shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.  Subject to the entry of the Final Order, the "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Agent, the DIP Lenders, or the Prepetition Secured Creditors with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral.

39.     <u>Joint and Several Liability</u>.  Nothing in this Interim Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of the DIP Facility and the DIP Loan Documents.

40.     <u>Discharge Waiver</u>.  The Debtors expressly stipulate, and the Court finds and adjudicates that, none of the DIP Obligations, the DIP Superpriority Claim or the DIP Liens shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been paid in full in cash on or before

34

the effective date of a confirmed plan of reorganization.  The Debtors expressly stipulate, and the Court finds and adjudicates that, none of the Adequate Protection Liens or Adequate Protection Superpriority Claims shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the Adequate Protection Superpriority Claims and claims secured by the Adequate Protection Liens have been paid in full in cash on or before the effective date of a confirmed plan of reorganization.  None of the Debtors shall propose or support any plan or sale of all or substantially all of the Debtors' assets or entry of any confirmation order or sale order that is not conditioned upon the payment in full in cash, on the effective date of such plan of all DIP Obligations and Adequate Protection Superpriority Claims.

41.    <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly:  (a) DIP Agent's or the Prepetition Secured Creditors' right to seek any other or supplemental relief in respect of the Debtors (including the right to seek additional adequate protection, including, without limitation, in the form of reimbursement of fees and expenses of counsel to the Prepetition Secured Creditors); (b) the rights of any of the Prepetition Secured Creditors to seek the payment by the Debtors of post-petition interest or fees pursuant to section 506(b) of the Bankruptcy Code; or (c) any of the rights of the DIP Agent under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans.  Other than as expressly set forth in this Interim Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Agent and the DIP Lenders are preserved.

42.    <u>No Waiver by Failure to Seek Relief</u>.  The failure of the DIP Agent or the DIP Lenders to seek relief or otherwise exercise rights and remedies under this Interim Order, the DIP Loan Documents,

35

or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agent or the DIP Lenders.

43.     <u>Binding Effect of Interim Order</u>.  Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Interim Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Secured Creditors, all other creditors of any of the Debtors, any Statutory Committee or any other court appointed committee, appointed in the Cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.  Notwithstanding anything contained herein with respect to obligations or limitations when a Final Order is entered, the terms of the Final Order shall be what is binding on all parties.

44.     <u>No Modification of Interim Order</u>.  Until and unless the DIP Obligations have been paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written consent of the DIP Agent (i) any modification, stay, vacatur or amendment to this Interim Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP Superpriority Claim, other than the DIP Carve Out; (b) any order allowing use of Cash Collateral resulting from DIP Collateral; and (c) any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens.  The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Interim Order without the prior written consent, as provided in the foregoing, of the DIP Agent, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent.

36

45.    <u>Interim Order Controls</u>.    In the event of any inconsistency between the terms and conditions of the DIP Loan Documents or this Interim Order, the provisions of this Interim Order shall govern and control.

46.    <u>Survival</u>.    The provisions of this Interim Order and any actions taken pursuant hereto shall survive entry of any order which may be entered: (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases. The terms and provisions of this Interim Order, including the claims, liens, security interests and other protections granted to the DIP Agent and Prepetition Secured Creditors pursuant to this Interim Order and/or the DIP Loan Documents, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Interim Order until all DIP Obligations have been paid in full and all commitments to extend credit under the DIP Facility are terminated. The terms and provisions concerning the indemnification of the DIP Agent shall continue in the Cases and in any Successor Cases, following dismissal of the Cases or any Successor Cases, following termination of the DIP Loan Documents and/or the repayment of the DIP Obligations.

