**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| dELiA*s, INC., *et al.*, | Case No. 14- 23678 (RDD) |
| Debtors.[1] | Joint Administration Requested |

**INTERIM ORDER (A) (I) APPROVING THE DEBTORS' PERFORMANCE OF
AGENCY AGREEMENT, (II) AUTHORIZING THE DEBTORS TO SELL CERTAIN
ASSETS THROUGH STORE CLOSING SALES, (III) AUTHORIZING THE DEBTORS
TO ABANDON UNSOLD PROPERTY, (IV) WAIVING COMPLIANCE WITH
CONTRACTUAL STORE CLOSING SALE RESTRICTIONS AND EXEMPTING THE
DEBTORS FROM STATE AND LOCAL WAGE REQUIREMENTS AND LAWS
RESTRICTING STORE CLOSING SALES, (V) GRANTING RELATED RELIEF, AND
(VI) SCHEDULING A FINAL HEARING**

Upon consideration of the motion (the "Motion")[2] of the above-captioned debtors and

debtors in possession (collectively, the "Debtors") for an order granting the Debtors' request for

interim relief in connection with their request for authorizing to assume the Agency Agreement,

sell certain assets through store closing sales and obtain related relief; and it appearing that this

Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b); and it

appearing that consideration of the Motion and the relief requested therein is a core proceeding

pursuant to 28 U.S.C. § 157(b)(2); and adequate notice of the interim relief sought in the Motion

having been given and it appearing that no other notice of the final relief requested in the Motion

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  dELiA*s, Inc. (7172); dELiA*s Distribution Company (9076); A Merchandise, LLC (7639); dELiA*s Operating Company (3765); dELiA*s Retail Company (0036); dELiA*s Group Inc. (4035); AMG Direct, LLC (9236); dELiA*s Assets Corp. (3754); DACCS, Inc. (0225).  The mailing address for the Debtors, solely for purposes of notices and communications, is:  50 West 23rd Street, New York, NY 10010.

[2] All capitalized terms not otherwise defined in this Interim Order have the meaning ascribed to them in the Motion or in the Agency Agreement.

need be given except as set forth herein; and the Debtors and a joint venture composed of Hilco

Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC (collectively, the "Agent")

having agreed upon terms and conditions for the Agent to act as the Debtors' exclusive agent to

conduct sales (the "Sale") of certain of the Debtors' assets, including, without limitation, the

Merchandise, the Assets, the Additional Agent Merchandise, the Merchant Consignment Goods,

the designation rights described in Section 7.3 of the Agency Agreement (the "Designation

Rights"), the Owned FF&E, and the Owned DC FF&E (all of the foregoing merchandise, assets,

goods and rights, collectively, the "Transferred Assets"), which terms and conditions are set

forth in that certain Agency Agreement, by and between the Agent and Debtors, an executed

copy of which is attached hereto as Exhibit 1 (the "Agency Agreement"); and the sale of certain

of the Transferred Assets having commenced prepetition, on or about December 4, 2014;  and

the Agency Agreement requiring its interim approval by the Court no later than December 12,

2014 to facilitate the conduct and advertising of the Sale; and the Court having scheduled a sale

hearing to be held on December 23, 2014 at 10:00 a.m. (the "Final Hearing") to consider the

entry of an order approving on a final basis the Agency Agreement and the Debtors' assumption

thereof (a "Final Sale Order"); and the Court having held a hearing to consider approval of the

continued sale of Merchandise, Owned FF&E and, if requested by the Debtors, the Excluded

Goods (the "Interim Sale Assets") on an interim basis on December 9, 2014 (the "Interim

Hearing"); and appearances of all interested parties having been noted on the record of the

Interim Hearing; and upon the First Day Declaration and the Diercks Declaration; and upon all

of the proceedings had before the Court (including but not limited to the testimony and other

evidence proffered or adduced at the Interim Hearing); and the Court having found and

2

determined that the interim relief sought in the Motion and granted herein is in the best interests

of the Debtors, their estates, their creditors, and all parties in interest and that the legal and

factual bases set forth in the Motion establish just cause for the interim relief granted herein; and

after due deliberation and sufficient cause appearing therefor, it is hereby

**FOUND AND DETERMINED THAT**:[3]

A.    **Jurisdiction:**   This Court has jurisdiction to consider the Motion and the relief

requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b).   The Motion's request for

interim approval of the Debtors' performance under the Agency Agreement and the transactions

contemplated thereby is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (D), (N) and (O).

