**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| dELiA*s, INC., *et al.*, | Case No. 14- 23678 (RDD) |
| Debtors.[1] | Jointly Administered |

### FINAL ORDER (A) (I) APPROVING THE DEBTORS' ASSUMPTION OF AGENCY AGREEMENT, (II) AUTHORIZING THE DEBTORS TO SELL CERTAIN ASSETS THROUGH STORE CLOSING SALES, (III) AUTHORIZING THE DEBTORS TO ABANDON UNSOLD PROPERTY, (IV) WAIVING COMPLIANCE WITH CONTRACTUAL STORE CLOSING SALE RESTRICTIONS AND EXEMPTING THE DEBTORS FROM LAWS RESTRICTING STORE CLOSING SALES, AND (V) GRANTING RELATED RELIEF

Upon consideration of the *Debtors' Emergency Motion for Entry of Interim and Final Orders (A)(i) Approving the Debtors' Assumption of Agency Agreement; (ii) Authorizing the Debtors to Sell Certain Assets Through Store Closing Sales; (iii) Authorizing the Debtors to Abandon Unsold Property, (iv) Waiving Compliance with Contractual Store Closing Sale Restrictions and Exempting the Debtors from State and Local Wage Requirements and Laws Restricting Store Closing Sales, (v) Granting Related Relief, and (vi) Scheduling a Final Hearing* [Docket No. 15] (the "Motion");[2] and it appearing that this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(3) and that consideration of the Motion and the relief requested therein is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) with respect to which the Court may enter a final order; and adequate notice of the Motion and the final hearing

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  dELiA*s, Inc. (7172); dELiA*s Distribution Company (9076); A Merchandise, LLC (7639); dELiA*s Operating Company (3765); dELiA*s Retail Company (0036); dELiA*s Group Inc. (4035); AMG Direct, LLC (9236); dELiA*s Assets Corp. (3754); DACCS, Inc. (0225).  The mailing address for the Debtors, solely for purposes of notices and communications, is:  50 West 23rd Street, New York, NY 10010.

[2]   All capitalized terms not otherwise defined in this Order have the meaning ascribed to them in the Motion or in the Agency Agreement.

thereon having been given, and it appearing that no other notice need be given; and the Debtors

and a joint venture composed of Hilco Merchant Resources, LLC and Gordon Brothers Retail

Partners, LLC (collectively, the "Agent") having agreed upon terms and conditions for the Agent

to act as the Debtors' exclusive agent to conduct sales (the "Sale") of certain of the Debtors'

assets, including, without limitation, the Merchandise, the Assets, the Additional Agent

Merchandise, the Merchant Consignment Goods, the designation rights described in Section 7.3

of the Agency Agreement (the "Designation Rights"), the Owned FF&E, the MOOS Inventory,

and the Owned DC FF&E (all of the foregoing merchandise, assets, goods and rights,

collectively, the "Transferred Assets"), which terms and conditions are set forth in that certain

Amended and Restated Agency Agreement, by and between the Agent and Debtors, an executed

copy of which is attached hereto as **Exhibit A** (the "Agency Agreement"); and the transactions

represented by the Agency Agreement having been determined to be the highest and best offer

for the Transferred Assets; and a hearing having been held on December 9, 2014 (the "Interim

Hearing"), whereupon the Court entered an interim Order approving, *inter alia*, the performance

of the Debtors' obligations under that certain Agency Agreement entered into as of December 4,

2014 (the "Original Agency Agreement") on an interim basis through the date of the Final

Hearing (defined below) [Docket No. 55] (the "Interim Order"); and the Debtors, the Agent and

the Official Committee of Unsecured Creditors (the "Committee") having reached agreement on

the terms of the Agency Agreement, resolving the Committee's objections to certain terms of the

Original Agency Agreement; and a final hearing having been held on December 23, 2014 (the

"Final Hearing") to consider the remaining relief requested in the Motion and the assumption and

approval of the Agency Agreement; and appearances of all interested parties having been noted

on the record of the Interim Hearing and the Final Hearing; and upon the First Day Declaration

GSDOCS.8147694.2
EAST\87411891.7

and the Diercks Declaration; and upon all of the proceedings had before the Court (including but not limited to the testimony and other evidence proffered or adduced at the Interim Hearing and the Final Hearing); and there being no remaining objections to the relief granted herein; and the Court having found and determined that the relief granted herein is in the best interests of the Debtors, their estates, their creditors, and other parties in interest and a proper exercise of business judgment and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

### FOUND AND DETERMINED THAT:[2]

A.    **Jurisdiction:**  This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) and 1134(b).  Approval of the Debtors' entry into the Agency Agreement, and the transactions contemplated thereby is a core proceeding under 28 U.S.C. §§ 157(b)(2)(A), (D), (N) and (O).

B.    **Venue:**  Venue of these cases in this district is proper pursuant to 28 U.S.C. § 1409(a).

C.    **Statutory Predicates:**  The statutory predicates for the approval of the Agency Agreement and transactions contemplated therein are sections 105, 363, 364, 365 and 554 of the Bankruptcy Code and Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") .

D.    **Notice:**  Proper, timely, adequate and sufficient notice of the Motion and the Final Hearing has been provided in accordance with sections 102(1), 105(a), and 363 of the

---

[2]   The findings of fact and the conclusions of law stated herein shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law shall be determined to be a finding of fact, it shall be so deemed.

3

Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003 and 6004, and in compliance with the Interim Order. No other or further notice is required.

E.    **Opportunity to be Heard:**  A reasonable opportunity to object or be heard regarding the relief requested in the Motion and the transactions pursuant thereto has been afforded to all interested persons and entities, including, without limitation, the following: (i) the Office of the United States Trustee for the Southern District of New York; (ii) counsel to Salus Capital Partners, LLC, as the administrative agent under the Debtors' prepetition credit facility; (iii) counsel to General Electric Capital Corporation as the issuer of the prepetition letter of credit agreement; (iv) the parties included on the Debtors' consolidated list of fifty (50) largest unsecured creditors; (v) the Internal Revenue Service; (vi) the United States Attorney for the Southern District of New York; (vii) the U.S. Securities and Exchange Commission; (viii) all parties who are known to assert a security interest, lien, or claim in any of the Transferred Assets, including counsel to Holyoke Mall Company L.P. and EklecCo NewCo, LLC (together, the "Pyramid Landlords" ), (ix) all the Debtors' landlords; (x) all applicable federal, state, and local taxing authorities (the "Taxing Authorities"); (xi) all applicable county and state consumer protection agencies; (xii) all applicable state attorneys general; (xiii) counsel to the Committee; and (xiv) any such other party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(b) ((i) through (xiv) collectively, the "Notice Parties"). Notice of the Motion was sufficient and reasonable. Objections, if any, to the relief requested in the Motion have not been withdrawn or resolved and, to the extent not withdrawn or resolved, are hereby overruled in their entirety.

