**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| dELiA*s, INC., *et al.*, | |
| Debtors.[1] | Case No. 14-23678 (RDD) |
| | Jointly Administered |

**FINAL ORDER (I) AUTHORIZING DEBTORS TO OBTAIN**
**POSTPETITION FINANCING AND USE CASH COLLATERAL, (II) GRANTING ADEQUATE**
**PROTECTION AND (III) GRANTING CERTAIN RELATED RELIEF**

THIS MATTER having come before the Court upon the motion (the "**DIP Motion**") by dELiA*s, Inc., a Delaware corporation (the "**Lead Borrower**"), dELiA*s Distribution Company, a Delaware corporation, A Merchandise, LLC, a Delaware limited liability company, dELiA*s Operating Company, a Delaware corporation, dELiA*s Retail Company, a Delaware corporation, dELiA*s Assets Corp., a Delaware corporation, dELiA*s Group Inc., a Delaware corporation, AMG Direct LLC, a Delaware limited liability company, and DACCS, Inc., an Ohio corporation, each as a debtor and debtor in possession (collectively the "**Debtors**") in the above-captioned Chapter 11 cases (collectively, the "**Cases**"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 507 of title 11 of the United States Code, (11 U.S.C. §§ 101, *et seq.*, as amended, the "**Bankruptcy Code**"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and S.D.N.Y. Bankr. L.R. 4001-2, seeking entry of a final order (this "**Final Order**") *inter alia*:

(i)     authorizing the Lead Borrower, dELiA*s Distribution Company, A Merchandise, LLC, dELiA*s Operating Company, dELiA*s Retail Company, dELiA*s Group Inc., and AMG Direct LLC to obtain, as co-borrowers (collectively, the "**Borrowers**"), secured, superpriority postpetition financing (the

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  dELiA*s, Inc. (7172); dELiA*s Distribution Company (9076); A Merchandise, LLC (7639); dELiA*s Operating Company (3765); dELiA*s Retail Company (0036); dELiA*s Group Inc. (4035); AMG Direct, LLC (9236); dELiA*s Assets Corp. (3754); DACCS, Inc. (0225).  The mailing address for the Debtors, solely for purposes of notices and communications, is:  50 West 23rd Street, New York, NY 10010.

"**DIP Facility**"), and guaranteed by dELiA*s Assets Corp. and DACCS, Inc. (collectively, the "**Guarantors**"), consisting of a senior secured super-priority revolving credit facility, pursuant to the terms and conditions of that certain Debtor-In-Possession Credit Agreement (as amended, supplemented, restated, or otherwise modified from time to time, the "**DIP Credit Agreement**") by and among the Debtors, the Lenders party thereto (the "**DIP Lenders**" and each a "**DIP Lender**"), and Salus Capital Partners, LLC, as Administrative and Collateral Agent (the "**DIP Agent**") for the DIP Lenders, substantially in the form of <u>Exhibit 1</u> attached to this Final Order; and

(ii)    authorizing the Debtors to execute and deliver the DIP Credit Agreement and all other related documents and agreements, including security agreements, deposit account control agreements, pledge agreements, guaranties, promissory notes and payoff letters with respect to the foregoing (collectively, the "**DIP Loan Documents**") and to perform such other acts as may be necessary or desirable in connection with the DIP Loan Documents;[2] and

(iii)    granting allowed superpriority administrative expense claim status in each of the Cases and any Successor Cases (as defined herein) to all obligations owing under the DIP Credit Agreement and the other DIP Loan Documents to the DIP Agent and the DIP Lenders (collectively, and including all "Obligations" as described in the DIP Credit Agreement, the "**DIP Obligations**"), subject to the priorities set forth herein; and

(iv)    authorizing the Debtors to use in accordance with the Budget (as defined below) "Cash Collateral," as defined in section 363(a) of the Bankruptcy Code, that the Debtors are holding or may obtain, pursuant to the Bankruptcy Code Section 361 and 363 and Bankruptcy Rules 4001(b) and 6004; and

(v)    granting to the DIP Agent (for itself and the ratable benefit of the DIP Lenders) automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein),

---

[2] Capitalized terms used but not defined have the meanings given to them in the DIP Loan Documents.

including, without limitation, all property constituting Cash Collateral (other than cash in Excluded

Accounts), which liens shall be subject to the priorities set forth herein; and

(vi)     authorizing and directing the Debtors to pay the principal, interest, fees, expenses and

other amounts payable under each of the DIP Loan Documents as they become due, including, without

limitation, continuing commitment fees, closing fees, servicing fees, audit fees, structuring fees,

monitoring and exit fees, the reasonable fees and disbursements of the DIP Agent's attorneys, advisers,

accountants, and other consultants, and all related expenses of the DIP Agent, all to the extent provided

by and in accordance with the terms of the respective DIP Loan Documents and this Final Order; and

(vii)     authorizing and directing the Debtors to pay in full the Prepetition Obligations (as

defined herein) upon entry of the Final Order (as defined herein) and as set forth herein, subject to the

rights of parties in interest described in paragraphs 33 and 34 of this Final Order; and

(viii)     providing adequate protection to the Prepetition Secured Creditors (as defined herein)

with respect to the "Surviving Obligations" (as defined in the Payoff Letter referred to below) to the

extent set forth herein; and

(ix)     vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy

Code solely to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan

Documents and this Final Order; and

(x)     granting related relief.

The Court having considered the DIP Motion, the *Declaration of Edward Brennan Pursuant to*

*Local Bankruptcy Rule 1007-2 and in Support of Chapter 11 Petitions and First Day Motions* (the "**First**

**Day Declaration**"), including the DIP Motion, the exhibits attached thereto, the DIP Loan Documents,

and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on

the DIP Motion (the "**Interim Hearing**") and the final hearing held on the DIP Motion, on January 9,

2015 (the "**Final Hearing**"); and notice of the Final Hearing and the Interim Hearing having been given

in accordance with Bankruptcy Rules 4001(b), (c) and (d), 9014, and Local Bankruptcy Rule 2002-1; and

the Final Hearing and the Interim Hearing to consider the relief requested in the DIP Motion having been held and concluded; and all objections, including the objection filed by the Statutory Committee (as defined herein) (the "**Committee Objection**"), to the relief requested in the DIP Motion having been withdrawn, resolved or overruled by the Court; and it appearing to the Court that, pursuant to Bankruptcy Rule 4001(c)(2), granting the relief requested is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and otherwise is fair and reasonable and in the best interests of the Debtors, their estates, and their creditors and equity holders, and is essential for the continued operation of the Debtors' businesses; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE FINAL HEARING AND THE INTERIM HEARING BY THE DEBTORS, INCLUDING THE SUBMISSION OF DECLARATIONS AND THE REPRESENTATIONS OF COUNSEL, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.      *Petition Date*.  On December 7, 2014 (the "**Petition Date**"), each of the Debtors filed a separate voluntary petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York (the "**Court**") commencing these Cases.

B.      *Debtors in Possession*.  The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

C.      *Jurisdiction and Venue*.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b), over these Cases and the DIP Motion, and over the persons and property affected hereby. Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Cases and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    _Committee Formation_.  On December 12, 2014, the Office of the United States Trustee (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (the "**Statutory Committee**").

E.    _Debtors' Stipulations_.  After consultation with their attorneys and financial advisors, and without prejudice of the rights of parties in interest as set forth in paragraph 33 herein, the Debtors (on behalf of and for themselves and not their estates) admit, stipulate, acknowledge and agree that (collectively, paragraphs E(i) through E(v) below are referred to herein as the "**Debtors' Stipulations**"):

(i)    _Prepetition Credit Documents_.  As of the Petition Date, the Debtors had outstanding secured debt to Salus Capital Partners, LLC, as administrative agent and collateral agent (in such capacity, the "**Prepetition Agent**") for various lenders (collectively, together with the Prepetition Agent, the "**Prepetition Secured Creditors**" and each a "**Prepetition Secured Creditor**"), pursuant to that certain Credit Agreement dated as of June 14, 2013, by and between Lead Borrower and each of the other Debtors and the Prepetition Agent (as amended, modified and supplemented from time to time, the "**Prepetition Credit Agreement**" and together with all related documents, instruments, guaranties and agreements, the "**Prepetition Credit Documents**").

(ii)    _Prepetition Obligations_.  As of the Petition Date, the aggregate outstanding principal amount owed by the Debtors under the Prepetition Credit Documents was not less than $18,520,584 (collectively, together with any interest, fees (including, without limitation, any early termination and prepayment fees), costs and other charges or amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition Credit Documents, including all "Obligations" as described in the Prepetition Credit Agreement, and all interest, fees, costs and other charges allowable under section 506(b) of the Bankruptcy Code, the "**Prepetition Obligations**").[3]  As more fully set forth in

---

[3] In accordance with the order entered by the Court on December 10, 2014 [D.I. 54] (the "**Interim Order**"), which approved the relief sought in the DIP Motion on an interim basis, since such date all payments received by the DIP Agent in respect of any DIP Obligation and all funds transferred and credited to the "Concentration Account" maintained by the Debtors at JPMorgan Chase, N.A., and all net proceeds from any Disposition of DIP Collateral, have been applied first to payment of the Prepetition Obligations.

the Prepetition Credit Documents, prior to the Petition Date, the Debtors granted first-priority security interests in and liens on substantially all personal and real property of the Debtors, including, without limitation, owned real estate, accounts, inventory, equipment and general intangibles (collectively, the "**Prepetition Collateral**") to the Prepetition Agent (for the ratable benefit of the Prepetition Secured Creditors) (collectively, the "**Prepetition Liens**") to secure repayment of the Prepetition Obligations. As of the Petition Date, all commitments of the Prepetition Agent and the lenders party to the Prepetition Credit Agreement to make loans or otherwise extend credit under the Prepetition Credit Documents were terminated.

