**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| dELiA*s, INC., *et al.*, | Case No.  14-23678 (RDD) |
| Debtors.[1] | Jointly Administered |

## ORDER (A) APPROVING BIDDING PROCEDURES AND BID PROTECTIONS IN CONNECTION WITH THE SALE OF CERTAIN ASSETS, (B) APPROVING PROCEDURES FOR ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS, (C) APPROVING THE FORM AND MANNER OF NOTICE, AND (D) SCHEDULING AN AUCTION AND A SALE HEARING

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in

possession (collectively, the "Debtors"), for entry of an order (a) authorizing and approving the

bidding procedures with stalking horse bid protections in connection with the sale of the

Acquired Assets, (b) approving the form and manner of notice of the Auction and Sale Hearing,

(c) approving procedures for the assumption and assignment of Assumed Contracts and noticing

of related cure amounts, and (d) scheduling an Auction and a Sale Hearing, as more fully set

forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief

requested therein pursuant to 28 U.S.C. §§ 157(a)-(b) 1334(b), consideration of the Motion being

a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and venue being proper in this District

pursuant to 28 U.S.C. §§ 1408 and 1409; and it appearing that notice of the Motion was adequate

and proper under the circumstances of these Chapter 11 Cases and that no further or other notice

need be given; and there being no objections to the relief granted herein; and upon the record of

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  dELiA*s, Inc. (7172); dELiA*s Distribution Company (9076); A Merchandise, LLC (7639); dELiA*s Operating Company (3765); dELiA*s Retail Company (0036); dELiA*s Group Inc. (4035); AMG Direct, LLC (9236); dELiA*s Assets Corp. (3754); DACCS, Inc. (0225).  The mailing address for the Debtors, solely for purposes of notices and communications, is:  50 West 23rd Street, New York, NY 10010.
[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the

the hearing held by the Court on the Motion on February 9, 2015 ("Bid Procedures Hearing");

and the Court having determined that the relief requested in the Motion and granted herein is in

the best interests of the Debtors, their estates, and creditors and that the legal and factual bases

set forth in the Motion and at the Bid Procedures Hearing establish just cause for the relief

granted herein; and after due deliberation thereon and good and sufficient cause appearing

therefor,

#### IT IS HEREBY FOUND AND DETERMINED THAT:

A.      **Bidding Procedures**.  The Debtors have articulated good and sufficient reasons

for authorizing and approving the bidding procedures attached hereto as Exhibit 1 (the "Bidding

Procedures"), which are fair and reasonable and appropriate under the circumstances and

designed to maximize recovery on, and realizable value of, the Acquired Assets.

B.      **Stalking Horse Bid Protections**.  The Debtors have demonstrated a compelling

and sound business justification for authorizing the payment of the Break Up Fee and Expense

Reimbursement (together, the "Bid Protections") to the Stalking Horse Bidder, including that:

> i.      the Bid Protections are the product of negotiations between the Debtors,
> the Agents, and the Stalking Horse Bidder conducted in good faith and at
> arm's length, and the Stalking Horse Agreement with respect to the
> Proposed Transaction is the culmination of a process undertaken by the
> Debtors, the Agents, and their respective professionals to negotiate a
> transaction with a bidder who was prepared to pay the highest or otherwise
> best purchase price to date for the Acquired Assets to maximize the value
> of the Debtors estates;
>
> ii.     the Bid Protections are an actual and necessary cost and expense of
> preserving the respective Debtors' estates;
>
> iii.    the Bid Protections are fair, reasonable and appropriate in light of, among
> other things, the size and nature of the Proposed Transaction, the
> substantial efforts that have been and will be expended by the Stalking
> Horse Bidder, notwithstanding that the Proposed Transaction is subject to
> higher or better offers, and the substantial benefits the Stalking Horse
> Bidder has provided to the Debtors, their estates and creditors and all

2

parties in interest herein, including, among other things, by increasing the likelihood that the best possible price for the Debtors' assets will be received;

iv.    the protections afforded to the Stalking Horse Bidder by way of the Bid Protections were material inducements for, and express conditions of, the Stalking Horse Bidder's willingness to enter into the Stalking Horse Agreement, and were necessary to ensure that the Stalking Horse Bidder would continue to pursue the proposed acquisition on terms acceptable to the Debtors in their sound business judgment, subject to competitive bidding; and

v.    the assurance of the payment of the Bid Protections has promoted more competitive bidding by inducing the Stalking Horse Bidder's bid, which otherwise would not have been made, without which competitive bidding would be limited, and which may be the highest and best available offer for the Acquired Assets, induced the Stalking Horse Bidder to conduct due diligence with respect to the Debtors' business, assets, operations and liabilities, and propose the sale of the Acquired Assets contemplated by the Stalking Horse Agreement, including, among other things, submission of a bid that will serve as a minimum or floor bid on which all other bidders can rely and increases the likelihood that the final purchase price reflects the true value of the Debtors' assets.

C.    **Auction and Sale Notice**.  The form of Auction and Sale Notice attached hereto as Exhibit 2 is reasonably calculated to provide all interested parties with timely and proper notice of the proposed sale of the Acquired Assets, including: (i) the date, time and place of the Auction (if one is held); (ii) the Bidding Procedures and certain dates and deadlines related thereto; (iii) the Sale Objection Deadline and the date, time and place of the Sale Hearing; (iv) reasonably specific identification of Acquired Assets; (v) instructions for promptly obtaining a copy of the Stalking Horse Agreement; (vi) representations describing the sale of the Acquired Assets as being free and clear of liens, claims, interests and other encumbrances, except as expressly provided in the applicable purchase agreement, with all such liens, claims, interests and other encumbrances attaching with the same validity and priority to the sale proceeds; (vii) the commitment by the Stalking Horse Bidder to assume certain liabilities of the Debtors; and

3

(viii) notice of the proposed assumption and assignment of Assumed Contracts to the Stalking

Horse Bidder pursuant to the Stalking Horse Agreement (or to another Successful Bidder arising

from the Auction, if any) and the right, procedures and deadlines for objecting thereto. No other

or further notice of the Auction and Sale Hearing shall be required.

> D.    **Assumption Procedures**. The Assumption and Assignment Notice are

reasonably calculated to provide counterparties to the Assumed Contracts with proper notice of

the intended assumption and assignment of their executory contracts, any cure amounts relating

thereto and the Assumption and Assignment Procedures.

> **NOW, THEREFORE, IT IS ORDERED THAT:**

> 1.    The Motion is granted to the extent set forth herein.

**I.    Important Dates and Deadlines**:

> 2.    **Sale Hearing**:  February 23, 2015, at 10:00 a.m. (Eastern Time), is the date and

time that the hearing to approve the Proposed Transaction (the "Sale Hearing") will be held

before the Honorable Robert D. Drain, United States Bankruptcy Judge in the United States

Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, Courtroom 118,

White Plains, New York 10601.  **Please take notice** that the Sale Hearing may be adjourned

without further notice other than announcement in open Court or on the Court's calendar.

