Gregg M. Galardi
Dienna Corrado
Arkady A. Goldinstein
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 335-4500
Facsimile:  (212) 335-4501

*Counsel for the Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| dELiA*s, INC., *et al.*, | Case No. 14-23678 (RDD) |
| Debtors.[1] | Jointly Administered |

## DEBTORS' MOTION FOR ENTRY OF AN ORDER (I) APPROVING BIDDING PROCEDURES AND BID PROTECTIONS IN CONNECTION WITH THE SALE OF VISA/MASTERCARD CLAIM, (II) APPROVING THE FORM AND MANNER OF NOTICE, AND (III) SCHEDULING AN AUCTION AND A SALE HEARING

dELiA*s, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-captioned Chapter 11 cases (collectively, the "Debtors"), hereby file this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Bidding Procedures Order") with respect to the sale (the "Sale") of the claims (the "Visa/MasterCard Claim") the Debtors hold in the *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, Case No. 1:05-md-01720-JG-JO (the "Visa/MasterCard Case").  In support of the Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  dELiA*s, Inc. (7172); dELiA*s Distribution Company (9076); A Merchandise, LLC (7639); dELiA*s Operating Company (3765); dELiA*s Retail Company (0036); dELiA*s Group Inc. (4035); AMG Direct, LLC (9236); dELiA*s Assets Corp. (3754); DACCS, Inc. (0225).  The mailing address for the Debtors, solely for purposes of notices and communications, is:  50 West 23rd Street, New York, NY 10010.

## JURISDICTION AND VENUE

1.        This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory bases for the relief requested herein are pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code, as amended (the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 2002-1, 6004-1, and 6006-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

## BACKGROUND

2.        On December 7, 2014 (the "Petition Date"), the Debtors commenced these bankruptcy cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.        On December 12, 2014, an official committee of unsecured creditors (the "Committee") was appointed in these Chapter 11 cases.  As of the date hereof, no trustee or examiner has been appointed in these Chapter 11 Cases.  These Chapter 11 Cases are jointly administered for procedural purposes only.

4.        The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these Chapter 11 Cases, is set forth in detail in the *Declaration of Edward Brennan Pursuant to Local Bankruptcy Rule 1007-2 and in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") [Docket No. 16].

2

5.      On January 9, 2015, the Court entered the *Final Order (I) Authorizing Debtors to Obtain Postpetition Financing and Use Cash Collateral, (II) Granting Adequate Protection and (III) Granting Certain Related Relief* [Docket No. 140] (the "Final DIP Order"), authorizing the Debtors to enter into a postpetition financing credit facility with Salus Capital Partners, LLC, as lender and administrative agent (the "DIP Agent").

6.      Prior to the Petition Date, on December 4, 2014, the Debtors entered into an agency agreement (and as later amended, the "Agency Agreement") with Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC (collectively, the "Agents") to, among other things, liquidate all merchandise and inventory owned by the Debtors and dispose of certain furnishings, trade fixtures, and equipment located at the Debtors' stores and, at the Debtors' option, the Debtors' distribution center.

7.      On the Petition Date, the Debtors filed the *Debtors' Emergency Motion for Entry of Interim and Final Orders (A) (I) Approving the Debtors' Performance of Agency Agreement, (II) Authorizing the Debtors' to Sell Certain Assets Through Store Closing Sales, (III) Authorizing the Debtors to Abandon Unsold Property, (IV) Waiving Compliance With Contractual Store Closing Sale Restrictions and Exempting the Debtors From State and Local Wage Requirements and Law Restricting Store Closing Sales, (V) Granting Related Relief, and (VI) Scheduling a Final Hearing* [Docket No. 15] (the "Agency Motion").  On December 9, 2014, the Court entered an order granting the Agency Motion on an interim basis.  On December 24, 2014, the Court entered an order granting the Agency Motion on a final basis.  Pursuant to the Agency Agreement, the Agents are conducting going out of business sales ("GOB Sales") at the Debtors' stores.  The GOB Sales have been proceeding much more rapidly than was

3

originally anticipated.  The Agents and the Debtors currently project that the GOB Sales at the

Debtors' stores may be concluded as early as February 23, 2015.

8.      The Debtors are in the process of maximizing the value of the Debtors' remaining

assets, such as selling its intellectual property, owned real estate and leases and recovering funds

held by third parties in connection with letters of credit issued by General Electric Capital

Corporation.  The Visa/MasterCard Claim is another asset that the Debtors seek to sell in order

to bring additional funds into the Debtors' estates for the benefit of all creditors.

## RELIEF REQUESTED

9.      By this Motion, the Debtors seek entry of the Bidding Procedures Order:

a.  authorizing and approving the bidding procedures for competitive bidding
in connection with the Sale (as defined herein), substantially in the form
attached hereto as **Exhibit 1** to the Bidding Procedures Order (the
"Bidding Procedures"), and the proposed Termination Fee (as defined
herein) to a potential stalking horse bidder (the "Stalking Horse Bidder");

b.  approving the form and manner of notice of the Sale by auction, the Sale
Hearing and related matters, substantially in the form attached as
**Exhibit 2** to Bidding Procedures Order (the "Auction and Sale Notice");

c.  to the extent there are any contracts to be assumed and assigned in
connection with the Sale, authorizing and approving procedures for the
assumption and assignment of executory contracts and leases (collectively,
the "Assumed Contracts"), including the notice of the proposed
assumption and assignment of the Assumed Contracts in the form attached
as **Exhibit 3** to the Bidding Procedures Order (the "Assumption and
Assignment Notice"); and

d.  establishing the following dates and deadlines, subject to modification:

i.  Preliminary Bid Deadline: March 10, 2015 at 12:00 p.m. (Eastern
Time) as the deadline by which Preliminary Bid Documents (as
defined in the Bidding Procedures) must be actually received (the
"Preliminary Bid Deadline").

ii.  Bid Deadline: March 17, 2015 at 12:00 p.m. (Eastern Time), as the
deadline by which all binding bids must be actually received
pursuant to the Bidding Procedures (the "Bid Deadline").

4

   iii.  Auction: March 18, 2015 at 10:00 a.m. (Eastern Time), as the date and time the auction, if one is needed (the "Auction"), which will be held at the office of DLA Piper LLP (US), located at 1251 Avenue of the Americas, 27th Floor, New York, New York 10020.

   iv.  Sale Objection Deadline: March 17, 2015 at 4:00 p.m. (Eastern Time), as the deadline to object to the Sale and/or the assumption and assignment of Assumed Contracts or cure amounts related thereto.

   v.  Sale Hearing: March 20, 2015 at 10:00a.m. (Eastern Time), as the date and time of the hearing to approve the Sale which will be held before Honorable Robert D. Drain, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, Courtroom 118, White Plains, New York 10601.

   vi.  Deadline to File Motion to Approve Sale: March 3, 2015, which motion shall include the identity of the Stalking Horse Bidder.

**OVERVIEW OF THE PROPOSED SALE AND PROPOSED BID PROTECTIONS**

10.    The Debtors' Visa/MasterCard Claim has generated interest from various parties to purchase such claim. Since it is uncertain when the Debtors will be paid on the Visa/MasterCard Claim in the Visa/MasterCard Case, and given the rapid wind down of the Debtors' operations, the Debtors believe, in the exercise of their business judgment and in consultation with the Committee and DIP Agent, that the immediate sale of the Visa/MasterCard Claim free and clear of all liens is in in the best interests of the Debtors' estates and their creditors.

11.    The Debtors intend to, in consultation with the Committee and DIP Agent, select a Stalking Horse Bidder and execute definitive documentation with the Stalking Horse Bidder by February 27, 2015. The anticipated terms of the stalking horse agreement that will be subject to higher or otherwise better offers will likely include the following:

5

- A termination fee of up to 3% of the purchase price offered by the Stalking Horse Bidder (the "Purchase Price") payable to the Stalking Horse Bidder in the event an alternative transaction with respect to the sale of the Visa/MasterCard Claim is consummated with another party, which termination fee would be paid from the proceeds from such alternative transaction within five (5) business days after the closing of such alternative transaction.

- A good faith deposit by the Stalking Horse Bidder of 10% of the Purchase Price, which will be refunded in the event the Sale with the Stalking Horse Bidder is not consummated, other than as a result of a breach by the Stalking Horse Bidder or as otherwise set forth in the definitive documentation.  The full amount of the deposit will be forfeited to the Debtors if the Debtors terminate as a result of a breach by the Stalking Horse Bidder.

- The Debtors shall use reasonable efforts to schedule the Sale Hearing and obtain entry of an order approving the Sale by March 20, 2015.

- The parties shall use reasonable efforts to close the Sale by March 30, 2015.

### SUMMARY OF PROPOSED BIDDING PROCEDURES
### PURSUANT TO LOCAL RULE 6004-1

12.     The Bidding Procedures are intended to permit a fair and efficient competitive sale process to obtain the best offer or promptly identify the alternative bid that is higher or otherwise better than the stalking horse bid.  Because the proposed Bidding Procedures are attached to the Bidding Procedures Order as Exhibit 1, they are not restated herein.  Generally, however, the Bidding Procedures establish, among other things:

a.      the requirements Potential Bidders must satisfy to participate in the bidding process and become "Acceptable Bidders" (see Bid. Proc., at ¶ B);

b.      the availability of, access to and conduct during due diligence by Acceptable Bidders (see Bid. Proc., at ¶ C);

c.      the deadlines and requirements for submitting competing bids and the method and criteria by which such competing bids are deemed to be "Qualified Bids" sufficient to trigger an Auction, including the minimum consideration that must be provided and the terms, conditions that must be satisfied, and deadline that must be met, by any Acceptable Bidder (other than the Stalking Horse Bidder) to be considered a "Qualified Bidder" (see Bid. Proc., at ¶¶ D, E, and F);

6

    d.    the manner in which Qualified Bids will be evaluated by the Debtors to determine the Starting Bid for the Auction (*see* Bid. Proc., at ¶ G);

    e.    the conditions for having an Auction and procedures for conducting the Auction, if any (<u>see</u> Bid. Proc., at ¶ H, I);

    f.    the criteria by which the "Successful Bidder" will be selected by the Debtors, in consultation with their advisors (<u>see</u> Bid. Proc., at ¶ J); and

    g.    various other matters relating to the Sale process generally, including regarding the Sale Hearing, designation of the Back-Up Bid, payment of the Break-up Fee, return of any good faith deposits and certain reservations of rights (<u>see</u> Bid. Proc., at ¶¶ K – N).

**FORM AND MANNER OF AUCTION AND SALE NOTICE**

13.    Within (5) business days of entry of the Bidding Procedures Order, the Debtors will serve the Auction and Sale Notice by first class mail upon the following parties: (i) the Office of the United States Trustee for the Southern District of New York; (ii) counsel to Salus Capital Partners, LLC, as a lender and administrative agent under the Debtors' postpetition financing credit facility; (iii) counsel to General Electric Capital Corporation as the issuer of the prepetition letter of credit agreement; (iv) counsel for the Committee; (v) the Internal Revenue Service; (vi) the United States Attorney for the Southern District of New York, (vii) the U.S. Securities and Exchange Commission; (viii) any party known or reasonably believed to have asserted any lien, claim or encumbrance or other interest in the Visa/MasterCard Claim; (ix) any party known or reasonably believed to have expressed an interest in acquiring any of the Visa/MasterCard Claim; and (x) entities known or reasonably believed to have any such other party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(b).  The Debtors submit that no other or further notice need be given.

14.    The Debtors submit that the Auction and Sale Notice is reasonably calculated to provide all interested parties with timely and proper notice of the proposed Sale, including (a) the

date, time and place of the Auction (if one is held); (b) the Bidding Procedures and the dates and deadlines related thereto; (c) the Sale Objection Deadline and the date, time and place of the Sale Hearing; (d) instructions for obtaining a copy of the stalking horse agreement; (e) representations describing the Sale as being free and clear of liens, claims, interests, and other encumbrances, with all such liens, claims, interests and other encumbrances attaching with the same validity and priority to the proceeds of the Sale; (f) to the extent any contracts will be assumed and assigned in connection with the Sale, notice of the proposed assumption and assignment of such contracts and the proposed cure amounts relating thereto and the right, procedures and deadlines for objecting thereto.  The Debtors propose that no other or further notice of the Sale shall be required.  Accordingly, the Debtors request that the form and manner of the Auction and Sale Notice be approved.

**SUMMARY OF ASSUMPTION PROCEDURES**

15.    While the Debtors do not anticipate that any contracts will be assumed or assigned in connection with the Sale, out of an abundance of caution, the Debtors are also seeking approval of the procedures to facilitate the fair and orderly assumption and assignment of contracts (each, an "Assumed Contract"), including the form of the Assumption and Assignment Notice attached to the Bidding Procedures Order as Exhibit 3, (the "Assumption Procedures"),  The Assumption Procedures are set forth in detail in the attached Bidding Procedures Order and therefore, are not restated herein.  Generally, however, the Assumption Procedures (i) outline the process by which the Debtors will give notice to all counterparties to the Assumed Contracts regarding the proposed assumption and assignment and related cure amounts, if any, informing such parties of their right and the procedures to object thereto, and (ii)

8

establish objection and other relevant deadlines and the manner for resolving disputes relating to

the assumption and assignment of the Assumed Contracts to the extent necessary.

## BASIS FOR RELIEF

### A.    THE PROPOSED BIDDING PROCEDURES ARE FAIR, APPROPRIATE AND SHOULD BE APPROVED.

16.    Pursuant to Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary

course of business may be by private sale or by public auction.  The Debtors believe a sale of the

Visa/MasterCard Claim pursuant to a public auction governed by the proposed Bidding

Procedures and the subsequent Sale will maximize the sale proceeds received by the Debtors'

estates, which is the paramount goal in any proposed sale of property of the estate.  See, e.g.,

Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res.,

Inc.), 147 B.R. 650, 659 (S.D.N.Y. 1992) ("'It is a well-established principle of bankruptcy law

that the . . . [debtors'] duty with respect to such sales is to obtain the highest price or greatest

overall benefit possible for the estate.'") (quoting Cello Bag Co. Inc. v. Champion Int'l Corp. (In

re Atlanta Packaging Prods., Inc.), 99 B.R. 124, 130 (Bankr. N.D. Ga. 1988)); see also Four B.

Corp. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.), 107 F.3d 558, 564-65 (8th Cir.

1997) (in bankruptcy sales, "a primary objective of the Code [is] to enhance the value of the

estate at hand") (internal citation omitted).  To that end, courts recognize that procedures

intended to enhance competitive bidding are consistent with the goal of maximizing the value

received by the estate and therefore are appropriate in the context of bankruptcy sales.  See, e.g.,

Integrated Res., 147 B.R. at 659 (such procedures "encourage bidding and . . . maximize the

value of the debtor's assets").

17.    The Debtors and their advisors, in consultation with their key constituents, have

established the terms and conditions of the bidding process and the Auction, which are consistent

9

with the procedures previously approved in another transaction in these Chapter 11 Cases, and are also standard procedures approved in this District and other bankruptcy courts.  The Bidding Procedures allow the Debtors to conduct the Auction in a controlled, fair and open fashion that will encourage participation by financially capable bidders, thereby increasing the likelihood that the Debtors will receive the best possible consideration for the Visa/MasterCard Claim.

18.    Accordingly, the Debtors submit that the forgoing procedures are fair, transparent and will derive the highest and best bids for the Visa/MasterCard Claim.

**B.    THE STALKING HORSE BID PROTECTIONS HAVE A
SOUND BUSINESS PURPOSE AND SHOULD BE APPROVED.**

19.    The Debtors are also requesting approval of a termination fee of up 3% of the Purchase Price (the "Termination Fee"), to be paid to the Stalking Horse Bidder in the event an alternative transaction with respect to the Sale of the Visa/MasterCard Claim is consummated. No other break-up fee, expense reimbursement or other bid protections will be provided to the Stalking Horse Bidder.  The amount of the Termination Fee offered to the Stalking Horse Bidder will be made in consultation with the Committee and DIP Agent and is anticipated to be paid within five (5) business following the consummation an alternative transaction with respect to the Sale of the Visa/MasterCard Claim.  The Termination Fee will be paid from the proceeds of such alternative transaction.

20.    Bankruptcy courts in the Second Circuit analyze the appropriateness of bidding incentives such as these under the "business judgment rule" standard, and is it well established in this district that courts consider whether (a) the relationship of the parties who negotiated the break-up fee tainted by self-dealing or manipulation, (b) the fee hampers, rather than encourages, bidding and (c) the amount of the fee is unreasonable relative to the proposed purchase price. See Integrated Res., 147 B.R. at 656-57 (to evaluate bid protections, courts should employ the

business judgment rule, which proscribes judicial second-guessing of the corporate debtor's

actions taken in good faith, absent self-dealing and in the exercise of honest judgment) (internal

citations omitted).  The Debtors submit that the Termination Fee passes muster under each of the

three foregoing factors.

21.     First, the Debtors submit that the amount of the Termination Fee will be the

product of good faith, arm's-length negotiations between the Stalking Horse Bidder and the

Debtors, in consultation with the Committee and DIP Agent.  Second, the Debtors believe, based

on their reasoned business judgment, that the presence of the Termination Fee enhances their

ability to maximize value without chilling bidding for the Visa/MasterCard Claim.  The

Termination Fee would be a material inducement for a Stalking Horse Bidder to enter into an

agreement with the Debtors that would be subject to higher or otherwise better offers, which

assures the Debtors of a sale of the Visa/MasterCard Claim to a contractually-committed bidder

at a price they believe is fair and reasonable.  The Termination Fee provides the upside

opportunity that the Debtors could potentially receive a higher or otherwise better offer at the

Auction which, absent such a bid floor, might otherwise never have been realized.  See In re 995

Fifth Ave. Assocs., L.P., 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989) (finding bidding incentives

"legitimately necessary to convince a white knight to enter the bidding by providing some form

of compensation for the risks it is undertaking") (internal citations omitted).

22.     The Debtors further believe, and are advised, that the amount of the Termination

Fee is comparable to bid protections approved by courts in this district.  See, e.g., In re

BearingPoint, Inc., No. 09-10691 (REG) (Bankr. S.D.N.Y. Apr. 7, 2009) [Docket No. 369]

(approving a break-up fee of approximately 3% of the purchase price and expense

reimbursement up to $5,000,000); In re Musicland Holding Corp., No. 06-10064(SMB) (Bankr.

S.D.N.Y. Jan. 17, 2006) [Docket No. 64] (approving break up fee of 3% of the purchase price).

23.    The Debtors believe, based on their reasoned business judgment, that the

Termination Fee is reasonable and appropriate relative to the size, nature and complexity of this

proposed Sale in light of:

- the meaningful floor to be established by Purchase Price offered by the Stalking Horse Bidder;

- the substantial benefits to be received by the Debtors and their estates from having a stalking horse bid serve as a catalyst for other potential or actual bidders to confirm that the Debtors receive the highest and best offer by subjecting the sale of the Visa/MasterCard Claim to an open auction and competitive bidding;

- the need of the Debtors to move forward with a transaction with a high likelihood of closure assured by a contractually committed party at a fair and reasonable price consistent with the timeline of these Chapter 11 Cases;

- the extensive due diligence, analysis and negotiations likely to be undertaken by the Stalking Horse Bidder in connection with the Sale; and

- the risks borne by the Stalking Horse Bidder for being the Stalking Horse Bidder in this transaction and any opportunity costs incurred as a result thereof.

24.    Accordingly, the Debtors submit that the Termination Fee reflects a sound

business purpose, are fair and appropriate under the circumstances and, because the standard

used by courts in this district in approving similar protections has been satisfied here, the Debtors

respectfully submit that the Termination Fee should be approved.

**C.    THE FORM AND MANNER OF THE AUCTION
AND SALE NOTICE SHOULD BE APPROVED.**

25.    As described above, the Debtors also seek approval of the form of the Auction

and Sale Notice.  The Auction and Sale Notice will include, among other things, the date, time

and place of the Auction and the Sale Hearing, as well as the deadline for filing any objections to

the relief requested in this Motion once they are set by the Court.

12

26.     The Debtors propose that such a timeline is warranted and necessary given the

exigent circumstances and the Debtors' need to sell the Visa/MasterCard Claim in a timely

fashion.  Moreover, the Debtors propose that such a timeline is appropriate and will have little

impact on the Debtors' ability to market the sale of the Visa/MasterCard Claim.

**D.     THE ASSUMPTION AND ASSIGNMENT PROCEDURES ARE
         APPROPRIATE AND SHOULD BE APPROVED.**

27.     To the extent it is necessary, in connection with the assumption and assignment of

the Assumed Contracts, the Debtors believe it is necessary to establish a process by which (a) the

Debtors and counterparties to Assumed Contracts can reconcile cure obligations, if any, in

accordance with section 365 of the Bankruptcy Code, and (b) such counterparties can object to

the assumption and assignment of Assumed Contracts and/or related cure amounts.

28.     As set forth in the proposed Bidding Procedures Order, the Debtors also request

that any party that fails to object to the proposed assumption and assignment of any Assumed

Contract be deemed to consent to (a) the assumption and assignment of the applicable Assumed

Contract pursuant to section 365 of the Bankruptcy Code on the terms set forth in the Sale Order

and (b) assignment of any Assumed Contract notwithstanding any anti-alienation provision or

other restriction on assignment.  See, e.g., Hargrave v. Twp. of Pemberton (In re Tabone, Inc.),

175 B.R. 855, 858 (Bankr. D.N.J. 1994) (by not objecting to sale motion, creditor deemed to

consent); Pelican Homestead v. Wooten (In re Gabel), 61 B.R. 661, 667 (Bankr. W.D. La. 1985)

(same).

29.     While the Debtors do not believe that there will be any Assumed Contracts in

connection with the Sale of the Visa/MasterCard Claim, the Debtors seek approval of these

assumption and assignment procedures out of an abundance of caution.  The Debtors believe that

the Assumption Procedures are fair and reasonable, provide sufficient notice to parties to the

Assumed Contracts and provide certainty to all parties in interest regarding their respective

obligations and rights in respect thereof.  Accordingly, the Debtors request the Court approve the

Assumption Procedures set forth in the Bidding Procedures Order.

**E.    SALE MOTION**

30.    The Debtors also request that the Bidding Procedures Order provide for the

motion to approve the Sale (the "Sale Motion") to be filed by March 3, 2015, which would

include the identity of the Stalking Horse Bidder for the Sale of the Visa/MasterCard Claim.  The

Debtors request that the Sale Motion be heard at the next omnibus hearing on March 20, 2015

(which the Debtors understand is the earliest it can be heard) so that the Sale can close on or

before March 30, 2015.

## REQUEST FOR WAIVER OF STAY

31.    While the relief the Debtors are seeking pursuant to this Motion is administrative

in nature, to the extent any stay of the effectiveness of the Bidding Procedures Order is

applicable, the Debtors request wavier of such stay so that it can promptly obtain bids and hold

the auction pursuant to the Bid Procedures

## NOTICE

32.    No trustee or examiner has been appointed in these Chapter 11 Cases.  Notice of

this Motion has been given to:  (i) the Office of the United States Trustee for the Southern

District of New York; (ii) counsel to the DIP Agent; (iii) counsel to General Electric Capital

Corporation as the issuer of the prepetition letter of credit agreement; (iv) counsel for the

Committee; (v) the Internal Revenue Service; (vi) the United States Attorney for the Southern

District of New York, (vii) the U.S. Securities and Exchange Commission; and (viii) entities

known or reasonably believed to have any such other party entitled to notice pursuant to

14

Bankruptcy Rule 2002 and Local Rule 9013-1(b). The Debtors submit that no other or further notice need be given.

## NO PRIOR REQUEST

33.     No previous request for the relief sought in this Motion has been made to this or any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter the Bidding Procedures Order granting the relief requested and such other or further relief as is just and proper.

Dated:  New York, New York
      February 18, 2015

*/s/ Gregg M. Galardi*
Gregg M. Galardi
Dienna Corrado
Arkady A. Goldinstein
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 335-4500
Facsimile:  (212) 335-4501

*Counsel for the Debtors and Debtors in Possession*

## EXHIBIT A

**Proposed Bidding Procedures Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| dELiA*s, INC., *et al.*, | Case No.  14-23678 (RDD) |
| Debtors.[1] | Jointly Administered |

**ORDER (I) APPROVING BIDDING PROCEDURES AND**
**BID PROTECTIONS IN CONNECTION WITH THE SALE OF**
**VISA/MASTERCARD CLAIM, (II) APPROVING THE FORM AND MANNER OF**
**NOTICE, AND (III) SCHEDULING AN AUCTION AND A SALE HEARING**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in

possession (collectively, the "Debtors"), for entry of an order (a) authorizing and approving the

bidding procedures with stalking horse bid protections in connection with the sale of the

Visa/MasterCard Claim, (b) approving the form and manner of notice of the Auction and Sale

Hearing, (c) scheduling an Auction and a Sale Hearing, as more fully set forth in the Motion; and

the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to

28 U.S.C. § 1334; and consideration of the Motion being a core proceeding pursuant to 28

U.S.C. § 157(b)(2); and venue being proper in this District pursuant to 28 U.S.C. §§ 1408 and

1409; and it appearing that notice of the Motion was adequate and proper under the

circumstances of these Chapter 11 Cases and that no further or other notice need be given; and a

hearing having been held to consider the relief requested in the Motion ("Bid Procedures

Hearing"); and the Court having determined that the relief requested in the Motion is in the best

interests of the Debtors, their estates, and creditors and that the legal and factual bases set forth

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  dELiA*s, Inc. (7172); dELiA*s Distribution Company (9076); A Merchandise, LLC (7639); dELiA*s Operating Company (3765); dELiA*s Retail Company (0036); dELiA*s Group Inc. (4035); AMG Direct, LLC (9236); dELiA*s Assets Corp. (3754); DACCS, Inc. (0225).  The mailing address for the Debtors, solely for purposes of notices and communications, is:  50 West 23rd Street, New York, NY 10010.
[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

in the Motion and at the hearing establish just cause for the relief granted herein; and any objections to the requested relief having been withdrawn or overruled on the merits; and after due deliberation thereon and good and sufficient cause appearing therefor,

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    **Bidding Procedures**.  The Debtors have articulated good and sufficient reasons for authorizing and approving the bidding procedures attached hereto as <u>Exhibit 1</u> (the "<u>Bidding Procedures</u>"), which are fair and reasonable and appropriate under the circumstances and designed to maximize recovery on, and realizable value of, the Visa/MasterCard Claim.

B.    **Stalking Horse Bid Protections**.  The Debtors have demonstrated a compelling and sound business justification for authorizing and approving a Termination Fee of up to 3% of the Purchase Price of the Stalking Horse Bidder, including:

  i.    the Termination Fee is the product of negotiations between the Debtors, in consultation with the Committee and the DIP Agent, and the Stalking Horse Bidder conducted in good faith and at arm's length;

  ii.    the Termination Fee is actual and necessary cost and expense of preserving the Debtors' estates;

  iii.    the Termination Fee is fair, reasonable and appropriate in light of, among other things, the size and nature of the Sale, the efforts that will be expended by the Stalking Horse Bidder, notwithstanding that the proposed Sale is subject to higher or better offers, and the substantial benefits the Stalking Horse Bidder will provide to the Debtors, their estates and creditors and all parties in interest herein, including, among other things, by increasing the likelihood that the best possible price for the Debtors' assets will be received;

  iv.    the protections afforded to the Stalking Horse Bidder by way of the Termination Fee will be a material inducement for the Stalking Horse Bidder's willingness to enter into the stalking horse agreement, and necessary to ensure that the Stalking Horse Bidder would continue to pursue the proposed acquisition on terms acceptable to the Debtors in their sound business judgment, subject to competitive bidding; and

v.    the assurance of the payment of the Termination Fee will promote more competitive bidding by inducing the Stalking Horse Bidder's bid, which otherwise would not have been made, without which competitive bidding would be limited, and which may be the highest and best available offer for the Visa/MasterCard Claim.

**C.    Auction and Sale Notice**.  The form of Auction and Sale Notice attached hereto as Exhibit 2 is reasonably calculated to provide all interested parties with timely and proper notice of the proposed sale of the Visa/MasterCard Claim, including: (i) the date, time and place of the Auction (if one is held); (ii) the Bidding Procedures and certain dates and deadlines related thereto; (iii) the Sale Objection Deadline and the date, time and place of the Sale Hearing; (iv) instructions for obtaining a copy of the stalking horse agreement; (v) representations describing the sale of the Visa/MasterCard Claim to be free and clear of liens, claims, interests and other encumbrances, with all such liens, claims, interests and other encumbrances attaching with the same validity and priority to the sale proceeds; (vi) to the extent applicable, notice of the proposed assumption and assignment of Assumed Contracts and the right, procedures and deadlines for objecting thereto. No other or further notice of the Auction and Sale Hearing shall be required.

**D.    Assumption Procedures**.  The Assumption and Assignment Notice are reasonably calculated to provide counterparties to the Assumed Contracts with proper notice of the intended assumption and assignment of their executory contracts, any cure amounts relating thereto and the Assumption and Assignment Procedures.

**NOW, THEREFORE, IT IS ORDERED THAT:**

1.    The Motion is granted to the extent set forth herein.

**I.    Important Dates and Deadlines:**

2.    **Sale Hearing**:  March 20, 2015, at 10:00 a.m. (Eastern Time), is the date and time the hearing to approve the Sale of the Visa/MasterCard Claim (the "Sale Hearing") will be held

before the Honorable Robert D. Drain, United States Bankruptcy Judge in the United States

Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, Courtroom 118,

White Plains, New York 10601.  **Please take notice** that the Sale Hearing may be adjourned

without further notice other than announcement in open Court or on the Court's calendar.

3.      **Sale Motion:**  The Debtors shall file a motion to approve the Sale of the

Visa/MasterCard Claim by March 3, 2015, which motion shall contain the identity of the

Stalking Horse Bidder.

4.      **Sale Objection Deadline**: March 17, 2015, at 4:00 p.m. (Eastern Time), is the

deadline to object to entry of the proposed Sale Order (the "Sale Objection Deadline").

Objections, if any, must: (i) be in writing; (ii) conform to the applicable provisions of the

Bankruptcy Rules, the Local Bankruptcy Rules and any orders of the Court; (iii) state with

particularity the legal and factual basis for the objection and the specific grounds therefor; and

(iv) filed with the Court and served so the objection is actually received no later than the Sale

Objection Deadline by the following parties (the "Notice Parties"):

| Debtors | Counsel to the Debtors |
|---|---|
| dELiA*s, Inc.<br>50 West 23rd Street<br>New York, New York 10010<br>Attn: Ryan A. Schreiber, Esq. | DLA Piper LLP (US)<br>1251 Avenue of the Americas, 25th Floor<br>New, York, New York 10020<br>Attn: Gregg Galardi, Esq.<br>Dienna Corrado, Esq. |
| **United States Trustee** | **Counsel to the Committee** |
| Office of the United States Trustee for the<br>Southern District of New York<br>201 Varick Street, Suite 1006<br>New York, New York 10014<br>Attn: Richard C. Morrissey, Esq.<br>Serene Nakano, Esq. | Kelley Drye & Warren LLP<br>101 Park Avenue<br>New York, NY 10178<br>Attn: Robert L. LeHane, Esq.<br>Gilbert R. Saydah, Jr., Esq. |
| **Counsel to the DIP Agent** | |
| Choate, Hall & Stewart LLP<br>Two International Place<br>Boston, MA 02110<br>Attn: John F. Ventola, Esq.<br>Seth Mennillo, Esq. | |

5.    **Bidding Dates and Deadlines:**  The following dates and deadlines with respect to bidding on the Visa/MasterCard Claim are hereby established (subject to modification as needed):

a)    <u>Preliminary Bid Deadline</u>: March 10, 2015 at 12:00 p.m. (Eastern Time) as the deadline by which "Preliminary Bid Documents" (as defined in the Bidding Procedures) must be actually received (the "<u>Preliminary Bid Deadline</u>") by the parties specified in the Bidding Procedures;

b)    <u>Bid Deadline</u>: March 17, 2015 at 12:00 p.m. prevailing Eastern Time], is the deadline by which all "Qualified Bids" (as defined in the Bidding Procedures) must be actually received by the parties specified in the Bidding Procedures (the "<u>Bid Deadline</u>"); and

c)    <u>Auction</u>: March 18, 2015 at 10:00 a.m. prevailing Eastern Time, is the date and time the Auction, if one is needed, may be held at the offices of counsel to the Debtors: DLA Piper LLP (US) 1251 Avenue of the Americas, 27th Floor, New, York, New York 10020.

**II.    Bidding Procedures and Related Relief**

6.    The Bidding Procedures, substantially in the form attached hereto as <u>Exhibit 1</u> and incorporated by reference as though fully set forth herein, are hereby approved.  The Bidding Procedures shall govern the submission, receipt and analysis of all bids relating to the Sale of the Visa/MasterCard Claim, and any party desiring to submit a higher or better offer for the Visa/MasterCard Claim shall do so strictly in accordance with the terms of the  Bidding Procedures and this Order.

7.    As described in the Bidding Procedures, if the Debtors do not receive any Qualified Bids other than from the Stalking Horse Bidder or if no Qualified Bidder other than the Stalking Horse Bidder indicates its intent to participate in the Auction, the Debtors will not hold the Auction, the Stalking Horse Bidder will be named the Successful Bidder and the Debtors will seek approval of the Stalking Horse Agreement at the Sale Hearing.  If one or more Qualified Bids is timely received from a Qualified Bidder (other than the Stalking Horse Bidder) in

accordance with the Bidding Procedures, the Debtors shall conduct the Auction as set forth herein.

8.      If the Auction is conducted, each Qualified Bidder participating in the Auction shall be required to confirm that it has not engaged in any collusion with respect to the bidding process or the proposed Sale, the Auction will be conducted openly and shall be either transcribed or videotaped.

9.      The Termination Fee described in the Motion are hereby approved to the extent set forth herein.  If the Stalking Horse Bidder becomes entitled to receive the Termination Fee, (a) the Debtors are authorized, upon the closing of the Successful Bid or the Back-Up Bid (as applicable) and the payment of the purchase price for the Visa/MasterCard Claim to pay from the proceeds of such purchase price any and all amounts owing to the Stalking Horse Bidder in accordance with the terms of the stalking horse agreement, without further action or order by the Bankruptcy Court, in accordance with the terms and conditions of such stalking horse agreement and this Order, and (b) the Stalking Horse Bidder shall be, and hereby is, granted an allowed administrative claim in the Debtors' Chapter 11 Cases in an amount equal to the agreed upon Termination Fee under sections 503(b)(1) and 507(a)(2) of the  Bankruptcy Code.

10.     No person or entity, other than the Stalking Horse Bidder, shall be entitled to any expense reimbursement, break-up fee, "topping," termination or other similar fee or payment.

### III.        Auction and Sale Notice and Related Relief

11.     The Auction and Sale Notice, substantially in the form attached hereto as <u>Exhibit 2</u> is hereby approved.

12.     Within (5) business days of entry of the Bidding Procedures Order, the Debtors shall serve the Auction and Sale Notice by first class mail upon the following parties: (i) the

Office of the United States Trustee for the Southern District of New York; (ii) counsel to Salus

Capital Partners, LLC, as lender and administrative agent (the "DIP Agent") under the Debtors'

postpetition financing credit facility; (iii) counsel to General Electric Capital Corporation as the

issuer of the prepetition letter of credit agreement; (iv) proposed counsel for the Committee; (v)

the Internal Revenue Service; (vi) the United States Attorney for the Southern District of New

York, (vii) the U.S. Securities and Exchange Commission; (viii) any party known or reasonably

believed to have asserted any lien, claim or encumbrance or other interest in the

Visa/MasterCard Claim; (ix) any party known or reasonably believed to have expressed an

interest in acquiring the Visa/MasterCard Claim; and (x)  entities known or reasonably believed

to have any such other party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule

9013-1(b).  No other or further notice need be given.

**IV.      Assumption and Assignment Procedures**

13.     The procedures set forth below regarding the assumption of the Assumed

Contracts, if any, pursuant to section 365(b) of the Bankruptcy Code and assigned to the Stalking

Horse Bidder (or other successful bidder arising from the Auction, if any) pursuant to section

365(f) of the Bankruptcy Code in connection with the Sale are hereby approved to the extent set

forth herein (the "Assumption Procedures").

14.     These Assumption Procedures shall govern the assumption and assignment of all

Assumed Contracts assumed and assigned in connection with the Sale:

    **a.**     Assumption and Assignment Notice.  As soon as is practicable, the
Debtors shall serve the Assumption and Assignment Notice, substantially
in the form attached hereto as Exhibit 3 by first class mail on all Assumed
Contract Counterparties and provide a copy of the same to the Stalking
Horse Bidder.  The Assumption and Assignment Notice shall inform each
recipient that its respective contract may be designated as Assumed
Contract in connection with the Sale and should contain (i) the title of the
Assumed Contract, (ii) the name of the Assumed Contract Counterparty,

(iii) the Debtors' good faith estimates of the cure amounts required in connection with such Assumed Contract, (iv) the identity of Stalking Horse Bidder; and (v) the deadline by which the Assumed Contract Counterparty must file an objection to the proposed assumption and assignment and/or cure amount, and (vi) the Assumption Procedures relating thereto; provided, however, that service of an Assumption and Assignment Notice does not constitute an admission that such Assumed Contract is an executory contract.

b.    Objections.  Objections, if any, to the proposed assumption and assignment of the Assumed Contract or the cure amount proposed with respect thereto, must: (i) be in writing; (ii) comply with the applicable provisions of the Bankruptcy Rules, Local Bankruptcy Rules and Case Management Order entered in these Chapter 11 Cases; (iii) state with specificity the nature of the objection and, if the objection pertains to the proposed cure amount, the correct cure amount alleged by the objecting counterparty, together with any applicable and appropriate documentation in support thereof; and (iv) be filed with the Court and served upon, so as to be actually received by, the Notice Parties before the Sale Objection Deadline.

c.    Dispute Resolution.  Any objection to the assumption and assignment of a contract or cure amount proposed in connection with the Sale that remains unresolved as of the Sale Hearing, shall be heard at the Sale Hearing (or at a later date as fixed by the Court).

15.    Any party failing to timely file an objection to the cure amount listed on the Assumption and Assignment Notice (a) shall be forever barred from objecting thereto, including making any demands for additional cure amounts or monetary compensation on account of any alleged defaults against the Debtors, their estates, the Stalking Horse Bidder, or other successful bidder arising from the Auction, if any, with respect to any such Assumed Contract, and (b) shall be deemed to consent to the Sale.

16.    The Debtors are authorized to execute and deliver all instruments and documents, and take such other action as may be necessary or appropriate to implement and effectuate the transactions contemplated by this order.

17.    This Order shall be effective and enforceable immediately upon entry.

18.    This Court retains jurisdiction with respect to all matters arising from or related to

the implementation of this Order.

Dated: February [*], 2015
       White Plains, New York

_____
       UNITED STATES BANKRUPTCY JUDGE

<u>**EXHIBIT 1 TO BIDDING PROCEDURES ORDER**</u>

**Bidding Procedures**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| dELiA*s, INC., *et al.*, | Case No.  14-23678 (RDD) |
| Debtors.[1] | Jointly Administered |

### BIDDING PROCEDURES

These bidding procedures (the "Bidding Procedures") have been approved by an order of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered on February [*], 2015 [Docket No. *] (the "Bidding Procedures Order") in the above-captioned jointly administered Chapter 11 cases of dELiA*s, Inc. and its debtor affiliates (collectively, the "Debtors").

These Bidding Procedures set forth the process by which the Debtors are authorized to conduct the auction (the "Auction") for the sale the ("Sale") of claims (the "Visa/MasterCard Claim") the Debtors hold in the *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, Case No. 1:05-md-01720-JG-JO (the "Visa/MasterCard Case").

The Debtors may select a stalking horse bidder (the "Stalking Horse Bidder") whose bid will be subject to the receipt of higher and otherwise better bids in accordance with these Bidding Procedures. Please take notice that all capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Stalking Horse Agreement.

> **Copies of the Bidding Procedures Order, and other documents related thereto are available free of charge on the website of the Debtors' noticing and claims agent, Prime Clerk LLC, at http://cases.primeclerk.com/delias, or upon request by contacting Prime Clerk, by telephone at (855) 842-4126, or by e-mail at deliasinfo@primeclerk.com.**

**A.    Approval of Stalking Horse Bid Protections.**

The Bidding Procedures Order approved, among other things, the approval of (i) a termination fee payable to a Stalking Horse Bidder of up to 3% of the purchase price of the Stalking Horse Bidder, which is payable to the Stalking Horse Bidder in the event the Bankruptcy Court approves the Sale of the Visa/MasterCard Claim to any other person or entity other than the Stalking Horse Bidder.

**B.    Participation Requirements.**

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person (other than the Stalking Horse Bidder) interested in submitting a Bid

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  dELiA*s, Inc. (7172); dELiA*s Distribution Company (9076); A Merchandise, LLC (7639); dELiA*s Operating Company (3765); dELiA*s Retail Company (0036); dELiA*s Group Inc. (4035); AMG Direct, LLC (9236); dELiA*s Assets Corp. (3754); DACCS, Inc. (0225).  The mailing address for the Debtors, solely for purposes of notices and communications, is:  50 West 23rd Street, New York, NY 10010.

must, on or before March 10, 2015 at 12:00 p.m. (Eastern Time) (the "Preliminary Bid Deadline") deliver (unless previously delivered) the following documents (the "Preliminary Bid Documents"):

    a.    an executed confidentiality agreement on terms reasonably acceptable to the Debtors and containing terms in the aggregate no less favorable to the Debtors in any material respect (other than with respect to the effective periods and the non-disclosure and non-solicitation provisions contained therein, all of which terms shall be commercially reasonable) than those contained in the confidentiality agreement by and among the Stalking Horse Bidder (or its affiliate), the Debtors and certain of their respective affiliates (the "Confidentiality Agreement"); and

    b.    preliminary proof by the Potential Bidder of its financial capacity to close a proposed transaction, which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach), the adequacy of which the Debtors and its advisors will determine in consultation with (i) the official committee of unsecured creditors in the Chapter 11 Cases (the "Committee"); and (ii) Salus Capital Partners, LLC, lender and administrative agent under the Debtors' postpetition credit facility (the "DIP Agent", and together with the Committee, the "Consultation Parties").

        The Preliminary Bid Documents shall be delivered to the following parties (collectively, the "Notice Parties"):

| Debtors | Counsel to the Debtors |
|---|---|
| dELiA*s, Inc.<br>50 West 23rd Street<br>New York, New York 10010<br>Attn: Ryan A. Schreiber, Esq. | DLA Piper LLP (US)<br>1251 Avenue of the Americas, 25th Floor<br>New, York, New York 10020<br>Attn: Gregg Galardi, Esq.<br>    Dienna Corrado, Esq. |
| **Counsel to the DIP Agent** | **Counsel to the Committee** |
| Choate, Hall & Stewart LLP<br>Two International Place<br>Boston, MA 02110<br>Attn: John F. Ventola, Esq.<br>    Seth Mennillo, Esq. | Kelley Drye & Warren LLP<br>101 Park Avenue<br>New York, NY 10178<br>Attn: Robert L. LeHane, Esq.<br>    Gilbert R. Saydah, Jr., Esq. |

        Within two (2) days after a Potential Bidder delivers the Preliminary Bid Documents, the Debtors shall determine, in consultation with its advisors and the Consultation Parties, and notify the Potential Bidder whether such Potential Bidder has submitted acceptable Bid Documents so that the Potential Bidder may conduct a due diligence review with respect to the Visa/MasterCard Claim. Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents (each, an "Acceptable Bidder") may submit bids. The Stalking Horse Bidder shall at all times be deemed an Acceptable Bidder.

**C.**    **Access to Due Diligence.**

        Only Acceptable Bidders shall be eligible to receive due diligence and access to additional non-public information. The Debtors shall provide to each Acceptable Bidder reasonable due diligence information, as requested, as soon as reasonably practicable after such request, which information shall be commensurate with that information given to the Stalking Horse Bidder. To the extent the Debtors provide any information to any Acceptable Bidder that they had not previously provided to the Stalking

Horse Bidder, the Debtors shall promptly provide such information to the Stalking Horse Bidder. The due diligence period will end on the Bid Deadline (as defined herein) and the Debtors shall have no obligation to furnish any due diligence information after the Bid Deadline.

In connection with the provision of due diligence information to Acceptable Bidders, the Debtors shall not, except with respect to the Visa/MasterCard Claim, furnish any other confidential information relating to the Debtors, the Debtors' assets or liabilities, or the Sale to any person except an Acceptable Bidder or such Acceptable Bidder's duly-authorized representatives to the extent provided in the applicable Confidentiality Agreement.

The Debtors along with their advisors shall coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; *provided, however,* the Debtors may decline to provide such information to Acceptable Bidders who, in the Debtors' reasonable business judgment and following consultation with the Consultation Parties, have not established that such Acceptable Bidders intend in good faith to, or have the capacity to, consummate their Bid. No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

Each Acceptable Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Debtors' assets and liabilities that are the subject of the Auction prior to making any such bids; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise regarding the Debtors' assets or liabilities, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or the Stalking Horse Agreement. Neither the Debtors nor any of their employees, officers, directors, affiliates, subsidiaries, representatives, agents, advisors or professionals are responsible for, and shall bear no liability with respect to, any information obtained by Acceptable Bidders in connection with the Sale.

> The Debtors have designated [*] to coordinate all reasonable requests for additional information and due diligence access.

**D.    Bid Requirements.**

To be eligible to participate in the Auction, an Acceptable Bidder (other than the Stalking Horse Bidder) must deliver to the Debtors and their counsel, which shall be shared with the other Notice Parties within one (1) business day following receipt thereof, a written, irrevocable offer that must be determined by the Debtors, in consultation with the Consultation Parties, to satisfy each of the following conditions:

  a.   **Bid Deposit.**  Each Bid (other than the Stalking Horse Bid) must be accompanied by a 10% cash deposit of the proposed purchase price (the "Good Faith Deposit"), which shall be sent to counsel to the Debtors by wire transfer, which amount shall be deposited in an interest-bearing account;

  b.   **Minimum Bid Amount.**  The initial bid increment must be equal to or higher than the aggregate of the Stalking Horse Bid plus the Termination Fee plus $10,000. Each bid increment thereafter shall be $10,000 or some other amount as determined by the Debtors, in consultation with the Consultation Parties (all of which must be in the form of cash, and/or the assumption of administrative expense liabilities except to the extent of any secured debt that is being credit bid);

c. **Good Faith Offer.** Each Bid must constitute a good faith, bona fide offer to purchase the Visa/MasterCard Claim, subject to the Permitted Encumbrances;

d. **Same or Better Terms/Identification of Assumed Contracts.** Each Bid must be accompanied by clean and duly executed transaction documents (including schedules and exhibits thereto that identify with particularity which of the Debtors' contracts the Acceptable Bidder seeks to have assigned, along with a copy of the Stalking Horse Agreement that is marked to reflect the amendments and modifications from such agreement, which modifications may not be materially more burdensome to the Debtors than the Stalking Horse Agreement or inconsistent with these Bidding Procedures;

e. **No Contingencies.** A Bid must not be conditioned on any contingency, including, among others, on obtaining any of the following: (i) financing, (ii) shareholder, board of directors or other approval, (iii) the outcome or completion of a due diligence review by the Acceptable Bidder; (iv) the Visa/MasterCard Claim free and clear of the Permitted Encumbrances; and/or (v) any third party consents;

f. **Irrevocable.** Each Bid must remain irrevocable until 48 hours after the Sale Hearing (as defined below);

g. **Joint Bids.** The Debtors will be authorized to approve joint Bids in the Debtors' exercise of their reasonable good faith business judgment, following consultation with the Consultation Parties, on a case-by-case basis;

h. **Adequate Assurance Information.** Each Bid must be accompanied by sufficient and adequate financial and other information (the "Adequate Assurance Information") to demonstrate, to the satisfaction of the Debtors, following consultation with the Consultation Parties, that such Acceptable Bidder (i) has the financial wherewithal and ability to consummate in the Sale of the Visa/MasterCard Claim and the assumption of the Debtors' liabilities as set forth the Stalking Horse Agreement, including payment of any cure amount with respect to any contract that may be assigned with respect to the Sale. The Bid shall also identify a contact person that counterparties to any lease or contract may contact to obtain additional Adequate Assurance Information;

i. **No Fees.** The Bids must not be subject to any break up fee, transaction fee, termination fee, expense reimbursement or any similar type of payment or reimbursement.

## E. Qualified Bids.

Bids, or a combination of one or more Bids, fulfilling all of the preceding requirements shall be deemed to be "Qualified Bids," and those parties submitting Qualified Bids shall be deemed to be "Qualified Bidders."

Within two (2) days after the Bid Deadline, the Debtors, in consultation with the Consultation Parties shall determine which Acceptable Bidders are Qualified Bidders after consultation with their advisors and will notify the Acceptable Bidders whether Bids submitted constitute, alone or together with other Bids, Qualified Bids so as to enable such Qualified Bidders to bid at the Auction (as defined below). Any Bid that is not deemed a "Qualified Bid" shall not be considered by the Debtors.

The Stalking Horse Bidder shall be deemed to be a Qualified Bidder.  The Stalking Horse Agreement submitted by the Stalking Horse Bidder shall be deemed a Qualified Bid, qualifying the Stalking Horse Bidder to participate in the Auction.

**F.      Bid Deadline.**

Qualified Bids must be received by each of the Debtors, the Stalking Horse Bidder, their respective advisors and the advisors to the Committee and the DIP Agent, in each case so as to be actually **received no later than the March 17, 2015 at 12:00 p.m. (prevailing Eastern Time)** (the "Bid Deadline").

**G.      Evaluation of Qualified Bids.**

Prior to the Auction, the Debtors shall evaluate Qualified Bids and, in consultation with their advisors and the Consultation Parties, identify the Qualified Bid that is, in the Debtors' judgment, the highest or otherwise best bid (the "Starting Bid").  Within 24 hours of such determination, but in no event later than one (1) Business Day prior to the date of the Auction, the Debtors' shall notify the Stalking Horse Bidder and the other Qualified Bidders as to which Qualified Bid is the Starting Bid.  The Debtors shall distribute copies of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid.

**H.      No Qualified Bids.**

If no Qualified Bids are received by the Bid Deadline, then the Debtors may decide to not hold the Auction, the Stalking Horse Agreement may be deemed the Successful Bid (as defined herein) and the Debtors will pursue entry of an order by the Bankruptcy Court approving the Stalking Horse Agreement and authorizing the Sale of the Visa/MasterCard Claim to the Stalking Horse Bidder at the Sale Hearing.

**I.      Auction.**

If one or more Qualified Bids is received by the Bid Deadline, then the Debtors shall conduct the Auction with respect to the Visa/MasterCard Claim.  The Auction shall commence on March 18, 2015 at 10:00 a.m. (Eastern Time) at the offices of DLA Piper LLP (US), 1251 Avenue of the Americas, 25th Floor, New York, New York 10020, or such later time (after consultation with the Consultation Parties) or other place as the Debtors shall timely notify the Stalking Horse Bidder and all other Qualified Bidders.  The Debtors, in consultation with the Committee and DIP Agent, may conduct the auction telephonically.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures")

a.      the Auction will be conducted openly;

b.      only the Qualified Bidders, including the Stalking Horse Bidder, shall be entitled to bid at the Auction;

c.      the Qualified Bidders, including the Stalking Horse Bidder, shall appear in person or through duly-authorized representatives at the Auction;

d.      only such authorized representatives of each of the Qualified Bidders, the Stalking Horse Bidder, the Committee, the DIP Agent, the Debtors, and their respective advisors, shall be permitted to attend the Auction;

e.      bidding at the Auction shall begin at the Starting Bid; subsequent Bids at the Auction, including any Bids by Stalking Horse Bidder, shall be made in minimum increments of $10,000 or some other amount as determined by the Debtors, in consultation with the Consultation Parties, to be announced at the Auction;

f.      each Qualified Bidder will be informed of the terms of the previous Bids;

g.      the bidding will be transcribed or videotaped to ensure an accurate recording of the bidding at the Auction;

h.      each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Sale; and

i.      absent irregularities in the conduct of the Auction, the Bankruptcy Court will not consider Bids made after the Auction is closed; and the Auction shall be governed by such other Auction Procedures as may be announced by the Debtors after consultation with its advisors and the Consultation Parties from time to time on the record at the Auction; provided, that, any such other Auction Procedures shall not be inconsistent with any order of the Bankruptcy Court or with the provisions of the Stalking Horse Agreement with respect to these Bidding Procedures.

**J.      Acceptance of the Successful Bid.**

Upon the conclusion of the Auction (if such Auction is conducted), the Debtors, in the exercise of their reasonable, good-faith business judgment, and in consultation with the Consultation Parties, shall identify the highest or otherwise best Qualified Bid that in the exercise of their fiduciary duties the Debtors in good faith believe is materially more beneficial to the Debtors than the Stalking Horse Bid (the "Successful Bid"), which will be determined by considering, among other things:

a.      the number, type and nature of any changes to the Stalking Horse Agreement as appropriate;

b.      the total expected consideration to be received by the Debtors;

c.      the likelihood of the bidder's ability to close a transaction and the timing thereof; and

d.      the expected net benefit to the estate.

The Qualified Bidder having submitted a Successful Bid will be deemed the "Successful Bidder". The Successful Bidder and the Debtors  shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments or other documents evidencing and containing the terms upon which such Successful Bid was made.

The Debtors will present the results of the Auction to the Bankruptcy Court at the Sale Hearing (as defined below), at which certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that (a) the Auction was conducted, and

the Successful Bidder was selected, in accordance with these Bidding Procedures, (b) the Auction was fair in substance and procedure, (c) the Successful Bid was a Qualified Bid as defined in these Bidding Procedures and (d) consummation of the Successful Bid will provide the highest or otherwise best value for the Debtors' assets and is in the best interests of the Debtors' estates.

If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when (1) such Qualified Bid is declared the Successful Bid at the Auction and (2) definitive documentation has been executed in respect thereof.  Such acceptance is conditioned upon approval by the Bankruptcy Court of the Successful Bid and entry of the Sale Order approving such Successful Bid.

**K.      Sale Hearing.**

A hearing to consider approval of the Qualified Bid submitted by the Successful Bidder (or to approve the Stalking Horse Agreement if no Auction is held) (the "Sale Hearing") is presently scheduled to take place on March 20, 2015 at 10:00 a.m. (prevailing Eastern Time), or as soon thereafter as counsel may be heard, before the Honorable Robert D. Drain, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, Courtroom 118, White Plains, New York 10601.

**The Sale Hearing may be adjourned to a later date by the Debtors, in consultation with the Consultation Parties, by the filing a notice of adjournment or making an announcement at the Sale Hearing.  No further notice of any such continuance will be required to be provided to any party.**

**L.      Designation of Back-Up Bidder.**

If for any reason the Successful Bidder fails to consummate the Qualified Bid within the time permitted after the entry of the Sale Order approving the Sale to the Successful Bidder, then the Qualified Bidder with the second highest or otherwise best Bid (the "Back-Up Bidder"), as determined by the Debtors after consultation with their advisors, and in consultation with the Consultation Parties, at the conclusion of the Auction and announced at that time to all the Qualified Bidders participating therein, will automatically be deemed to have submitted the highest or otherwise best Bid (the "Back-Up Bid").

The Debtors will be authorized, but not required, to consummate the transaction pursuant to the Back-Up Bid as soon as is commercially reasonable without further order of the Bankruptcy Court upon at least twenty-four (24) hours advance notice, which notice will be filed with the Bankruptcy Court; it being understood that nothing herein shall require the Stalking Horse Bidder to be a Back-Up Bidder or its Bid to be a Back-Up Bid.  Upon designation of the Back-Up Bidder at the Auction, the Back-Up Bid shall remain open until the closing of the Successful Bid.

**M.      Break-up Fee.**

In the event that neither the Successful Bid nor the Back-Up Bid is made by the Stalking Horse Bidder and the Debtors shall be obligated to pay to the Stalking Horse Bidder from the proceeds of the purchase price for the Visa/MasterCard Claim, upon the closing of the Successful Bid or the Back-Up Bid (as applicable) and the payment of such purchase price, by wire transfer in immediately available funds to an account designated by the Stalking Horse Bidder, the Termination Fee and any other amounts returnable to the Stalking Horse Bidder, in each instance in accordance with the applicable provisions of the Stalking Horse Agreement.

**N.      Return of Good Faith Deposit.**

The Good Faith Deposit of the Successful Bidder shall, upon consummation of the Successful Bid, be credited to the purchase price paid for Debtors' assets and liabilities.  If the Successful Bidder fails to consummate the Successful Bid, then the Good Faith Deposit shall be forfeited to, and retained irrevocably by, the Debtors.

The Good Faith Deposit of any unsuccessful Qualified Bidders will be returned within fifteen (15) days after consummation of the Sale of the Visa/MasterCard Claim

**O.      Reservation of Rights.**

The Debtors reserve their rights to modify these Bidding Procedures, in consultation with the Consulting Parties, in any manner that will best promote the goals of the bidding process (subject to any restrictions set forth in the Stalking Horse Agreement) or impose, at or prior to the Auction, additional customary terms and conditions on the Sale of the Visa/MasterCard Claim.

Notwithstanding anything herein or in the Bidding Procedures Order to the contrary, nothing will in any way impair or enhance, alter or otherwise affect any and all rights that any secured lender may have to "credit bid" pursuant to section 363(k) of the Bankruptcy Code or other applicable law.

## **EXHIBIT 2 TO BIDDING PROCEDURES ORDER**

### **Form of Auction and Sale Notice**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| dELiA*s, INC., *et al.*, | Case No.  14-23678 (RDD) |
| Debtors.[1] | Jointly Administered |

### NOTICE OF SALE BY AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE** that, on February [*], 2015, dELiA*s, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned jointly administered cases (the "Chapter 11 Cases") filed a motion [Docket No. ___] (the "Bid Procedures Motion") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (a) authorizing and approving the bidding procedures with stalking horse bid protections in connection with the sale of the Visa/MasterCard Claim, (b) approving the form and manner of notice of the Auction and Sale Hearing, (c) approving procedures for the assumption and assignment of Assumed Contracts and noticing of related cure amounts, and (d) scheduling an Auction and a Sale Hearing and setting other related dates and deadlines all as further described in the Bid Procedures Motion.  On February [*], 2015, the Bankruptcy Court entered an order (the "Bidding Procedures Order")[2] approving certain bidding procedures attached thereto as Exhibit 1 (the "Bidding Procedures").

---

**Copies of the Bid Procedures Motion, Bidding Procedures Order, and other documents related thereto are available free of charge on the website of the Debtors' noticing and claims agent, Prime Clerk LLC, at http://cases.primeclerk.com/delias, or upon request by contacting Prime Clerk, by telephone at (855) 842-4126, or by e-mail at deliasinfo@primeclerk.com.**

---

**PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the purchase of the Visa/MasterCard Claim (as defined in the Bidding Procedures).  All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order.  To the extent there are any inconsistencies between this notice and the Bidding Procedures, the latter shall govern in all respects.

**PLEASE TAKE FURTHER NOTICE** that, if the Debtors receive competing Qualified Bids within the requirements and time frame specified by the Bidding Procedures, the Debtors will conduct an auction (the "Auction") of the Visa/MasterCard Claim on March 18, 2015 at 10:00 a.m

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  dELiA*s, Inc. (7172); dELiA*s Distribution Company (9076); A Merchandise, LLC (7639); dELiA*s Operating Company (3765); dELiA*s Retail Company (0036); dELiA*s Group Inc. (4035); AMG Direct, LLC (9236); dELiA*s Assets Corp. (3754); DACCS, Inc. (0225).  The mailing address for the Debtors, solely for purposes of notices and communications, is:  50 West 23rd Street, New York, NY 10010.
[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order.

(Eastern Time) at the offices of counsel to the Debtors: DLA Piper LLP (US) 1251 Avenue of the Americas, 27th Floor, New, York, New York 10020.

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the sale of the Visa/MasterCard Claim at a hearing scheduled to commence on March 20, 2015 at10:00 a.m. (prevailing Eastern Time) (the "Sale Hearing") or as soon thereafter as counsel may be heard, before the Honorable Robert D. Drain, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, Courtroom 118, White Plains, New York 10601.

**PLEASE TAKE FURTHER NOTICE** that objections to the proposed sale of the Visa/MasterCard Claim, if any, must: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules, the Local Bankruptcy Rules and the Order Establishing Certain Notice, Case Management, and Administrative Procedures and Omnibus Hearing Dates [Docket No. 107] entered in these Chapter 11 Cases; (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) filed with the Court and served so the objection is <u>actually received</u> no later than the March 17, 2015 at 12:00 p.m. (Eastern Time) (the "Sale Objection Deadline") by the following parties (the "Notice Parties"):

| Debtors | Counsel to the Debtors |
|---|---|
| dELiA*s, Inc.<br>50 West 23rd Street<br>New York, New York 10010<br>Attn: Ryan A. Schreiber, Esq. | DLA Piper LLP (US)<br>1251 Avenue of the Americas, 25th Floor<br>New, York, New York 10020<br>Attn: Gregg Galardi, Esq.<br>　　　Dienna Corrado, Esq. |
| **United States Trustee** | **Proposed Counsel to the Committee** |
| Office of the United States Trustee for the<br>Southern District of New York<br>201 Varick Street, Suite 1006<br>New York, New York 10014<br>Attn: Richard C. Morrissey, Esq.<br>　　　Serene Nakano, Esq. | Kelley Drye & Warren LLP<br>101 Park Avenue<br>New York, NY 10178<br>Attn: Robert L. LeHane, Esq.<br>　　　Gilbert R. Saydah, Jr., Esq. |
| **Counsel to the DIP Agent** | |
| Choate, Hall & Stewart LLP<br>Two International Place<br>Boston, MA 02110<br>Attn: John F. Ventola, Esq.<br>　　　Seth Mennillo, Esq. | |

**CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE AN OBJECTION**

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE SALE OF THE VISA/MASTERCARD CLAIM ON OR BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS**

**AND THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS TO THE SUCCESSFUL BIDDER AND ANY CURE AMOUNTS RELATED THERETO.**

---

**NO SUCCESSOR OR TRANSFEREE LIABILITY**

       **The proposed Order approving the Sale of the Visa/MasterCard Claim provides that the Successful Bidder will have no responsibility for, and the Visa/MasterCard Claim will be sold free and clear of, any successor liability, including: (a) any debt, liability or other obligation of the Debtors of any kind or nature whatsoever of the Debtors or related to the Visa/MasterCard Claim other than as expressly set forth in the Stalking Horse Agreement or (b) any claims against the Debtors or any of their predecessors or affiliates.**

---

Dated:  New York, New York
       February [*], 2015

*/s/ DRAFT*
Gregg M. Galardi
Dienna Corrado
Arkady A. Goldinstein
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 335-4500
Facsimile:  (212) 335-4501

*Counsel for the Debtors and Debtors in Possession*

## EXHIBIT 3 TO BIDDING PROCEDURES ORDER

**Form of the Assumption and Assignment Notice**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| dELiA*s, INC., *et al.*, | Case No.  14-23678 (RDD) |
| Debtors.[1] | Jointly Administered |

## NOTICE OF ASSUMPTION AND ASSIGNMENT OF CERTAIN CONTRACTS

**PLEASE TAKE NOTICE** that, on February [*], 2015, dELiA*s, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned jointly administered cases (the "Chapter 11 Cases") filed a motion [Docket No. ____] (the "Bid Procedures Motion") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (a) authorizing and approving the bidding procedures with stalking horse bid protections in connection with the sale (the "Sale") of the Visa/MasterCard Claim, (b) approving the form and manner of notice of the Auction and Sale Hearing, (c) approving procedures for the assumption and assignment of Assumed Contracts and noticing of related cure amounts, and (d) scheduling an Auction and a Sale Hearing and setting other related dates and deadlines all as further described in the Bid Procedures Motion.  On February [*], 2015, the Bankruptcy Court entered an order (the "Bidding Procedures Order")[2] approving certain bidding procedures attached thereto as Exhibit 1 (the "Bidding Procedures").

> **Copies of the Bid Procedures Motion, Bidding Procedures Order, and other documents related thereto are available free of charge on the website of the Debtors' noticing and claims agent, Prime Clerk LLC, at http://cases.primeclerk.com/delias, or upon request by contacting Prime Clerk, by telephone at (855) 842-4126, or by e-mail at deliasinfo@primeclerk.com.**

**PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the purchase of the Visa/MasterCard Claim (as defined in the Bidding Procedures).  The Debtors have indicated on Schedule A attached hereto a list of the Debtors' executory contracts that the Debtors may be assumed and assigned to the Successful Bidder (each, a "Contract") along with the cure amounts that the Debtors believe must be paid to cure all prepetition defaults (in each instance, the "Cure Cost").

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the sale of the Visa/MasterCard Claim at a hearing scheduled to commence on March 20, 2015 at 10:00 a.m. (prevailing Eastern Time) (the "Sale Hearing") or as soon thereafter as counsel may be heard, before

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  dELiA*s, Inc. (7172); dELiA*s Distribution Company (9076); A Merchandise, LLC (7639); dELiA*s Operating Company (3765); dELiA*s Retail Company (0036); dELiA*s Group Inc. (4035); AMG Direct, LLC (9236); dELiA*s Assets Corp. (3754); DACCS, Inc. (0225).  The mailing address for the Debtors, solely for purposes of notices and communications, is:  50 West 23rd Street, New York, NY 10010.
[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order.

the Honorable Robert D. Drain, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, Courtroom 118, White Plains, New York 10601.

**PLEASE TAKE FURTHER NOTICE** that if you agree with the Cure Costs listed on Schedule A, you need not take any further action.

**PLEASE TAKE FURTHER NOTICE** that any party seeking to object to the validity of the Cure Costs (a "Cure Objection") as determined by the Debtors or otherwise assert that any other amounts, defaults, conditions or pecuniary losses must be cured or satisfied under any of the Contracts in order to be assigned to the Successful Bidder must filed an objection, which must: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules, the Local Bankruptcy Rules and the Order Establishing Certain Notice, Case Management, and Administrative Procedures and Omnibus Hearing Dates [Docket No. 107] entered in these Chapter 11 Cases; (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) filed with the Court and served so the objection is actually received no later than the [DATE] (the "Objection Deadline") by the following parties (the "Notice Parties"):

| Debtors | Counsel to the Debtors |
|---|---|
| dELiA*s, Inc.<br>50 West 23rd Street<br>New York, New York 10010<br>Attn: Ryan A. Schreiber, Esq. | DLA Piper LLP (US)<br>1251 Avenue of the Americas, 25th Floor<br>New, York, New York 10020<br>Attn: Gregg Galardi, Esq.<br>Dienna Corrado, Esq. |
| **United States Trustee** | **Proposed Counsel to the Committee** |
| Office of the United States Trustee for the<br>Southern District of New York<br>201 Varick Street, Suite 1006<br>New York, New York 10014<br>Attn: Richard C. Morrissey, Esq.<br>Serene Nakano, Esq. | Kelley Drye & Warren LLP<br>101 Park Avenue<br>New York, NY 10178<br>Attn: Robert L. LeHane, Esq.<br>Gilbert R. Saydah, Jr., Esq. |
| **Counsel to the DIP Agent** | |
| Choate, Hall & Stewart LLP<br>Two International Place<br>Boston, MA 02110<br>Attn: John F. Ventola, Esq.<br>Seth Mennillo, Esq. | |

**CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE AN OBJECTION**

**ANY PARTY OR ENTITY WHO FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE PROPOSED CURE COST SHALL BE (A) FOREVER BARRED FROM OBJECTING TO THE CURE COSTS AND FROM ASSERTING ANY ADDITIONAL CURE OR OTHER AMOUNTS WITH RESPECT OT THE CONTRACTS, AND THE DEBTORS AND THE SUCCESSFUL BIDDER SHALL BE ENTITLED TO RELY SOLELY UPON THE CURE COSTS LISTED ON EXHIBIT A, AND (B) FOREVER BARRED AND ESTOPPED FROM ASSERTING OR CLAIMING AGAINST THE**

**DEBTORS OR THE SUCCESSFUL BIDDER THAT ANY ADDITIONAL AMOUNTS ARE DUE OR OTHER DEFAULTS EXIST.**

    **PLEASE TAKE FURTHER NOTICE** that the hearing with respect to the Cure Objections may be held (i) at the Sale Hearing, or (ii) on such other date as the Bankruptcy Court may designate. To the extent the Debtors and non-Debtor counterparty to a Contract are able to consensually resolve the Cure Objection prior to the Sale Hearing, the Debtors shall promptly provide notice to the Committee and the Successful Bidder of such resolution. To the extent the Debtors and non-Debtor counterparty to a Contract are unable to consensually resolve the Cure Objection prior to the Sale Hearing, then the amount to be paid with respect to the Cure Cost will be determined at the Sale Hearing or at such other date and time as may be fixed by the Bankruptcy Court.

Dated:  New York, New York
            February [*], 2015

*/s/ DRAFT*
Gregg M. Galardi
Dienna Corrado
Arkady A. Goldinstein
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 335-4500
Facsimile:  (212) 335-4501

*Counsel for the Debtors and Debtors in Possession*

## EXHIBIT A TO ASSUMPTION AND ASSIGNMENT NOTICE

## CONTRACTS

| Counterparty | Counterparty Address | Title/Description of Contract | \ Cure Cost |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |