UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>dELiA*s, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 14-23678 (RDD)<br><br>Jointly Administered |

### DECLARATION OF DAVID PERESS IN SUPPORT OF THE SALE OF THE DEBTORS' INTELLECTUAL PROPERTY AND CERTAIN RELATED ASSETS INCLUDING THE DEBTORS' INTERESTS IN DELIA'S BRAND, LLC

David Peress, being duly sworn, deposes and says:

1. I am an Executive Vice President of Hilco IP Services, LLC d/b/a Hilco Streambank ("Hilco Streambank"). Hilco Streambank is an expert in marketing, selling and valuing intellectual property assets of all types including trademarks, copyrights, customer data, and web-related and other digital assets. Hilco Streambank and its principals have served as the primary broker for the sale of intellectual property on behalf of many retailers and consumer products companies including: Circuit City, Borders Group, Anchor Blue, Dots, Naartjie Kids, Linens 'N Things, Ritz Camera, and Tower Records among many others.

2. On December 4, 2014, the Debtors entered into an agency agreement (and as later amended, the "Agency Agreement") with Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC (collectively, the "Agents") to, among other things, liquidate all merchandise and inventory owned by the Debtors and dispose of certain furnishings, trade

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: dELiA*s, Inc. (7172); dELiA*s Distribution Company (9076); A Merchandise, LLC (7639); dELiA*s Operating Company (3765); dELiA*s Retail Company (0036); dELiA*s Group Inc. (4035); AMG Direct, LLC (9236); dELiA*s Assets Corp. (3754); DACCS, Inc. (0225). The mailing address for the Debtors, solely for purposes of notices and communications, is: 50 West 23rd Street, New York, NY 10010.

fixtures, and equipment located at the Debtors' stores and, at the Debtors' option, the Debtors' distribution center.

3. Pursuant to Section 7.4 of the Agency Agreement, the Agents were granted the right to designate a third party as the purchaser, acquirer, assignee, transferee, licensee or designee of certain additional assets of the Debtors which include the Acquired Assets (as defined below).

4. On January 28, 2015, the Debtors, the Agents, and Butterfly Retail Acquisition LLC (the "Stalking Horse Bidder") entered into a Letter Agreement, (the "Stalking Horse Agreement"), with respect to the acquisition of the Acquired Assets (the "Proposed Transaction").

5. Under the terms of the Stalking Horse Agreement, the Acquired Assets include:

(a) All of the Debtors' membership interests (the "Membership Interests") in dELiA*s Brand LLC;

(b) All of the Debtors' rights, title, and interests in and to the Intellectual Property (but, with respect to any of the Merchant's Intellectual Property that is the subject of an executory contract, only to the extent such executory contract is an Assumed Contract), including without limitation, the Intellectual Property identified on the list attached to the Stalking Horse Agreement as Schedule 2.1(b); and

(c) All of the Debtors' rights, title and interests in certain other assets of the Debtor set forth on the list attached to the Stalking Horse Agreement as Schedule 2.1(c).

6. On behalf of the Agents, Hilco Streambank has managed the process to market the Acquired Assets to third parties in addition to the Stalking Horse Bidder. The sale process is being conducted in accordance with the Bankruptcy Court's *Order (A) Approving Bidding Procedures and Bid Protections in Connection with the Sale of Certain Assets, (B) Approving Procedures for Assumption and Assignment of Executory Contracts, (C) Approving*

*the Form and Manner of Notice, and (D) Scheduling an Auction and a Sale Hearing*, dated February 10, 2014 [Docket No. 205] (the "Bid Procedures Order").

7. Since the approval of the Agency Agreement, Hilco Streambank has been working with the Debtors' management and their advisors to develop and execute a process to market and sell the Acquired Assets, which process has included: (a) the identification and preservation of the Intellectual Property; (b) the development of marketing materials and other information describing the Acquired Assets, the history and their use and availability for sale; (c) the creation of a virtual data room containing information concerning the Acquired Assets; (d) identifying and contacting potential strategic and financial buyers for the Acquired Assets; (e) meetings by phone with potential buyers; and (f) the negotiation with potential buyers of agreements to acquire the Acquired Assets.

8. In connection with the marketing of the Acquired Assets, Hilco Streambank caused a press release describing the Sale to be published and distributed on a worldwide basis, and emailed or called over ten thousand (10,000) potential buyers advising them of the sale of the Acquired Assets. Ultimately, Hilco Streambank had an exchange of correspondence, meetings or telephone conversations with forty-two (42) of the entities solicited, and ten (10) potential buyers ultimately executed Confidentiality Agreements and were given access to the data room.

9. Hilco Streambank notified potential buyers that any offers to acquire the Acquired Assets were required to be submitted in writing on or before February 18, 2014 by 12:00 Noon EST (the "Bidding Deadline").

10. Including the Stalking Horse Agreement, the Debtors received a total of one (1) bid or expressions of interest to acquire some or all of the Acquired Assets. None of the

EAST\95512247.2

additional bids or expressions of interest was considered a "Qualified Bid" by the Agents or the Debtors in accordance with the Bid Procedures. Given that none of the additional bids or expressions of interest constituted "Qualified Bids" in accordance with the Bid Procedures, the Agents and the Debtors in consultation with the Creditors' Committee, determined not to convene the Auction.

11. Based on the foregoing, the Agents and the Debtors have determined that the Stalking Horse Agreement is the highest and best offer for the Acquired Assets.

This Declaration is submitted under penalty of perjury this 19th day of February, 2015

David Peress
Hilco Streambank
980 Washington Street, Suite 330
Dedham, MA 02026

EAST\95512247.2