47.    <u>Pyramid Adequate Protection</u>.    Notwithstanding anything to the contrary in this Order, Holyoke Mall Company L.P. and EklecCo NewCo, LLC (together, the "**Pyramid Landlords**" ) assert that as of the Petition Date they have valid, perfected, first priority liens in all of dELiA*s Retail Company's inventory, equipment, fixtures, trade fixtures, improvements and merchandise located at the premises (the "**Pyramid Locations**") on the Petition Date (the "<u>Pyramid Liens</u>") that are subject to the leases (the "**Pyramid Leases**") between the Pyramid Landords and dELiA*s Retail Company ("**dELiA*s**") and all proceeds and accounts receivable therefrom (collectively the "**Pyramid Collateral**"). As adequate protection pursuant to section 363 of the Bankruptcy Code: (a) the Pyramid Landlords consent to the sale of the Pyramid Collateral located at the Pyramid Locations as of the Petition Date at the values that the Debtors obtain for such Pyramid Collateral pursuant to the Agency Agreement

or otherwise in the ordinary course of business or as authorized by this Court and that value at which the Pyramid Collateral located at the Pyramid Locations as of the Petition Date is sold and received by the Debtors shall constitute the value of the Pyramid Landlords' secured claims (subject to the Debtors reserving their right to seek to surcharge the Pyramid Collateral for the costs and expenses they incur in selling such Pyramid Collateral and the Pyramid Landlords' right to oppose any such request), the Pyramid Landlords having agreed not to assert any claim under sections 503(b) or 507 or otherwise with respect to diminution in the value of such collateral or otherwise; (b) dELiA*s shall pay the Pyramid Landlords currently outstanding rent in a reconciled aggregate amount not less than $53,000 or more than $59,000 by December 31, 2014, which amount constitutes the full amount of December 2014 rent due and payable under the Pyramid Leases plus any other outstanding amounts due under the Pyramid Leases as of the Petition Date and should the Pyramid Leases be rejected in these cases, the Pyramid Landlords shall apply that portion of the foregoing payments which represents pre-petition rent to their secured claims, (c) effective immediately upon entry of this Order, the Pyramid Landlords are each hereby granted continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected post-petition security interests in and replacement liens on the Pyramid Collateral and the proceeds thereof, but only to the extent that that the Pyramid Landlords had such valid, perfected and unavoidable security interests and liens prior to the Petition Date, (d) effective upon the entry of a Final Order and absent any party in interest filing an objection to the liens and security interests asserted by the Pyramid Landlords against the Pyramid Collateral, the security interests and liens asserted by the Pyramid Landlords shall constitute pre-petition Permitted Liens and shall be deemed first priority, perfected and fully enforceable security interests and liens against the Pyramid Collateral, and (e) the Debtors shall provide the Pyramid Landlords with reports of the Pyramid Collateral in existence as of December 7, 2014 by no later than December 17, 2014 and  the Debtors shall thereafter provide the Pyramid Landlords with reports of the Pyramid Collateral then in existence (including all sales of same)  by the 17th day of each successive month. Copies of any amendments, modifications or supplements of the DIP Loan Documents that modify any of the Pyramid Landlord's rights shall be provided to the Pyramid Landlords

38

at least two (2) business days prior to the effective date of the amendment, modification or supplement. The Pyramid Landlords may, but need not, file financing statements to perfect their adequate protection liens granted pursuant to this Order. Any Termination Declaration (as defined herein) shall be provided by electronic mail to counsel for the Pyramid Landlords. Nothing in this Order shall limit the Pyramid Landlord's rights except as specifically set forth in this Order.

48.     For the avoidance of doubt, and notwithstanding anything to the contrary in this Order or under the Bankruptcy Code, the Pyramid Landlords shall have no lien on or interest in the Additional Agent Merchandise (as defined in the Agency Agreement by and between the Debtors and the Joint Venture comprised of Hilco Merchant Resources and Gordon Brothers Retail Partners, the "**Agency Agreement**") or the proceeds thereof.  Further, and for the avoidance of doubt, and notwithstanding anything to the contrary in this Order or under the Bankruptcy Code, upon payment of the Guaranteed Amount (as defined in the Agency Agreement), the Merchandise (as defined in the Agency Agreement) and the Owned FF&E (as defined in the Agency Agreement) located (or hereinafter transferred to and located) at the Pyramid Locations shall be free and clear of any lien or interest of the Pyramid Landlords (collectively, the "**Pyramid Liens**"), which shall attach to the Guaranteed Amount to the same extent and with the same validity and priority.  With respect to the Merchandise and Owned FF&E at the Pyramid Locations, the Pyramid Liens on the Guaranteed Amount shall be 91 percent of the Cost Value (as defined in the Agency Agreement) of the Merchandise at the Pyramid Locations (subject to potential adjustment of such amount pursuant to the Agency Agreement and the Debtors' reservation of the right to seek to surcharge as set forth herein).  The Debtors, with the Agent's assistance, shall provide accounts to the Debtors, Lenders and the Pyramid Landlords as to the Cost Value of such Merchandise

49.     GECC Provisions.  Notwithstanding anything to the contrary in this Interim Order, the DIP Collateral excludes the cash in the possession of General Electric Capital Corporation ("GECC") under its letter of credit agreement between GECC and the Debtors (the "LC Agreement"), except to the extent that such cash is in excess of the Debtors' current or future obligations under such agreement

EAST\87360601.4

(including for reimbursement of principal, interest, fees, costs and expenses) and such cash (if any) is remitted to the Debtors.

50.     To the extent that there is a proper draw under a letter of credit issued by GECC under the LC Agreement, the Debtors consent to GECC's use of the cash in its possession under such LC Agreement to reimburse itself for such draw plus any accrued interest, fees, costs and reasonable expenses as long as GECC notifies the Debtors of such use and provides a reasonable accounting with respect thereto.

51.     <u>Final Hearing</u>.  The Final Hearing to consider entry of the Final Order and final approval of the DIP Facility is scheduled for December 23, 2014 at 10:00 a.m. (ET).

52.     <u>Notice of Final Hearing</u>:  On or before December 11, 2014, the Debtors shall serve, by United States mail, first-class postage prepaid, a copy of the DIP Motion and this Interim Order upon:  (a) the Office of the United States Trustee for the Southern District of New York; (b) the Securities and Exchange Commission; (c) the Internal Revenue Service; (d) the fifty (50) largest unsecured creditors of the Debtors at their last known addresses; (e) Choate, Hall & Stewart LLP (Attn: John F. Ventola, Esq. and Seth D. Mennillo, Esq.), attorneys for the DIP Agent and the Prepetition Agent; (f) any party which has filed prior to such date a request for notices under Bankruptcy Rule 2002 with this Court; and (g) counsel for any Statutory Committee.

53.     <u>Objection Deadline</u>: Objections, if any, to the relief sought in the Motion on a final basis shall be in writing, shall set forth with particularity the grounds for such objections or other statement of position, shall be filed with the Clerk of the Bankruptcy Court, and personally served upon (a) DLA Piper, 1251 Avenue of the Americas, 25th Floor, New York, New York 10020-1104 (Attn: Gregg Galardi, Esq.) counsel to the Debtors; (b) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014, Attn:  Serene Nakano, Esq. and Richard C. Morrissey, Esq.; (c) counsel to any Statutory Committee; (d) Choate, Hall & Stewart LLP, Two International Place, Boston, MA

40

02110 (Attn: John F. Ventola, Esq. and Seth Mennillo, Esq.), attorneys for the DIP Agent and the

Prepetition Agent; and (e) DiConza Traurig Kadish LLP, 630 Third Avenue, 7th Floor, New

York, New York 10017 (Attn:  Maura I. Russell, Esq.), with a copy to the Court's chambers, so

that such objections are filed with the Court and received by said parties on or before 12 noon

Eastern Time on December 22, 2014 with respect to entry of the Final Order.

54.    <u>Effect of this Interim Order</u>.  This Interim Order shall constitute findings of fact and

conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect immediately, notwithstanding

anything to the contrary proscribed by applicable law.

55.    <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce this

Interim Order according to its terms.


Dated:  December 10, 2014
       White Plains, New York

      __/s/Robert D. Drain_____
       UNITED STATES BANKRUPTCY JUDGE

41