B.    **Venue:**   Venue of these cases in this district is proper pursuant to 28 U.S.C. §

1409(a).

C.    **Statutory Predicates:**   The statutory predicates for the interim approval of the

Sale as set forth in the Agency Agreement and transactions contemplated therein are sections

105, 363, 364, 365 and 554 of the Bankruptcy Code and Rules 2002, 4001, 6003, 6004 and 9014

of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

D.    **Notice:**   Proper, timely, adequate and sufficient notice of the Motion's request for

interim relief and the Interim Hearing has been provided in accordance with sections 102(1),

105(a), and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003 and 6004.   No

other or further notice is required.

---

[3] The findings of fact and the conclusions of law stated herein shall constitute the Court's findings of fact and
conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy
Rule 9014.  To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed,
and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

3

E.      **Opportunity to be Heard:**  In light of the exigent circumstances, a reasonable opportunity to object or be heard regarding the interim relief requested in the Motion has been afforded to interested persons and entities, including, without limitation, the following: (i) the Office of the United States Trustee for the Southern District of New York; (ii) counsel to Salus Capital Partners, LLC, as the administrative agent under the Debtors' prepetition credit facility; (iii) counsel to General Electric Capital Corporation as the issuer of the prepetition letter of credit agreement; (iv) the parties included on the Debtors' consolidated list of fifty (50) largest unsecured creditors; (v) the Internal Revenue Service; (vi) the United States Attorney for the Southern District of New York; (vii) the U.S. Securities and Exchange Commission; (viii) all parties who are known to assert a security interest, lien, or claim in any of the Transferred Assets, including the Pyramid Lessors; (ix) all the Debtors' landlords; (x) all applicable federal, state, and local taxing authorities (the "Taxing Authorities"); (xi) all applicable county and state consumer protection agencies; (xii) all applicable state attorneys general; and (xiii) any such other party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(b) ((i) through (xiii) collectively, the "Notice Parties").  In light of the exigent circumstances described in the Motion, the limited relief being provided pursuant to this Interim Order, and the availability of a further opportunity for any party to object at the Final Sales Hearing to any relief provided herein, notice of the interim relief requested in the Motion and the Interim Hearing was sufficient and reasonable.  Objections, if any, to the interim relief requested in the Motion have been withdrawn or resolved and, to the extent not withdrawn or resolved, are hereby overruled with respect to the relief provided in this Interim Order.

4

F.    **Marketing Process:**  As demonstrated by: (i) the First Day Declaration and the Diercks Declaration, (ii) the testimony and other evidence proffered or adduced at the Interim Hearing, and (iii) the representations of counsel made on the record at the Interim Hearing, prior to the Petition Date the Debtors adequately marketed the Transferred Assets, solicited bids with respect to the Transferred Assets, provided parties with an opportunity to acquire some or all of the Transferred Assets by submitting an offer for all or some of the Transferred Assets and ultimately conducted an auction with respect to the Transferred Assets.

G.    **Business Judgment:**   The Debtors' decision to (i) enter into the Agency Agreement, and (ii) perform under and make payments required by the Agency Agreement during the period commencing on December 4, 2014 and ending on the earlier of (x) December 24, 2014 or (y) entry of a Final Sale Order (the "Interim Sale Period") is a reasonable exercise of the Debtors' sound business judgment consistent with their fiduciary duties and is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

H.    **Personally Identifiable Information:**   During the Interim Sale Period, the Debtors shall not sell, lease or transfer personally identifiable information, as defined in section 101(41A) of the Bankruptcy Code ("Personally Identifiable Information") (or assets containing personally identifiable information).

I.    **Time of the Essence:**   Time is of the essence in approving the Debtors' continuation of the sale of the Interim Sale Assets during the Interim Sale Period.  The Debtors' estates, creditors and interested parties will suffer immediate and irreparable harm if the Debtors are not authorized to immediately go out of business, close their retail stores and, during the Interim Sale Period have the Agent continue the sale at the retail stores and through the Direct

5

Business Platform and/or have the Agent market the Assets pursuant to the Agency Agreement. Based on the record of the Interim Hearing, and for the reasons stated on the record at the Interim Hearing, the continuation of the sale of the Interim Sale Assets and the marketing of the Assets by the Agent, on the Debtors's behalf, pursuant to the Agency Agreement during the Interim Period must be approved on an interim basis on or before December 12, 2014 to maximize the value that the Debtors may realize from the sale of the Transferred Assets. Accordingly, (i) the requirements of Bankruptcy Rule 6003 are satisfied and granting the relief requested in the Motion on an interim basis is necessary to avoid immediate and irreparable harm; and (ii) cause exists under Bankruptcy Rules 4001(a) and 6004(h) and to permit the immediate effectiveness of this Interim Order.

J.      **Sale Free and Clear:**  The Debtors' ability to sell Interim Sale Assets by the Debtors pursuant to the Agency Agreement free and clear of all liens, claims, encumbrances, and interests (collectively, "Encumbrances") to the fullest extent permissible under section 363(f) of the Bankruptcy Code and without the protections of this Interim Order would hinder the Debtors' ability to obtain the consideration provided for in the Agency Agreement and, thus, would impact materially and adversely the value that the Debtors' estates would be able to obtain for such Transferred Assets.  In addition, each entity with an Encumbrance upon the Interim Sale Assets, (i) has consented to the sale of the Interim Sale Assets during the Interim Sale Period or is deemed to have consented to such Sale, (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest, or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code, and therefore, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those

6

holders of Encumbrances who did not object, or who withdrew their objections, to the Motion are deemed to have consented to the sale of the Interim Sale Assets during the Interim Sale Period pursuant to section 363(f)(2) of the Bankruptcy Code.  Therefore, interim approval of the continuation of the sale of the Interim Sale Assets during the Interim Sale Period pursuant to the terms of the Agency Agreement free and clear of Encumbrances is appropriate pursuant to section 363(f) of the Bankruptcy Code and in the best interests of the Debtors' estates, their creditors and other parties in interest.

K.      **Good Faith:**  The Debtors, their management and their board of directors, and the Agent, its members and its officers, directors, employees, agents and representatives, actively participated in the bidding process and acted in good faith.  The Agency Agreement between the Agent and the Debtors was negotiated and entered into based upon arm's length bargaining, without collusion or fraud, and in good faith as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code.  With respect to all sales made and Expenses paid during the Interim Sale Period, the Agent shall be protected by sections 363(m) and 364(e) of the Bankruptcy Code if this Interim Order is reversed or modified on appeal.

L.      **Insider Status:**  The Agent is not an "insider" as that term is defined in section 101(31) of the Bankruptcy Code.  No common identity of directors or controlling stockholders exists between the Agent and the Debtors.

M.      **Corporate Authority:**  The Debtors (i) have full corporate or other power to continue to perform their obligations under the Agency Agreement during the Interim Sale Period, entry into the Agency Agreement having been duly and validly authorized by all necessary corporate or similar action, and (ii) subject to the entry of the Final Sale Order, no

7

consents or approvals, other than those expressly provided for herein or in the Agency Agreement, are required for the Debtors to consummate the transactions contemplated by the Agency Agreement.

N.    **No Successor Liability:**  No sale, transfer or other disposition of the Interim Sale Assets during the Interim Sale Period pursuant to the Agency Agreement will subject the Agent to any liability for claims, obligations or Encumbrances asserted against the Debtors or the Debtors' interests in such Interim Sale Assets by reason of such transfer under any laws, including, without limitation, any bulk-transfer laws or any theory of successor or transferee liability, antitrust, environmental, product line, de facto merger or substantial continuity or similar theories.  The Agent is not a successor to the Debtors or their respective estates.

**NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

A.    **Motion Granted, Objections Overruled**

1.    The relief requested in the Motion is approved on an interim basis and subject to the rights of any parties in interest to be heard at the Final Hearing with respect to the relief requested in the Motion, to the extent provided herein.  Nothing in this Interim Order is intended to affect any rights of any governmental unit to enforce any law affecting the Debtors' conduct of the sale prior to the Petition Date.

B.    **Interim Approval of Agency Agreement**

2.    During the Interim Sale Period, the Debtors are hereby authorized to continue performance under and to make all payments required by the Agency Agreement as and when due thereunder, and perform each of the transactions contemplated therein.

8

3.      All amounts payable to the Agent under the Agency Agreement on account of the sale of the Interim Sale Assets and Expenses incurred during the Interim Sale Period shall be payable to the Agent without the need for any application of the Agent therefor or any further order of the Court.

4.      During the Interim Sale Period, the Debtors and the Agent are hereby authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to continue to conduct the sale of the Interim Sale Assets in accordance with the Agency Agreement and the sale guidelines (the "Sale Guidelines") attached hereto as Exhibit 2, and to promote such sale as a "store closing sale", "sale on everything", "everything must go", "going out of business" or a similar themed sale.  During the Interim Sale Period, the Agent, on behalf of the Debtors, is hereby authorized to sell the Interim Sale Assets and otherwise market and advertise the sale or other disposition of the other Transferred Assets.

5.      Upon entry of the Interim Sale Order, pursuant to section 363(b) of the Bankruptcy Code, during the Interim Sale Period, the Debtors, the Agent and each of their respective officers, employees and agents are hereby authorized and directed to execute such documents and to do such acts as are necessary or desirable to carry out the sale of the Interim Sale Assets pursuant to the Agency Agreement and each of the transactions and related actions contemplated or set forth therein.  Ryan Schreiber, the Debtors' President, Secretary and General Counsel, is specifically authorized to act on behalf of the Debtors in connection with such sales and no other consents or approvals are necessary or required for the Debtors to carry out the sale of the Interim Sale Assets during the Interim Sale Period pursuant to the Agency Agreement.

**C.      Order Binding**

9

6.      During the Interim Sale Period, this Interim Order shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Interim Sale Assets.

7.      During the Interim Sale Period, this Interim Order and the terms and provisions of the Agency Agreement shall be binding on all of the Debtors' creditors (whether known or unknown), the Debtors, the Agent, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting an interest in the Interim Sale Assets.

**D.      Good Faith.**

8.      Entry into the Agency Agreement was undertaken by the parties thereto in good faith, as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code, and Agent shall be protected by sections 363(m) and 364(e) of the Bankruptcy Code in the event that this Interim Order is amended, vacated, reversed or modified on appeal.  Any such amendment, vacatur, reversal or modification of the authorization provided herein to continue the sale of the Interim Sale Assets pursuant to the Agency Agreement through the entry of the Final Sale Order shall not affect the validity or enforceability of such sale, any transactions contemplated pursuant to the Agency Agreement, or the security interests, liens, and priority thereof granted pursuant to

10

this Interim Order. The Agent is entitled to all of the benefits and protections afforded by sections 363(m) and 364(e) of the Bankruptcy Code.

### E.    Conduct of the Sale

9.    Pursuant to section 363(f) of the Bankruptcy Code, during the Interim Sale Period, the Agent, on behalf of the Debtors shall be authorized to sell the Interim Sale Assets pursuant to the Agency Agreement free and clear of any and all Encumbrances, including, without limitation, the liens and security interests, as the same may have been amended from time to time, of the Lender whether arising by agreement, any statute or otherwise and whether arising before, on or after the date on which these chapter 11 cases were commenced, with any presently existing liens encumbering all or any portion of the Interim Sale Assets or the Proceeds thereof (including, but not limited to, the first-priority security interest of the Lender) attaching to the amounts payable to the Debtors under the Agency Agreement, with the same validity, force and effect as the same had with respect to the assets at issue, subject to any and all defenses, claims and/or counterclaims or setoffs that may exist.

10.    All entities that are presently in possession of some or all of the Interim Sale Assets in which the Debtors hold an interest that are or may be subject to the Agency Agreement hereby are directed to surrender possession of such Interim Sale Assets to the Debtors or the Agent.

11.    During the Interim Sale Period, all newspapers and other advertising media in which the sale may be advertised and all landlords are directed to accept this Interim Order as binding authority so as to authorize the Debtors and the Agent to conduct the sale of the Interim Sale Assets pursuant to the Agency Agreement, including, without limitation, to conduct and

11

advertise the sale of the Tranferred Asset in the manner contemplated by the Agency Agreement, including, without limitation, conducting and advertising of the sale of the Interim Sale Assets in accordance with the Agency Agreement, the Sale Guidelines, and this Interim Order.

12.     Nothing in this Interim Order or the Agency Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) that any entity would be subject to as the owner, lessor, lessee, or operator of the property after the date of entry of this Interim Order.  Nothing contained in this Interim Order or in the Agency Agreement shall in any way (i) diminish the obligation of any entity to comply with environmental laws, or (ii) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code.  Nothing herein shall be construed to be a determination that the Agent is an operator with respect to any environmental law or regulation.  Moreover, the sale of the Interim Sale Assets shall not be exempt from, and the Agent shall be required to comply with, laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws").  Nothing in this Interim Order shall alter or affect the Debtors' and Agent's obligations to comply with all applicable federal safety laws and regulations.  Nothing in this Interim Order shall be deemed to bar any Governmental Unit (as defined in Bankruptcy Code section 101(27)) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' or the Agent's right to assert in that forum or before this Court that any such laws

are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Interim Order, or otherwise, pursuant to Paragraph 13 hereunder. Notwithstanding any other provision in this Interim Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Interim Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code. Nothing in this Interim Order shall be deemed to have made any rulings on any such issues.

13.    <u>Disputes Between Government Units and the Debtors or the Agent</u>. To the extent that during the Interim Sale Period the sale of Interim Sale Assets is subject to any federal, state or local statute, ordinance, or rule, or licensing requirement solely directed at regulating "going out of business," "store closing," similar inventory liquidation sales, or bulk sale laws (each a "<u>GOB Law</u>," and together, the "<u>GOB Laws</u>"), including laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with the sale and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply solely to the sale of the Interim Sale Assets (collectively, the "<u>Liquidation Laws</u>"), the following provisions shall apply:

a.    Provided that during the Interim Sale Period the sale of the Interim Sale Assets is conducted in accordance with the terms of this Interim Order, the Agency Agreement and the Sale Guidelines, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtors shall be presumed to be in compliance with any GOB Laws and Liquidation Laws and, subject to Paragraphs 13, 14 and 15 herein, are authorized to conduct the sale in accordance with the terms of this Order and the Sale

13

Guidelines without the necessity of further showing compliance with any such GOB Laws and Liquidation Laws.

b.        Within three (3) business days of entry of this Interim Order, the Debtors shall serve copies of this Order, the Agency Agreement and the Sale Guidelines via e-mail, facsimile or regular mail, on:  (i) the Attorney General's office for each state where the Sale is being held, (ii)  the county consumer protection agency or similar agency for each county where the Sale will be held, (iii) the division of consumer protection for each state where the sale of the Transferred Assets will be held; (iv) the chief legal counsel for the local jurisdiction; and (v) the Debtors' landlords..

c.        To the extent that during the Interim Sale Period there is a dispute arising from or relating to the sale, this Interim Order, the Agency Agreement, or the Sale Guidelines, which dispute relates to any GOB Laws or Liquidation Laws (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute which such Reserved Dispute will be heard at the Final Hearing, absent a party obtaining expedited relief.  Nothing in this Interim Order shall constitute a ruling with respect to any issues to be raised with respect to a Reserved Dispute.

14.        Except to the extent of the reserved rights of Governmental Units expressly granted elsewhere in this Interim Order, during the Interim Sale Period, the Debtors and Agent are hereby authorized to take such actions as may be necessary and appropriate to implement the Agency Agreement and to conduct the Sale without necessity of further order of this Court as provided in the Agency Agreement or the Sale Guidelines, including, but not limited to, advertising the Sale as a "store closing sale", "sale on everything", "everything must go", "going

14

out of business", or similar-themed sales through the posting of signs (including the use of exterior banners at non-enclosed mall Stores, and at enclosed mall Stores to the extent the applicable Store entrance does not require entry into the enclosed mall common area), use of signwalkers and street signage.

15.     Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the Sale of the Transferred Assets, to the extent that, during the Interim Sale Period, disputes arise during the course of such Sale regarding laws regulating the use of sign-walkers, banners or other advertising and the Debtors and the Agent are unable to resolve the matter consensually with a Governmental Unit, any party may request an immediate telephonic hearing with this Court pursuant to these provisions. Such hearing will, to the extent practicable, be scheduled initially no later than the earlier of (i) the Final Hearing or (ii) within two (2) business days of such request. This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

16.     Except as expressly provided in the Agency Agreement, during the Interim Sale Period, the sale of the Interim Sale Assets shall be conducted by the Debtors and the Agent notwithstanding any restrictive provision of any lease, sublease or other agreement relative to occupancy affecting or purporting to restrict the conduct of the sale, the rejection of leases, abandonment of assets or "going dark" provisions. The Agent and landlords of the Stores are authorized to enter into agreements ("Side Letters") between themselves modifying the Sale Guidelines without further order of the Court, and such Side Letters shall be binding as among the Agent and any such landlords, provided that nothing in such Side Letters affects the

15

provisions of Paragraphs 13, 14 and 15 of this Interim Order.  In the event of any conflict between the Sale Guidelines and any Side Letter, the terms of such Side Letter shall control.

17.    Except as expressly provided for herein or in the Sale Guidelines, and except with respect to any Governmental Unit (as to which Paragraphs 13, 14 and 15 of this Interim Order shall apply), no person or entity, including but not limited to any landlord, licensor, or creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Sale of the Interim Sale Assets, or the advertising and promotion (including the posting of signs and exterior banners or the use of signwalkers) of such Sale, and all such parties and persons of every nature and description, including landlords, licensors, creditors, website and other Direct Business Platform services providers, and utility companies, and all those acting for or on behalf of such parties, are prohibited and enjoined from (i) interfering in any way with, obstructing, or otherwise impeding, the conduct of the Sale and/or (ii) instituting any action or proceeding in any court (other than in the Bankruptcy Court) or administrative body seeking an order or judgment against, among others, the Debtors, the Agent, or the landlords at the Closing Locations that might in any way directly or indirectly obstruct or otherwise interfere with or adversely affect the conduct of the Sale of the Interim Sale Assets or other liquidation sales at the Closing Locations and/or seek to recover damages for breach(es) of covenants or provisions in any lease, sublease or license based upon any relief authorized herein.

18.    During the Interim Sale Period, the Agent shall have the right to use the Stores, the Distribution Centers and all related Store services and/or Distribution Center Services, furniture, fixtures, equipment and other assets of the Debtors for the purpose of conducting the Sale of the Interim Sale Assets, free of any interference from any entity or person, subject to

16

compliance with the Sale Guidelines and this Order and subject to Paragraphs 13, 14, and 15 of this Interim Order.

19.     During the Interim Sale Period, the Agent shall accept the Debtors' validly-issued gift certificates and gift cards that were issued by the Debtors prior to the Sale Commencement Date, and accept returns of merchandise sold by the Debtors prior to the Sale Commencement Date, provided that such return is otherwise in compliance with the Debtors' return policies in effect as of the date such item was purchased and the customer is not repurchasing the same item so as to take advantage of the sale price being offered by the Agent.

20.     During the Interim Sale Period, all state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the Sale of said goods or the use of the terms "as is" or "final sales."  During the Interim Sale Period, the Debtors and/or the Agent shall accept return of any goods purchased during the sale of the Interim Sale Assets that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, provided that the consumer must return the merchandise within twenty-one (21) days of their purchase, the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect.

21.     During the Interim Sale Period, the Agent shall be granted a limited, royalty-free, license and right to use the trademarks, trade names, logos and customer, mailing and e-mail lists, websites, URL and social media relating to and used in connection with the operation of the Stores and the Direct Business Platform, as identified in the Agency Agreement, solely for the purpose of advertising the Sale, selling or otherwise disposing of the Interim Sale Assets, and otherwise conducting the sale of the Interim Sale Assets in accordance with the terms of the

17

Agency Agreement; provided, however, that the Agent shall not receive Personally Identifiable Information from the Debtors.  Upon entry of the this Order, the Office of the United States Trustee is hereby authorized to appoint a consumer privacy ombudsman pursuant to sections 332 and 363(b)(1) of the Bankruptcy Code.

22.     Except as expressly provided for in the Agency Agreement, nothing in this Interim Order or the Agency Agreement, and none of the Agent's actions taken in respect of the Sale shall be deemed to constitute an assumption by Agent of any of the Debtors' obligations relating to any of the Debtors' employees.  Moreover, the Agent shall not become liable under any collective bargaining or employment agreement or be deemed a joint or successor employer with respect to such employees.

23.     The Agent shall not be liable for sales taxes except as expressly provided in the Agency Agreement and the payment of any and all sales taxes is the responsibility of the Debtors.  The Debtors are directed to remit all taxes arising from the Sale to the applicable Taxing Authorities as and when due, provided that in the case of a bona fide dispute the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the Taxing Authority.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the Taxing Authority for which the sales taxes are collected.  The Agent shall collect, remit to the Debtors and account for sales taxes as and to the extent provided in the Agency Agreement.  This Interim Order does not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under State law.

18

24.     During the Interim Sale Period and subject to the terms set forth in the Agency Agreement, the Debtors and/or the Agent (as the case may be) are authorized and empowered to transfer Transferred Assets among the Closing Locations.  The Agent is authorized to sell the Debtors' furniture, fixtures and equipment and abandon the same, in each case, as provided for and in accordance with the terms of the Agency Agreement.

**F.     Other Rights of Agent**

25.     During the Interim Sale Period, Agent shall be under no obligation to make any payments from its own funds (including but not limited to the Initial Guaranty Payment) in the performance of its obligations under the Agency Agreement other than the issuance of the Letter of Credit after entry of this Interim Order, as provided for under the Agency Agreement provided, however, that neither the Debtors, the Lender, nor any other party shall be authorized to draw on the Letter of Credit absent further order of this Court, which may be requested on an emergency basis upon notice to, and an opportunity to be heard by, the Agent.

26.     During the Interim Sale Period and provided that the Agent performs in accordance with the terms of the Agency Agreement, the Agent and the other Agent Indemnified Parties shall be indemnified and held harmless in accordance with the terms of Section 8.3(a) of the Agency Agreement.  Any claims against the Debtors arising under Section 8.3(a) of the Agency Agreement shall be, and hereby are, granted the status of superpriority claims in this case pursuant to Section 364(c) of Bankruptcy Code.

27.     During the Interim Sale Period, the Agent is authorized to sell Additional Agent Merchandise.  Additional Agent Merchandise shall be consigned to the Debtors as a true consignment under Article 9 of the UCC.  The Agent is hereby granted a first-priority security

19

interest in (a) the Additional Agent Merchandise and (b) the Additional Agent Merchandise proceeds, which security interest shall be deemed perfected pursuant to this Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties; provided that the Agent is authorized to deliver all required notices and file all necessary financing statements and amendments thereof under the applicable UCC identifying the Agent's interest in the Additional Agent Merchandise as consigned goods thereunder and the Debtors as the consignee therefor, and the Agent's security interest in such Additional Agent Merchandise and Additional Agent Merchandise proceeds.  With respect to Additional Agent Merchandise included during the Interim Sale Period, but unsold as of the Final Sales Hearing and Additional Agent Merchandise to be included in the Sale from and after the Final Sale Hearing, all parties' rights, including the right to object, are expressly reserved and not waived.

### G.    Other Provisions

28.    The Agent shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against Agent, in each case, other than as expressly provided for in the Agency Agreement.  The Agent shall have no successor liability whatsoever with respect to any Encumbrances or claims of any nature that may exist against the Debtors, except as expressly set forth in the Agency Agreement.

29.    The Agent is a party in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Interim Order, the various procedures contemplated  herein, any issues related to or otherwise connected to the sale and the Agency Agreement.

30.    Notwithstanding anything to the contrary in this Order, the Agency Agreement or

20

otherwise, nothing in this Order shall (A) prejudice or affect in any way any right or obligation of any of the Debtors or of dELiA*s Brand LLC (the "IP SPV") under law or any agreement (including, without limitation, the Limited Liability Company Agreement of the IP SPV), to seek the consent (if any such consent is required) of JLP Daisy LLC or its designee, successor or assign in connection with the assumption or assignment to the Agent or any other person or entity, amendment, supplement, change, alteration or other modification of any of the Assets (including, without limitation, that certain Trademark License Agreement, dated as of February 24, 2003, between the IP SPV and dELiA*s Corp. (as it may have been amended, supplemented or otherwise modified prior to the date hereof)), or (B) constitute a finding that such consent has been provided or is required.  For the avoidance of doubt, nothing set forth in this Order shall prevent the Debtors, the Agent or any other person from asserting that JLP Daisy LLC does not have any such rights.  Furthermore, JLP Daisy LLC expressly reserves the right to assert, and nothing in this Order shall prevent JLP Daisy LLC from asserting, that any or all of the intellectual property purportedly subject to the Designation Rights is not owned by the Debtors (as opposed to the IP SPV or any other party), and the Debtors' rights with respect thereto are expressly reserved and are not waived.

31.    Except with respect to any Governmental Unit (as to which the provisions of Paragraphs 13, 14 and 15 of this Order shall apply), this Court shall retain exclusive jurisdiction with regard to all issues or disputes relating to this Interim Order or the Agency Agreement, including, but not limited to, (i) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in any way limit banner and signwalker advertising, including with respect to any allegations that such advertising is not being conducted in a safe, professional and non-

21

deceptive manner, (ii) any claim of the Debtors, the landlords and/or the Agent for protection from interference with the Sale, (iii) any other disputes related to the sale, and (iv) to protect the Debtors and/or the Agent against any assertions of Encumbrances.  No such parties or person shall take any action against the Debtors, the Agent, the landlords or the Sale until this Court has resolved such dispute.  This Court shall hear the request of such parties or persons with respect to any such disputes on an expedited basis, as may be appropriate under the circumstances.

32.     Notwithstanding Bankruptcy Rules 4001 and 6004, or any other law that would serve to stay or limit the immediate effect of this Interim Order, this Interim Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Agent are free to perform under the Agency Agreement at any time, subject to the terms of the Agency Agreement and this Interim Order.

33.     The Final Sale Hearing will be held before this Court on **December 23, 2014 at 10:00 a.m. (ET)**.

34.     Any objections to the continuation of the Sale following the Interim Hearing or to the approval of the Motion and the relief requested therein on a final basis shall be filed with this Court (with a copy to Chambers) no later than12 **noon (ET) on December 22, 2014**, and on the following:  (i) the Debtors, 50 West 23rd Street, 10th Floor, New York, New York 10010, Attn: Ryan A. Schreiber, Esq.; (ii) counsel to the Debtors, DLA Piper LLP (US), 1251 Avenue of the Americas, 25th Floor, New York, New York 10020-1104, Attn: Gregg M. Galardi, Esq.; (iii) Office of the United States Trustee, 201 Varick Street, Suite 1006, New York, New York 10014, Attn:  Serene Nakano, Esq. and Richard C. Morrissey, Esq.; (iv) Choate Hall & Stewart, LLP,

22

Two International Place, Boston, MA 02110, Attn:  John F. Ventola, Esq.; (v) DiConza Traurig

Kadish LLP, 630 Third Avenue, 7th Floor, New York, New York 10017, Attn:  Maura I. Russell,

Esq.; and (vi) counsel to the Agent, Goulston & Storrs PC, 400 Atlantic Avenue, Boston, MA

02110-3333, Attn: James F. Wallack, Esq. and Gregory O. Kaden, Esq.; and (vii) counsel to any

statutory committee appointed in these Chapter 11 Cases.

35.    To the extent that anything contained in this Interim Order explicitly conflicts

with a provision in the Agency Agreement or the Sale Guidelines, this Interim Order shall

govern and control.

Dated:  December 10, 2014
        White Plains, New York

        ___/s/Robert D. Drain_____
        UNITED STATES BANKRUPTCY JUDGE

23

**<u>EXHIBIT 1</u>**

**Agency Agreement**

## **EXHIBIT 2**

**Sale Guidelines**