F.    **Marketing Process:**  As demonstrated by: (i) the First Day Declaration and the Diercks Declaration (ii) the testimony and other evidence proffered or adduced at the Interim

4

Hearing and the Final Hearing and (iii) the representations of counsel made on the record at the Interim Hearing and the Final Hearing, the Debtors have thoroughly marketed the Transferred Assets and have conducted the bidding solicitation fairly, with adequate opportunity for parties that either expressed an interest in acquiring or liquidating the Transferred Assets, or who the Debtors believed may have an interest in acquiring or liquidating the Transferred Assets, to submit competing bids.  The Debtors and the Agent have respectively negotiated and undertaken their roles leading to the Sale and entry into the Agency Agreement in a diligent, noncollusive, fair and good faith manner.

G.      **Highest and Best Offer:**  The Agency Agreement attached hereto as **Exhibit A**, including the form and total consideration to be realized by the Debtors pursuant to the Agency Agreement, (i) is the highest and best offer received by the Debtors for the Transferred Assets, (ii) is fair and reasonable, and (iii) is in the best interests of the Debtors, their estates, their creditors and all other parties in interest.  There is no legal or equitable reason to delay entry into the Agency Agreement, and the transactions contemplated therein, including, without limitation, the Sale.

H.      **Business Judgment:**  The Debtors' decision to (i) enter into the Agency Agreement, and (ii) perform under and make payments required by the Agency Agreement, is a reasonable exercise of the Debtors' sound business judgment consistent with their fiduciary duties and is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest.

I.      **Time of the Essence:**  Time is of the essence in approving the assumption of the Agency Agreement and continuing the Sale contemplated therein without interruption.  Based on the record of the Interim Hearing and the Final Hearing, and for the reasons stated on the record

GSDOCS.8147694.2
EAST\87411891.7

at the Interim Hearing and the Final Hearing: (i) the requirements of Bankruptcy Rule 6003 are

satisfied and granting the relief requested in the Motion on a final basis is necessary to avoid

immediate and irreparable harm; and (ii) cause exists under Bankruptcy Rules 4001(a) and

6004(h) and to permit the immediate effectiveness of this Order.

J. **Sale Free and Clear:** A sale of the Transferred Assets other than one free and

clear of liens, claims, encumbrances, defenses (including, without limitation, rights of setoff and

recoupment) and interests, including, without limitation, security interests of whatever kind or

nature, mortgages, conditional sales or title retention agreements, pledges, deeds of trust,

hypothecations, liens, encumbrances, assignments, preferences, debts, easements, charges, suits,

licenses, options, rights-of-recovery, judgments, orders and decrees of any court or foreign or

domestic governmental entity, taxes (including foreign, state and local taxes), licenses,

covenants, restrictions, indentures, instruments, leases, options, off-sets, claims for

reimbursement, contribution, indemnity or exoneration, successor, product, environmental, tax,

labor, ERISA, CERCLA, alter ego and other liabilities, causes of action, contract rights and

claims, to the fullest extent of the law, in each case, of any kind or nature (including, without

limitation, all "claims" as defined in section 101(5) of the Bankruptcy Code), known or

unknown, whether pre-petition or post-petition, secured or unsecured, choate or inchoate, filed or

unfiled, scheduled or unscheduled, perfected or unperfected, liquidated or unliquidated, noticed

or unnoticed, recorded or unrecorded, contingent or non-contingent, material or non-material,

statutory or non-statutory, matured or unmatured, legal or equitable (collectively,

"Encumbrances") and without the protections of this Order would hinder the Debtors' ability to

obtain the consideration provided for in the Agency Agreement and, thus, would impact

materially and adversely the value that the Debtors' estates would be able to obtain for the sale

GSDOCS.8147694.2
EAST\87411891.7

of such Transferred Assets.  In addition, each entity with an Encumbrance upon the Transferred

Assets, (i) has consented to the Sale or is deemed to have consented to the Sale, (ii) could be

compelled in a legal or equitable proceeding to accept money satisfaction of such interest, or (iii)

otherwise falls within the provisions of section 363(f) of the Bankruptcy Code, and therefore, in

each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code

has been satisfied.  Those holders of Encumbrances who did not object, or who withdrew their

objections, to the Motion are deemed to have consented pursuant to section 363(f)(2) of the

Bankruptcy Code.  Therefore, approval of the Agency Agreement and the consummation of the

Sale free and clear of Encumbrances are appropriate pursuant to section 363(f) of the Bankruptcy

Code and are in the best interests of the Debtors' estates, their creditors and other parties in

interest.

K.    **Arms-length Sale:**  The consideration to be paid by the Agent under the Agency

Agreement was negotiated at arm's-length and constitutes reasonably equivalent value and fair

and adequate consideration for the Transferred Assets under the Bankruptcy Code, the Uniform

Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the laws of the United

States, any state, territory, possession thereof or the District of Columbia.  The terms and

conditions set forth in the Agency Agreement are fair and reasonable under these circumstances

and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying

or defrauding the Debtors or their creditors under any applicable laws.

L.    **Good Faith:**  The Debtors, their management and their board of directors, and the

Agent, its members and its officers, directors, employees, agents and representatives, actively

participated in the bidding process and acted in good faith.  The Agency Agreement between the

Agent and the Debtors was negotiated and entered into based upon arm's length bargaining,

without collusion or fraud, and in good faith as that term is used in sections 363(m) and 364(e) of

the Bankruptcy Code. The Agent and any designee of the Assets pursuant to Agent's exercise of

the Designation Rights (any such designee, a "Designee") shall be protected by sections 363(m)

and 364(e) of the Bankruptcy Code in the event that this Order is reversed or modified on appeal.

The Debtors were free to deal with any other party interested in buying or selling on behalf of the

Debtors' estate some or all of the Transferred Assets. Neither the Debtors nor the Agent nor any

Designee has engaged in any conduct that would cause or permit the Sale, the Agency

Agreement, or any related action or the transactions contemplated thereby to be avoided under

section 363(n) of the Bankruptcy Code, or that would prevent the application of sections 363(m)

or 364(e) of the Bankruptcy Code. Neither the Agent nor any Designee has violated section

363(n) of the Bankruptcy Code by any action or inaction. Specifically, neither the Agent nor any

Designee has acted in a collusive manner with any person or was controlled by any agreement

among bidders. The Agent's and any Designee's prospective performance and payment of the

Guaranteed Amount and any other amounts owing under the Agency Agreement are in good

faith and for valid business purposes and uses.

M.     **Insider Status:**  The Agent is not an "insider" as that term is defined in section

101(31) of the Bankruptcy Code. No common identity of directors or controlling stockholders

exists between the Agent and the Debtors.

N.     **Security Interests:**  The liens provided for in the Agency Agreement and this

Order to secure the obligations of the Debtors under the Agency Agreement to the Agent are

necessary to induce the Agent to agree to terms for the Agency Agreement that maximize value

for the Debtors' estates. The absence of such protections would impact materially and adversely

the value available to the Debtors in the liquidation of their Closing Locations in partnership

with a liquidation agent.  But for the protections afforded to the Agent under the Bankruptcy Code, this Order, and the Agency Agreement, the Agent would not have agreed to pay the Debtors the compensation provided for under the Agency Agreement.  In addition, the Lender and the Pyramid Landlords, which hold a security interest in the property to which the Agent's security interests attach, have consented to the security interests provided for in the Agency Agreement, subject to the satisfaction of the conditions set forth in the Agency Agreement and in Paragraph 34 of this Order and the Pyramid Landlords have further consented to such security interests subject to the terms of the Interim DIP Order.

O.    **Corporate Authority:**  The Debtors (i) have full corporate or other power to execute, deliver and perform their obligations under the Agency Agreement and all other transactions contemplated thereby (including without limitation, reaching an agreement and resolution regarding the final reconciliation contemplated by the Agency Agreement), and entry into the Agency Agreement has been duly and validly authorized by all necessary corporate or similar action, (ii) have all of the corporate or other power and authority necessary to consummate the transactions contemplated by the Agency Agreement, and (iii) have taken all actions necessary to authorize and approve the Agency Agreement and the transactions contemplated thereby.  No consents or approvals, other than those expressly provided for herein or in the Agency Agreement, are required for the Debtors to consummate such transactions.

P.    **No Successor Liability:**  No sale, transfer or other disposition of the Transferred Assets pursuant to the Agency Agreement or entry into the Agency Agreement will subject the Agent to any liability for claims, obligations or Encumbrances asserted against the Debtors or the Debtors' interests in such Transferred Assets by reason of such transfer under any laws, including, without limitation, any bulk-transfer laws or any theory of successor or transferee

9

liability, antitrust, environmental, product line, de facto merger or substantial continuity or similar theories. The Agent is not a successor to the Debtors or their respective estates.

Q.    **No Sub Rosa Plan:**  Entry into the Agency Agreement and the transactions contemplated thereby neither impermissibly restructure the rights of the Debtors' creditors, nor impermissibly dictate the terms of a liquidating plan of reorganization for the Debtors. Entry into the Agency Agreement does not constitute a sub rosa chapter 11 plan.

## NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

### A.    Motion Granted, Objections Overruled

1.    The relief requested in the Motion is granted as set forth herein.

2.    Any remaining objections to the Motion or the relief requested therein that have not been withdrawn, waived, or settled, and all reservations of rights included in such objections are overruled in all respects and denied.

### B.    Assumption and Execution of Agency Agreement Approved and Authorized

3.    The Debtors' execution of the Agency Agreement is hereby ratified and their assumption of the Agency Agreement is hereby directed, authorized and approved as a valid exercise of the Debtors' business judgment pursuant to section 365 of the Bankruptcy Code. Pursuant to sections 105 and 363 of the Bankruptcy Code, the Debtors are authorized to continue performance under and to make all payments required by the Agency Agreement as and when due thereunder, and perform each of the transactions contemplated therein (including without limitation, reaching an agreement and resolution regarding the final reconciliation contemplated by the Agency Agreement, which agreement and resolution shall be binding on all parties (including (without limitation) the Debtors, the Committee, the Lender, the Pyramid Landlords,

GSDOCS.8147694.2
EAST\87411891.7

any successor chapter 7 or chapter 11 trustee, and all other parties in interest) without further

order of the Court)), all without further order of this Court.  The failure to include specifically

any particular provision of the Agency Agreement in this Order shall not diminish or impair the

effectiveness of such provisions, it being the intent of the Court that the assumption of the

Agency Agreement and all of its provisions, payments and transactions, be authorized and

approved in their entirety.  Likewise, all of the provisions of this Order are nonseverable and

mutually dependent.

4.      All amounts payable to the Agent under the Agency Agreement shall be payable

to the Agent without the need for any application of the Agent therefor or any further order of the

Court.

5.      Subject to the provisions of this Order, the Debtors and the Agent are hereby

authorized, pursuant to sections 105(a) and 363(b)(1) of the Bankruptcy Code, to conduct the

Sale in accordance with the Agency Agreement and the sale guidelines (the "GOB Sale

Guidelines") attached hereto as **Exhibit B**, which GOB Sale Guidelines are hereby approved in

their entirety.

6.      Pursuant to section 363(b) of the Bankruptcy Code, the Debtors, the Agent and

each of their respective officers, employees and agents are hereby authorized and directed to

execute such documents and to do such acts as are necessary or desirable to carry out the Sale

and effectuate the Agency Agreement and each of the transactions and related actions

contemplated or set forth therein.  Ryan Schreiber, the Debtors' President, General Counsel &

Secretary, is specifically authorized to act on behalf of the Debtors in connection with the Sale

and no other consents or approvals are necessary or required for the Debtors to carry out the

GSDOCS.8147694.2
EAST\87411891.7

Sale, effectuate the Agency Agreement and each of the transactions and related actions contemplated or set forth therein.

### C.    Order Binding

7.    This Order shall be binding upon and shall govern the acts of all entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to the Transferred Assets.

8.    This Order and the terms and provisions of the Agency Agreement shall be binding on all of the Debtors' creditors (whether known or unknown), the Debtors, the Agent, and their respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting an interest in the Transferred Assets, notwithstanding any subsequent appointment of any trustee, party, entity or other fiduciary under any section of the Bankruptcy Code with respect to the forgoing parties, and as to such trustee, party, entity or other fiduciary, such terms and provisions likewise shall be binding.  The provisions of this Order and the terms and provisions of the Agency Agreement, and any actions taken pursuant hereto or thereto shall survive the entry of any order which may be entered confirming or consummating any plan(s) of the Debtors or converting the Debtors' cases from chapter 11 to chapter 7, and the terms and provisions of the Agency Agreement, as well as the rights and interests granted pursuant to this Order and the Agency Agreement, shall continue in these or any superseding cases and shall be binding upon the Debtors, the Agent and their respective

GSDOCS.8147694.2
EAST\87411891.7

successors and permitted assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.  Any trustee appointed in this case shall be and hereby is authorized to operate the business of the Debtors to the fullest extent necessary to permit compliance with the terms of this Order and the Agency Agreement, and Agent and the trustee shall be and hereby are authorized to perform under the Agency Agreement upon the appointment of the trustee without the need for further order of this Court.

### D.    Good Faith.

9.    Entry into the Agency Agreement was undertaken by the parties thereto in good faith, as that term is used in sections 363(m) and 364(e) of the Bankruptcy Code, and Agent and any Designee shall be protected by sections 363(m) and 364(e) of the Bankruptcy Code in the event that this Order is amended, vacated, reversed or modified on appeal.  Any such amendment, vacatur, reversal or modification of the authorization provided herein to assume the Agency Agreement, continue performance thereunder, and consummate the transactions contemplated thereby shall not affect the validity or enforceability of the Agency Agreement, the Debtors' assumption thereof, or such transactions and shall not affect the validity or enforceability of the Sale or the liens or priorities in favor of Agent authorized or created under the Agency Agreement or this Order.  The Agent and any Designee are entitled to all of the benefits and protections afforded by sections 363(m) and 364(e) of the Bankruptcy Code.  The transactions contemplated by the Agency Agreement are not subject to avoidance pursuant to section 363(n) of the Bankruptcy Code.

### E.    Conduct of the Sale

GSDOCS.8147694.2
EAST\87411891.7

10.     Except as otherwise provided in the Agency Agreement, pursuant to section 363(f) of the Bankruptcy Code, the Agent shall be authorized to sell all Merchandise, the FF&E and other Transferred Assets to be sold pursuant to the Agency Agreement free and clear of any and all Encumbrances, including, without limitation, the liens and security interests, as the same may have been amended from time to time, of the Lender whether arising by agreement, any statute or otherwise and whether arising before, on or after the date on which these chapter 11 cases were commenced, with any presently existing liens encumbering all or any portion of the Transferred Assets or the Proceeds thereof (including, but not limited to, the first-priority security interest of the Lender and the first-priority security interest of the Pyramid Landlords) attaching only to the Guaranteed Amount and, subject to the Agent's liens granted pursuant to the Agency Agreement and this Order, other amounts payable to the Debtors under the Agency Agreement, with the same validity, force and effect as the same had with respect to the assets at issue, subject to any and all defenses, claims and/or counterclaims or setoffs that may exist.  For the sake of clarity, however, nothing in this paragraph is intended to diminish the liens in favor of the Agent, as reflected in the Agency Agreement and this Order, that attach to, among other things, the Proceeds of the Sale.

11.     If any person or entity that has filed financing statements, mortgages, construction or mechanic's liens, lis pendens or other documents or agreements evidencing liens on or interests in the Transferred Assets shall not have delivered to the Debtors, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, or releases of any Encumbrances which the person or entity has with respect to the Transferred Assets, each such person or entity is hereby directed to deliver all such statements, instruments and releases and the Debtors and the Agent are hereby authorized to execute and file such

14

statements, instruments, releases and other documents on behalf of the person or entity asserting the same and the Agent is authorized to file a copy of this Order which, upon filing, shall be conclusive evidence of the release and termination of such interest. Each and every federal, state and local governmental unit is hereby directed to accept any and all documents and instruments necessary or appropriate to give effect to the Sale and related transactions.

12.    All entities that are presently in possession of some or all of the Transferred Assets or other property in which the Debtors hold an interest that are or may be subject to the Agency Agreement hereby are directed to surrender possession of such Transferred Assets or other property to the Agent.

13.    The Debtors and the Agent shall not extend the Sale Termination Date beyond April 15, 2015 unless extended by mutual written agreement of the Debtors and the Agent following a commensurate extension of the expiration date of the Agent Letter of Credit.

14.    Unless otherwise ordered by the Court, all newspapers and other advertising media in which the Sale may be advertised and all landlords are directed to accept this Order as binding authority so as to authorize the Debtors and the Agent to consummate the Agency Agreement and to consummate the transactions contemplated therein, including, without limitation, to conduct and advertise the Sale in the manner contemplated by the Agency Agreement, including, without limitation, conducting and advertising of the Sale in accordance with the Agency Agreement, the GOB Sale Guidelines, and this Order.

15.    Nothing in this Order or the Agency Agreement releases, nullifies, or enjoins the enforcement of any liability to a governmental unit under environmental laws or regulations (or any associated liabilities for penalties, damages, cost recovery, or injunctive relief) that any entity would be subject to as the owner, lessor, lessee, or operator of the property after the date

GSDOCS.8147694.2
EAST\87411891.7

of entry of this Order.  Nothing contained in this Order or in the Agency Agreement shall in any way (i) diminish the obligation of any entity to comply with environmental laws, or (ii) diminish the obligations of the Debtors to comply with environmental laws consistent with their rights and obligations as debtors in possession under the Bankruptcy Code.  Nothing herein shall be construed to be a determination that the Agent is an operator with respect to any environmental law or regulation.  Moreover, the Sale shall not be exempt from, and the Agent shall be required to comply with, laws of general applicability, including, without limitation, public health and safety, criminal, tax, labor, employment, environmental, antitrust, fair competition, traffic and consumer protection laws, including consumer laws regulating deceptive practices and false advertising (collectively, "General Laws").  Nothing in this Order shall alter or affect the Debtors' and Agent's obligations to comply with all applicable federal safety laws and regulations.  Nothing in this Order shall be deemed to bar any Governmental Unit (as defined in Bankruptcy Code section 101(27)) from enforcing General Laws in the applicable non-bankruptcy forum, subject to the Debtors' or the Agent's right to assert in that forum or before this Court that any such laws are not in fact General Laws or that such enforcement is impermissible under the Bankruptcy Code, this Order, or otherwise, pursuant to Paragraph 19 hereunder.  Notwithstanding any other provision in this Order, no party waives any rights to argue any position with respect to whether the conduct was in compliance with this Order and/or any applicable law, or that enforcement of such applicable law is preempted by the Bankruptcy Code.  Nothing in this Order shall be deemed to have made any rulings on any such issues.

16.    <u>Disputes Between Government Units and the Debtors or the Agent</u>.  To the extent that the Sale is subject to any federal, state or local statute, ordinance, or rule, or licensing requirement solely directed at regulating "going out of business," "store closing," similar

16

inventory liquidation sales, or bulk sale laws (each a "GOB Law," and together, the "GOB Laws"), including laws restricting safe, professional and non-deceptive, customary advertising such as signs, banners, posting of signage, and use of sign-walkers solely in connection with the Sale and including ordinances establishing license or permit requirements, waiting periods, time limits or bulk sale restrictions that would otherwise apply solely to the Sale (collectively, the "Liquidation Laws"), the following provisions shall apply:

a.      Provided that the Sale is conducted in accordance with the terms of this Order, the Agency Agreement and the GOB Sale Guidelines, and in light of the provisions in the laws of many Governmental Units that exempt court-ordered sales from their provisions, the Debtors shall be presumed to be in compliance with any GOB Laws and Liquidation Laws and, subject to Paragraphs 16, 17 and 18 herein, are authorized to conduct the Sale in accordance with the terms of this Order and the GOB Sale Guidelines without the necessity of further showing compliance with any such GOB Laws and Liquidation Laws.

b.      Within five (5) business days of entry of this Order, the Debtors shall serve copies of this Order, the Agency Agreement and the Sale Guidelines via e-mail, facsimile or regular mail, on: (i) the Attorney General's office for each state where the Sale is being held, (ii) the county consumer protection agency or similar agency for each county where the Sale will be held, (iii) the division of consumer protection for each state where the Sale will be held; and (iv) the chief legal counsel for the local jurisdiction.

c.      To the extent there is a dispute arising from or relating to the Sale, this Order, the Agency Agreement, or the GOB Sale Guidelines, which dispute relates to any GOB Laws or Liquidation Laws (a "Reserved Dispute"), the Court shall retain exclusive jurisdiction to resolve the Reserved Dispute. Any time within fifteen (15) days following service of this Order, any

Governmental Unit may assert that a Reserved Dispute exists by serving written notice of such Reserved Dispute to counsel for the Debtors, the Committee and counsel for the Agent at the addresses set forth in the Agency Agreement so as to ensure delivery thereof within one (1) business day thereafter.  If the Debtors, the Committee, the Agent and the Governmental Unit are unable to resolve the Reserved Dispute within fifteen (15) days of service of the notice, the aggrieved party may file a motion with this Court requesting that this Court resolve the Reserved Dispute (a "Dispute Resolution Motion").

d.      In the event a Dispute Resolution Motion is filed, nothing in this Order shall preclude the Debtors, a landlord, the Agent or other interested party from asserting (i) that the provisions of any GOB Laws and/or Liquidation Laws are preempted by the Bankruptcy Code or (ii) that neither the terms of this Order, nor the Debtors or the Agent's conduct pursuant to this Order, violates such GOB Laws and/or Liquidation Laws.  Filing a Dispute Resolution Motion as set forth herein shall not be deemed to affect the finality of this Order or to limit or interfere with the Debtors' or the Agent's ability to conduct or to continue to conduct the Sale pursuant to this Order and the Agency Agreement, absent further order of this Court.  The Court grants authority for the Debtors and the Agent to conduct the Sale pursuant to the terms of this Order, the Agency Agreement, and/or the GOB Sale Guidelines attached hereto and to take all actions reasonably related thereto or arising in connection therewith.  The Governmental Unit shall be entitled to assert any jurisdictional, procedural, or substantive arguments it wishes with respect to the requirements of its Liquidation Laws or the lack of any preemption of such GOB Laws and/or Liquidation Laws by the Bankruptcy Code.  Nothing in this Order shall constitute a ruling with respect to any issues to be raised in any Dispute Resolution Motion.

GSDOCS.8147694.2
EAST\87411891.7

e.      If, at any time, a dispute arises between the Debtors and/or the Agent and a Governmental Unit as to whether a particular law is a GOB Law and/or Liquidation Law, and subject to any provisions contained in this Order related to GOB Laws and/or Liquidation Laws, then any party to that dispute may utilize the provisions of Subparagraphs (b) and (c) hereunder by serving a notice to the other party and proceeding thereunder in accordance with those Paragraphs.  Any determination with respect to whether a particular law is a GOB Law and/or Liquidation Law shall be made de novo.

17.      Except to the extent of the reserved rights of Governmental Units expressly granted elsewhere in this Order, the Debtors and Agent are hereby authorized to take such actions as may be necessary and appropriate to implement the Agency Agreement and to conduct the Sale without necessity of further order of this Court as provided in the Agency Agreement or the GOB Sale Guidelines, including, but not limited to, advertising the Sale as "going out of business," "total liquidation," "store-closing" or similar-themed sales through the posting of signs (including the use of exterior banners at non-enclosed mall Stores, and at enclosed mall Stores to the extent the applicable Store entrance does not require entry into the enclosed mall common area), use of signwalkers and street signage.

18.      Notwithstanding anything herein to the contrary, and in view of the importance of the use of sign-walkers, banners, and other advertising to the Sale, to the extent that disputes arise during the course of the Sale regarding laws regulating the use of sign-walkers, banners or other advertising and the Debtors and the Agent are unable to resolve the matter consensually with a Governmental Unit, any party may request an immediate telephonic hearing with this Court pursuant to these provisions.  Such hearing will, to the extent practicable, be scheduled

GSDOCS.8147694.2
EAST\87411891.7

initially within two (2) business days of such request.  This scheduling shall not be deemed to preclude additional hearings for the presentation of evidence or arguments as necessary.

19.    Except as expressly provided in the Agency Agreement, the Sale shall be conducted by the Debtors and the Agent notwithstanding any restrictive provision of any lease, sublease or other agreement relative to occupancy affecting or purporting to restrict the conduct of the Sale, the rejection of leases, abandonment of assets or "going dark" provisions.  The Agent and landlords of the Stores have been, pursuant to the Interim Order, and continue to be authorized to enter into agreements ("Side Letters") between themselves modifying the GOB Sale Guidelines without further order of the Court, and such Side Letters shall be binding as among the Agent and any such landlords, provided that nothing in such Side Letters affects the provisions of Paragraphs 16, 17 and 18.  In the event of any conflict between the GOB Sale Guidelines and any Side Letter, the terms of such Side Letter shall control.

20.    Except as expressly provided for herein or in the GOB Sale Guidelines, and except with respect to any Governmental Unit (as to which Paragraphs 16, 17 and 18 shall apply), no person or entity, including but not limited to any landlord, licensor, or creditor, shall take any action to directly or indirectly prevent, interfere with, or otherwise hinder consummation of the Sale, or the advertising and promotion (including the posting of signs and exterior banners or the use of signwalkers) of such Sale, and all such parties and persons of every nature and description, including landlords, licensors, creditors, website and other Direct Business Platform services providers, and utility companies, and all those acting for or on behalf of such parties, are prohibited and enjoined from (i) interfering in any way with, obstructing, or otherwise impeding, the conduct of the Sale and/or (ii) instituting any action or proceeding in any court (other than in the Bankruptcy Court) or administrative body seeking an order or

20

judgment against, among others, the Debtors, the Agent, or the landlords at the Debtors' Closing

Locations that might in any way directly or indirectly obstruct or otherwise interfere with or

adversely affect the conduct of the Sale or other liquidation sales at the Closing Locations and/or

seek to recover damages for breach(es) of covenants or provisions in any lease, sublease or

license based upon any relief authorized herein.

21.     The Agent shall have the right to use the Closing Locations and all related Store

services and/or Distribution Center Services, furniture, fixtures, equipment and other assets of

the Debtors for the purpose of conducting the Sale, free of any interference from any entity or

person, subject to compliance with the GOB Sale Guidelines and this Order and subject to

Paragraphs 16, 17, and 18 of this Order.

22.     Nothing in this Order shall (a) alter or affect the Debtors' obligations to comply

with section 365(d)(3) of the Bankruptcy Code or (b) alter or modify the rights of any lessor or

other counterparty to a lease with the Debtors to file an appropriate motion or otherwise seek

appropriate relief if the Debtors fail to comply with section 365(d)(3) of the Bankruptcy Code;

provided that the conduct of the Sale in accordance with the Sale Guidelines shall not be a

violation of section 365(d)(3) of the Bankruptcy Code.

23.     Pursuant to section 554(a) of the Bankruptcy Code, the Debtors and the Agent, as

applicable, are permitted to abandon property of the Debtors' estates in accordance with the

terms and provisions of the Agency Agreement, without incurring liability to any person or

entity; provided, however, that, unless the Agent otherwise consents, the Debtors may only

abandon property located in any store (and, if applicable, the distribution center) on or after the

applicable Sale Termination Date.   In the event of any such abandonment, all applicable

landlords shall be authorized to dispose of such property without any liability to any individual

21

or entity that may claim an interest in such abandoned property, and such abandonment shall be without prejudice to any landlord's right to assert any claim based on such abandonment and without prejudice to the Debtors or other party in interest to object thereto.

24.     Before any sale, abandonment or other disposition of the Debtors' computers (including software) and/or cash registers and any other point of sale FF&E located at the Closing Locations (collectively, "POS Equipment") that may contain customer lists, identifiable personal and/or confidential information about the Debtors' employees and/or customers, or credit card numbers ("Confidential Information") takes effect, the Debtors (and not the Agent) shall remove or cause to be removed the Confidential Information from the POS Equipment, such that no POS Equipment containing Confidential Information shall be sold abandoned or otherwise disposed of.

25.     The Agent shall accept through January 23, 2015 the Debtors' validly-issued gift certificates and gift cards that were issued by the Debtors prior to the Sale Commencement Date, and the Debtors shall reimburse Agent for such amounts during the weekly sale reconciliation provided for and subject to the limitations set forth in Section 8.7(a) of the Agency Agreement. The Agent shall accept through January 4, 2015 Returned Merchandise sold by the Debtors prior to the Sale Commencement Date, provided that such return is otherwise in compliance with the Debtors' return policies in effect as of the date such item was purchased and the customer is not repurchasing the same item so as to take advantage of the sale price being offered by the Agent, and the Debtors shall reimburse Agent for such amounts during the weekly sale reconciliation provided for and subject to the limitations set forth in Section 8.7(a) of the Agency Agreement. To the extent that Returned Merchandise is salable as first quality merchandise, it shall be

included in Merchandise and for purposes of the calculation of the Guaranteed Amount as set forth in Section 8.5 of the Agency Agreement.

26.     All state and federal laws relating to implied warranties for latent defects shall be complied with and are not superseded by the sale of said goods or the use of the terms "as is" or "final sales."  The Debtors and/or the Agent shall accept return of any goods purchased during the Sale that contain a defect which the lay consumer could not reasonably determine was defective by visual inspection prior to purchase for a full refund, provided that the consumer must return the merchandise within twenty-one (21) days of their purchase, the consumer must provide a receipt, and the asserted defect must in fact be a "latent" defect.  The Debtors shall promptly reimburse Agent in cash for any refunds Agent is required to issue to customers in respect of any goods purchased during the Sale that contain such a latent defect.

27.     During the Sale Term, the Agent shall be granted a limited, royalty-free, license and right to use the trademarks, trade names, logos and customer, mailing and e-mail lists, websites, URL and social media relating to and used in connection with the operation of the Closing Locations and the Direct Business Platform, as identified in the Agency Agreement, solely for the purpose of advertising the Sale, selling or otherwise disposing of the Transferred Assets, and otherwise conducting the Sale in accordance with the terms of the Agency Agreement; provided, however, that the Agent shall not receive personally identifiable information (as defined in section 101(41A) of the Bankruptcy Code) ("Personally Identifiable Information") from the Debtors unless approved by the Consumer Privacy Ombudsman appointed in these Chapter 11 cases (the "Ombudsman") or by further Order of this Court after notice and a hearing.

GSDOCS.8147694.2
EAST\87411891.7

28.    Except as expressly provided for in the Agency Agreement, nothing in this Order or the Agency Agreement, and none of the Agent's actions taken in respect of the Sale shall be deemed to constitute an assumption by Agent of any of the Debtors' obligations relating to any of the Debtors' employees.  Moreover, the Agent shall not become liable under any collective bargaining or employment agreement or be deemed a joint or successor employer with respect to such employees.

29.    The Agent shall not be liable for sales taxes except as expressly provided in the Agency Agreement and the payment of any and all sales taxes is the responsibility of the Debtors.  The Debtors are directed to remit all taxes arising from the Sale to the applicable Taxing Authorities as and when due, provided that in the case of a bona fide dispute the Debtors are only directed to pay such taxes upon the resolution of the dispute, if and to the extent that the dispute is decided in favor of the Taxing Authority.  For the avoidance of doubt, sales taxes collected and held in trust by the Debtors shall not be used to pay any creditor or any other party, other than the Taxing Authority for which the sales taxes are collected.  The Agent shall collect, remit to the Debtors and account for sales taxes as and to the extent provided in the Agency Agreement.  This Order does not enjoin, suspend or restrain the assessment, levy or collection of any tax under State law, and does not constitute a declaratory judgment with respect to any party's liability for taxes under State law.

30.    Subject to the terms set forth in the Agency Agreement, the Debtors and/or the Agent (as the case may be) are authorized and empowered to transfer Transferred Assets among and between the Closing Locations.  The Agent is authorized to sell the Debtors' furniture, fixtures and equipment (including the Owned FF&E and Owned DC FF&E) and abandon the same, in each case, as provided for and in accordance with the terms of the Agency Agreement.

24

**F.      Liens Granted To and Other Rights of Agent**

31.      In accordance with the terms of the Agency Agreement and effective upon payment by Agent of the Initial Guaranty Payment and issuance of the Letter of Credit, pursuant to section 364(d) of the Bankruptcy Code, Agent is hereby granted a valid and perfected first priority security interest in and lien upon (i) the Merchandise, (ii) the Additional Agent Merchandise and the proceeds thereof, (iii) all Proceeds (including, without limitation credit card Proceeds); (iv) any sums received on account of sales of Merchant Consignment Goods up to the amount payable to Agent pursuant to Section 5.4 of the Agency Agreement; (v) any sums received on account of sales of Owned DC FF&E up to the amount payable to Agent pursuant to Section 15(a) of the Agency Agreement; (vi) any Assets and the proceeds thereof; (vii) the MOOS Inventory and the proceeds thereof; (viii) the Owned FF&E and the proceeds thereof and (ix) all "proceeds", within the meaning of Section 9-102(a)(64) of the UCC (items (i) through (ix), collectively, the "Agent's Collateral").

32.      Subject to Agent's satisfaction of its obligations under the Agency Agreement, any amounts owed by the Debtors to Agent under the Agency Agreement (including, without limitation, any amounts for which the Agent is to be indemnified and held harmless under section 8.3(a) of the Agency Agreement) shall be, and hereby are, granted the status of superpriority claims in this case pursuant to Section 364(c) of Bankruptcy Code, senior to all other superpriority claims, including, without limitation, to the superpriority claims of the Lender; provided that until the Debtors receive payment in full of the Guaranteed Amount and Expenses, and any such other amounts due to Debtors under the Agency Agreement, any superpriority claim granted to Agent under this Order shall be junior and subordinate in all respects to the security interests and superpriority claims of Lender but solely to the extent of the

25

amount of the unpaid portion of the Guaranteed Amount and Expenses, and such other amounts due to the Debtors under the Agency Agreement.

33.    The Agent is hereby authorized to include Additional Agent Merchandise in the Sale.  Additional Agent Merchandise shall be consigned to the Debtors as a true consignment under Article 9 of the UCC.  The Agent is hereby granted a first-priority security interest in (a) the Additional Agent Merchandise and (b) the Additional Agent Merchandise proceeds, which security interest shall be deemed perfected pursuant to this Order without the requirement of filing UCC financing statements or providing notifications to any prior secured parties; provided that the Agent is authorized to deliver all required notices and file all necessary financing statements and amendments thereof under the applicable UCC identifying the Agent's interest in the Additional Agent Merchandise as consigned goods thereunder and the Debtors as the consignee therefor, and the Agent's security interest in such Additional Agent Merchandise and Additional Agent Merchandise proceeds.

34.    The Agent's security interests and liens in the Agent's Collateral created under the Agency Agreement are (i) validly created, (ii) effective upon entry of the Interim Order, perfected, and (iii) senior to all other liens and security interests, provided however, that, until the Debtors receive payment of the Guaranteed Amount, and the issuance of the Letter of Credit to secure payment of Expenses due to the Debtors under the Agency Agreement, the security interest and liens granted to Agent under this Order shall remain junior and subordinate in all respects to the security interests of Lender and of the Pyramid Landlords in the Agent's Collateral (other than the Additional Agent Merchandise in which Lender has no security interest or other lien) but solely to the extent and amount of the unpaid portion of the Guaranteed Amount and Expenses, and upon payment of  the Guaranteed Amount and issuance of the Letter

26

of Credit, any security interest or lien of the Lender and of the Pyramid Landlords in the Agent's Collateral shall be junior and subordinate in all respects to the security interest and liens of Agent.

35.    In accordance with Section 3.3(b)(i) of the Agency Agreement, (a) Agent shall have a first priority security interest in and lien upon each Designated Deposit Account to the extent of any Proceeds and any other amounts payable to Agent deposited therein, and (b) Lender shall turn over to Agent any such Proceeds or other amounts as instructed by the Agent.

36.    The security interests granted herein and in the Agency Agreement to the Agent shall be deemed properly perfected as and when they arise without the necessity of filing financing statements or other documentation.  To the extent that there may be an emergence from bankruptcy by the Debtors or a dismissal of the Debtors' Bankruptcy Cases, the Debtors, as requested by the Agent, are directed, at their cost, to file financing statements or other documentation evidencing the liens granted under the Agency Agreement and this Order.  The Agent is hereby authorized, but not required, to file a copy of this Order as conclusive evidence of the creation, attachment, perfection, validity, and extent of the Agent's security interests and liens in the Agent's Collateral granted hereunder with all State filing and recording offices.

## G.    Other Provisions

37.    The Agent shall have the sole and exclusive right to sell the Owned FF&E for Agent's sole and exclusive benefit and at the Agent's sole cost and expense (other than rent and other occupancy expenses associated with the corporate office, which amounts shall be paid by the Debtors); provided, further, that, in that regard, Agent shall be entitled to retain all proceeds (which for the avoidance of doubt shall not constitute Proceeds or Asset Proceeds) from the sale or other disposition of the Owned FF&E, and the Agent shall be responsible for the payment of

27

all costs and expenses associated with the sale or other disposition of the Owned FF&E (other than rent and other occupancy expenses associated with the corporate office, which amounts shall be paid by Debtors).

38.     The Designation Rights set forth in the Agency Agreement are approved in their entirety.  At any time prior to the expiration of the Designation Rights Period, Agent shall have the right, which right may be exercised at any time and from time to time, in Agent's sole and absolute discretion, to provide a Sale Notice of Agent's election to require Debtors to seek the authority of this Court to designate the ultimate purchaser, acquirer, assignee, transferee, licensee, or designee of any the Designated Third Party Assets identified in the subject Sale Notice(s) and sell, transfer, license, transfer, assign, or otherwise dispose of same to the purchaser, acquirer, assignee, transferee, licensee, or designee identified by Agent.  The Agent shall provide a copy of any such Sale Notice(s) contemporaneously to the Lender, Committee and Ombudsman.  Within three (3) business days following the date Agent delivers a Sale Notice and related information (including the applicable transaction documents) to the Debtors, the Debtors shall take all requisite actions (including, without limitation, actions required under Sections 363 and Section 365 of the Bankruptcy Code) to promptly sell, assume and assign the applicable Designated Third Party Asset(s) to the applicable designee identified in such Sale Notice(s).  The Debtors (in consultation with the Committee) shall cooperate with the Agent and any Designee to ensure the transfer of all Intellectual Property, including, but not limited to, seeking further orders of this Court that may be necessary or advisable to effectuate such transfers.  To the extent that Personally Identifiable Information, (or assets containing Personally Identifiable Information) may be transferred upon the exercise of the Designation Rights, no

28

such transfer shall take place without the approval of the Ombudsman or a further Order of this Court after notice and a hearing.

39.     Following the entry of this Order, no holder of an interest in the Debtors or the Transferred Assets shall interfere with any Designee's title to or use and enjoyment of the Transferred Assets based on or related to such interest, or any actions that the Debtors may take in their chapter 11 cases.

40.     The Agent shall not be liable for any claims against the Debtors, and the Debtors shall not be liable for any claims against Agent, in each case, other than as expressly provided for in the Agency Agreement.  The Agent and any Designee shall have no successor liability whatsoever with respect to any Encumbrances or claims of any nature that may exist against the Debtors, and provided further that the Agent or any Designee shall not be, or to be deemed to be: (i) a successor in interest or within the meaning of any law, including any revenue, successor liability, pension, labor, COBRA, ERISA, bulk-transfer, products liability, tax or environmental law, rule or regulation, or any theory of successor or transferee liability, antitrust, environmental, product line, de facto merger or substantial continuity or similar theories (*provided* that any Designee shall be the successor in interest to the Customer List); or (ii) a joint employer, co-employer or successor employer with the Debtors, and the Agent shall have no obligation to pay the Debtors' wages, bonuses, severance pay, vacation pay, WARN act claims (if any), COBRA claims, benefits or any other payments to employees of the Debtors, including pursuant to any collective bargaining agreement, employee pension plan, or otherwise, except as expressly set forth in the Agency Agreement.

29

41.     The Agent is a party in interest and shall have the ability to appear and be heard on all issues related to or otherwise connected to this Order, the various procedures contemplated herein, any issues related to or otherwise connected to the Sale, and the Agency Agreement.

42.     Nothing contained in any plan confirmed in the Debtors' chapter 11 cases or any order of this Court confirming such plan or in any other order in this chapter 11 cases (including any order entered after any conversion of this case to a case under chapter 7 of the Bankruptcy Code) shall alter, conflict with, or derogate from, the provisions of the Agency Agreement or the terms of this Order.

43.     The Agency Agreement and related documents may be modified, amended or supplemented by the parties thereto in accordance with the terms thereof without further order of this Court, provided that the Creditors Committee and the Lender consent.

44.     Notwithstanding anything to the contrary in this Order, the Agency Agreement or otherwise, nothing in this Order shall (A) prejudice or affect in any way any right or obligation of any of the Debtors or of dELiA*s Brand LLC (the "IP SPV") under law or any agreement (including, without limitation, the Limited Liability Company Agreement of the IP SPV), to seek the consent (if any such consent is required) of JLP Daisy LLC or its designee, successor or assign in connection with (I) the assumption or assignment to the Agent or any other person or entity, amendment, supplement, change, alteration or other modification of any of the Assets (including, without limitation, that certain Trademark License Agreement, dated as of February 24, 2003, between the IP SPV and dELiA*s Corp. (as it may have been amended, supplemented or otherwise modified prior to the date hereof)) or (II) the sale, transfer, pledge or other disposition or encumbrance of any equity interests in the IP SPV, or (B) constitute a finding that such consent has been provided or is required.  For the avoidance of doubt, nothing set forth in

30

this Order shall prevent the Debtors, the Agent or any other person from asserting that JLP Daisy

LLC does not have any such rights.  Furthermore, JLP Daisy LLC expressly reserves the right to

assert, and nothing in this Order shall prevent JLP Daisy LLC from asserting, that any or all of

the intellectual property purportedly subject to the Designation Rights is not owned by the

Debtors (as opposed to the IP SPV or any other party), and the Debtors' rights with respect

thereto are expressly reserved and are not waived.

45.    Except with respect to any Governmental Unit (as to which the provisions of

Paragraph 16, 17 and 18 shall apply), this Court shall retain exclusive jurisdiction with regard to

all issues or disputes relating to this Order or the Agency Agreement, including, but not limited

to, (i) any claim or issue relating to any efforts by any party or person to prohibit, restrict or in

any way limit banner and signwalker advertising, including with respect to any allegations that

such advertising is not being conducted in a safe, professional and non-deceptive manner, (ii)

any claim of the Debtors, the landlords and/or the Agent for protection from interference with the

Sale, (iii) any other disputes related to the Sale, and (iv) to protect the Debtors and/or the Agent

against any assertions of Encumbrances.  No such parties or person shall take any action against

the Debtors, the Agent, the landlords or the Sale until this Court has resolved such dispute.  This

Court shall hear the request of such parties or persons with respect to any such disputes on an

expedited basis, as may be appropriate under the circumstances.

46.    Defy Media Provisions.  Notwithstanding anything to the contrary in this Order,

the Debtors' assets exclude the intellectual property owned by Defy Media, LLC ("Defy Media")

under the Media Services Agreement between Defy Media and the Debtors (the "Defy Media

Agreement").  To the extent the agreements between Defy Media and the Debtors are sought to

be assumed and assigned, the parties reserve all rights.

31

47.     Notwithstanding Bankruptcy Rules 4001 and 6004, or any other law that would serve to stay or limit the immediate effect of this Order, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.  In the absence of any person or entity obtaining a stay pending appeal, the Debtors and the Agent are free to perform under the Agency Agreement at any time, subject to the terms of the Agency Agreement.

48.     To the extent that anything contained in this Order explicitly conflicts with a provision in the Agency Agreement or the GOB Sale Guidelines, this Order shall govern and control.

Dated:  December 24, 2014
        White Plains, New York

                                    ____/s/ Robert D. Drain_____
                                    UNITED STATES BANKRUPTCY JUDGE

GSDOCS.8147694.2
EAST\87411891.7

# **EXHIBIT A**

**AMENDED AND RESTATED AGENCY AGREEMENT**

## __EXHIBIT B__

## SALE GUIDELINES