(iii) *Validity, Perfection and Priority of Prepetition Liens and Obligations*. The Debtors (for themselves and their estates only and without limiting the rights of other parties in iterest under paragraphs 33 and 34 of this Final Order) and the Prepetition Secured Creditors acknowledge and agree that: (a) as of the Petition Date, the Prepetition Liens on the Prepetition Collateral are valid, binding, enforceable, non-avoidable and properly perfected; (b) as of the Petition Date, the Prepetition Liens have priority over any and all other liens, if any, on the Prepetition Collateral, subject only to certain other liens otherwise permitted by the Prepetition Credit Documents (to the extent any such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable and senior in priority to the Prepetition Liens as of the Petition Date, the "**Prepetition Permitted Liens**") and otherwise had priority over any and all other liens on the Prepetition Collateral;[4] (c) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors; (d) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Liens or the Prepetition Obligations exist, and no portion of the Prepetition Liens or the Prepetition Obligations is

---

[4] For purposes of this Final Order, Prepetition Permitted Liens shall include all liens that were valid, senior in priority, enforceable, nonavoidable, and perfected under applicable law as of the Petition Date. Except with respect to the Pyramid Liens (as defined in the order entered by the Court on December 24, 2014 [D.I. 109]), nothing herein shall constitute a finding or ruling by this Court that any such Prepetition Permitted Liens are valid, senior in priority, enforceable, perfected or non-avoidable. Moreover, except with respect to the Pyramid Liens, nothing shall prejudice the rights of any party in interest including, but not limited, to the Debtors, the DIP Agent, and the Statutory Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such Prepetition Permitted Lien and/or security interest.

subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (e) the Debtors and their estates have no claims, objections, challenges, causes of actions, and/or choses in action, including without limitation, avoidance claims under Chapter 5 of the Bankruptcy Code, against any of the Prepetition Secured Creditors or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors or employees arising out of, based upon or related to the Prepetition Credit Documents; (f) as of the Petition Date, the value of the Prepetition Collateral securing the Prepetition Obligations exceeded the amount of those obligations, and accordingly the Prepetition Obligations are allowed secured claims within the meaning of section 506 of the Bankruptcy Code, in a principal amount of not less than $18,520,584 as of Petition Date, together with accrued and unpaid and hereafter accruing interest, fees (including, without limitation, reasonable attorneys' fees and related expenses), costs and other charges.

(iv)    *Cash Collateral*.  The Debtors represent that all of the Debtors' cash, including the cash in their deposit accounts (other than Excluded Accounts), wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitutes Cash Collateral and is Prepetition Collateral of the Prepetition Secured Creditors.

(v)    *Default by the Debtors*.  The Debtors acknowledge and stipulate that the Debtors are in default under the Prepetition Credit Documents.

F.    <u>*Findings Regarding the Postpetition Financing*</u>.

(i)    *Request for Postpetition Financing*.  The Debtors seek authority to (a) enter into the DIP Facility on the terms described herein and in the DIP Loan Documents, (b) repay the remaining balance of the Prepetition Obligations upon entry of this Final Order and as otherwise set forth herein, and (c) use Cash Collateral on the terms described herein to administer their Cases and fund their operations.

(ii)    *Need for Postpetition Financing and Use of Cash Collateral*.  The Debtors' need to use Cash Collateral and to obtain credit pursuant to the DIP Facility is immediate and critical in order

to enable the Debtors to continue operations and to administer and preserve the value of their estates.  The ability of the Debtors to finance their operations, maintain business relationships, to pay their employees, protect the value of their assets and otherwise finance their operations requires the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, their creditors and equity holders, and the possibility for a successful administration of these Cases.  The Debtors do not have sufficient available sources of working capital and financing to operate their businesses or to maintain their properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(iii)    *No Credit Available on More Favorable Terms*.  Given their current financial condition, financing arrangements, and capital structure, the Debtors are unable to obtain financing from sources other than the DIP Agent on terms more favorable than the DIP Facility.  The Debtors have been unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors have also been unable to obtain credit:  (a) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien.  Financing on a postpetition basis is not otherwise available without granting the DIP Agent, (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth herein, (2) superpriority claims, and (3) the other protections set forth in this Final Order.

(iv)    *Use of Proceeds of the DIP Facility*.  As a condition to entry into the DIP Credit Agreement, the extensions of credit under the DIP Facility and the authorization to use Cash Collateral, the DIP Agent requires, and the Debtors have agreed, that proceeds of the DIP Facility shall be used (a) for the repayment in full in cash of the Prepetition Obligations upon entry of this Final Order (other than contingent indemnification obligations) as provided in that certain payoff

8

letter prepared by the Prepetition Agent (the "**Payoff Letter**", which has been approved by the DIP

Agent), and, (b) in a manner consistent with the terms and conditions of the DIP Loan Documents

and in accordance with the budget (a copy of which is attached as <u>Exhibit 2</u> hereto, as the same

may be modified from time to time consistent with the terms of the DIP Loan Documents and

this Final Order, and subject to such variances as may be permitted thereby, the "**Budget**"),

solely for (i) post-petition operating expenses and other working capital, (ii) certain transaction

fees and expenses, (iii) permitted payment of costs of administration of the Cases, including

professional fees, (iv) Prepetition Agent Adequate Protection Payments, and (v) as otherwise

permitted under the DIP Loan Documents, as applicable.  The repayment of the Prepetition

Obligations as set forth herein is necessary, as the Prepetition Agent has not otherwise consented

to the use of Cash Collateral or the subordination of its liens to the DIP Liens, and the DIP Agent

is not willing to provide the DIP Facility unless the Prepetition Obligations (other than

contingent indemnification obligations) are paid in full upon the entry of this Final Order

(subject to the terms of the Payoff Letter) and as otherwise set forth herein.  Such payments will

not prejudice the Debtors or their estates, because payment of such amounts are subject to the

rights of parties in interest under paragraphs 33 and 34 herein.

    (v) *Application of Proceeds of DIP Collateral*.  As a condition to entry into the DIP

Loan Documents, the extension of credit under the DIP Facility, and the authorization to use Cash

Collateral, the Debtors and the DIP Agent have agreed that the proceeds of DIP Collateral (as defined

herein) shall be applied in accordance with paragraph 18 of this Final Order.

   G. *Adequate Protection*.  The Debtors shall pay to the Prepetition Agent the amounts (if any)

required under the Payoff Letter upon the entry of this Final Order and as otherwise set forth herein.  The

Prepetition Agent and the other Prepetition Secured Creditors shall receive (i) subject to the priorities set

forth in paragraphs 12 and 13 below, the Adequate Protection Liens (as defined herein) to secure the

"**Surviving Obligations**" (as defined in the Payoff Letter) and Adequate Protection Superpriority Claims (as defined herein) with respect to the Surviving Obligations, and (ii) additional adequate protection in the form of payment of the Surviving Obligations from the proceeds of the DIP Collateral as set forth in paragraph 18(a) below (the "**Prepetition Agent Adequate Protection Payments**").  For the avoidance of doubt, (i) the Adequate Protection Liens and the Adequate Protection Superpriority Claims each shall be junior in all respects to (x) the DIP Liens, (y) the Agent Lien with respect to the Agent Collateral (as such terms are defined herein), and (z) the DIP Carve Out, and (ii) the Adequate Protection Superpriority Claims are junior in all respects to (x) the DIP Superpriority Claim (as defined herein) and (y) the Agent Superpriority Claim (as defined herein).

H.      *Sections 506(c) and 552(b)*.  In light of the DIP Agent's agreement to subordinate its liens and superpriority claims, as applicable, to the DIP Carve Out (as defined herein) upon entry of this Final Order, the DIP Agent is entitled to a waiver of (a) the provisions of section 506(c) of the Bankruptcy Code, and (b) any "equities of the case" claims under section 552(b) of the Bankruptcy Code.

I.      *Good Faith of the DIP Agent*.

(i)      *Willingness to Provide Financing*.  The DIP Agent has indicated a willingness to provide financing to the Debtors subject to:  (a) the entry of this Final Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Loan Documents and the payoff of the Prepetition Obligations as set forth in this Final Order; and (c) entry of findings by this Court that such financing is essential to the Debtors' estates, that the DIP Agent is extending credit to the Debtors pursuant to the DIP Loan Documents in good faith, and that the DIP Agent's claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant to this Final Order and the DIP Loan Documents will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of this Final Order or any other order.

(ii)    *Business Judgment and Good Faith Pursuant to Section 364(e)*.  The extension of credit under the DIP Facility reflects the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and is supported by reasonably equivalent value and consideration.  The DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors and the DIP Agent.  The use of Cash Collateral and credit to be extended under the DIP Loan Documents shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business purposes and uses, within the meaning of section 364(e) of the Bankruptcy Code, and the DIP Agent is therefore entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Final Order.

J.    <u>*Agreement with Statutory Committee*</u>.  The Debtors have articulated a sound business justification for entering into the agreement with the Statutory Committee, the DIP Agent and the DIP Lenders set forth on the record at the Final Hearing and memorialized in this Final Order including, without limitation, in paragraphs 54 through 58 hereof to resolve the Committee Objection.  Such agreement is a reasonable exercise of the Debtors' business judgment and is within the range of reasonableness with respect to the matters resolved thereby.  Such agreement is fair and equitable to, and is in the best interests of, all creditors and other parties-in-interest in these Cases.

K.    <u>*Notice*</u>.  Notice of the Final Hearing and the relief requested in the DIP Motion has been provided by the Debtors, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including:  (i) the U.S. Trustee for the Southern District of New York; (ii) the Internal Revenue Service; (iii) the parties included on the Debtors' consolidated list of fifty (50) largest unsecured creditors; (iv) counsel to each of the Prepetition Agent; (v) counsel to General Electric Capital Corporation as the issuer of the prepetition letter of credit agreement; (vi) the United States Attorney for the Southern District of New York, (vii) the U.S. Securities and Exchange Commission; and (viii) those parties who have filed a notice of appearance and request for service of pleadings in these Cases pursuant to Bankruptcy Rule 2002.  The Debtors have made reasonable efforts to afford the best notice possible

under the circumstances and such notice is good and sufficient to permit the relief set forth in this Final

Order, and no other or further notice is or shall be required.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the

Court with respect to the DIP Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1.    <u>Final Financing Approved</u>.  The DIP Motion is granted on a final basis, the Financing (as

defined herein) is authorized and approved on a final basis, and the use of Cash Collateral on a final basis

is authorized, subject to the terms and conditions set forth in this Final Order.

2.    <u>Objections Overruled</u>.  All objections to the Financing to the extent not withdrawn or

resolved are hereby overruled.

**DIP Facility Authorization**

3.    <u>Authorization of the DIP Financing, DIP Loan Documents and Payoff Letter</u>.  The

Debtors are expressly and immediately authorized and empowered (i) to execute and deliver the DIP

Loan Documents and the Payoff Letter, (ii) to incur and to perform the DIP Obligations in accordance

with, and subject to, the terms of this Final Order, the DIP Loan Documents, the Budget and the Payoff

Letter, (iii) to deliver all instruments and documents that may be necessary or required for performance

by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens described in and

provided for by this Final Order and the DIP Loan Documents, and (iv) subject to the rights of third

parties pursuant to paragraphs 33 and 34 below, to pay and perform all obligations under the Payoff Letter

in accordance with the terms set forth therein and in this Final Order, including to provide for (x) the

releases in favor of the Prepetition Secured Creditors and each of their related parties and (y) repayment

in full in cash of the Prepetition Obligations (other than the Surviving Obligations), subject only to the

ability of the Court to unwind the repayment of the Prepetition Obligations in the event there is a

successful Challenge (as defined herein) to the validity, enforceability, extent, perfection and priority of

the Prepetition Secured Creditors' claims or liens.  The Debtors are hereby authorized to pay the

principal, interest, fees, expenses and other amounts described in the DIP Loan Documents as such

become due and without need to obtain further Court approval, including, without limitation, closing fees, unused facility fees, continuing commitment fees, monitoring and exit fees, servicing fees, audit fees, structuring fees, the reasonable fees and disbursements of the DIP Agent's and the DIP Lenders' attorneys, advisers, accountants, and other consultants, whether or not the transactions contemplated hereby are consummated, all to the extent provided in the DIP Loan Documents, with invoices to be provided in accordance with paragraph 26 below.  All collections and proceeds, whether from ordinary course collections, asset sales, debt issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by this Final Order and the DIP Loan Documents.  Upon execution and delivery, the DIP Loan Documents shall represent valid and binding, and joint and several, obligations of the Debtors, enforceable against each of the Debtors and their estates in accordance with their terms.  Upon execution and delivery, the Payoff Letter shall represent a valid and binding obligation of the Debtors, enforceable against each of the Debtors and their estates in accordance with its terms, but subject only to the rights of third parties pursuant to paragraphs 33 and 34 below.

4.      <u>Authorization to Borrow</u>.  Until the Termination Date (as defined in the DIP Credit Agreement), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Loan Documents, the DIP Facility, and this Final Order, and in order to prevent immediate and irreparable harm to the Debtors' estates, the Debtors are hereby authorized to request extensions of revolving credit under the DIP Facility up to an aggregate principal amount of $20,000,000 at any one time outstanding (the "**<u>Financing</u>**").

5.      <u>DIP Obligations</u>.  The DIP Loan Documents and this Final Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which DIP Obligations shall be enforceable against the Debtors, their estates and any successors thereto, including without limitation, any trustee or other estate representative appointed in the Cases, or any case under Chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases (collectively, "**<u>Successor Cases</u>**").  Upon entry of this Final Order, the DIP Obligations will include all loans and any other indebtedness, indemnities or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors

to the DIP Agent under the DIP Loan Documents or this Final Order, including, without limitation, all

principal, accrued interest, costs, fees, expenses, indemnities and other amounts owed pursuant to the DIP

Loan Documents, and shall be joint and several obligations of the Debtors in all respects.

      6.    <u>Postpetition Liens and Collateral</u>.

      (a)    Effective immediately upon the entry of the Interim Order, pursuant to sections

364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agent (for itself and the ratable benefit

of the DIP Lenders) is hereby granted, continuing valid, binding, enforceable, non-avoidable and

automatically and properly perfected postpetition security interests in and liens on (collectively, the "**<u>DIP</u>**

**<u>Liens</u>**") any and all presently owned and hereafter acquired assets and real and personal property of the

Debtors, including, without limitation, the following (the "**<u>DIP Collateral</u>**"):

      (i)    all Accounts[5];

      (ii)    all Goods, including Equipment, Inventory and Fixtures;

      (iii)    all Documents, Instruments and Chattel Paper;

      (iv)    all Letters of Credit and Letter-of-Credit Rights;

      (v)    all Securities Collateral;

      (vi)    all Investment Property;

      (vii)    all Intellectual Property Assets;

      (viii)    subject to the treatment of D&O Claim Assets (as defined herein) under

paragraph 56 of this Final Order, all Commercial Tort Claims (including, without limitation, those

described in Section V of the Perfection Certificate);

      (ix)    subject to the treatment of D&O Claim Assets under paragraph 56 of this Final

Order, all rights, claims and causes of action against any director or officer of any of the Debtors (a

"**<u>D&O Claim</u>**"), including any and all rights, title and/or interest in any director and officer, fiduciary,

---

[5]  All defined terms in the description of DIP Collateral shall have the meanings ascribed thereto in the DIP Loan
Documents.  All terms not specifically defined in the DIP Loan Documents shall have the meanings ascribed to such
terms in Article 8 or 9 of the Uniform Commercial Code, as applicable.

employment practices and similar insurance policies of the Debtors, and any proceeds thereof (together with all D&O Claims, "**D&O Claim Assets**");

(x)    all General Intangibles (including, without limitation, all Payment Intangibles);

(xi)    all Deposit Accounts (including, without limitation, the Concentration Account);

(xii)    all Supporting Obligations;

(xiii)    all money, cash or cash equivalents;

(xiv)    all credit balances, deposits and other property now or hereafter held or received by or in transit to the DIP Agent or at any other depository or other institution from or for the account of any Debtor, whether for safekeeping, pledge, custody, transmission, collection or otherwise;

(xv)    all proceeds of leases of real property and all owned real property;[6]

(xvi)    subject to paragraph 56 of this Final Order, all claims or causes of action or the proceeds thereof to avoid a transfer of property (or an interest in property) or an obligation incurred by the Debtors pursuant to any applicable section of the Bankruptcy Code, including, without limitation, chapter 5 and section 724(a) of the Bankruptcy Code (the "**Avoidance Actions**");

(xvii)    the Debtors' rights under section 506(c) and section 550 of the Bankruptcy Code and the proceeds thereof;

(xviii)    to the extent not otherwise described above, all receivables and all present and future claims, rights, interests, assets and properties recovered by or on behalf of any Debtor;

(xix)    all books, records, and information relating to any of the foregoing and/or to the operation of any Debtor's business, and all rights of access to such books, records, and information, and all property in which such books, records and information are stored, recorded and maintained; and to the extent not otherwise included or specifically excluded, all other personal property of the Debtors, whether tangible or intangible and all Proceeds and products of each of the foregoing and all accessions to,

---

[6]  For the avoidance of doubt, the DIP Liens extend only to the proceeds of leased real property and are not direct liens on the Debtors' leases of real property unless such liens are expressly permitted pursuant to the underlying lease documents.

substitutions and replacements for, and rents, profits and products of each of the foregoing, and any and all proceeds of any insurance, indemnity, warranty or guaranty payable to such Debtor from time to time with respect to any of the foregoing; provided, that notwithstanding anything to the contrary contained in this Final Order, the DIP Liens shall not extend to, and the term "DIP Collateral" shall not include, any Excluded Property (as defined in the DIP Loan Documents).

(b)    Effective upon the entry of the Interim Order, (i) all DIP Liens and the DIP Carve Out shall each be and remain at all times senior to the Prepetition Liens, and all existing blocked account agreements, deposit account control agreements, securities account control agreements, credit card acknowledgements, credit card agreements, collateral access agreements, landlord agreements, warehouse agreements, bailee agreements, carrier agency agreements, customs broker agency agreements, subordination agreements and freight forwarder agreements constituting Prepetition Credit Documents, and all existing Uniform Commercial Code filings and all existing filings with the United States Patent and Trademark Office or the United States Copyright Office with respect to the recordation of an interest in the intellectual property of the Debtors which were filed by the Prepetition Agent, shall be deemed to be delivered and/or filed in connection with the DIP Facility, shall constitute DIP Credit Documents and shall remain in full force and effect without any further action by the Debtors, the DIP Agent or any other person, (ii) any and all references in any such agreements or documents to the "Credit Agreement" shall hereafter be deemed to mean and refer to the DIP Credit Agreement, and (iii) any and all references in any such agreements or documents to the "Loan Documents" shall hereafter be deemed to mean and refer to the DIP Loan Documents, in each case as amended, modified, supplemented or restated and in effect from time to time.

7.    DIP Lien Priority.

(a)    *DIP Liens*.  Subject to paragraph 56 of this Final Order, the DIP Liens shall be junior only to the (i) DIP Carve Out, (ii) the Prepetition Permitted Liens, (iii) subject to paragraphs 51 and 52 below, the Agent Lien with respect to the Agent Collateral and the Agent Superpriority Claim, and (iv) valid, enforceable non-avoidable liens in existence and senior in priority to the Prepetition Credit

Agreement as of the Closing Date, and shall otherwise be senior in priority and superior to the Prepetition

Liens, the Adequate Protection Liens (as defined herein) and Adequate Protection Superpriority Claims

(as defined herein) and any other security, mortgage, collateral interest, lien or claim on or to any of the

DIP Collateral.

(b)    Other than as set forth herein or as further ordered by the Court, the DIP Liens

shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter

granted in the Cases or any Successor Cases.  The DIP Liens shall be valid and enforceable against any

trustee or other estate representative appointed in the Cases or any Successor Cases, upon the conversion

of any of the Cases to cases under Chapter 7 of the Bankruptcy Code (or in any other Successor Cases),

and/or upon the dismissal of any of the Cases or Successor Cases.  The DIP Liens shall not be subject to

challenge under sections 510, 549, or 550 of the Bankruptcy Code.  No lien or interest avoided and

preserved for the benefit of the estate pursuant to section 551 of the Bankruptcy Code shall be *pari passu*

with or senior to the DIP Liens.

(c)    *Prepetition Liens*.  For the avoidance of doubt, and subject to paragraph 56 of

this Final Order, the Prepetition Liens shall be junior to the (i) DIP Carve Out; (ii) DIP Liens; (iii) the

Adequate Protection Liens described in paragraph 12 below; (iv) the Adequate Protection Superpriority

Claims; (v) Prepetition Permitted Liens; and (vi) subject to paragraphs 51 and 52 below, the Agent Lien

with respect to the Agent Collateral and the Agent Superpriority Claim.

8.    DIP Superpriority Claim.

(a)    *DIP Agent Superpriority Claim*.  Effective upon entry of the Interim Order, but

subject to paragraph 56 of this Final Order, the DIP Agent (for itself and the ratable benefit of the DIP

Lenders) is hereby granted, pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed

superpriority administrative expense claim in each of the Cases and any Successor Cases (collectively, the

"**DIP Superpriority Claim**") for all DIP Obligations.  The DIP Superpriority Claim shall be subordinate

only to the DIP Liens, the DIP Carve Out, Prepetition Permitted Liens and, subject to paragraphs 51 and

52 below, the Agent Lien with respect to the Agent Collateral and the Agent Superpriority Claim, and

shall otherwise have priority over any and all administrative expenses of the kinds specified in or ordered pursuant to sections 503(b) and 507(b) of the Bankruptcy Code, as provided under section 364(c)(1) of the Bankruptcy Code.

(b)    *Priority of DIP Superpriority Claim.* Subject to paragraph 56 of this Final Order, the DIP Superpriority Claim shall be payable from and have recourse to all pre- and post-petition property of the Debtors and all proceeds thereof, subject only to the payment in full in cash of the DIP Obligations, the DIP Carve Out and amounts secured by the Prepetition Permitted Liens and by the Agent Lien with respect to the Agent Collateral and the Agent Superpriority Claim.  If necessary, the DIP Superpriority Claim shall be payable from or have recourse to Avoidance Actions and other GUC Trust Litigation Proceeds (as defined herein), as provided in paragraph 56 of this Final Order.

9.    No Obligation to Extend Credit.  The DIP Agent and the DIP Lenders shall not have any obligation to make any loan or advance under the DIP Loan Documents unless all of the conditions precedent to the making of such extension of credit or the issuance of such letter of credit under the applicable DIP Loan Documents and this Final Order have been satisfied in full or waived by the DIP Agent in its Permitted Discretion.

10.    Use of DIP Facility Proceeds.  From and after the Petition Date, the Debtors shall use advances of credit under the DIP Facility only for the purposes specifically set forth in this Final Order, the DIP Loan Documents, the Payoff Letter, and the Budget and shall be subject at all times to compliance with the Budget (including, without limitation, to make Prepetition Agent Adequate Protection Payments).

**Authorization to Use Cash Collateral**

11.    Authorization to Use Cash Collateral.  Subject to the terms and conditions of this Final Order and the DIP Loan Documents, and in accordance with the Budget and subject to such variances as may be permitted thereby, the Debtors are authorized to use Cash Collateral until the Termination Date; provided, however, that during the Remedies Notice Period (as defined herein) the Debtors may use Cash Collateral in accordance with the terms and provisions of the Budget solely to meet payroll and related

expenses, and for other expenses approved critical to the preservation of the Debtors and their estates as agreed by the DIP Agent in its Permitted Discretion.  Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business (which shall be subject to other or further Orders of this Court, including any Orders approving the Amended and Restated Agency Agreement by and between the Debtors and the Joint Venture (the "**Agent**") comprised of Hilco Merchant Resources and Gordon Brothers Retail Partners, the "**Agency Agreement**")), or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final Order, the DIP Loan Documents, and in accordance with the Budget.

12.    Payoff Letter, Adequate Protection Payments and Adequate Protection Liens.

(a)    *Prepetition Agent – Payoff Letter*.  Each of the Debtors and the Prepetition Agent shall comply with the terms and provisions of the Payoff Letter.  The Debtors' residual interest in any amounts payable or potentially payable to any of them under the terms of the Payoff Letter shall be subject to the DIP Liens in accordance with the priorities set forth in this Final Order and the DIP Loan Documents.

(b)    *Prepetition Agent – Adequate Protection Payments*.  The Prepetition Agent and the other Prepetition Secured Creditors shall receive adequate protection in the form of the Prepetition Agent Adequate Protection Payments.

(c)    *Prepetition Agent – Adequate Protection Liens*.  The Prepetition Agent (for the ratable benefit of the Prepetition Secured Creditors) is hereby granted valid and perfected replacement and additional security interests in, and liens on all of the Debtors' right, title and interest in, to and under all DIP Collateral (the "**Adequate Protection Liens**").  The Adequate Protection Liens granted to the Prepetition Agent shall secure only the Surviving Obligations.  The Adequate Protection Liens are and shall be valid, binding enforceable and fully perfected as of the date hereof and subordinate and subject only to (i) the DIP Liens, (ii) the Prepetition Permitted Liens, (iii) subject to paragraphs 51 and 52 herein, the Agent Lien with respect to the Agent Collateral and the Agent Superpriority Claim, and (iv) the DIP Carve Out.

(d)    *Treatment of Adequate Protection Liens.*  Other than as set forth herein or as further ordered by the Court, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases.  The Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to cases under Chapter 7 of the Bankruptcy Code (or in any other Successor Cases), and/or upon the dismissal of any of the Cases or Successor Cases.

13.    Adequate Protection Superpriority Claims.

(a)    *Superpriority Claim of Prepetition Agent*.  As further adequate protection of the interests of the Prepetition Agent with respect to the Surviving Obligations, the Prepetition Agent (for the ratable benefit of the Prepetition Secured Creditors) is hereby granted an allowed administrative claim against the Debtors' estates under sections 503 and 507(b) of the Bankruptcy Code (the "**Adequate Protection Superpriority Claims**") to the extent that the Adequate Protection Liens do not adequately protect against any diminution in the value of the Prepetition Secured Creditors' interests in the Prepetition Collateral.

(b)    *Priority of Adequate Protection Superpriority Claims*.  The Adequate Protection Superpriority Claims shall be junior to the DIP Carve Out and the DIP Liens, the DIP Superpriority Claim and the Adequate Protection Liens and, subject to paragraphs 51 and 52 below, the Agent Lien with respect to the Agent Collateral and the Agent Superpriority Claim, and shall otherwise have priority over administrative expenses of the kinds specified in or ordered pursuant to sections 503(b) and 507(b) of the Bankruptcy Code.

**Provisions Common to DIP Financing and Use of Cash Collateral Authorizations**

14.    Amendments.  The DIP Loan Documents may from time to time be amended, modified or supplemented by the parties thereto without notice or a hearing if:  (i) in the reasonable judgment of the Debtors and the DIP Agent, the amendment, modification, or supplement (A) is not prejudicial in any material respect to the rights of third parties, and (B) has been consented to by the DIP Agent, and (ii) a

copy (which may be provided through electronic mail or facsimile) of the form of amendment, modification or supplement is provided to counsel for the Statutory Committee and the U.S. Trustee at least three (3) Business Days prior to the proposed effective date of the amendment, modification or supplement.  If, prior to the proposed effective date of the amendment, modification or supplement, the Statutory Committee or the U.S. Trustee objects to the same by written notice (which may be provided through electronic mail or facsimile) to the DIP Agent's counsel, then the effectiveness of such amendment, modification or supplement shall be subject to the Court's approval following expedited notice and hearing.

15.    <u>Budget Maintenance and Reports</u>.  The Budget and any modification to, or amendment or update of, the Budget shall be in form and substance reasonably acceptable to the DIP Agent and approved by the DIP Agent in its Permitted Discretion; <u>provided</u>, that the effectiveness of any such modification to, or amendment or update of, the Budget shall be subject to the same procedure for notice to counsel for the Statutory Committee and the U.S. Trustee and opportunity to object as is set forth in paragraph 14 of this Final Order.  The Debtors shall comply with and update the Budget from time to time in accordance with the DIP Loan Documents (provided that any update shall be in form and substance reasonably acceptable to the DIP Agent and approved by the DIP Agent in its Permitted Discretion), but in any event not less than on a weekly basis (with delivery to the DIP Agent on or before Wednesday of each week and to counsel for the Statutory Committee each week promptly after delivery to the DIP Agent).  In addition, the Debtors shall simultaneously deliver to counsel for the Statutory Committee and the U.S. Trustee copies (which may be provided through electronic mail or facsimile) of all reports and other written information delivered to the DIP Agent pursuant to Article VI of the DIP Credit Agreement.

16.    <u>Modification of Automatic Stay</u>.  The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to:  (a) permit the Debtors to grant the DIP Liens, the Adequate Protection Liens, the DIP Superpriority Claim, and the Adequate Protection Superpriority Claims; and (b)

authorize the Debtors to pay, and the DIP Agent and Prepetition Secured Creditors to retain and apply, payments made in accordance with the terms of this Final Order.

17.    Perfection of DIP Liens and Adequate Protection Liens.

(a)    *Automatic Perfection of Liens.*    This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of all liens granted herein, including the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement, mortgage, notice, or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement, collateral access agreement, customs broker agreement or freight forwarding agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and the Adequate Protection Liens, or to entitle the DIP Agent or the Prepetition Secured Creditors to the priorities granted herein.    Notwithstanding the foregoing, the DIP Agent is authorized to file, as it in its Permitted Discretion deems necessary, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence any of the DIP Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; provided, however, that no such filing or recordation shall be necessary or required in order to create, perfect or enforce the DIP Liens.    The Debtors are authorized to execute and deliver promptly upon demand to the DIP Agent all such financing statements, mortgages, control agreements, notices and other documents as the DIP Agent may reasonably request.    The DIP Agent, in its Permitted Discretion, may file a photocopy of this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.

18.    Application of Proceeds of DIP Collateral.    As a condition to the entry into the DIP Loan Documents, the extension of credit under the DIP Facility and the authorization to use Cash Collateral,

the Debtors have agreed that, subject to paragraph 56 of this Final Order, the proceeds of DIP Collateral shall be applied as follows:

(a)    (i) all payments received by the DIP Agent in respect of any DIP Obligation and all funds transferred and credited to the "Concentration Account" maintained by the Debtors at JPMorgan Chase Bank, N.A. and (ii) all net proceeds from any Disposition of DIP Collateral (including, without limitation, payments received pursuant to the Agency Agreement), each shall be applied, subject to the DIP Carve Out and the amounts secured by the Agent Lien with respect to the Agent Collateral and the Agent Superpriority Claim, in accordance with the DIP Credit Agreement (including, without limitation, Sections 2.05 and 8.03 thereof) or, to the extent the DIP Credit Agreement does not direct the application of such amounts, as follows: *first*, to payment of any Surviving Obligations then due and payable in accordance with the terms of the Prepetition Credit Documents, *second*, to payment of the costs and expenses of the DIP Agent and DIP Lenders, including Credit Party Expenses payable and reimbursable by the Debtors under the DIP Credit Agreement and the other DIP Loan Documents; *third*, to payment of fees and interest with respect to the DIP Obligations, *fourth*, to payment of all other DIP Obligations in accordance with the DIP Loan Documents, and *fifth*, to the Debtors' operating account, or for the account of and paid to whoever may be lawfully entitled thereto. As between the DIP Lenders, nothing provided herein shall be deemed to modify the allocation of the proceeds of DIP Collateral set forth in the DIP Loan Documents.

(b)    The Debtors shall not, directly or indirectly, voluntarily purchase, redeem, defease, prepay any principal of, premium, if any, interest or other amount payable in respect of any indebtedness prior to its scheduled maturity, other than the DIP Obligations and the Prepetition Obligations (each in accordance with the DIP Loan Documents, the Payoff Letter and this Final Order) and other obligations authorized by an order of the Court.

19.    <u>Proceeds of Subsequent Financing</u>.    If the Debtors, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in these Cases or any Successor Cases shall obtain credit or incur debt pursuant to sections 364(b), 364(c) or

364(d) of the Bankruptcy Code in violation of the DIP Loan Documents at any time prior to the repayment in full of all DIP Obligations and the termination of the DIP Agent's and the DIP Lenders' obligations to extend credit under the DIP Facility, including subsequent to the confirmation of any plan of reorganization or liquidation with respect to any or all of the Debtors and the Debtors' estates, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied as set forth in paragraph 18(a) herein.

20.    <u>Maintenance of DIP Collateral</u>.  Until the payment in full in cash of all DIP Obligations and the termination of the DIP Agent's and the DIP Lenders' obligations to extend credit under the DIP Facility, as provided therein, the Debtors shall:  (a) insure the DIP Collateral as required under the DIP Facility; and (b) maintain the cash management system which has been agreed to by the DIP Agent or as otherwise required by the DIP Loan Documents.

21.    <u>Disposition of DIP Collateral; Rights of DIP Agent</u>.  Unless otherwise authorized by the Court, the Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral except as permitted by the DIP Loan Documents.  Nothing provided herein shall limit the right of the DIP Agent or the DIP Lenders to object to any proposed disposition of the DIP Collateral.

22.    <u>Termination Date</u>.  On the Termination Date, (i) all DIP Obligations shall be immediately due and payable, subject to the payment of any unfunded amounts of the DIP Carve Out and any amounts secured by the Agent Lien with respect to the Agent Collateral and the Agent Superpriority Claim, and all commitments to extend credit under the DIP Facility will terminate, and (ii) all authority to use Cash Collateral derived from the proceeds of DIP Collateral shall cease, <u>provided</u>, <u>however</u>, that during the Remedies Notice Period (as defined herein), the Debtors may use Cash Collateral solely as set forth in paragraph 11 herein.

23.    <u>Events of Default</u>.  The occurrence of an "Event of Default" under the DIP Credit Agreement (unless the DIP Agent, in its sole discretion, elects to waive such Event of Default) shall constitute an event of default under this Final Order (each, an "**<u>Event of Default</u>**").

24.    <u>Rights and Remedies Upon Event of Default</u>.

(a)    *DIP Facility Termination.*        Immediately upon the occurrence and during the continuance of an Event of Default, the DIP Agent may in its discretion (i) declare the DIP Facility terminated (such declaration, a "**<u>Termination Declaration</u>**") or (ii) send a reservation of rights notice to the Debtors, which notice may advise the Debtors that any further advances under the DIP Facility will be made in the sole discretion of the DIP Agent.  Upon the issuance of a Termination Declaration, at the DIP Agent's option: (I) all or any portion of the Commitment of the DIP Agent and DIP Lenders to make loans or otherwise extend credit may be suspended or terminated; (II) all DIP Obligations may be deemed immediately due and payable; and (III) after expiration of the Remedies Notice Period, any right or ability of the Debtors to use any Cash Collateral may be terminated, reduced or restricted by the DIP Agent, provided that, during the Remedies Notice Period, the Debtors may use Cash Collateral solely in accordance with paragraph 11 of this Final Order.  With respect to the DIP Collateral, following the Termination Declaration, subject to the Remedies Notice Period, the DIP Agent, the DIP Lenders and the Prepetition Agent  may exercise all rights and remedies available to them under the DIP Loan Documents or the Prepetition Credit Documents, as applicable, or applicable law against the DIP Collateral.  Without limiting the foregoing, the DIP Agent, the DIP Lenders and the Prepetition Agent may, subject to the Remedies Notice Period, (i) enter onto the premises of any Debtor in connection with an orderly liquidation of the DIP Collateral; and/or (ii) exercise any rights and remedies provided to DIP Agent, the DIP Lenders or the Prepetition Agent under the DIP Loan Documents or the Prepetition Credit Documents, as applicable, or at law or equity, including all remedies provided under the Bankruptcy Code and pursuant to this Final Order.  Following the termination of the Remedies Notice Period, the DIP Agent or the Prepetition Agent may require the Debtors to seek authority from the Court to retain an Approved Liquidator for the purpose of conducting a liquidation or "going out of business" sale and/or the orderly liquidation of the DIP Collateral and, if Debtors refuse to seek such authority, the DIP Agent or the Prepetition Agent shall be entitled to seek such authority directly.  Notwithstanding of the rights and remedies set forth herein or in the DIP Credit Agreement or the DIP Loan Documents, the DIP

Agent's and each DIP Lender's right to use or occupy any of the Debtors' leased premises in connection with the exercise of any right or remedy upon the occurrence of an Event of Default shall be limited to (i) the existing rights of the DIP Agent, each DIP Lender, and the applicable landlord under applicable non-bankruptcy law, (ii) the written consent of the applicable landlord, or (iii) the further order of the Court upon motion and notice appropriate under the circumstances.

      (b)    *Notice of Termination*.  Any Termination Declaration shall be given by facsimile (or other electronic means, including electronic mail) to counsel to the Debtors, counsel to the Statutory Committee, and the U.S. Trustee (the earliest date any such Termination Declaration is made shall be referred to herein as the "**Termination Declaration Date**").  The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the fifth (5th) business day following the Termination Declaration Date, except as provided in paragraphs 11 and 24 of this Final Order.  Any automatic stay otherwise applicable to the DIP Agent, the DIP Lenders and the Prepetition Agent is hereby modified so that five (5) business days after the Termination Declaration Date (the "**Remedies Notice Period**"), the DIP Agent, the DIP Lenders and the Prepetition Agent shall be entitled to exercise all rights and remedies against the DIP Collateral in accordance with the DIP Loan Documents or the Prepetition Credit Documents, as applicable, and this Final Order and shall be permitted to satisfy the DIP Superpriority Claim and the DIP Liens and the Adequate Protection Liens and Adequate Protection Superpriority Claims of the Prepetition Agent, subject only to the DIP Carve Out, and, subject to paragraphs 51 and 52 herein, the Agent Lien with respect to the Agent Collateral and the Agent Superpriority Claim.  During the Remedies Notice Period, the Debtors shall be entitled to seek an emergency hearing with the Court for the purpose of contesting whether an Event of Default has occurred and/or is continuing or for such other relief as the Debtors may request; provided, that in the event the Debtors seek such an emergency hearing and the Court is unable to schedule such a hearing during the five (5) business day period described above, the Remedies Notice Period shall be tolled until the date on which the Court enters an order with respect to whether an Event of Default has occurred and/or is continuing.  Unless the Court orders otherwise during the Remedies Notice Period, the

automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further

notice or order and the DIP Agent, the DIP Lenders and the Prepetition Agent shall be permitted to

exercise all remedies set forth herein, in the DIP Credit Agreement, the DIP Loan Documents, the

Prepetition Credit Documents and as otherwise available at law against the DIP Collateral, without further

order of or application or motion to the Court, and without restriction or restraint by any stay under

sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and

security interest in the DIP Collateral or any other rights and remedies granted to (x) the DIP Agent with

respect thereto pursuant to the DIP Credit Agreement, the other DIP Loan Documents, or this Final Order

and (y) the Prepetition Agent with respect thereto pursuant to the Prepetition Credit Agreement, the other

Prepetition Credit Documents, or this Final Order.

       25.    <u>Good Faith Under Section 364 of the Bankruptcy Code; No Modification or Stay of this</u>

<u>Final Order</u>.  The DIP Agent and each DIP Lender have acted in good faith in connection with this Final

Order and their reliance on this Final Order is in good faith.  Based on the findings set forth in this Final

Order and the record made during the Final Hearing and the Interim Hearing, and in accordance with

section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are

hereafter modified, amended or vacated by a subsequent order of this Court, or any other court, the DIP

Agent and each of the DIP Lenders shall be and are entitled to the protections provided in section 364(e)

of the Bankruptcy Code.  Any such modification, amendment or vacatur shall not affect the validity and

enforceability of any advances previously made or made hereunder, or lien, claim or priority authorized

or created hereby, provided that this Final Order was not stayed by court order after due notice had been

given to the DIP Agent at the time the advances were made or the liens, claims or priorities were

authorized and/or created.  Any liens or claims granted to the DIP Agent and the DIP Lenders hereunder

arising prior to the effective date of any such modification, amendment or vacatur of this Final Order shall

be governed in all respects by the original provisions of this Final Order, including entitlement to all

rights, remedies, privileges and benefits granted herein, provided that the Final Order was not stayed by

court order after due notice had been given to the DIP Agent and each DIP Lender at the time the advances were made or the liens, claims or priorities were authorized and/or created.

26.    <u>DIP and Other Expenses</u>.  The Debtors are authorized and directed to pay all reasonable and documented out-of-pocket expenses of (x) the DIP Agent and the DIP Lenders in connection with the DIP Facility (including, without limitation, expenses incurred prior to the Petition Date), as provided in the DIP Loan Documents, and (y) the Prepetition Agent (including, without limitation, expenses incurred prior to the Petition Date) as provided in the Prepetition Credit Documents, whether or not the transactions contemplated hereby are consummated, including, without limitation, reasonable legal, accounting, collateral examination, monitoring and appraisal fees, financial advisory fees, fees and expenses of other consultants, and indemnification and reimbursement of fees and expenses, upon the Debtors' receipt of invoices for the payment thereof.  Payment of all such fees and expenses shall not be subject to allowance by the Court and professionals for the DIP Agent, the DIP Lenders and the Prepetition Agent shall not be required to comply with the U.S. Trustee fee guidelines.  Notwithstanding the foregoing, at the same time such invoices are delivered to the Debtors, the professionals for the DIP Agent, the DIP Lenders and the Prepetition Agent shall deliver a copy of their respective invoices to counsel for the Statutory Committee and the U.S. Trustee, redacted as necessary with respect to any privileged or confidential information contained therein.  Any objections raised by the Debtors, the U.S. Trustee or the Statutory Committee with respect to such invoices within ten (10) business days of the receipt thereof will be resolved by the Court.  In the event of any objection, the provisions of section 107 of the Bankruptcy Code and Rule 9018 of the Federal Rules of Bankruptcy Procedure shall apply. Pending such resolution, the undisputed portion of any such invoice will be paid promptly by the Debtors. Notwithstanding the foregoing, the Debtors are authorized and directed to pay all reasonable fees, costs and expenses of the Prepetition Agent incurred on or prior to the date of this Final Order without the need for any professional engaged by the Prepetition Agent to first deliver a copy of its invoice as provided for herein.

27.     <u>Indemnification</u>.

(a)     The Debtors shall indemnify and hold harmless the DIP Agent and its shareholders, members, directors, agents, officers, subsidiaries and affiliates, successors and assigns, attorneys and professional advisors, in their respective capacities as such, from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, whether groundless or otherwise, and reasonable costs and expenses incurred, suffered, sustained or required to be paid by an indemnified party of every nature and character arising out of or related to the DIP Loan Documents, or the DIP Facility or the transactions contemplated thereby and by this Final Order, whether such indemnified party is party thereto, as provided in and pursuant to the terms of the DIP Loan Documents and as further described therein and herein, or in connection with these Cases, any plan, or any action or inaction by the Debtors, in each case except to the extent resulting from such indemnified party's gross negligence or willful misconduct as finally determined by a final non-appealable order of a court of competent jurisdiction.  The indemnity includes indemnification for the DIP Agent's exercise of discretionary rights granted under the DIP Facility.  In all such litigation, or the preparation therefor, the DIP Agent shall be entitled to select its own counsel and, in addition to the foregoing indemnity, the Debtors agree to promptly pay the reasonable fees and expenses of such counsel.

(b)     *DIP Indemnity Account*.  Upon the earlier to occur of (i) the payment in full, in cash of all amounts due to the DIP Agent and DIP Lenders under the DIP Loan Documents or (ii) the conclusion of the Remedies Notice Period, the Debtors shall pay an amount equal to the lesser of (x) $100,000 and (y) the then unused portion of the $650,000 fee cap referenced in the definition of Credit Party Expenses, from proceeds of the DIP Collateral into an indemnity account (the "**DIP Indemnity Account**") subject to first priority liens of the DIP Agent.  The DIP Indemnity Account shall be released and the funds applied in accordance with paragraph 18 of this Final Order upon the receipt by the DIP Agent and each DIP Lender of releases from the Debtors and their estates acceptable to the DIP Agent and each DIP Lender in their sole discretion approved by a final Order of this Court.

28.    <u>Proofs of Claim</u>.  Any order entered by the Court in relation to the establishment of a bar date for any claims (including without limitation administrative claims) in any of the Cases or Successor Cases shall not apply to the DIP Agent, DIP Lenders or the Prepetition Secured Parties.  Neither the DIP Agent nor the Prepetition Agent will be required to file proofs of claim or requests for approval of administrative expenses in any of the Cases or Successor Cases, and the provisions of this Final Order relating to the amount of the DIP Obligations, the DIP Superpriority Claim, the Prepetition Obligations and the Adequate Protection Superpriority Claim shall constitute timely filed proofs of claim and/or administrative expense requests.

29.    <u>Rights of Access and Information</u>.  Without limiting the rights of access and information afforded the DIP Agent and the DIP Lenders under the DIP Loan Documents, the Debtors shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Agent and DIP Lenders reasonable access to the Debtors' premises and their books and records in accordance with the DIP Loan Documents, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested.  In addition, the Debtors authorize their independent certified public accountants, financial advisors, investment bankers and consultants to cooperate, consult with, and provide to the DIP Agent all such information as may be reasonably requested with respect to the business, results of operations and financial condition of any Debtor.

30.    <u>DIP Carve Out</u>.

(a)    *DIP Carve Out*.  As used in this Final Order, the "**DIP Carve Out**" means, collectively, the sum of: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant to 28 U.S.C. §1930(a) and Section 3717 of title 31 of the United States Code, and (ii) upon the occurrence of any Event of Default and delivery of a Carve-Out Trigger Notice, and solely to the extent provided for in the Budget and approved by the Bankruptcy Court, an aggregate amount not to exceed the sum of (A) the amount of expenses under clause (i) above plus (B) $500,000, which amount may be used subject to the terms of this Final Order, as applicable, to pay (x) Allowed Professional Fees and the reimbursement of expenses of the Statutory Committee and

any consumer privacy ombudsman appointed, in each case, incurred after the delivery of a Carve-Out

Trigger Notice, to the extent permitted by this Final Order, as applicable, and (y) any Allowed

Professional Fees of Case Professionals incurred but unpaid prior to the receipt of the Carve-Out Trigger

Notice (in each case, subject to the rights of any party in interest to object to the allowance of any such

fees and expenses), plus (C) $25,000, which amount shall be available to fund a wind-down budget in the

event the Cases are converted to cases under Chapter 7 of the Bankruptcy Code (the "**Wind-Down**

**Amount**").  No portion of the DIP Carve Out, nor any cash collateral or proceeds of the DIP Loans may

be used in violation of this Final Order, including paragraph 31 hereof.

       (b)    *No Direct Obligation to Pay Professional Fees or Committee Expenses.*  The DIP

Agent, the DIP Lenders, and the Prepetition Secured Creditors shall not be responsible for the funding,

direct payment or reimbursement of any fees or disbursements of any Case Professionals or any

Committee Expenses incurred in connection with the Cases or any Successor Cases.  Nothing in this Final

Order or otherwise shall be construed to obligate the DIP Agent, the DIP Lenders, or the Prepetition

Secured Creditors in any way to pay compensation to or to reimburse expenses of any Case Professional

(including any Committee Expenses), or to guarantee that the Debtors have sufficient funds to pay such

compensation or reimbursement.  Nothing in this Final Order or otherwise shall be construed to increase

the DIP Carve Out if actual (i) Allowed Professional Fees of any Case Professional or (ii) Committee

Expenses are higher in fact than the estimated fees and disbursements reflected in the Budget.

       (c)    *Payment of DIP Carve Out*.  Upon the occurrence of the Termination Date, the

DIP Obligations, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and the

Adequate Protection Superpriority Claims shall be subject to the payment of the unfunded amount of the

DIP Carve Out.  The funding of the DIP Carve Out shall be added to and made a part of the DIP

Obligations and secured by the DIP Collateral and otherwise entitled to the protections granted under this

Final Order, the DIP Loan Documents, the Bankruptcy Code and applicable law.  For the avoidance of

doubt, the DIP Carve Out shall be funded from the Guaranteed Amount and shall be subordinate to

payment of the amounts secured by the Agent Lien with respect to the Agent Collateral and the Agent Superpriority Claim.

31.     <u>Limitations on the DIP Facility, the DIP Collateral, the Cash Collateral and the Case Professionals DIP Carve Out</u>.  Unless otherwise ordered by the Court or consented to by the DIP Agent, the DIP Facility, the DIP Collateral, the Cash Collateral and the DIP Carve Out may not be used:  (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) invalidating, setting aside, avoiding or subordinating, in whole or in part, the DIP Obligations or the Prepetition Obligations, (ii) for monetary, injunctive or other affirmative relief against the DIP Agent, the DIP Lenders, the Prepetition Secured Creditors, or their respective collateral, (iii) preventing, hindering or otherwise delaying the exercise by the DIP Agent, the DIP Lenders, or the Prepetition Secured Creditors of any rights and remedies under this Final Order, the DIP Loan Documents, the Prepetition Credit Documents, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the DIP Agent upon any of the DIP Collateral, by the Prepetition Agent with respect to its Adequate Protection Liens, or (iv) to pursue litigation against the DIP Agent, any DIP Lender or any Prepetition Secured Creditor; (b) to make any distribution under a plan of reorganization in any Chapter 11 Case; (c) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body; (d) to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests in any of the Debtors; (e) objecting to, contesting, or interfering with, in any way, the DIP Agent's or the DIP Lenders' enforcement or realization upon any of the DIP Collateral once an Event of Default has occurred, except as provided for in this Final Order, or seeking to prevent the DIP Agent from credit bidding in connection with any proposed plan or reorganization or liquidation or any proposed transaction pursuant to section 363 of the Bankruptcy Code; (f) using or seeking to use Cash Collateral while the DIP Obligations or the Prepetition Obligations remain outstanding in a manner inconsistent with the Budget; (g) using or seeking to use any insurance proceeds constituting DIP Collateral without the consent of the DIP Agent; (h) incurring Indebtedness (as defined in the DIP Credit Agreement) outside the ordinary

course of business, except as permitted under the DIP Loan Documents; (i) objecting to or challenging in

any way the claims, liens, or interests held by or on behalf of the DIP Agent or Prepetition Agent;

(j) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without

limitation, any actions under Chapter 5 of the Bankruptcy Code, against the DIP Agent, the DIP Lenders,

or the Prepetition Secured Creditors; or (k) prosecuting an objection to, contesting in any manner, or

raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of any of the

DIP Obligations, the Prepetition Obligations, the DIP Liens, the Prepetition Liens or any other rights or

interests of the DIP Agent, the DIP Lenders or the Prepetition Secured Creditors; provided, that nothing

herein shall prevent or limit any professional retained by the Statutory Committee from receiving

payment in accordance with the Budget from the DIP Facility, the DIP Collateral, the Cash Collateral or

the DIP Carve Out for Allowed Professional Fees incurred with respect to the Statutory Committee's

investigation of (but, for the avoidance of doubt, not the assertion or prosecution of any Challenge to) the

Prepetition Secured Creditors' claims and liens, the Committee Objection and the negotiation of this Final

Order.

32.    Payment of Compensation.  Nothing herein shall be construed as a consent to the

allowance of any professional fees or expenses of any Case Professionals or shall affect the right of the

DIP Agent or any of the DIP Lenders to object to the allowance and payment of such fees and expenses.

33.    Reservation of Certain Third Party Rights and Bar of Challenges and Claims.

(a)    The stipulations, findings, representations and releases contained in this Final

Order, the Payoff Letter or the DIP Loan Documents with respect to the Prepetition Secured Creditors and

the Prepetition Obligations shall be binding upon all parties in interest, any trustee appointed in these

cases and the Statutory Committee (each, a "**Challenge Party**"), unless and solely to the extent that the

Court rules in favor of the plaintiff in any timely and properly filed Challenge in accordance with this

paragraph 33.  For purposes of this paragraph 33: (a) "**Challenge**" means any claim or cause of action

against any of the Prepetition Secured Creditors on behalf of the Debtors or the Debtors' creditors and

interest holders, or to object to or to challenge the stipulations, findings or Debtors' Stipulations set forth

herein, including, but not limited to those in relation to: (i) the validity, extent, priority, or perfection of the mortgage, security interests, and liens of any Prepetition Secured Creditor; (ii) the validity, allowability, priority, or amount of the Prepetition Obligations (including any fees included therein); (iii) the secured status of the Prepetition Obligations; (iv) any liability of any of the Prepetition Secured Creditors with respect to anything arising from any of the respective Prepetition Credit Documents; or (v) the releases set forth in the DIP Loan Documents; and (b) "**Challenge Period**" means the time period for the Statutory Committee or other party in interest to commence, or to file a motion to obtain authority to commence, any related proceedings which shall be sixty (60) days following the date of entry of the Final Order, subject to further extension by written agreement among the Debtors, the Prepetition Secured Creditors, and the Statutory Committee. Notwithstanding the foregoing or any other provision of this Final Order to the contrary, in consideration of the amendments to the DIP Loan Documents agreed to by the Debtors, the DIP Agent, the DIP Lenders and the Statutory Committee, as set forth in paragraph 54 of this Final Order, the Statutory Committee shall not assert a Challenge in respect of the validity or enforceability of any fees paid to the Prepetition Secured Creditors under the Prepetition Credit Documents.

(b)    During the Challenge Period, a Challenge Party shall be entitled to determine whether a basis to assert a Challenge exists. Nothing herein shall be deemed to grant standing in favor of any Challenge Party absent further order of this Court; <u>provided</u>, that the filing of a motion by any Challenge Party prior to the end of the Challenge Period seeking standing to initiate an action or adversary proceeding with respect to a Challenge shall automatically toll the Challenge Period Termination Date (as defined herein) until five (5) Business Days following the entry by the Court of an order granting or denying such standing.

(c)    Upon the expiration of the Challenge Period (subject to Paragraph 33(b) above) without the filing of a Challenge (the "**Challenge Period Termination Date**"): (A) any and all such Challenges and objections by any party (including, without limitation, the Statutory Committee, any Chapter 11 trustee, and/or any examiner or other estate representative appointed in these Cases, and any

Chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall

be deemed to be forever waived, released and barred, (B) all matters not subject to the Challenge, and all

findings, Debtors' Stipulations, waivers, releases, affirmations and other stipulations as to the priority,

extent, and validity as to each Prepetition Secured Creditors' claims, liens, and interests shall be of full

force and effect and forever binding upon the Debtors, the Debtors' bankruptcy estates and all creditors,

interest holders, and other parties in interest in these Cases and any Successor Cases; and (C) any and all

claims or causes of action against any of the Debtors or the Prepetition Secured Creditors relating in any

way to the Debtors or the Prepetition Credit Documents shall be forever waived and released by the

Debtors' estates, all creditors, interest holders and other parties in interest in these Cases and any

Successor Cases.

34.    <u>Reservation of Rights</u>.  Notwithstanding anything to the contrary contained in this Final

Order, in the event there is a timely and successful Challenge by any party in interest (in accordance with

paragraph 33 hereof), this Court may unwind the repayment of the Prepetition Obligations and order the

repayment of such amount to the extent that such payment resulted in the payment of any Prepetition

Obligations consisting of an unsecured claim or other amount not allowable under section 502 of the

Bankruptcy Code.  Notwithstanding the foregoing, a successful Challenge shall not in any way affect the

validity, enforceability or priority of the DIP Obligations or the DIP Liens unless otherwise ordered by

the Court.

35.    <u>No Third Party Rights</u>.  Except as explicitly provided for herein, this Final Order does not

create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or

incidental beneficiary.

36.    <u>Section 506(c) Claims</u>.  No costs or expenses of administration which have been or may

be incurred in the Cases at any time shall be charged against the DIP Agent, the DIP Lenders or the DIP

Collateral, the Prepetition Secured Creditors or the Prepetition Liens pursuant to sections 105 or 506(c) of

the Bankruptcy Code, or otherwise.

37.    <u>No Marshaling/Applications of Proceeds</u>.  Neither the DIP Agent, the DIP Lenders, nor the Prepetition Secured Creditors shall be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral.

38.    <u>Section 552(b)</u>.  The DIP Agent shall be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code.  The "equities of the case" exception under section 552(b) of the Bankruptcy Code shall not apply to the DIP Agent, the DIP Lenders, or the Prepetition Secured Creditors with respect to proceeds, products, offspring or profits of any of the Prepetition Collateral.

39.    <u>Joint and Several Liability</u>.  Nothing in this Final Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of the DIP Facility and the DIP Loan Documents.

40.    <u>Discharge Waiver</u>.  The Debtors expressly stipulate, and the Court finds and adjudicates that, none of the DIP Obligations, the DIP Superpriority Claim or the DIP Liens shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the DIP Obligations have been paid in full in cash on or before the effective date of a confirmed plan of reorganization.  The Debtors expressly stipulate, and the Court finds and adjudicates that, none of the Adequate Protection Liens or Adequate Protection Superpriority Claims shall be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless the Adequate Protection Superpriority Claims and claims secured by the Adequate Protection Liens have been paid in full in cash on or before the effective date of a confirmed plan of reorganization.  None of the Debtors shall propose or support any plan or sale of all or substantially all of the Debtors' assets or entry of any confirmation order or sale order that is not conditioned upon the payment in full in cash, on the effective date of such plan of all DIP Obligations and Adequate Protection Superpriority Claims.

41.    <u>Rights Preserved</u>.  Notwithstanding anything herein to the contrary, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly:  (a)  DIP

Agent's or the Prepetition Secured Creditors' right to seek any other or supplemental relief in respect of the Debtors (including the right to seek additional adequate protection, including, without limitation, in the form of reimbursement of fees and expenses of counsel to the Prepetition Secured Creditors); (b) the rights of any of the Prepetition Secured Creditors to seek the payment by the Debtors of post-petition interest or fees pursuant to section 506(b) of the Bankruptcy Code; or (c) any of the rights of the DIP Agent under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right to (i) request modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal of any of the Cases or Successor Cases, conversion of any of the Cases to cases under Chapter 7, or appointment of a Chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans.  Other than as expressly set forth in this Final Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Agent and the DIP Lenders are preserved.

42.    No Waiver by Failure to Seek Relief.  The failure of the DIP Agent or the DIP Lenders to seek relief or otherwise exercise rights and remedies under this Final Order, the DIP Loan Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the DIP Agent or the DIP Lenders.

43.    Binding Effect of Final Order.  Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtors, the DIP Agent, the DIP Lenders, the Prepetition Secured Creditors, all other creditors of any of the Debtors, the Statutory Committee or any other court appointed committee, appointed in the Cases, and all other parties in interest and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

44.    No Modification of Final Order.  Until and unless the DIP Obligations have been paid in full in cash (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP

Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written consent of the DIP Agent (i) any modification, stay, vacatur or amendment to this Final Order; or (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP Superpriority Claim, other than the DIP Carve Out; (b) any order allowing use of Cash Collateral resulting from DIP Collateral; and (c) any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens.  The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Final Order without the prior written consent, as provided in the foregoing, of the DIP Agent, and no such consent shall be implied by any other action, inaction or acquiescence of the DIP Agent.

45.    <u>Final Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents or this Final Order, the provisions of this Final Order shall govern and control.

46.    <u>Survival</u>.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under Chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases.  The terms and provisions of this Final Order, including the claims, liens, security interests and other protections granted to the DIP Agent and Prepetition Secured Creditors pursuant to this Final Order and/or the DIP Loan Documents, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Final Order until all DIP Obligations have been paid in full and all commitments to extend credit under the DIP Facility are terminated.  The terms and provisions concerning the indemnification of the DIP Agent shall continue in the Cases and in any

Successor Cases, following dismissal of the Cases or any Successor Cases, following termination of the DIP Loan Documents and/or the repayment of the DIP Obligations. For the avoidance of doubt, the resolution of the Committee Objection set forth herein, including, without limitation in paragraphs 54 through 58 of this Final Order, shall continue in the Cases and any Successor Cases.

47. [Intentionally Omitted]

48. [Intentionally Omitted]

49. <u>GECC Provisions</u>. Notwithstanding anything to the contrary in this Final Order, the DIP Collateral excludes the cash in the possession of General Electric Capital Corporation ("**GECC**") under the letter of credit agreement between it and the Debtors (the "**LC Agreement**"), except to the extent that such cash is in excess of the Debtors' current or future obligations under such agreement (including for reimbursement of principal, interest, fees, costs and expenses) and such cash (if any) is remitted to the Debtors. Notwithstanding anything to the contrary in this Final Order, the Agent Collateral (as defined in paragraph 51) excludes the cash in the possession of GECC under the LC Agreement.

50. The Debtors agree, as adequate protection of GECC's interests in the cash in its possession under the LC Agreement, that (i) to the extent that there is a draw under a letter of credit issued under the LC Agreement that complies with the applicable letter of credit, the Debtors consent to GECC's use of cash in its possession under such LC Agreement to reimburse itself for such draw plus any accrued interest and fees as long as GECC notifies the Debtors of such use and provides a reasonable accounting with respect thereto; (ii) no more often than once per month, the Debtors consent to GECC's use of cash in its possession under such LC Agreement to reimburse itself for reasonable costs and expenses as long as GECC notifies the Debtors of such use and provides a reasonable accounting with respect thereto; and (iii) without duplication of any interest or fees reimbursed under the foregoing clause (i) (other than fees in the amount of $250 for individual draws), the Debtors shall remit to GECC, as and when due under the LC Agreement, payment of interest (accrued and payable at the default contractual rate but subject to the Debtors' right to subsequently contend that GECC is not entitled to default interest) and all fees (but excluding reimbursement of costs and expenses) (the Debtors confirm

that the funds necessary to make the payments required under this clause (iii) are included in the Budget and were included under the budget approved in the Interim Order).  In addition, GECC shall not be required to file proofs of claim or requests for approval of administrative expenses with respect to its claims under the LC Agreement in any of the Cases or Successor Cases.

51.    Provisions Regarding the Agent.  The Agent has been granted a valid and perfected first priority security interest in and lien (the "**Agent Lien**") upon (i) the Merchandise, (ii) the Additional Agent Merchandise and the proceeds thereof, (iii) all Proceeds (as defined in the Agency Agreement) (including, without limitation credit card Proceeds); (iv) any sums received on account of sales of Merchant Consignment Goods (as defined in the Agency Agreement) up to the amount payable to Agent pursuant to Section 5.4 of the Agency Agreement; (v) any sums received on account of sales of Owned DC FF&E (as defined in the Agency Agreement) up to the amount payable to Agent pursuant to Section 15(a) of the Agency Agreement; (vi) any Assets (as defined in Section 7.1 of the Agency Agreement) and the proceeds thereof; (vii) the MOOS Inventory (as defined in the Agency Agreement) and the proceeds thereof; (viii) the Owned FF&E and the proceeds thereof and (ix) all "proceeds", within the meaning of Section 9-102(a)(64) of the UCC (items (i) through (ix), collectively, the "**Agent Collateral**"). Notwithstanding anything in this Final Order to the contrary, the Agent Lien in the Agent Collateral shall be senior to all other liens and security interests, including but not limited to the DIP Liens, the Prepetition Permitted Liens and the Adequate Protection Liens; provided however, that (x) until the Debtors receive payment in full of the Guaranteed Amount,  Expenses (as defined in the Agency Agreement), and such other amounts due to Debtors under the Agency Agreement, the Agent Lien shall be junior and subordinate in all respects to the DIP Liens, the Prepetition Permitted Liens and the Adequate Protection Liens in the Agent Collateral but solely to the extent and amount of the unpaid portion of the any of the Guaranteed Amount,  Expenses, and such other amounts due to the Debtors under the Agency Agreement, and (y) upon payment in full of the Guaranteed Amount,  Expenses, and such other amounts due from Agent to the Debtors under the Agency Agreement, the DIP Liens, the

Prepetition Permitted Liens and the Adequate Protection Liens in the Agent Collateral shall be junior and subordinate in all respects to the Agent Lien in the Agent Collateral.

52.     Subject to Agent's satisfaction of its obligations under the Agency Agreement, any amounts owed by the Debtors to Agent under the Agency Agreement (including, without limitation, any amounts for which the Agent is to be indemnified and held harmless under Section 8.3(a) of the Agency Agreement) have been granted the status of superpriority claims in the Cases pursuant to Section 364(c) of Bankruptcy Code (collectively, the "**Agent Superpriority Claim**"), senior to all other superpriority claims, including, without limitation, to the DIP Superpriority Claim and the Adequate Protection Superpriority Claim; provided that until the Debtors receive payment in full of the Guaranteed Amount and Expenses, and any such other amounts due from Agent to Debtors under the Agency Agreement, any superpriority claim granted to Agent shall be junior and subordinate in all respects to the security interests and superpriority claims of the DIP Agent and the Prepetition Agent but solely to the extent of the amount of the unpaid portion of the Guaranteed Amount and Expenses, and such other amounts due to the Debtors under the Agency Agreement.

53.     Defy Media Provisions.  Notwithstanding anything to the contrary in this Final Order, the DIP Collateral excludes the intellectual property owned by Defy Media, LLC ("**Defy Media**") under the Media Services Agreement between Defy Media and the Debtors (the "**Defy Media Agreement**").

54.     Amendments to DIP Loan Documents.  The DIP Loan Documents are hereby amended as follows, with retroactive effect to the Petition Date, to reflect the agreement of Debtors, the DIP Agent, the DIP Lenders and the Statutory Committee:

(a)     Interest Rate.  The definition of "Applicable Interest Rate" in the DIP Credit Agreement is amended to mean "a rate per annum equal to the greater of (a) Base Rate plus 3.00% and (b) 6.25%."

(b)     DIP Maintenance Fee.  The first sentence of Section 2.09(b) of the DIP Credit Agreement is amended to read "The Borrowers shall pay to the Agent, for its own account, a DIP maintenance fee payable in monthly installments of $10,000 through the Maturity Date or earlier payment

in full in cash of the Obligations and termination of the Commitments (the "DIP Maintenance Fee");
provided, however, that no DIP Maintenance Fee shall be payable for March 2015 or any month
thereafter unless an Event of Default shall have occurred and be continuing, in which case a pro rated
portion of the DIP Maintenance Fee shall accrue for so long as such Event of Default continues and shall
be payable on demand."

        (c)    <u>Exit Fee</u>.  Section 2.09(c) of the DIP Credit Agreement and all references to the
"DIP Exit Fee" therein are deleted.

        (d)    <u>DIP Carve Out</u>.

        (i)    The first sentence of the definition of "Carve-Out" in the DIP Credit
Agreement is amended to mean "collectively, the following expenses: (a) all fees required to be
paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee pursuant
to 28 U.S.C. §1930(a) and Section 3717 of title 31 of the United States Code and (b) upon the
occurrence of any Event of Default and delivery of a Carve-Out Trigger Notice, and solely to the
extent provided for in the Approved Budget and approved by the Bankruptcy Court, an aggregate
amount not to exceed the sum of (i) $500,000, which amount may be used subject to the terms of
the Interim Financing Order or Final Financing Order, as applicable, to pay (A) Allowed
Professional Fees and the reimbursement of expenses of the Statutory Committee and any
consumer privacy ombudsman appointed, in each case, incurred after the delivery of a Carve-Out
Trigger Notice, to the extent permitted by the Interim Financing Order or Final Financing Order,
as applicable, and (B) any Allowed Professional Fees of Case Professionals incurred but unpaid
prior to the receipt of the Carve-Out Trigger Notice, plus (ii) $25,000, which amount, subject to
the Final Order, shall be available to fund a wind-down budget in the event the Cases are
converted to cases under Chapter 7 of the Bankruptcy Code."

        (ii)    The definition of "Carve-Out Amount" in the DIP Credit Agreement is
amended to mean "an amount equal to the sum of (a) the amount of expenses under <u>clause (a)</u> of
the definition of Carve-Out <u>plus</u> (b) $525,000."

(e)    <u>Approved Budget Variance</u>.

(i)    Section 7.16(a) of the DIP Credit Agreement is amended to read "Permit the aggregate amount of receipts or the aggregate amount of disbursements in the Approved Budget Variance Report to vary by more than ten percent (10%) from the applicable results projected in the applicable Approved Budget with respect to the Cumulative Periods (except to the extent such actual results are more favorable)."

(ii)    The first sentence of the definition of "Approved Budget Variance Report" in the DIP Credit Agreement is amended to mean "a weekly report provided by the Lead Borrower to the Agent in accordance with <u>Section 6.01(b)</u> (a) showing the aggregate amounts for actual receipts and actual disbursements, noting therein all variances from amounts set forth for the Cumulative Periods in the Approved Budget, and shall include explanations for all material variances, and (b) certified by a Responsible Officer of the Lead Borrower."

(iii)    The definition of "Cumulative Periods" in the DIP Credit Agreement is amended to mean "each of (a) the three-week period up to and through the Saturday of the most recent week then ended and (b) the cumulative period from the Petition Date up to and through the Saturday of the most recent week then ended."

(f)    <u>DIP Collateral</u>.  The definition of "Collateral" in the Security Agreement (as defined in the DIP Credit Agreement) is amended to conform to the definition of "DIP Collateral" in paragraph 6 above.

(g)    <u>Commitment Reduction</u>.  The last sentence of the definition of "Aggregate Commitments" in the DIP Credit Agreement is amended to read "Upon the entry of the Final Financing Order, the Aggregate Commitments shall automatically and permanently be reduced to $10,000,000."

(h)    <u>Pyramid Liens</u>.  The second bullet point on Schedule 7.01 (Existing Liens) to the DIP Credit Agreement is amended to read "The "Pyramid Liens" referenced in footnote 4 of the Final Financing Order and as further defined in the order entered by the Bankruptcy Court in the Chapter 11 Case on December 24, 2014 [D.I. 109]."

(i)    <u>Budget for Committee Professionals</u>.  The amount set forth in the Budget for

Case Professionals of the Statutory Committee will be $675,000; <u>provided</u>, that nothing herein shall limit

the ability of the Case Professionals retained by the Statutory Committee from seeking payment of

allowed fees and expenses in excess of such amount from (i) the GUC Escrow Account (defined below)

or (ii) the Debtors' estates following the payment of the DIP Obligations in full.

55.    <u>GUC Escrow Account</u>.

(a)    The Court hereby authorizes, but does not require, the formation of an escrow

account for the benefit of the Debtors' Administrative Claimants and General Unsecured Creditors, each

as defined below (the "**GUC Escrow Account**").

(b)    The terms and conditions governing the GUC Escrow Account shall be

consistent with and shall not contravene the terms of this Final Order and shall be subject to negotiation

among the Debtors, the Statutory Committee and the DIP Agent and to documentation reasonably

acceptable to each of these parties without further order of the Court, provided that this Court shall retain

jurisdiction to hear and determine any dispute concerning the terms and conditions governing the GUC

Escrow Account.

(c)    If any or all of the Wind-Down Amount is not used, the unused portion of the

Wind-Down Amount shall be transferred to the GUC Escrow Account (collectively, the "**Unused**

**Funds**").

(d)    The Debtors shall receive and deposit the GUC Escrow Account Funds (as

defined below) in the GUC Escrow Account, and the GUC Escrow Account Funds shall be held in the

GUC Escrow Account in accordance with the terms of this Final Order; <u>provided</u>, that pending the

formation of the GUC Escrow Account, the Debtors shall hold all GUC Escrow Account Funds in a

segregated account and, until transferred to the GUC Escrow Account, such funds shall be subject in all

respects to this paragraph 55 and paragraph 56 below.  The GUC Escrow Account Funds shall be used

solely for payment to holders of any allowed administrative expenses for which payment is not made

from other assets of the Debtors' estates (the "**Administrative Claimants**") and, subject to paragraph 56

below, to holders of allowed general unsecured claims in these Cases (the "**General Unsecured Creditors**").  Any unsecured deficiency claim of the DIP Agent and the DIP Lenders following application of the proceeds of DIP Collateral (except for DIP Collateral constituting GUC Litigation Proceeds (as defined below)) to the DIP Obligations (the "**Deficiency Claim**") shall be an allowed general unsecured claim entitled to share in the GUC Escrow Account Funds in accordance with paragraph 56 below.

(e)     The Debtors, the Statutory Committee, and the DIP Agent shall work in good faith to reconcile the amount of the Deficiency Claim on a rolling basis.  Any dispute regarding the calculation of the Deficiency Claim shall be determined by the Court.

(f)     Unless and until the DIP Obligations shall have been paid in cash in full, and except with respect to (i) the DIP Carve Out as set forth in this Final Order, and (ii) the net proceeds of Avoidance Actions and D&O Claim Assets (the "**GUC Litigation Proceeds**") (as set forth in paragraph 56 below) and all other GUC Escrow Account Funds, neither the Statutory Committee, any Administrative Claimant nor any General Unsecured Creditor shall have any right, title or interest in any DIP Collateral or any other asset of the Debtors or any products or proceeds thereof.

(g)     Upon the satisfaction of the DIP Obligations in full, the DIP Agent's right to receive payment from GUC Litigation Proceeds shall terminate.

56.     <u>GUC Litigation Proceeds</u>.

(a)     Upon the entry of this Final Order, the DIP Agent shall release its liens against and interest in or to the GUC Litigation Proceeds as and when any such GUC Litigation Proceeds are collected and deposited in the GUC Escrow Account.  The DIP Agent shall receive payment of GUC Litigation Proceeds in accordance with this Final Order, including without limitation, this paragraph 56.  All GUC Litigation Proceeds shall be transferred to the GUC Escrow Account as and when they are collected, provided that no action shall be taken to pursue or distribute any GUC Litigation Proceeds until the terms of the GUC Escrow Account have been agreed upon by the Debtors, the Statutory Committee and the DIP Agent, or determined by the Court.

(b)      Notwithstanding anything to the contrary contained in this Final Order, GUC

Litigation Proceeds (together with the Unused Funds, the "**GUC Escrow Account Funds**") shall be

deposited into the GUC Escrow Account and distributed as follows:

(i)      If the Wind-Down Amount is not contributed to the GUC Escrow

Account:

(1)      First, one hundred percent (100%) of aggregate net GUC

Litigation Proceeds from $0.01 to $37,500.00 shall be available for distribution to

Administrative Claimants and General Unsecured Creditors as set forth in paragraph

55(d) of this Final Order (the "**GUC Distribution**"); and

(2)      Second, aggregate net GUC Litigation Proceeds in excess of

$37,500.00 shall be distributed fifty percent (50%) to the DIP Agent for application to the

Deficiency Claim and fifty percent (50%) shall be available for the GUC Distribution;

(ii)      If the Wind-Down Amount is contributed to the GUC Escrow Account:

(1)      First, one hundred percent (100%) of aggregate net GUC

Litigation Proceeds from $0.01 to $12,500.00 shall be available for the GUC

Distribution; and

(2)      Second, aggregate net GUC Litigation Proceeds in excess of

$12,500.00 shall be distributed fifty percent (50%) to the DIP Agent for application to the

Deficiency Claim and fifty percent (50%) shall be available for the GUC Distribution.

57.      Statutory Committee Stipulations.  In consideration for, *inter alia*, the agreements

contained in this Final Order, including but not limited to paragraphs 55 through 56 hereof, the Statutory

Committee agrees that the Committee Objection is resolved and the Statutory Committee supports the

entry of this Final Order.

58.      Survival of Agreement with Statutory Committee.  For the avoidance of doubt, if the

GUC Escrow Account is not established or the proceeds of Avoidance Actions or D&O Claim Assets are

distributed other than through the GUC Escrow Account, then the percentage allocation of litigation proceeds established under paragraph 56 of this Final Order shall survive and shall govern the DIP Agent's right to receive payment of such proceeds on account of the DIP Obligations.

59.    <u>Effect of this Final Order</u>.    This Final Order shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052 and shall take effect immediately, notwithstanding anything to the contrary proscribed by applicable law.

60.    <u>Retention of Jurisdiction</u>.    The Court has and will retain jurisdiction to enforce this Final Order according to its terms.


Dated:  January 9, 2015
        White Plains, New York

                                    _/s/Robert D. Drain_____
                                    UNITED STATES BANKRUPTCY JUDGE