> 3.    **Sale Objection Deadline**: February 22, 2015, at 4:00 p.m. (Eastern Time), is the

deadline to object to entry of the proposed Sale Order (the "Sale Objection Deadline").

Objections, if any, must: (i) be in writing; (ii) conform to the applicable provisions of the

Bankruptcy Rules, the Local Bankruptcy Rules and any orders of the Court; (iii) state with

particularity the legal and factual basis for the objection and the specific grounds therefor; and

(iv) filed with the Court and served (with a copy to the Court's chambers) so the objection is

actually received no later than the Sale Objection Deadline by the following parties (the "Notice

Parties"):

| Debtors | Counsel to the Debtors |
|---|---|
| dELiA*s, Inc.<br>50 West 23rd Street<br>New York, New York 10010<br>Attn: Ryan A. Schreiber, Esq. | DLA Piper LLP (US)<br>1251 Avenue of the Americas, 25th Floor<br>New, York, New York 10020<br>Attn: Gregg Galardi, Esq.<br>    Dienna Corrado, Esq. |
| **United States Trustee** | **Proposed Counsel to the Committee** |
| Office of the United States Trustee for<br>the Southern District of New York<br>201 Varick Street, Suite 1006<br>New York, New York 10014<br>Attn: Richard C. Morrissey, Esq.<br>    Serene Nakano, Esq. | Kelley Drye & Warren LLP<br>101 Park Avenue<br>New York, NY 10178<br>Attn: Robert L. LeHane, Esq.<br>    Gilbert R. Saydah, Jr., Esq. |
| **Counsel to the DIP Agent** | **Counsel to the Stalking Horse Bidder** |
| Choate, Hall & Stewart LLP<br>Two International Place<br>Boston, MA 02110<br>Attn: John F. Ventola, Esq.<br>    Seth Mennillo, Esq. | Greenberg Traurig, P.A.<br>401 E. Las Olas Boulevard, Suite 2000<br>Fort Lauderdale, FL 33301<br>Attn:  Mathew Hoffman, Esq.<br>Telephone: (954) 768-8203<br>Facsimile: (954) 759-5532<br>Email: hoffmanma@gtlaw.com |
| **Agents Under the Agency Agreement** | |
| Gordon Brothers Retail Partners, LLC<br>Prudential Tower<br>800 Boylston Street<br>Boston, MA 02119<br>Attn: Michael Chartock | Hilco Merchant Resources, LLC<br>5 Revere Drive, Suite 206<br>Northbrook, IL 60062<br>Attn: Ian S. Fredericks |

**The failure to timely file an objection in accordance with this order shall bar the assertion of any objection to the Motion, entry of the Sale Order and/or consummation of the Proposed Transaction, including the assumption and assignment of the Assumed Contracts to the Successful Bidder pursuant to the Stalking Horse Agreement, and shall be deemed to constitute any such party's consent to entry of the Sale Order and consummation of the Proposed Transactions and all transactions related thereto.**

4.    **Bidding Dates and Deadlines:** The following dates and deadlines with respect to

bidding on the Acquired Assets are hereby established (subject to modification as needed):

a)    Bid Deadline: February 18, 2015 at 12:00 p.m. prevailing Eastern Time, is
the deadline by which all "Qualified Bids" (as defined in the Bidding

Procedures) must be actually received by the parties specified in the Bidding Procedures (the "Bid Deadline"); and

b)   Auction: February 19, 2015 at 10:00 a.m. prevailing Eastern Time, is the date and time the Auction, if one is needed, will be held at the offices of counsel to the Debtors: DLA Piper LLP (US) 1251 Avenue of the Americas, 27th Floor, New, York, New York 10020.

**II.    Bidding Procedures and Related Relief**

5.    The Bidding Procedures, substantially in the form attached hereto as Exhibit 1 and incorporated by reference as though fully set forth herein, are hereby approved.  The Bidding Procedures shall govern the submission, receipt and analysis of all bids relating to the Proposed Transaction, and any party desiring to submit a higher or better offer for the Acquired Assets shall do so strictly in accordance with the terms of the  Bidding Procedures and this Order.

6.    As described in the Bidding Procedures, if the Debtors do not receive any Qualified Bids other than from the Stalking Horse Bidder or if no Qualified Bidder other than the Stalking Horse Bidder indicates its intent to participate in the Auction, the Debtors  will not hold the Auction, the Stalking Horse Bidder will be named the Successful Bidder and the Debtors will seek approval of the Stalking Horse Agreement at the Sale Hearing.  If one or more Qualified Bids is timely received from a Qualified Bidder (other than the Stalking Horse Bidder) in accordance with the Bidding Procedures, the Debtors shall conduct the Auction as set forth herein.

7.    If the Auction is conducted, each Qualified Bidder participating in the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding process or the Proposed Transaction, and the Auction will be conducted openly and shall be either transcribed or videotaped.

8.    The Bid Protections described in the Motion and set forth in the Stalking Horse Agreement are hereby approved to the extent set forth herein.  If the Stalking Horse Bidder

becomes entitled to receive the Bid Protections in accordance with the terms of Stalking Horse

Agreement, (a) the Debtors are authorized, upon the closing of the Successful Bid or the Back-

Up Bid (as applicable) and the payment of the purchase price for the Acquired Assets to pay

from the proceeds of such purchase price any and all amounts owing to the Stalking Horse

Bidder in accordance with the terms of the Stalking Horse Agreement, including the Break Up

Fee and Expense Reimbursement, without further action or order by the Bankruptcy Court, in

accordance with the terms and conditions of the Stalking Horse Agreement and this Order, and

(b) the Stalking Horse Bidder shall be, and hereby is, granted an allowed administrative claim in

the Debtors' Chapter 11 Cases in an amount equal to the Break-Up Fee and Expense

Reimbursement under sections 503(b)(1) and 507(a)(2) of the Bankruptcy Code, to be paid from

the proceeds of the Successful Bid or the Back-Up Bid, as applicable.

9.     No person or entity, other than the Stalking Horse Bidder, shall be entitled to any

expense reimbursement, break-up fee, "topping," termination or other similar fee or payment.

**III.     Auction and Sale Notice and Related Relief**

10.     The Auction and Sale Notice, substantially in the form attached hereto as <u>Exhibit</u>

<u>2</u> is hereby approved.

11.     Within (3) business days following the entry of the Bidding Procedures Order, the

Debtors shall serve the Auction and Sale Notice by first class mail upon the following parties:

(i) the Office of the United States Trustee for the Southern District of New York; (ii) counsel to

Salus Capital Partners, LLC, as lender and administrative agent (the "<u>DIP Agent</u>") under the

Debtors' postpetition financing credit facility; (iii) counsel to General Electric Capital

Corporation as the issuer of the prepetition letter of credit agreement; (iv) proposed counsel for

the Committee; (v) the Internal Revenue Service; (vi) the United States Attorney for the

Southern District of New York, (vii) the U.S. Securities and Exchange Commission; (viii) any

party known or reasonably believed to have asserted any lien, claim or encumbrance or other

interest in the Acquired Assets; (ix) any party known or reasonably believed to have expressed

an interest in acquiring any of the Acquired Assets; and (x) the consumer privacy ombudsman

appointed in these Chapter 11 Cases; (x)  entities known or reasonably believed to have any such

other party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(b).  No

other or further notice need be given.

**IV.**        **The Assumption Procedures and Related Relief**

12.    The procedures set forth below regarding the assumption of the Assumed

Contracts pursuant to section 365(b) of the Bankruptcy Code and assigned to the Stalking Horse

Bidder (or other successful bidder arising from the Auction, if any) pursuant to section 365(f) of

the Bankruptcy Code in connection with the Proposed Transaction are hereby approved to the

extent set forth herein (the "Assumption Procedures").

13.    These Assumption Procedures shall govern the assumption and assignment of all

Assumed Contracts assumed and assigned in connection with the Proposed Transaction:

> **a.**    Assumption and Assignment Notice.  The Debtors shall serve by February
> 15, 2015 the Assumption and Assignment Notice, substantially in the form
> attached hereto as Exhibit 3 by first class mail on all Assumed Contract
> Counterparties, by email to their counsel of record (if known), and provide
> a copy of the same to the Stalking Horse Bidder.  The Assumption and
> Assignment Notice shall inform each recipient that its respective contract
> may be designated as Assumed Contract in connection with the Proposed
> Transaction and shall contain (i) the title of the Assumed Contract, (ii) the
> name of the Assumed Contract Counterparty, (iii) the Debtors' good faith
> estimate of the cure amounts required in connection with such Assumed
> Contract, (iv) the identity of Stalking Horse Bidder; and (v) the deadline
> by which the Assumed Contract Counterparty must file an objection to the
> proposed assumption and assignment and/or cure amount, and (vi) the
> Assumption Procedures relating thereto; provided, however, that service
> of an Assumption and Assignment Notice does not constitute an admission
> that such Assumed Contract is an executory contract.  To the extent

additional Assumed Contracts are identified after February 15, 2015 (each, an "Additional Assumed Contract"), the Debtors shall promptly serve a supplemental Assumption and Assignment Notice on the counterparties to such Additional Assumed Contracts (and their counsel, if known), by email or overnight mail.

**b.**     Objections.  Objections, if any, to the proposed assumption and assignment of the Assumed Contract or the cure amount proposed with respect thereto, must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules and Case Management Order entered in these Chapter 11 Cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed cure amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court and served upon, so as to be actually received by, the Notice Parties (with a copy to the Court's chambers) before the Sale Objection Deadline, provided however, that (i) objections to the assumption and assignment of any Additional Assumed Contract, including the cure amount proposed with respect thereto, may be filed up until the time of the Sale Hearing, and (ii) the Court may extend the objection deadline with respect to any non-cure objections to the assumption and assignment of any Assumed Contract to any Successful Bidder with the exception of the Stalking Horse Bidder.

**c.**     Dispute Resolution.  Any objection to the assumption and assignment of a contract or cure amount proposed in connection with the Proposed Transaction that remains unresolved as of the Sale Hearing, shall be heard at the Sale Hearing (or at a later date as fixed by the Court).  If there is an unresolved objection to the assumption and assignment of an Additional Assumed Contract, or the cure amount proposed with respect thereto, such objection shall not be heard at the Sale Hearing and shall be set for hearing at a later date fixed by the Court on or at least seven (7) days' prior notice, unless otherwise agreed to in writing between the parties.

14.     Any party failing to timely file an objection to the cure amount listed on the Assumption and Assignment Notice (a) shall be forever barred from objecting thereto, including making any demands for additional cure amounts or monetary compensation on account of any alleged defaults against the Debtors, their estates, the Stalking Horse Bidder, or other successful bidder arising from the Auction, if any, with respect to any such Assumed Contract, and (b) shall be deemed to consent to the Proposed Transaction.

9

15.     The Debtors are authorized to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this Order.

16.     For the avoidance of doubt, the Acquired Assets to be sold by the Debtors and the Assumed Contracts to be assigned by the Debtors shall include only property of the Debtors and shall not include the property of any other entity (including, without limitation, dELiA*s Brand LLC (the "IP SPV")).  Nothing in this Order, the Bidding Procedures or the Stalking Horse Agreement shall (A) prejudice or affect in any way any right or obligation of any of the Debtors or of the IP SPV under law or any agreement (including, without limitation, the Limited Liability Company Agreement of the IP SPV), to seek the consent (if any such consent is required) of JLP Daisy LLC or its designee, successor or assign in connection with (I) the assumption or assignment to the Stalking Horse Bidder or any other person or entity, amendment, supplement, change, alteration or other modification of any of the Acquired Assets (including, without limitation, that certain Trademark License Agreement, dated as of February 24, 2003, between the IP SPV and dELiA*s Corp. (as it may have been amended, supplemented or otherwise modified prior to the date hereof)) or (ii) the sale, transfer, pledge or other disposition or encumbrance of any equity interests in the IP SPV, or (B) constitute a finding that such consent has been provided or is required.  For the avoidance of doubt, nothing set forth in this Order, the Bidding Procedures or the Stalking Horse Agreement shall prevent the Debtors, the Agent or any other person from asserting that JLP Daisy LLC does not have any such rights.  Furthermore, JLP Daisy LLC expressly reserves the right to assert, and nothing in this Order, the Bidding Procedures or the Stalking Horse Agreement shall prevent JLP Daisy LLC from asserting, that any or all of the Acquired Assets is not owned by the Debtors (as opposed to the IP SPV or any

10

other party), and the Debtors' rights and the rights of other parties in interest with respect thereto

are expressly reserved and are not waived.

17.     This Order shall be effective and enforceable immediately upon entry.

18.     This Court retains jurisdiction with respect to all matters arising from or related to

the implementation of this Order.

Dated: February 10, 2015
        White Plains, New York

                                        /s/ Robert D. Drain
                                        UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT 1 TO BIDDING PROCEDURES ORDER

**Bidding Procedures**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Chapter 11 |
| dELiA*s, INC., *et al.*, | Case No.  14-23678 (RDD) |
| Debtors.[1] | Jointly Administered |

## BIDDING PROCEDURES

These bidding procedures (the "Bidding Procedures") have been approved by an order of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered on February [*], 2015 [Docket No. *] (the "Bidding Procedures Order") in the above-captioned jointly administered Chapter 11 cases (the "Chapter 11 Cases") of dELiA*s, Inc. and its debtor affiliates (collectively, the "Debtors" or "Merchant").

These Bidding Procedures set forth the process by which the Debtors are authorized to conduct the auction (the "Auction") for the sale (the "Sale") of certain assets (the "Acquired Assets") on the terms substantially set forth in the Letter Agreement, dated as of January 28, 2015, by and among the Debtors, the Agents[2] and the Stalking Horse Bidder,[3] a copy of which is attached hereto as Exhibit A (the "Stalking Horse Agreement").  The Acquired Assets consist of:

        (a)        All of the Merchant's membership interests in dELiA*s Brand LLC;

        (a)        All of the Merchant's rights, title, and interests in and to the Acquired IP (as defined in the Stalking Horse Agreement, which excludes any and all intellectual property owned by Defy Media, LLC ("Defy Media") under the Media Services Agreement between Defy Media and the Merchant (the "Defy Media Agreement"), absent Defy Media's written consent, but does include the Debtors' rights under such agreement);

        (b)        All of the Merchant's rights, title and interests in Other Assets (as defined in the Stalking Horse Agreement) of Merchant as set forth on the list attached to the Stalking Horse Agreement as Schedule 2.1(c).

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  dELiA*s, Inc. (7172); dELiA*s Distribution Company (9076); A Merchandise, LLC (7639); dELiA*s Operating Company (3765); dELiA*s Retail Company (0036); dELiA*s Group Inc. (4035); AMG Direct, LLC (9236); dELiA*s Assets Corp. (3754); DACCS, Inc. (0225).  The mailing address for the Debtors, solely for purposes of notices and communications, is:  50 West 23rd Street, New York, NY 10010.

[2] On December 4, 2014, the Debtors entered into an agency agreement (and as later amended, the "Agency Agreement") with Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC (collectively, the "Agents") to, among other things, liquidate all merchandise and inventory owned by the Debtors and dispose of certain furnishings, trade fixtures, and equipment located at the Debtors' stores and, at the Debtors' option, the Debtors' distribution center.

[3] Butterfly Retail Acquisition LLC.

The Sale of the Acquired Assets will be implemented pursuant to the terms and conditions of the Stalking Horse Agreement, as the same may be amended pursuant to the terms hereof, subject to the receipt of higher and otherwise better bids in accordance with these Bidding Procedures.  Please take notice that all capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Stalking Horse Agreement.

> **Copies of the Bidding Procedures Order, the Stalking Horse Agreement and other documents related thereto are available free of charge on the website of the Debtors' noticing and claims agent, Prime Clerk LLC, at http://cases.primeclerk.com/delias, or upon request by contacting Prime Clerk, by telephone at (855) 842-4126, or by e-mail at deliasinfo@primeclerk.com.**

**A.      Approval of Stalking Horse Bid Protections.**

The Bidding Procedures Order approved, among other things, the approval of (i) a fee equal to 3% of the cash portion of the Payment Amount (the "Break Up Fee"); and (ii) reimbursement of expenses for up to $50,000 in documented, out of pocket expenses (the "Expense Reimbursement", and together with the Break Up Fee, the "Bid Protections") which is payable to the Stalking Horse Bidder in the event the Bankruptcy Court approves the Sale of the Acquired Assets to any other person or entity other than the Stalking Horse Bidder.

**B.      Participation Requirements.**

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person (other than the Stalking Horse Bidder) interested in submitting a Bid must, on or before February 18, 2015 at 12:00 p.m. (Eastern Time) (the "Bid Deadline") deliver (unless previously delivered) the following documents along with an offer for the Acquired Assets in accordance with Section D below (the "Bid Documents"):

   a.   an executed confidentiality agreement on terms reasonably acceptable to the Debtors and containing terms in the aggregate no less favorable to the Debtors in any material respect (other than with respect to the effective periods and the non-disclosure and non-solicitation provisions contained therein, all of which terms shall be commercially reasonable) than those contained in the confidentiality agreement by and among the Stalking Horse Bidder (or its affiliate), the Debtors and certain of their respective affiliates (the "Confidentiality Agreement"); and

   b.   preliminary proof by the Potential Bidder of its financial capacity to close a proposed transaction, which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach), the adequacy of which the Debtors and its advisors will determine in consultation with (i) the official committee of unsecured creditors in the Chapter 11 Cases (the "Committee"); and (ii) Salus Capital Partners, LLC, lender and administrative agent under the Debtors' postpetition credit facility (the "DIP Agent", and together with the Committee, the "Consultation Parties").

The Bid Documents shall be delivered to the following parties (collectively, the "Notice Parties"):

| Debtors | Counsel to the Debtors |
|---|---|
| dELiA*s, Inc. <br> 50 West 23rd Street <br> New York, New York 10010 <br> Attn: Ryan A. Schreiber, Esq. | DLA Piper LLP (US) <br> 1251 Avenue of the Americas, 25th Floor <br> New, York, New York 10020 <br> Attn: Gregg Galardi, Esq. <br> Dienna Corrado, Esq. |
| **Counsel to the DIP Agent** | **Proposed Counsel to the Committee** |
| Choate, Hall & Stewart LLP <br> Two International Place <br> Boston, MA 02110 <br> Attn: John F. Ventola, Esq. <br> Seth Mennillo, Esq. | Kelley Drye & Warren LLP <br> 101 Park Avenue <br> New York, NY 10178 <br> Attn: Robert L. LeHane, Esq. <br> Gilbert R. Saydah, Jr., Esq. |
| **Agents Under the Agency Agreement** | |
| Gordon Brothers Retail Partners, LLC <br> Prudential Tower <br> 800 Boylston Street <br> Boston, MA 02119 <br> Attn: Michael Chartock | Hilco Merchant Resources, LLC <br> 5 Revere Drive, Suite 206 <br> Northbrook, IL 60062 <br> Attn: Ian S. Fredericks |

Within two (2) days after a Potential Bidder delivers the Bid Documents, the Debtors shall determine, in consultation with its advisors and the Consultation Parties, and notify the Potential Bidder whether such Potential Bidder has submitted acceptable Bid Documents so that the Potential Bidder may conduct a due diligence review with respect to the Acquired Assets. Only those Potential Bidders that have submitted acceptable Bid Documents (each, an "Acceptable Bidder") may submit bids. The Debtors will promptly send via e-mail a copy of the Bid Documents of any Acceptable Bidder to the consumer privacy ombudsman (the "Ombudsman") appointed in these Chapter 11 Cases. The Stalking Horse Bidder shall at all times be deemed an Acceptable Bidder.

**C.    Access to Due Diligence.**

Only Acceptable Bidders shall be eligible to receive due diligence and access to additional non-public information. The Debtors shall provide to each Acceptable Bidder reasonable due diligence information, as requested, as soon as reasonably practicable after such request, which information shall be commensurate with that information given to the Stalking Horse Bidder. To the extent the Debtors provide any information to any Acceptable Bidder that they had not previously provided to the Stalking Horse Bidder, the Debtors shall promptly provide such information to the Stalking Horse Bidder. The due diligence period will end on the Bid Deadline (as defined herein) and the Debtors shall have no obligation to furnish any due diligence information after the Bid Deadline.

In connection with the provision of due diligence information to Acceptable Bidders, the Debtors shall not, except with respect to the Acquired Assets, furnish any other confidential information relating to the Debtors, the Debtors' assets or liabilities, or the Sale to any person except an Acceptable Bidder or such Acceptable Bidder's duly-authorized representatives to the extent provided in the applicable Confidentiality Agreement.

The Debtors along with their advisors shall coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; *provided, however,* the Debtors may decline to provide such information to Acceptable Bidders who, in the Debtors' reasonable business

judgment and following consultation with the Consultation Parties, have not established that such Acceptable Bidders intend in good faith to, or have the capacity to, consummate their Bid. No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

Each Acceptable Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Debtors' assets and liabilities that are the subject of the Auction prior to making any such bids; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise regarding the Debtors' assets or liabilities, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or the Stalking Horse Agreement. Neither the Debtors nor any of their employees, officers, directors, affiliates, subsidiaries, representatives, agents, advisors or professionals are responsible for, and shall bear no liability with respect to, any information obtained by Acceptable Bidders in connection with the Sale.

> The Debtors have designated [*] to coordinate all reasonable requests for additional information and due diligence access.

**D.     Bid Requirements.**

To be eligible to participate in the Auction, an Acceptable Bidder (other than the Stalking Horse Bidder) must deliver to (i) the Debtors, (ii) its advisors and (iii) counsel to the Agent, which shall be shared with the other Notice Parties within one (1) business day following receipt thereof, a written, irrevocable offer that must be determined by the Debtors, in consultation with the Consultation Parties, to satisfy each of the following conditions:

a.   **Bid Deposit.**  Each Bid (other than the Stalking Horse Bid) must be accompanied by a 10% cash deposit of the proposed purchase price (the "Good Faith Deposit"), which shall be sent to counsel to the Debtors by wire transfer, which amount shall be deposited in an interest-bearing account;

b.   **Minimum Bid Amount.**  The value of each Bid must exceed the aggregate sum of the following: (i) the Stalking Horse Bid; (ii) the Bid Protections; and (iii) the minimum bid increment in an amount to be determined by the Debtors, in consultation with the Consultation Parties (all of which must be in the form of cash, and/or the assumption of administrative expense liabilities except to the extent of any secured debt that is being credit bid);

c.   **Good Faith Offer.**  Each Bid must constitute a good faith, bona fide offer to purchase the Acquired Assets, subject to the Permitted Encumbrances;

d.   **Same or Better Terms/Identification of Assumed Contracts**.  Each Bid must be accompanied by clean and duly executed transaction documents (including schedules and exhibits thereto that identify with particularity which of the Debtors' contracts the Acceptable Bidder seeks to have assigned, along with a copy of the Stalking Horse Agreement that is marked to reflect the amendments and modifications from such agreement, which modifications may not be materially more burdensome to the Debtors than the Stalking Horse Agreement or inconsistent with these Bidding Procedures;

e.  **No Contingencies.**  A Bid must not be conditioned on any contingency, including, among others, on obtaining any of the following: (i) financing, (ii) shareholder, board of directors or other approval, (iii) the outcome or completion of a due diligence review by the Acceptable Bidder; (iv) the Acquired Assets free and clear of the Permitted Encumbrances; and/or (v) any third party consents;

f.  **Irrevocable.**  Each Bid must remain irrevocable until 48 hours after the Sale Hearing (as defined below);

g.  **Joint Bids.**  The Debtors will be authorized to approve joint Bids in the Debtors' exercise of their reasonable good faith business judgment, following consultation with the Consultation Parties, on a case-by-case basis;

h.  **Adequate Assurance Information.**  Each Bid must be accompanied by sufficient and adequate financial and other information (the "Adequate Assurance Information") to demonstrate, to the satisfaction of the Debtors, following consultation with the Consultation Parties, that such Acceptable Bidder (i) has the financial wherewithal and ability to consummate the Sale of the Acquired Assets and the assumption of the Debtors' liabilities as set forth the Stalking Horse Agreement, including payment of any cure amount with respect to any contract that may be assigned with respect to the Sale. The Bid shall also identify a contact person that counterparties to any lease or contract may contact to obtain additional Adequate Assurance Information;

i.  **No Fees.**  The Bids must not be subject to any break up fee, transaction fee, termination fee, expense reimbursement or any similar type of payment or reimbursement.

**E.    Qualified Bids.**

Bids, or a combination of one or more Bids, fulfilling all of the preceding requirements shall be deemed to be "Qualified Bids," and those parties submitting Qualified Bids shall be deemed to be "Qualified Bidders."

Within two (2) days after the Bid Deadline, the Debtors, in consultation with the Consultation Parties shall determine which Acceptable Bidders are Qualified Bidders after consultation with their advisors and will notify the Acceptable Bidders whether Bids submitted constitute, alone or together with other Bids, Qualified Bids so as to enable such Qualified Bidders to bid at the Auction (as defined below). Any Bid that is not deemed a "Qualified Bid" shall not be considered by the Debtors.

The Stalking Horse Bidder shall be deemed to be a Qualified Bidder.  The Stalking Horse APA submitted by the Stalking Horse Bidder shall be deemed a Qualified Bid, qualifying the Stalking Horse Bidder to participate in the Auction.

**F.    Bid Deadline.**

Qualified Bids must be received by each of the Debtors, the Stalking Horse Bidder, the Agent, their respective advisors and the advisors to the Committee and the DIP Agent,  in each case so as to be actually **received no later than the Bid Deadline of February 18, 2015 at 12:00 p.m. (prevailing Eastern Time).**

5

G.    **Evaluation of Qualified Bids.**

Prior to the Auction, the Debtors shall evaluate Qualified Bids and, in consultation with their advisors and the Consultation Parties, identify the Qualified Bid that is, in the Debtors' judgment, the highest or otherwise best bid (the "Starting Bid"). Within 24 hours of such determination, but in no event later than one (1) Business Day prior to the date of the Auction, the Debtors' shall notify the Stalking Horse Bidder and the other Qualified Bidders as to which Qualified Bid is the Starting Bid. The Debtors shall distribute copies of the Starting Bid to each Qualified Bidder who submitted a Qualified Bid.

H.    **No Qualified Bids.**

If no Qualified Bids are received by the Bid Deadline, then the Auction will not occur, the Stalking Horse Agreement will be deemed the Successful Bid (as defined herein) and the Debtors and the Agent will pursue entry of an order by the Bankruptcy Court approving the Stalking Horse Agreement and authorizing the Sale of the Acquired Assets to the Stalking Horse Bidder at the Sale Hearing.

I.    **Auction.**

If one or more Qualified Bids is received by the Bid Deadline, then the Debtors shall conduct the Auction with respect to the Acquired Assets. The Auction shall commence on February 19, 2015 at 10:00 a.m. (Eastern Time) at the offices of DLA Piper LLP (US), 1251 Avenue of the Americas, 25th Floor, New York, New York 10020, or such later time (after consultation with the Consultation Parties) or other place as the Debtors shall timely notify the Stalking Horse Bidder and all other Qualified Bidders.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures")

a.    the Auction will be conducted openly;

b.    only the Qualified Bidders, including the Stalking Horse Bidder, shall be entitled to bid at the Auction;

c.    the Qualified Bidders, including the Stalking Horse Bidder, shall appear in person or through duly-authorized representatives at the Auction;

d.    only such authorized representatives of each of the Qualified Bidders, the Stalking Horse Bidder, Agents, the Committee, the DIP Agent, the Debtors, and their respective advisors, shall be permitted to attend the Auction;

e.    bidding at the Auction shall begin at the Starting Bid; subsequent Bids at the Auction, including any Bids by Stalking Horse Bidder, shall be made in minimum increments in an amount to be determined by the Debtors, in consultation with the Consultation Parties, to be announced at the Auction;

f.    each Qualified Bidder will be informed of the terms of the previous Bids;

g.    the bidding will be transcribed or videotaped to ensure an accurate recording of the bidding at the Auction;

h.    each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Sale; and

6

    i.      absent irregularities in the conduct of the Auction, the Bankruptcy Court will not consider Bids made after the Auction is closed; and the Auction shall be governed by such other Auction Procedures as may be announced by the Debtors after consultation with its advisors and the Consultation Parties from time to time on the record at the Auction; provided, that, any such other Auction Procedures shall not be inconsistent with any order of the Bankruptcy Court or with the provisions of the Stalking Horse Agreement with respect to these Bidding Procedures.

**J.**    **Acceptance of the Successful Bid.**

Upon the conclusion of the Auction (if such Auction is conducted), the Debtors, in the exercise of their reasonable, good-faith business judgment, and in consultation with the Consultation Parties, shall identify the highest or otherwise best Qualified Bid that in the exercise of their fiduciary duties the Debtors in good faith believe is materially more beneficial to the Debtors than the Stalking Horse Bid (the "Successful Bid"), which will be determined by considering, among other things:

    a.      the number, type and nature of any changes to the Stalking Horse Agreement as appropriate;

    b.      the total expected consideration to be received by the Debtors;

    c.      the likelihood of the bidder's ability to close a transaction and the timing thereof; and

    d.      the expected net benefit to the estate.

The Qualified Bidder having submitted a Successful Bid will be deemed the "Successful Bidder". The Successful Bidder, the Debtors and the Agents shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments or other documents evidencing and containing the terms upon which such Successful Bid was made.

The Debtors will present the results of the Auction to the Bankruptcy Court at the Sale Hearing (as defined below), at which certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that (a) the Auction was conducted, and the Successful Bidder was selected, in accordance with these Bidding Procedures, (b) the Auction was fair in substance and procedure, (c) the Successful Bid was a Qualified Bid as defined in these Bidding Procedures and (d) consummation of the Successful Bid will provide the highest or otherwise best value for the Debtors' assets and is in the best interests of the Debtors' estates.

If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when (1) such Qualified Bid is declared the Successful Bid at the Auction and (2) definitive documentation has been executed in respect thereof.  Such acceptance is conditioned upon approval by the Bankruptcy Court of the Successful Bid and entry of the Sale Order approving such Successful Bid.

**K.**    **Sale Hearing.**

A hearing to consider approval of the Qualified Bid submitted by the Successful Bidder (or to approve the Stalking Horse Agreement if no Auction is held) (the "Sale Hearing") is presently scheduled to take place on February 23, 2015 at 10:00 a.m. (prevailing Eastern Time), or as soon thereafter as counsel may be heard, before the Honorable Robert D. Drain, United States Bankruptcy

Judge in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, Courtroom 118, White Plains, New York 10601.

**The Sale Hearing may be adjourned to a later date by the Debtors, in consultation with the Consultation Parties, by the filing a notice of adjournment or making an announcement at the Sale Hearing.  No further notice of any such continuance will be required to be provided to any party.**

**L.      Designation of Back-Up Bidder.**

If for any reason the Successful Bidder fails to consummate the Qualified Bid within the time permitted after the entry of the Sale Order approving the Sale to the Successful Bidder, then the Qualified Bidder with the second highest or otherwise best Bid (the "Back-Up Bidder"), as determined by the Debtors after consultation with their advisors, and in consultation with the Consultation Parties, at the conclusion of the Auction and announced at that time to all the Qualified Bidders participating therein, will automatically be deemed to have submitted the highest or otherwise best Bid (the "Back-Up Bid").

The Debtors will be authorized, but not required, to consummate the transaction pursuant to the Back-Up Bid as soon as is commercially reasonable without further order of the Bankruptcy Court upon at least twenty-four (24) hours advance notice, which notice will be filed with the Bankruptcy Court; it being understood that nothing herein shall require the Stalking Horse Bidder to be a Back-Up Bidder or its Bid to be a Back-Up Bid.  Upon designation of the Back-Up Bidder at the Auction, the Back-Up Bid shall remain open until the closing of the Successful Bid.

**M.      Break-up Fee.**

In the event that neither the Successful Bid nor the Back-Up Bid is made by the Stalking Horse Bidder, the Debtors and the Agent shall be obligated to pay to the Stalking Horse Bidder from the proceeds of the purchase price for the Acquired Assets, upon the closing of the Successful Bid or the Back-Up Bid (as applicable) and the payment of such purchase price, by wire transfer in immediately available funds to an account designated by the Stalking Horse Bidder, the Break-up Fee and Expense Reimbursement and any other amounts returnable to the Stalking Horse Bidder, in each instance in accordance with the applicable provisions of the Stalking Horse Agreement.

**N.      Return of Good Faith Deposit.**

The Good Faith Deposit of the Successful Bidder shall, upon consummation of the Successful Bid, be credited to the purchase price paid for Debtors' assets and liabilities.  If the Successful Bidder fails to consummate the Successful Bid, then the Good Faith Deposit shall be forfeited to, and retained irrevocably by, the Debtors.

The Good Faith Deposit of any unsuccessful Qualified Bidders will be returned within fifteen (15) days after consummation of the Sale of the Acquired Assets

**O.      Reservation of Rights.**

The Debtors reserve their rights to modify these Bidding Procedures, in consultation with the Consulting Parties, in any manner that will best promote the goals of the bidding process (subject to any restrictions set forth in the Stalking Horse Agreement) or impose, at or prior to the Auction, additional customary terms and conditions on the Sale of the Acquired Assets.

Notwithstanding anything herein or in the Bidding Procedures Order to the contrary, nothing will in any way impair or enhance, alter or otherwise affect any and all rights that any secured lender may have to "credit bid" pursuant to section 363(k) of the Bankruptcy Code or other applicable law.

**EXHIBIT A TO BIDDING PROCEDURES**

**STALKING HORSE AGREEMENT**

## EXHIBIT 2 TO BIDDING PROCEDURES ORDER

**Form of Auction and Sale Notice**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br><br>dELiA*s, INC., *et al.*,<br><br>                                        Debtors.[1] | Chapter 11<br><br>Case No.  14-23678 (RDD)<br><br>Jointly Administered |

### NOTICE OF SALE BY AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE** that, on January [*], 2015, dELiA*s, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned jointly administered cases (the "Chapter 11 Cases") filed a motion [Docket No. ___] (the "Sale Motion") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (a) authorizing and approving the bidding procedures with stalking horse bid protections in connection with the sale of the Acquired Assets, (b) approving the form and manner of notice of the Auction and Sale Hearing, (c) approving procedures for the assumption and assignment of Assumed Contracts and noticing of related cure amounts, and (d) scheduling an Auction and a Sale Hearing and setting other related dates and deadlines all as further described in the Sale Motion. On January [*], 2015, the Bankruptcy Court entered an order (the "Bidding Procedures Order")[2] approving certain bidding procedures attached thereto as Exhibit 1 (the "Bidding Procedures").

---

**Copies of the Sale Motion, Bidding Procedures Order, and other documents related thereto are available free of charge on the website of the Debtors' noticing and claims agent, Prime Clerk LLC, at http://cases.primeclerk.com/delias, or upon request by contacting Prime Clerk, by telephone at (855) 842-4126, or by e-mail at deliasinfo@primeclerk.com.**

---

**PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the purchase of the Acquired Assets (as defined in the Bidding Procedures).  All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order.  To the extent there are any inconsistencies between this notice and the Bidding Procedures, the latter shall govern in all respects.

**PLEASE TAKE FURTHER NOTICE** that, if the Debtors receive competing Qualified Bids within the requirements and time frame specified by the Bidding Procedures, the Debtors will conduct an auction (the "Auction") of the Acquired Assets on **February 19, 2015 at 10:00 a.m. (Eastern Time)** at the offices of counsel to the Debtors: DLA Piper LLP (US) 1251 Avenue of the Americas, 27th Floor, New, York, New York 10020.

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  dELiA*s, Inc. (7172); dELiA*s Distribution Company (9076); A Merchandise, LLC (7639); dELiA*s Operating Company (3765); dELiA*s Retail Company (0036); dELiA*s Group Inc. (4035); AMG Direct, LLC (9236); dELiA*s Assets Corp. (3754); DACCS, Inc. (0225).  The mailing address for the Debtors, solely for purposes of notices and communications, is:  50 West 23rd Street, New York, NY 10010.
[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order.

EAST\90483569.4

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the sale of the Acquired Assets at a hearing scheduled to commence on [February 23, 2015 at 10:00 a.m. (prevailing Eastern Time)] (the "Sale Hearing") or as soon thereafter as counsel may be heard, before the Honorable Robert D. Drain, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, Courtroom 118, White Plains, New York 10601.

**PLEASE TAKE FURTHER NOTICE** that objections to the proposed sale of the Acquired Assets, if any, must: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules, the Local Bankruptcy Rules and the Order Establishing Certain Notice, Case Management, and Administrative Procedures and Omnibus Hearing Dates [Docket No. 107] entered in these Chapter 11 Cases; (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) filed with the Court and served so the objection is actually received no later than the [DATE] (the "Sale Objection Deadline") by the following parties (the "Notice Parties"):

| Debtors | Counsel to the Debtors |
|---|---|
| dELiA*s, Inc.<br>50 West 23rd Street<br>New York, New York 10010<br>Attn: Ryan A. Schreiber, Esq. | DLA Piper LLP (US)<br>1251 Avenue of the Americas, 25th Floor<br>New, York, New York 10020<br>Attn: Gregg Galardi, Esq.<br>    Dienna Corrado, Esq. |
| **United States Trustee** | **Proposed Counsel to the Committee** |
| Office of the United States Trustee for the<br>Southern District of New York<br>201 Varick Street, Suite 1006<br>New York, New York 10014<br>Attn: Richard C. Morrissey, Esq.<br>    Serene Nakano, Esq. | Kelley Drye & Warren LLP<br>101 Park Avenue<br>New York, NY 10178<br>Attn: Robert L. LeHane, Esq.<br>    Gilbert R. Saydah, Jr., Esq. |
| **Counsel to the DIP Agent** | **Counsel to the Stalking Horse Bidder** |
| Choate, Hall & Stewart LLP<br>Two International Place<br>Boston, MA 02110<br>Attn: John F. Ventola, Esq.<br>    Seth Mennillo, Esq. | Greenberg Traurig, P.A.<br>401 E. Las Olas Boulevard, Suite 2000<br>Fort Lauderdale, FL 33301<br>Attn: Mathew Hoffman, Esq.<br>Telephone: (954) 768-8203<br>Facsimile: (954) 759-5532<br>Email: hoffmanma@gtlaw.com |
| **Agents Under the Agency Agreement** | |
| Gordon Brothers Retail Partners, LLC<br>Prudential Tower<br>800 Boylston Street<br>Boston, MA 02119<br>Attn: Michael Chartock | Hilco Merchant Resources, LLC<br>5 Revere Drive, Suite 206<br>Northbrook, IL 60062<br>Attn: Ian S. Fredericks |

2

**CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE AN OBJECTION**

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE SALE OF THE ACQUIRED ASSETS ON OR BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS AND THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS TO THE SUCCESSFUL BIDDER AND ANY CURE AMOUNTS RELATED THERETO.**

---

**NO SUCCESSOR OR TRANSFEREE LIABILITY**

The proposed Order approving the Sale of the Acquired Assets provides that the Successful Bidder will have no responsibility for, and the Acquired Assets will be sold free and clear of, any successor liability, including: (a) any debt, liability or other obligation of the Debtors of any kind or nature whatsoever of the Debtors or related to the Acquired Assets other than as expressly set forth in the Stalking Horse Agreement or (b) any claims against the Debtors or any of their predecessors or affiliates.

---

Dated:  New York, New York                 /s/ DRAFT
   February [*], 2015                  Gregg M. Galardi
               Dienna Corrado
               Arkady A. Goldinstein
               DLA PIPER LLP (US)
               1251 Avenue of the Americas
               New York, New York 10020
               Telephone:  (212) 335-4500
               Facsimile:  (212) 335-4501

               *Counsel for the Debtors and Debtors in Possession*

3

## EXHIBIT 3 TO BIDDING PROCEDURES ORDER

**Form of the Assumption and Assignment Notice**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | Chapter 11 |
| dELiA*s, INC., *et al.*, | Case No.  14-23678 (RDD) |
| Debtors.[1] | Jointly Administered |

## NOTICE OF ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS

**PLEASE TAKE NOTICE** that, on January [*], 2015, dELiA*s, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned jointly administered cases (the "Chapter 11 Cases") filed a motion [Docket No. ___] (the "Sale Motion") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (a) authorizing and approving the bidding procedures with stalking horse bid protections in connection with the sale (the "Sale") of the Acquired Assets, (b) approving the form and manner of notice of the Auction and Sale Hearing, (c) approving procedures for the assumption and assignment of Assumed Contracts and noticing of related cure amounts, and (d) scheduling an Auction and a Sale Hearing and setting other related dates and deadlines all as further described in the Sale Motion.  On January [*], 2015, the Bankruptcy Court entered an order (the "Bidding Procedures Order")[2] approving certain bidding procedures attached thereto as Exhibit 1 (the "Bidding Procedures").

---

**Copies of the Sale Motion, Bidding Procedures Order, and other documents related thereto are available free of charge on the website of the Debtors' noticing and claims agent, Prime Clerk LLC, at http://cases.primeclerk.com/delias, or upon request by contacting Prime Clerk, by telephone at (855) 842-4126, or by e-mail at deliasinfo@primeclerk.com.**

---

**PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the purchase of the Acquired Assets (as defined in the Bidding Procedures).  The Debtors have indicated on Schedule A attached hereto a list of the Debtors' executory contracts that the Debtors may be assumed and assigned to the Successful Bidder (each, a "Contract") along with the cure amounts that the Debtors believe must be paid to cure all prepetition defaults (in each instance, the "Cure Cost").

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the sale of the Acquired Assets at a hearing scheduled to commence on [February 23, 2015 at10:00 a.m. (prevailing Eastern Time)] (the "Sale Hearing") or as soon thereafter as counsel may be heard, before the Honorable Robert D. Drain, United States Bankruptcy Judge in the United States Bankruptcy Court

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  dELiA*s, Inc. (7172); dELiA*s Distribution Company (9076); A Merchandise, LLC (7639); dELiA*s Operating Company (3765); dELiA*s Retail Company (0036); dELiA*s Group Inc. (4035); AMG Direct, LLC (9236); dELiA*s Assets Corp. (3754); DACCS, Inc. (0225).  The mailing address for the Debtors, solely for purposes of notices and communications, is:  50 West 23rd Street, New York, NY 10010.
[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order.

for the Southern District of New York, 300 Quarropas Street, Courtroom 118, White Plains, New York 10601.

**PLEASE TAKE FURTHER NOTICE** that if you agree with the Cure Costs listed on Schedule A, you need not take any further action.

**PLEASE TAKE FURTHER NOTICE** that any party seeking to object to the validity of the Cure Costs (a "Cure Objection") as determined by the Debtors or otherwise assert that any other amounts, defaults, conditions or pecuniary losses must be cured or satisfied under any of the Contracts in order to be assigned to the Successful Bidder must filed an objection, which must: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules, the Local Bankruptcy Rules and the Order Establishing Certain Notice, Case Management, and Administrative Procedures and Omnibus Hearing Dates [Docket No. 107] entered in these Chapter 11 Cases; (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) filed with the Court and served so the objection is actually received no later than the [DATE] (the "Objection Deadline") by the following parties (the "Notice Parties"):

| Debtors | Counsel to the Debtors |
|---|---|
| dELiA*s, Inc.<br>50 West 23rd Street<br>New York, New York 10010<br>Attn: Ryan A. Schreiber, Esq. | DLA Piper LLP (US)<br>1251 Avenue of the Americas, 25th Floor<br>New, York, New York 10020<br>Attn: Gregg Galardi, Esq.<br>    Dienna Corrado, Esq. |
| **United States Trustee** | **Proposed Counsel to the Committee** |
| Office of the United States Trustee for the<br>Southern District of New York<br>201 Varick Street, Suite 1006<br>New York, New York 10014<br>Attn: Richard C. Morrissey, Esq.<br>    Serene Nakano, Esq. | Kelley Drye & Warren LLP<br>101 Park Avenue<br>New York, NY 10178<br>Attn: Robert L. LeHane, Esq.<br>    Gilbert R. Saydah, Jr., Esq. |
| **Counsel to the DIP Agent** | **Counsel to the Stalking Horse Bidder** |
| Choate, Hall & Stewart LLP<br>Two International Place<br>Boston, MA 02110<br>Attn: John F. Ventola, Esq.<br>    Seth Mennillo, Esq. | Greenberg Traurig, P.A.<br>401 E. Las Olas Boulevard, Suite 2000<br>Fort Lauderdale, FL 33301<br>Attn:  Mathew Hoffman, Esq.<br>Telephone: (954) 768-8203<br>Facsimile: (954) 759-5532<br>Email: hoffmanma@gtlaw.com |
| **Agents Under the Agency Agreement** ||
| Gordon Brothers Retail Partners, LLC<br>Prudential Tower<br>800 Boylston Street<br>Boston, MA 02119<br>Attn: Michael Chartock | Hilco Merchant Resources, LLC<br>5 Revere Drive, Suite 206<br>Northbrook, IL 60062<br>Attn: Ian S. Fredericks |

2

**CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE AN OBJECTION**

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE PROPOSED CURE COST SHALL BE (A) FOREVER BARRED FROM OBJECTING TO THE CURE COSTS AND FROM ASSERTING ANY ADDITIONAL CURE OR OTHER AMOUNTS WITH RESPECT OT THE CONTRACTS, AND THE DEBTORS AND THE SUCCESSFUL BIDDER SHALL BE ENTITLED TO RELY SOLELY UPON THE CURE COSTS LISTED ON EXHIBIT A, AND (B) FOREVER BARRED AND ESTOPPED FROM ASSERTING OR CLAIMING AGAINST THE DEBTORS OR THE SUCCESSFUL BIDDER THAT ANY ADDITIONAL AMOUNTS ARE DUE OR OTHER DEFAULTS EXIST.**

**PLEASE TAKE FURTHER NOTICE** that the hearing with respect to the Cure Objections may be held (i) at the Sale Hearing, or (ii) on such other date as the Bankruptcy Court may designate. To the extent the Debtors and non-Debtor counterparty to a Contract are able to consensually resolve the Cure Objection prior to the Sale Hearing, the Debtors shall promptly provide notice to the Committee and the Successful Bidder of such resolution. To the extent the Debtors and non-Debtor counterparty to a Contract are unable to consensually resolve the Cure Objection prior to the Sale Hearing, then the amount to be paid with respect to the Cure Cost will be determined at the Sale Hearing or at such other date and time as may be fixed by the Bankruptcy Court.

Dated:  New York, New York  
       February [*], 2015

*/s/ DRAFT*  
Gregg M. Galardi  
Dienna Corrado  
Arkady A. Goldinstein  
DLA PIPER LLP (US)  
1251 Avenue of the Americas  
New York, New York 10020  
Telephone:  (212) 335-4500  
Facsimile:  (212) 335-4501

*Counsel for the Debtors and Debtors in Possession*

3

## EXHIBIT A TO ASSUMPTION AND ASSIGNMENT NOTICE

### CONTRACTS

| Counterparty | Counterparty Address | Title/Description of Contract | \ Cure Cost |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |