Hearing Date and Time: March 20, 2015 at 10:00 a.m. (Eastern Time)
Objection Deadline: March 17, 2015 at 4:00 p.m. (Eastern Time)

Gregg M. Galardi
Dienna Corrado
Arkady A. Goldinstein
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

*Counsel for the Debtors and Debtors in Possession*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| dELiA*s, INC., *et al.*, | Case No. 14-23678 (RDD) |
| Debtors.[1] | Jointly Administered |

## NOTICE OF HEARING ON DEBTORS' MOTION FOR ENTRY OF AN ORDER APPROVING THE SALE OF THE VISA/MASTERCARD CLAIM

**PLEASE TAKE NOTICE** that on December 7, 2014 (the "Petition Date"), the above-captioned debtors and debtors in possession (collectively, the "Debtors") each filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

**PLEASE TAKE FURTHER NOTICE** that on the date hereof, the Debtors filed the annexed *Debtors' Motion for Entry of an Order Approving the Sale of the Visa/MasterCard Claim* (the "Motion").

**PLEASE TAKE FURTHER NOTICE** that a hearing on the Motion has been scheduled for **March 20, 2015 at 10:00 a.m. (Prevailing Eastern Time)** (the "Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, Courtroom 118, White Plains, New York 10601.

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: dELiA*s, Inc. (7172); dELiA*s Distribution Company (9076); A Merchandise, LLC (7639); dELiA*s Operating Company (3765); dELiA*s Retail Company (0036); dELiA*s Group Inc. (4035); AMG Direct, LLC (9236); dELiA*s Assets Corp. (3754); DACCS, Inc. (0225). The mailing address for the Debtors, solely for purposes of notices and communications, is: 50 West 23rd Street, New York, NY 10010.

**PLEASE TAKE FURTHER NOTICE** that responses or objections, if any, to the Motion must be made in writing, state with particularity the grounds therefor, conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, be filed electronically in text searchable portable document format (PDF) with the Court in accordance with General Order M-399 (General Order M-399 can be found at www.nysb.uscourts.gov, the official website for the Court), by registered users of the Court's case filing system and by all other parties in interest (with a hard-copy delivered directly to the Judge's Chambers), and be served in accordance with General Order M-399, and upon (i) DLA Piper LLP (US), 1251 Avenue of the Americas, New York, New York 10020 (Attn: Gregg M. Galardi Esq., Dienna Corrado, Esq. and Arkady A. Goldinstein, Esq.); (ii) the Office of the United States Trustee for the Southern District of New York, 201 Varick Street, Suite 1006, New York, New York 10014 (Attn: Richard C. Morrissey, Esq. and Serene Nakano, Esq.); (iii) Choate, Hall & Stewart LLP, Two International Place, Boston, MA 02110 (Attn: John F. Ventola, Esq. and Seth Mennillo, Esq.); and (iv) Kelley Drye & Warren LLP, 101 Park Avenue, New York, NY 10178 (Attn: Robert L. LeHane, Esq. and Gilbert R. Saydah, Jr., Esq.), **so as to be actually received on or before 4:00 p.m. (Prevailing Eastern Time) on March 17, 2015**.

**PLEASE TAKE FURTHER NOTICE** that if a written objection is timely filed and served, then such objection will be heard at the Hearing. Objecting parties are required to attend the Hearing and failure to appear may result in relief being granted or denied upon default.

**PLEASE TAKE FURTHER NOTICE** that if no objection is timely filed, an order on the Motion, substantially in the form attached thereto, may be entered without a hearing.

Dated: March 3, 2015
New York, New York

*/s/ Gregg M. Galardi*
Gregg M. Galardi
Dienna Corrado
Arkady A. Goldinstein
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 335-4500
Facsimile: (212) 335-4501

*Counsel for the Debtors and Debtors in Possession*

Gregg M. Galardi
Dienna Corrado
Arkady A. Goldinstein
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 335-4500
Facsimile:  (212) 335-4501

*Counsel for the Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| dELiA*s, INC., *et al.*, | Case No. 14-23678 (RDD) |
| Debtors.[1] | Jointly Administered |

**DEBTORS' MOTION FOR ENTRY OF AN ORDER**
**APPROVING THE SALE OF THE VISA/MASTERCARD CLAIM**

dELiA*s, Inc. and its debtor affiliates, as debtors and debtors in possession in the above-caption Chapter 11 cases (collectively, the "Debtors"), hereby file this motion (the "Motion") for entry of an order, substantially in the form attached hereto as Exhibit A (the "Sale Order") with respect to the sale (the "Sale") of all of the Debtors' rights, title and interests in the claim (the "Visa/MasterCard Claim") that the Debtors hold in the *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, Case No. 1:05-md-01720-JG-JO (the "Visa/MasterCard Case").  In support of the Motion, the Debtors respectfully represent as follows:

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  dELiA*s, Inc. (7172); dELiA*s Distribution Company (9076); A Merchandise, LLC (7639); dELiA*s Operating Company (3765); dELiA*s Retail Company (0036); dELiA*s Group Inc. (4035); AMG Direct, LLC (9236); dELiA*s Assets Corp. (3754); DACCS, Inc. (0225).  The mailing address for the Debtors, solely for purposes of notices and communications, is:  50 West 23rd Street, New York, NY 10010.

## JURISDICTION AND VENUE

1.        This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue of these cases and this Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory bases for the relief requested herein are pursuant to sections 105(a), 363, 365, 503 and 507 of title 11 of the United States Code, as amended (the "Bankruptcy Code"), Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 2002-1, 6004-1, and 6006-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

## BACKGROUND

2.        On December 7, 2014 (the "Petition Date"), the Debtors commenced these bankruptcy cases (the "Chapter 11 Cases") by filing voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

3.        On December 12, 2014, an official committee of unsecured creditors (the "Committee") was appointed in these Chapter 11 cases.  As of the date hereof, no trustee or examiner has been appointed in these Chapter 11 Cases.  These Chapter 11 Cases are jointly administered for procedural purposes only.

4.        The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of these Chapter 11 Cases, is set forth in detail in the *Declaration of Edward Brennan Pursuant to Local Bankruptcy Rule 1007-2 and in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration") [Docket No. 16].

5.     On January 9, 2015, the Court entered the *Final Order (I) Authorizing Debtors to Obtain Postpetition Financing and Use Cash Collateral, (II) Granting Adequate Protection and (III) Granting Certain Related Relief* [Docket No. 140] (the "Final DIP Order"), authorizing the Debtors to enter into a postpetition financing credit facility with Salus Capital Partners, LLC, as lender and administrative agent (the "DIP Agent").

6.     Prior to the Petition Date, on December 4, 2014, the Debtors entered into an agency agreement (and as later amended, the "Agency Agreement") with Hilco Merchant Resources, LLC and Gordon Brothers Retail Partners, LLC (collectively, the "Agents") to, among other things, liquidate all merchandise and inventory owned by the Debtors and dispose of certain furnishings, trade fixtures, and equipment located at the Debtors' stores and, at the Debtors' option, the Debtors' distribution center.

7.     On the Petition Date, the Debtors filed the *Debtors' Emergency Motion for Entry of Interim and Final Orders (A) (I) Approving the Debtors' Assumption of Agency Agreement, (II) Authorizing the Debtors' to Sell Certain Assets through Store Closing Sales, (III) Authorizing the Debtors to Abandon Unsold Property, (IV) Waiving Compliance With Contractual Store Closing Sale Restrictions and Exempting the Debtors From State and Local Wage Requirements and Laws Restricting Store Closing Sales, (V) Granting Related Relief, and (VI) Scheduling a Final Hearing* [Docket No. 15] (the "Agency Motion").  On December 9, 2014, the Court entered an order granting the Agency Motion on an interim basis.  On December 24, 2014, the Court entered an order granting the Agency Motion on a final basis.  Pursuant to the Agency Agreement, the Agents conducted going out of business sales ("GOB Sales") at the Debtors' stores, which proceeded much more rapidly than was originally anticipated.  The GOB Sales at the Debtors' stores concluded on February 23, 2015.

8.      The Debtors are in the process of maximizing the value of the Debtors' remaining assets, such as selling its intellectual property, owned real estate and leases and recovering funds held by third parties in connection with letters of credit issued by General Electric Capital Corporation.  The Visa/MasterCard Claim is another asset that the Debtors seek to sell in order to bring additional funds into the Debtors' estates for the benefit of all creditors.

9.      On February 24, 2015, the Court entered the *Order (I) Approving Bidding Procedures and Bid Protections in Connection With the Sale of Visa/MasterCard Claim, (II) Approving the Form and Manner of Notice, and (III) Scheduling an Auction and a Sale Hearing* [Docket No. 280] (the "Bid Procedures Order") approving, among other things, approval of the bid procedures for the sale of the Visa/MasterCard Claim.

10.     On March 3, 2015, the Debtors entered into a agreement with Cascade Settlement Services LLC (the "Stalking Horse Bidder") that is subject to higher or otherwise better offers. A copy of the agreement with the Stalking Horse Bidder (the "Stalking Horse Agreement") is attached hereto as Exhibit B.

**RELIEF REQUESTED**

11.     By this Motion, the Debtors seek entry of the Sale Order (i) approving the Stalking Horse Agreement (or such other agreement as agreed to with the successful bidder) for the sale of the Visa/MasterCard Claim, and (ii) to the extent applicable, authorizing the assumption or assignment of contracts to the Stalking Horse Bidder or such other party that is the successful bidder.

## OVERVIEW OF THE PROPOSED SALE

12.     The principal terms of the Stalking Horse Agreement are summarized in the

following chart:[2]

| SUMMARY DESCRIPTION | |
| --- | --- |
| **Seller** | The Debtors |
| **Purchaser** | Cascade Settlement Services LLC or its designee |
| **Sale/Purchase Price** | On the terms and subject to the conditions and other provisions set forth in the Stalking Horse Agreement, Purchaser agrees to purchase all of the Seller's right, title and interest in the Claim from Seller, and Seller agrees to sell, transfer and assign all of its right, title and interest in the Claim to Purchaser for the sum of $410,000 (the "Purchase Price"), which is subject to higher or otherwise better offers that may be obtained by the Seller pursuant to the bidding procedures approved in the Bid Procedures Order. |
| **Deposit** | Purchaser shall deliver to Seller, within one (1) business day after entry into the Stalking Horse Agreement, a good faith deposit equal to 10% of the Purchase Price (the "Deposit"), which Deposit shall be placed in an escrow account and applied by Seller against the Purchase Price at the closing of the sale of the Assets.  The Deposit will be refunded to the Purchaser if the sale of the Claim to the Purchaser is not consummated, other than as a result of a breach by the Purchaser or as otherwise set forth in herein.  The full amount of the Deposit shall be forfeited to the Seller if the Seller terminates the Stalking Horse Agreement as a result of a breach thereof by the Purchaser. |
| **Termination Fee** | In the event the Seller consummates an alternative transaction (an "Alternative Transaction") with another party with the highest or otherwise better bid for the Claim, the Purchaser shall be entitled to a termination fee equal to 2% of the Purchase Price, which termination fee shall be payable from the proceeds of the purchase price in such Alternative Transaction.  No other break up fee, expense reimbursement or other bid protections will be provided to the Purchaser.  The Termination Fee will be paid to the Purchaser within five (5) business days after the closing of an Alternative Transaction for the sale of the Claim. |
| **Cooperation of Seller** | Seller agrees to provide assistance to Purchaser required to verify and/or collect the Claim during the period of 30 days immediately following the Closing Date unless otherwise extended in writing by the Parties. |

---

[2] Capitalized terms used but not otherwise defined in the summary chart shall have the meaning ascribed to such terms in the Stalking Horse Agreement.  This summary is provided for the convenience of the Court and parties in interest.  To the extent there is any conflict between this summary and the Stalking Horse Agreement, the latter governs in all respects.

| | |
|---|---|
| **Disclaimers: No Representations or Warranties** | Seller expressly disclaims and does not make any warranties, guarantees, promises, or representations of any kind whatsoever with respect to the value of the Claim; or the anticipated recovery or timing of recovery on the Claim. |
| **No Assumption of Obligations or Liabilities** | Purchaser shall not assume or in any way become liable for any obligation or liability relating to the Claim or Seller unless explicitly provided for in the Stalking Horse Agreement. |
| **No Fiduciary or Confidential Relationship** | Seller acknowledges that Seller and Purchaser are not in a fiduciary, confidential, agency or otherwise special relationship, including one of trust, confidence or privity, and that Seller and Purchaser are each acting for their own self-interest. |
| **Waiver of Claims** | To the maximum extent permitted by law, Seller will not assert, and hereby waives, any and all claims against Purchaser or any of its members, officers, directors, employees, agents or affiliates with respect to the Stalking Horse Agreement, any Ancillary Agreement or the transactions contemplated hereby or thereby based on: (i) any claim that Purchaser had superior or additional information material to a decision to sell or buy the Claim; (ii) Purchaser made warranties or representations, expressed or implied, not contained in the Stalking Horse Agreement; or (iii) the Claim's value and scope exceeds the Purchase Price.  For the avoidance of doubt, the foregoing shall not be deemed to be a waiver of any representation or warranty expressly set forth herein. |
| **Covenant Not to Sue** | Seller will not commence or maintain any suit thereon against Purchaser or any of its shareholders, officers, directors, employees, agents or affiliates with respect to the Stalking Horse Agreement, or the transactions contemplated hereby, whether at law or in equity, based on: (i) any claim that Purchaser had superior or additional information material to a decision to sell or buy the Claim; (ii) Purchaser made warranties or representations, expressed or implied, not contained in the Stalking Horse Agreement; or (iii) the Claim's value and scope exceeds the Purchase Price.  For the avoidance of doubt, the foregoing shall not be deemed to be a waiver of any representation or warranty expressly set forth herein. |
| **Closing** | The Sellers and Purchaser will use reasonable efforts to close no later than March 30, 2015.<br><br>On or prior to the Closing Date, Seller shall execute and deliver to Purchaser the Notice of Assignment, in the form attached to the Stalking Horse Agreement as <u>Exhibit A</u> ("<u>Assignment</u>") and the Authorization to Obtain Transactional Data, in the form attached to the Stalking Horse Agreement as <u>Exhibit B</u> ("<u>Data Authorization</u>", and together with the Assignment, the "<u>Ancillary Agreements</u>").<br><br>Provided that Seller has fully performed its obligations under Section 2.5(b), including delivering to Purchaser the completed schedules associated with the Ancillary Agreements and the Sale Order has been entered approving the sale of the Claim to Purchaser, Purchaser shall pay to Seller at the Closing an amount equal to the Purchase Price (less the amount of the Deposit) in |

| | |
|---|---|
| | immediately available funds by confirmed wire transfer to a bank account to be designated by Seller on the Closing Date. |
| **Governing Law; Forum** | The Stalking Horse Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflict of law rules, principles or provisions of such state or of any other state.  The Parties hereby agree that any action or claim arising out of any dispute in connection with the Stalking Horse Agreement, any rights, remedies, obligations, or duties hereunder, or the performance or enforcement hereof or thereof shall be subject to the exclusive jurisdiction of the Bankruptcy Court. |

## SUMMARY OF "EXTRAORDINARY PROVISIONS" PURSUANT TO GUIDELINES FOR THE CONDUCT OF ASSETS SALES UNDER THE LOCAL RULES

13.      **No Successor Liability.** The Stalking Horse Agreement provides, and the proposed Sale Order includes, certain findings that the purchaser of the Visa/MasterCard Claim will not be liable for, any debts, liabilities, obligations or expenses of any kind or nature whatsoever of the Debtors.  In light of the extensive marketing and open nature of this sale transaction, and the form and manner of the Auction and Sale Notice, including that it contains an express disclosure regarding successor liability findings in the Sale Order, the Debtors believe affected parties will have sufficient notice of the Sale and, therefore, inclusion of successor liability findings in the Sale Order is appropriate and reasonable, especially balanced against the benefits of the Sale.

14.      **Requested Findings as to Fraudulent Conveyance.**  The proposed Sale Order provides that the Stalking Horse Agreement (or any other agreement entered into with the successful bidder) and the Sale are not subject to avoidance under any fraudulent conveyance statute.

15.      **Relief From Stay Under Bankruptcy Rules 6004(h) and 6006(d).**  The proposed Sale Order provides for a waiver of the 14-day stay of the Sale Order arising under Bankruptcy Rules 6004(h) and 6006(d), including the parties' ability to close the Sale and

assume and assign any contracts in connection with the sale of the Visa/MasterCard Claim (each, an "Assumed Contract"), if any are to be assumed and assigned at all.  A waiver of the stay is necessary to maximize as soon as possible the value that the Debtors may realize from the sale of the Visa/MasterCard Claim, especially in light of the pace of the Debtors' liquidation and wind down of operations.  Moreover, the Sale was extensively marketed and notice of the Sale was and will be further adequately provided to all parties in interest.  Therefore, the Debtors submit there are adequate grounds to waive the 14-day stay under Bankruptcy Rules 6004(h) and 6006(d) so that the Sale Order is effective immediately.

16.    **Use of Proceeds.**  It is anticipated that the proceeds from the sale of the Visa/MasterCard Claim shall be paid in accordance with the DIP Facility and the Final DIP Order.  Moreover, any other lien on the Visa/MasterCard Claim will attach to the proceeds of the sale to the same extent, validity and priority.

## BASIS FOR RELIEF

**A.    THE PROPOSED SALE OF THE VISA/MASTERCARD CLAIM SHOULD BE APPROVED AS AN EXERCISE OF SOUND BUSINESS JUDGMENT.**

17.    Section 363(b) of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . ."  11 U.S.C. § 363(b)(1); see also In re Ames Dept. Stores, Inc., 136 B.R. 357, 359 (Bankr. S.D.N.Y. 1992) (noting that "going-out-of-business" sales are governed by section 363(b)).  Moreover, section 105(a) of the Bankruptcy Code provides that "[t]he Court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."  11 U.S.C. § 105(a).

18.    The decision to sell assets outside the ordinary course of business is based upon the sound business judgment of the debtor.  See, e.g., In re Chateaugay Corp., 973 F.2d 141, 145

(2d Cir. 1992); <u>Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)</u>, 722 F.2d

1063, 1071 (2d Cir. 1983) ("The rule we adopt requires that a judge determining a § 363(b)

application expressly find from the evidence presented before him at the hearing a good business

reason to grant such an application."); <u>see</u> <u>also</u> <u>In re Integrated Res., Inc.</u>, 147 B.R. at 656

(S.D.N.Y. 1992) (stating "the business judgment rule is a presumption that in making a business

decision the directors of a corporation acted on an informed basis, in good faith and in the honest

belief that the action was in the best interests of the company" and has continued applicability in

bankruptcy ) (quoting <u>Smith v. Van Gorkom</u>, 488 A.2d 858, 872 (Del. 1985)), <u>appeal</u> <u>dismissed</u>,

3 F.3d 49 (2d Cir. 1993).

19.     Ample business justification exists in this case to approve the Debtors' sale of the

Visa/MasterCard Claim.  It is currently uncertain when distributions will be made in the

Visa/MasterCard Case, which has been pending for nearly 10 (ten) years.  Since the

commencement of these Chapter 11 Cases, the Debtors have been contacted by several parties

interested in purchasing the Visa/MasterCard Claim.

20.     Rather than waiting for an unknown period of time for a distribution from the

Visa/MasterCard Case, given the pace of these Chapter 11 Cases and the immediate need to

monetize the Debtors' assets, such a sale would infuse the Debtors' estates with cash for the

benefit of all creditors.  Accordingly, the Debtors submit that that the sale of the

Visa/MasterCard Claim at this time is appropriate and should be approved.

**B.      THE SALE OF THE VISA/MASTERCARD CLAIM HAS BEEN
          PROPOSED IN GOOD FAITH AND WITHOUT COLLUSION
          AND THE SUCCESSFUL BIDDER IS A GOOD FAITH PURCHASER.**

21.     Section 363(m) of the Bankruptcy Code protects a good faith purchaser's interest

in property purchased from the debtor notwithstanding that authorization of the sale conducted

under section 363(b) is later reversed or modified on appeal.  Specifically, section 363(m)

provides, in relevant part, as follows:

> The reversal or modification on appeal of an authorization under
> [section 363(b)] . . . does not affect the validity of a sale . . . to an
> entity that purchased . . . such property in good faith, whether or
> not such entity knew of the pendency of the appeal, unless such
> authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

22.    Section 363(m) "reflects the . . . 'policy of not only affording finality to the

judgment of the bankruptcy court, but particularly to give finality to those orders and judgments

upon which third parties rely.'"  In re Abbotts Dairies of Penn., Inc., 788 F.2d 143, 147 (3d Cir.

1986) (quoting Hoese Corp. v. Vetter Corp. (In re Vetter Corp.), 724 F.2d 52, 55 (7th Cir. 1983));

see also United States v. Salerno, 932 F.2d 117, 123 (2d Cir. 1991) (noting that section 363(m)

furthers the policy of finality in bankruptcy sales . . . [and] assists bankruptcy courts in

maximizing the price for assets sold in such proceedings"); In re Stein & Day, Inc., 113 B.R.

157, 162 (Bankr. S.D.N.Y. 1990) (noting that section 363(m) advances the policy of finality in

bankruptcy sales).

23.    While the Bankruptcy Code does not define "good faith," the Second Circuit has

held that the good faith of a purchaser is shown by the integrity of his conduct during the course

of the sale proceedings, finding that where there is a lack of such integrity, a good faith finding

may not be made.  See, e.g., Licensing by Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380, 390

(2d Cir. 1997) ("A purchaser's good faith is lost by fraud, collusion between the purchaser and

other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders")

(internal citations omitted); In re Sasson Jeans, Inc., 90 B.R. 608, 610 (S.D.N.Y. 1988) (same).

24.    The Debtors submit that the Stalking Horse Bidder, or other successful bidder

arising from the Auction, is or would be a "good faith purchaser" within the meaning of section

363(m) of the Bankruptcy Code and the Stalking Horse Agreement, or any marked version thereof, is or would be a good faith agreement on arm's-length terms entitled to the protections of section 363(m) of the Bankruptcy Code.

25.     First, the consideration to be received by the Debtors pursuant to the Stalking Horse Agreement is substantial, fair and reasonable.  Second, the Stalking Horse Agreement was entered into by the Debtors and the Stalking Horse Bidder in good faith and after extensive, arm's-length negotiations, during which both parties were represented by competent counsel of similar bargaining positions.  Third, there is no indication of any "fraud, collusion between the purchaser and other bidders or the trustee, or an attempt to take grossly unfair advantage of other bidders" or similar conduct that would cause or permit the Sale or the Stalking Horse Agreement to be avoided under section 363(n) of the Bankruptcy Code.[3]  Finally, the Stalking Horse Bidder's offer was evaluated and  approved by the Debtors, in consultation with their advisors, the Committee and the DIP Agent.

26.     Accordingly, the Debtors believe that the Stalking Horse Bidder (or other successful bidder) should be entitled to the full protections of section 363(m) of the Bankruptcy Code and that the sale of the Visa/MasterCard Claim may not be avoided under section 363(n) of the Bankruptcy Code.

**C.      THE SALE SHOULD BE APPROVED FREE AND CLEAR
UNDER SECTION 363(F) OF THE BANKRUPTCY CODE.**

27.     The Debtors request approval to sell the Visa/MasterCard Claim, free and clear of any and all liens, claims and encumbrances (the "<u>Encumbrances</u>"), in accordance with section

---

[3] Section 363(n) of the Bankruptcy Code provides that "The trustee may avoid a sale under this section if the sale price was controlled by an agreement among potential bidders at such sale, or may recover from a party to such agreement any amount by which the value of the property sold exceeds the price at which such sale was consummated, and may recover any costs, attorneys' fees, or expenses incurred in avoiding such sale or recovering such amount."  11 U.S.C. § 363(n).

363(f) of the Bankruptcy Code.  A debtor in possession may sell property under sections 363(b) and 363(f) "free and clear of any interest in such property of an entity other than the estate" if any one of the following conditions is satisfied:

- applicable non-bankruptcy law permits sale of such property free and clear of such interest;

- such entity consents;

- such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

- such interest is in *bona fide* dispute; or

- such entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f)(1)-(5); <u>Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)</u>, 94 B.R. 343, 345 (E.D. Pa. 1988) (noting that since Section 363(f) is written in the disjunctive, the court may approve a sale free and clear if any one subsection is met).

28.    The DIP Agent has already consented to the sale of the Visa/MasterCard Claim. Moreover, the Debtors believe that any party holding a lien on the Visa/MasterCard Claim could be compelled to accept a monetary satisfaction of such interests.  Finally, the Sale Order provides that any Encumbrance on the Visa/MasterCard Claim, if any, will attach to the net proceeds of the sale of the Visa/MasterCard Claim.  Accordingly, the Debtors believe that the proposed sale of the Visa/MasterCard Claim will satisfy the statutory prerequisites of section 363(f) of the Bankruptcy Code should be approved free and clear of all liens, claims and encumbrances.  Subject to the Challenge Period (as defined in the Final DIP Order), that portion of the net proceeds of the sale of the Visa/MasterCard Claim that is payable to the Debtors shall be used in accordance with the terms of the DIP Facility and the Final DIP Order.

**D.    TO THE EXTENT APPLICABLE, THE ASSUMPTION AND
ASSIGNMENT OF ASSUMED CONTRACTS SHOULD BE APPROVED.**

29.    Section 365 of the Bankruptcy Code authorizes a debtor to reject, assume and

assign an executory contract of unexpired lease subject to court approval.  Section 365(a) of the

Bankruptcy Code provides that

> Except as provided in . . . subsections (b), (c), and (d) of this
> section, the trustee, subject to the court's approval, may assume or
> reject any executory contract or unexpired lease of the debtor.

11 U.S.C. § 365(a).

30.    Section 365(b)(1) of the Bankruptcy Code provides that:

> If there has been a default in an executory contract or unexpired
> lease of the debtor, the trustee may not assume such contract or
> lease unless, at the time of assumption of such contract or lease,
> the trustee --
>
> (A) cures, or provides adequate assurance that the trustee
> will promptly cure, such default other than a default that is a
> breach of a provision relating to the satisfaction of any provision
> (other than a penalty rate or penalty provision) relating to a default
> arising from any failure to perform non-monetary obligations
> under an expired lease of real property, if it is impossible for the
> trustee to cure such default by performing non-monetary acts at
> and after the time of assumption, except that if such default arises
> from a failure to operate in accordance with a nonresidential real
> property lease, then such default shall be cured by performance at
> and after the time of assumption in accordance with such lease, and
> pecuniary losses resulting from such default shall be compensated
> in accordance with the provisions of this paragraph;
>
> (B) compensates, or provides adequate assurance that the
> trustee will promptly compensate, a party other than the debtor to
> such contract or lease, for any actual pecuniary loss to such party
> resulting from such default; and
>
> (C) provides adequate assurance of future performance
> under such contract or lease. . . .

11 U.S.C. § 365(b)(1).

31.    Section 365(f)(2) provides that

The trustee may assign an executory contract or unexpired lease of the debtor only if —

(A) the trustee assumes such contract or lease in accordance with the provisions of this section; and

(B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365(f)(2).

32.    Accordingly, section 365 of the Bankruptcy Code authorizes the proposed

assumption and assignment of executory contracts, provided that the defaults under such

contracts must be cured and adequate assurance of future performance is provided.  If the

Debtors assume or assign any contracts in connection with the sale of the Visa/MasterCard

Claim, the Debtors submit that the statutory requirements of section 365(b)(1)(A) will be

satisfied because it is anticipated that the Stalking Horse Bidder (or the successful bidder) will

pay the cure amount associated with any and all Assumed Contracts.  Because the Bid

Procedures Order provides a clear process by which to resolve disputes over cure or other

defaults, the Debtors are confident that if defaults exist that must be cured, such cure will be

achieved fairly, efficiently and properly, consistent with the Bankruptcy Code and with due

respect to the rights of non-debtor parties.

33.    It is well settled that the meaning of "adequate assurance of future performance"

depends on the facts and circumstances of each case, but that a contract counterparty is not

required to receive an absolute guarantee of future performance.  See, e.g., In re Glycogenesys,

Inc., 352 B.R. 568, 578 (Bankr. D. Mass. 2006) ("[I]t is appropriate to evaluate the financial

condition of the assignee and the likelihood that the non-Debtor party will receive the benefit of

its bargain from the assignee"); <u>Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)</u>, 103

B.R. 524, 538 (Bankr. D.N.J. 1989) (stating that the "required assurance will fall considerably

short of an absolute guaranty of performance").

34.     As stated above, the Debtors expect that the Stalking Horse Bidder (or other

successful bidder), to whom an Assumed Contract is assigned (if any), will not only cure any

defaults under such Assumed Contract, but will provide information with respect to adequate

assurance of future performance under such Assumed Contracts, if any, and will endeavor to

resolve any issues regarding adequate assurance or cure amounts as soon as reasonably

practicable prior to the hearing on this Motion.

## REQUEST FOR WAIVER OF STAY

35.     In addition, by this Motion, the Debtors seek a waiver of any stay of the

effectiveness of any order approving the relief requested in this Motion.  Pursuant to Bankruptcy

Rule 6004(h), "[a]n order authorizing the use, sale, or lease of property other than cash collateral

is stayed until the expiration of 14 days after entry of the order, unless the court orders

otherwise."  Similarly, to the extent applicable, pursuant to Bankruptcy Rule 6006(d), "[a]n order

authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed

until the expiration of 14 days after the entry of the order, unless the court orders otherwise."

For the reasons, described above, the Debtors submit that ample cause exists to justify a waiver

of the 14-day stay imposed by Bankruptcy Rules 6004(h) and 6006(d).

36.     The Debtors submit that the requirements of the Local Rules 6004-1 and 6006-1

have been satisfied.  Alternatively, to the extent the Court finds that the Debtors have not met

any applicable provision of the Local Rules 6004-1 and 6006-1, the Debtors respectfully request

that the Court waive such requirement with respect to this Motion.

## NOTICE

37.      No trustee or examiner has been appointed in these Chapter 11 Cases.  Notice of

this Motion has been given to:  (i) the Office of the United States Trustee for the Southern

District of New York; (ii) counsel to the DIP Agent; (iii) counsel to General Electric Capital

Corporation as the issuer of the prepetition letter of credit agreement; (iv) counsel for the

Committee; (v) the Internal Revenue Service; (vi) the United States Attorney for the Southern

District of New York, (vii) the U.S. Securities and Exchange Commission; and (viii) entities

known or reasonably believed to have any such other party entitled to notice pursuant to

Bankruptcy Rule 2002 and Local Rule 9013-1(b).  The Debtors submit that no other or further

notice need be given.

## NO PRIOR REQUEST

38.      No previous request for the relief sought in this Motion has been made to this or

any other court.

## CONCLUSION

WHEREFORE, the Debtors respectfully request that the Court enter Sale Order

granting the relief requested and such other or further relief as is just and proper.

Dated:  March 3, 2015                                */s/ Gregg M. Galardi*
      New York, New York                      Gregg M. Galardi
                                   Dienna Corrado
                                   Arkady A. Goldinstein
                                   DLA PIPER LLP (US)
                                   1251 Avenue of the Americas
                                   New York, New York 10020
                                   Telephone:  (212) 335-4500
                                   Facsimile:  (212) 335-4501

                                   *Counsel for the Debtors and Debtors in
                                   Possession*

## EXHIBIT A

**Proposed Sale Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| dELiA*s, INC., *et al.*, | Case No. 14-23678 (RDD) |
| Debtors.[1] | Jointly Administered |

## <u>ORDER APPROVING THE SALE OF THE VISA/MASTERCARD CLAIM</u>

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in

possession (collectively, the "<u>Debtors</u>"), for entry of an order pursuant to sections 105(a), 363

and 365 of title 11 of the United States Code, as amended (the "<u>Bankruptcy Code</u>"), Rules 6004

and 6006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Local

Rules 6004-1 and 6006-1 of the Local Bankruptcy Rules for the Southern District of New York

(the "<u>Local Rules</u>") approving the sale of all of the Debtors' right, title and interest in the

Visa/MasterCard Claim, and the assumption and assignment of Assumed Contracts (if any), all

pursuant to the terms in the agreement attached hereto as <u>Exhibit 1</u> (the "<u>APA</u>") with [*], or any

designee appointed by [*] (the "<u>Purchaser</u>"), as more fully set forth in the Motion; and it

appearing that notice of the Motion was adequate and proper under the circumstances of these

Chapter 11 Cases and that no further or other notice need be given; and the Court having

determined that the relief requested in the Motion is in the best interests of the Debtors, their

estates, and creditors and that the legal and factual bases set forth in the Motion and at the

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: dELiA*s, Inc. (7172); dELiA*s Distribution Company (9076); A Merchandise, LLC (7639); dELiA*s Operating Company (3765); dELiA*s Retail Company (0036); dELiA*s Group Inc. (4035); AMG Direct, LLC (9236); dELiA*s Assets Corp. (3754); DACCS, Inc. (0225). The mailing address for the Debtors, solely for purposes of notices and communications, is: 50 West 23rd Street, New York, NY 10010.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

hearing establish just cause for the relief granted herein; and after due deliberation thereon and good and sufficient cause appearing therefor,

**IT IS HEREBY FURTHER FOUND AND DETERMINED, AS FOLLOWS:**

A.    **Jurisdiction and Venue**:  This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 157 and 1334.  Venue of these Chapter 11 Cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    **Statutory Predicates**:  The statutory bases for the approval of the APA and the sale of the Visa/MasterCard Claim are sections 105(a), 363, and 365 of title 11 of the United States Code, as amended (the "<u>Bankruptcy Code</u>"), Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") and rules 6004-1 and 6006-1 of the Local Bankruptcy Rules for the Southern District of New York (the "<u>Local Rules</u>").

C.    **Opportunity to be Heard**:  A reasonable opportunity to object or be heard regarding the relief requested in the Motion and the transactions pursuant thereto has been afforded to all interested parties, including without limitation, (i) the Office of the United States Trustee for the Southern District of New York; (ii) counsel to the DIP Agent; (iii) counsel to General Electric Capital Corporation as the issuer of the prepetition letter of credit agreement; (iv)  counsel for the Committee; (v) the Internal Revenue Service; (vi) the United States Attorney for the Southern District of New York, (vii) the U.S. Securities and Exchange Commission; and (viii) any entities known or reasonably believed to have any such other party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(b).  The notice provided constitutes good, adequate and sufficient notice of the Motion and the hearing on the Motion (the "<u>Sale Hearing</u>") under the circumstances of these Chapter 11 Cases and no other or further notice of the Motion or the Sale Hearing or entry of this Order need be given.  Objections, if any, to the

Motion have been withdrawn or resolved and, to the extent not withdrawn or resolved, are hereby overruled.

D.    **Marketing Process**: The Debtors have thoroughly marketed the Visa/MasterCard Claim and have conducted the bidding and auction process in accordance with the Bidding Procedures Order [Docket No. 280].  The Debtors and their advisors have negotiated and undertaken their roles leading to the APA in a diligent, non-collusive, fair and good faith manner.

E.    **Highest and Best Offer**:  The APA and the consideration to be realized by the Debtors (i) is the highest and best offer received by the Debtors; (ii) is fair and reasonable; and (iii) is in the best interests of the Debtors, their estates, their creditors and all other parties in interest.  There is no legal or equitable reason to delay entry into the transactions contemplated by the APA.

F.    **Business Judgment**:  The Debtors' decision to sell the Visa/MasterCard Claim [and assume and assign the Assumed Contracts] is a reasonable exercise of the Debtors' sound business judgment consistent with their fiduciary duties and is in the best interests of the Debtors, their estates, their creditors and all other parties in interest.

G.    **Time of the Essence**:  Time is of the essence in effectuating the APA.  Based on the record at the Sale Hearing and for the reasons stated on the record at the Sale Hearing, the transactions contemplated by the APA must be closed rapidly following entry of this Order to maximize the value that the Debtors may realize from the sale of the Visa/MasterCard Claim. Accordingly, cause exists to lift the stay imposed by Bankruptcy Rules 6004(h) and 6006(d) or otherwise and permit the immediate effectiveness of this Order.

H.      **Sale Free and Clear**:  The Visa/MasterCard Claim may be sold free and clear of all liens, claims and encumbrances (the "Encumbrances").  A sale of the Debtors' right, title and interest in the Visa/MasterCard Claim other than one free and clear of all Encumbrances, and without the protections of this Order, would hinder the Debtors' ability to obtain the consideration provided for in the Visa/MasterCard Claim and thus, would impact materially and adversely the value the Debtors' estates would be able to obtain for the sale of the Visa/MasterCard Claim.  But for the protections afforded to of the Purchaser under the Bankruptcy Code and this Order, the Purchaser would not have offered to pay the consideration contemplated in APA.  In addition, any entity with an Encumbrance on the Visa/MasterCard Claim (a) has consented to the Sale; (b) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest, or (c) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code, and therefore, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  All Encumbrances on the Visa/MasterCard Claim will be satisfied or will attach to the proceeds of the sale with the same force, effect and priority as such liens currently have, subject to the rights and defenses, if any, of the Debtors and any party in interest with respect thereto.  Moreover, holders of Encumbrances who did not object or who withdrew their objections to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Therefore, approval of the APA and consummation of the transactions contemplated therein free and clear of Encumbrances is appropriate pursuant to section 363(f) of the Bankruptcy Code and is in the best interests of the Debtors' estates, their creditors and other parties in interest.  Subject to the Challenge Period (as defined in the Final DIP Order), that portion of the net proceeds of the sale of the

Visa/MasterCard Claim that is payable to the Debtors shall be used in accordance with the terms of the DIP Facility and the Final DIP Order.

I.       **Arm's-Length Sale**: The consideration to be paid by the Purchaser was each negotiated at arm's-length and constitute reasonably equivalent value and fair and adequate consideration for the Visa/MasterCard Claim under the Bankruptcy Code, Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the laws of the United States, any state, territory, possession thereof or the District of Columbia.  The terms and conditions set forth in the APA are fair and reasonable under the circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying or defrauding the Debtors or their creditors under any applicable laws.  The APA and the transactions contemplated therein may not be avoided as a fraudulent conveyance.

J.       **Good Faith**:  The Debtors and the Purchaser, and their respective officers, members, management and board of directors, employees, agents and representatives actively participated in the bidding process and acted in good faith.  The APA was negotiated and entered into based upon arm's-length bargaining, without collusion or fraud, and in good faith as that term is used in section 363(m) of the Bankruptcy Code.  The Purchaser shall be protected by section 363(m) of the Bankruptcy Code in the event this Order is reversed or modified on appeal. The Debtors were free to deal with any other party interests in buying the Visa/MasterCard Claim.  The Debtors and the Purchaser have not engaged in any conduct that would cause or permit the APA or any related action or transaction contemplated thereby to be avoided under section 363(n) of the Bankruptcy Code, or prevent the application of section 363(m) of the Bankruptcy Code.

K.      **Insider Status**:  The Purchaser is not an "insider" or "affiliate" of the Debtors as those terms are defined in section 101(31) of the Bankruptcy Code.  No common identity of directors or controlling stockholders exists between the Purchaser and the Debtors.

L.      **Corporate Authority**:  The Debtors have full corporate or other power to (i) execute, deliver and perform their obligations under the APA, (ii) consummate the transactions contemplated by the APA, and (iii) have taken all actions necessary to authorize and approve the APA and the transactions contemplated thereby.  No consents or approvals, other than those expressly provided for herein, are required for the Debtors to consummate the transactions contemplated by the APA.

M.      **No Successor Liability**: Except as specifically provided for in the APA, no sale, transfer or other disposition of the Visa/MasterCard Claim to the Purchaser will subject the Purchaser to any liability for, any  claims, obligations, debts, liabilities, obligations or expenses of any kind or nature whatsoever of the Debtors by reason of such transfer under any law.  None of the Purchasers is a successor to the Debtors or their estates.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1.      The relief requested in the Motion is granted as set forth herein.

2.      Any remaining objections to the Motion or the relief requested in therein that have not been withdrawn, waived, or settled, and all reservation of rights included in such objections are overruled in all respects and denied.

3.      The Debtors are authorized to enter into the APA and take all actions necessary to consummate the transactions contemplated thereby.  Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the sale and transfer of the Debtors' right, title and interest in the Visa/MasterCard Claim to the Purchaser pursuant to the APA are legal, valid and effective

disposition of the Visa/MasterCard Claim, and vests the Purchaser with all right, title and interest

of the Debtors to and in the Visa/MasterCard Claim free and clear of all Encumbrances.

4.    All Encumbrances on the Visa/MasterCard Claim will be satisfied or will attach

to the proceeds of the sale with the same force, effect and priority as such liens currently have,

subject to the rights and defenses, if any, of the Debtors and any party in interest with respect

thereto.  Subject to the Challenge Period (as defined in the Final DIP Order), that portion of the

net proceeds of the sale of the Visa/MasterCard Claim that is payable to the Debtors shall be

used in accordance with the terms of the DIP Facility and the Final DIP Order.

5.    The Debtors and the Purchaser have provided the counterparties to the Assumed

Contracts (if any) with adequate assurance of future performance within the meaning of 11

U.S.C. §§ 365(b)(1), 365(b)(3) and 365(f)(2)(b).

6.    To the extent applicable, upon payment of the cure amount for each Assumed

Contract (the "Cure Amount") and except as otherwise set forth in this Order and the APA, all

persons and entities holding claims of any kind and nature accruing, arising or relating to a

period prior to the Closing with respect to the Assumed Contracts are hereby barred from

asserting such claims against the Purchasers or any of its affiliates, successors, assigns, officers,

directors or employees, agents, representatives, and attorneys.  All other defaults, claims or other

obligations of the Debtors arising or accruing under the Assumed Contracts, if any, shall be

deemed cured on or prior to the closing of transactions contemplated by the APA (the

"Closing").

7.    The assignment of the Assumed Contracts, if any, to the Purchaser pursuant to

this Order shall be valid and binding upon the Purchaser and the respective counterparties to the

Assumed Contracts notwithstanding any provision in the Assumed Contracts that (by reason of

the assignment of the Assumed Contracts or the release of the Debtors from liability) (i) restricts, prohibits, conditions or limits the assignment of the Assumed Contracts, (ii) impacts the validity of the Assumed Contracts following the assignment, or (iii) increases or reallocates payments under, imposes any penalty, declares a default with respect to, terminates, modifies or cancels any right or obligation thereunder.  Any such provision shall not be enforceable to restrict condition or limit the assignment of the Assumed Contracts to the Purchaser pursuant to this Order, but shall thereafter be fully binding on the Purchaser and continue in full force and effect upon and after the assignment of the Assumed Contract.

8.      Except as specifically provided for in the APA, the sale, transfer or other disposition of the Visa/MasterCard Claim to the Purchaser will not subject the Purchaser to any liability for, any claims, obligations, debts, liabilities, obligations or expenses of any kind or nature whatsoever of the Debtors by reason of such transfer under any law.

9.      The APA and the transactions contemplated thereby, including the assumption, assignment and sale of the Assumed Contracts to Purchaser may not be avoided under 11 U.S.C. § 363(n).

10.     Upon the Closing, Purchaser will be deemed to have acted in good faith, as that term is used in 11 U.S.C, § 363(m), with respect to entry into the APA and consummation of the transactions thereby, and no reversal or modification of this Order on appeal will affect the validity of the APA or the transactions contemplated thereby.

11.     This Order and the APA shall inure to the benefit of and be binding on the Purchaser, the Debtors, their estates, their creditors, the counterparties to the Assumed Contracts, and their respective successors and assigns, and any trustees, if any, subsequently appointed in

the Debtors' Chapter 11 Case or upon a conversion of the Chapter 11 Cases to Chapter 7 under the Bankruptcy Code.

12.     The findings of fact and conclusions of law set forth in this Order regarding the Purchaser and its relationship with and to the Debtors are applicable solely to the APA and the transactions contemplated thereby.   Nothing set forth herein shall affect or limit the rights of the Debtors' estates or any party in interest in these Chapter 11 Cases with respect to any other transaction or course of dealing between and among the Purchaser (or any of its affiliates) and the Debtors.

13.     To the extent of any inconsistency between this Order or the APA, this Order shall control.

14.     This Order shall be effective and enforceable immediately upon entry.  The stay otherwise imposed by Bankruptcy Rules 6004(h) and 6006(d) is waived.

15.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.


Dated: March [*], 2015
       White Plains, New York


_____
HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT 1 TO SALE ORDER**

**APA**

## **<u>EXHIBIT B</u>**

**STALKING HORSE AGREEMENT**

## ASSET PURCHASE AND SALE AGREEMENT

THIS ASSET PURCHASE AND SALE AGREEMENT ("Agreement") is made and entered into this 3rd day of March, 2015, by and between Cascade Settlement Services LLC or its designee (the "Purchaser"), and dELiA*s, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "Seller"). Purchaser and Seller are sometimes collectively referred to in this Agreement as "Parties" or individually as "Party."

## RECITALS

A.    Seller may be a Class Member and potential beneficiary of the putative consolidated class action entitled In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Case No. 1:05 md-1720-JG-JO) ("Litigation") pending in the United States District Court for the Eastern District of New York ("District Court"). If the plaintiffs in the Litigation either prevail in the Litigation, such Litigation results in a settlement, or the Litigation is otherwise resolved in any way or by any forum in favor of class members ("Settlement Event"), the Seller may be entitled to a monetary recovery.

B.    Seller may have a right, now or in the future, to benefits arising from and/or relating to the Litigation and the injuries alleged therein. These rights to benefits are called the "Claim". The Claim encompasses all rights, title, and ownership interest of any kind, now existing or arising hereafter, to which Seller may be entitled, arising in any way or form, from the Litigation, or the operative facts alleged in the Litigation, including but not limited to the right to monetary benefits, or benefits that may be monetized, from settlements, judgments, or any other form of resolution of the Litigation or the operative facts alleged therein. Whether such recovery will occur is unknown by Seller and Purchaser at the time of this Agreement.

C.    Seller is dELiA*s, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors")[1], in connection with the Debtors' jointly administered chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), lead case number 14 23678 (RDD) (the "Bankruptcy Case").

D.    On February 24, 2015, the Bankruptcy Court entered the Order (I) Approving Bidding Procedures and Bid Protections in Connection With the Sale of Visa/MasterCard Claim, (II) Approving the Form and Manner of Notice, and (III) Scheduling an Auction and a Sale Hearing (the "Bid Procedures Order").

E.    Purchaser desires to purchase the Claim from Seller, and Seller desires to sell the Claim to Purchaser as provided for in this Agreement. The Parties intend to transfer from Seller to Purchaser any and all of the Seller's right, title and interest in and or associated with, or connected in any manner to, any Claim.

---

[1] The Debtors are: dELiA*s, Inc.; dELiA*s Distribution Company; A Merchandise, LLC; dELiA*s Operating Company; dELiA*s Retail Company; dELiA*s Group Inc.; AMG Direct, LLC; dELiA*s Assets Corp.; DACCS, Inc.

F.    All terms used herein and not defined herein shall have the meanings given such terms in the Litigation filings.

    **NOW, THEREFORE**, in consideration of the mutual covenants, agreements, representations and warranties contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

## SECTION 1 – RECITALS INCORPORATED IN AGREEMENT

1.1    The above recitals are hereby incorporated herein by reference.

## SECTION 2 – TERMS OF PURCHASE AND SALE

2.1    Sale and Purchase of Claim.  On the terms and subject to the conditions and other provisions set forth in this Agreement, Purchaser agrees to purchase all right, title and interest in the Claim from Seller, and Seller agrees to sell, transfer and assign all right, title and interest in the Claim to Purchaser for the sum of $410,000 (the "Purchase Price"), which is subject to higher or otherwise better offers that may be obtained by the Seller pursuant to the bidding procedures approved in the Bid Procedures Order.

2.2    Deposit.  Purchaser shall deliver to Seller, within one (1) business day after entry into this Agreement, a good faith deposit equal to 10% of the Purchase Price (the "Deposit"), which Deposit shall be placed in an escrow account and applied by Seller against the Purchase Price at the closing of the sale of the Assets.  The Deposit will be refunded to the Purchaser if the sale of the Claim to the Purchaser is not consummated, other than as a result of a breach by the Purchaser or as otherwise set forth in herein.  The full amount of the Deposit shall be forfeited to the Seller if the Seller terminates this agreement as a result of a breach thereof by the Purchaser.

2.3    Termination Fee:  In the event the Seller consummates an alternative transaction (an "Alternative Transaction") with another party with the highest or otherwise better bid for the Claim, the Purchaser shall be entitled to a termination fee equal to 2% of the Purchase Price, which termination fee shall be payable from the proceeds of the purchase price in such Alternative Transaction.  No other break up fee, expense reimbursement or other bid protections will be provided to the Purchaser.  The Termination Fee will be paid to the Purchaser within five (5) business days after the closing of an Alternative Transaction for the sale of the Claim.

2.4    Bankruptcy Court Approval.  Seller shall seek Bankruptcy Court approval of the sale of the Claim and it shall be a condition precedent to the performance of the obligations of both Seller and Purchaser under this Agreement that the Bankruptcy Court shall have entered an order reasonably satisfactory to each of Seller and Purchaser approving the sale of the Claim pursuant to this Agreement, which order shall be in full force and effect and shall not have been modified, stayed, or reversed (the "Sale Order").  Seller shall use reasonable efforts to obtain entry of the Sale Order no later than March 20, 2015.

EAST\96193471.5

2.5    <u>Closing</u>.  The transactions contemplated by this Agreement will be consummated at a closing as follows:

    (a)    The Seller and Purchaser will use reasonable efforts to close (the "<u>Closing</u>") no later than on or before March 30, 2015. The date and time the Closing actually occurs are referred to herein as the "<u>Closing Date</u>".  The Closing will be effective as of 12:01 a.m., Eastern Daylight Savings Time, on the Closing Date.

    (b)    No later than the first business day prior to the Closing Date, Seller shall execute and deliver to Purchaser the Notice of Assignment, in the form attached hereto as Exhibit A ("<u>Assignment</u>") and the Authorization to Obtain Transactional Data, in the form attached hereto as Exhibit B ("<u>Data Authorization</u>", with Assignment, the "<u>Ancillary Agreements</u>").

    (c)    Provided that Seller has fully performed its obligations under Section 2.5(b), including delivering to Purchaser the completed schedules associated with the Ancillary Agreements and the Sale Order has been entered approving the sale of the Claim to Purchaser, Purchaser shall pay to Seller at the Closing an amount equal to the Purchase Price in immediately available funds by confirmed wire transfer to a bank account to be designated by Seller no later than the second business day prior to the Closing Date.

2.6    <u>Cooperation of Seller</u>.  Seller understands and acknowledges that in order for Purchaser to verify and/or collect the Claim, Purchaser may require Seller's assistance, and Seller agrees to provide such assistance to Purchaser, during the period of 30 days immediately following the Closing Date unless otherwise extended in writing by the Parties, as may be necessary for the collection of the Claim, including but not limited to the verification of data within Seller's reasonable possession and/or control or that may be obtained with the assistance/authorization of Seller.

2.7    <u>No Assumption of Obligations or Liabilities</u>.  Purchaser shall not assume or in any way become liable for any obligation or liability relating to the Claim or Seller unless explicitly provided for in this Agreement.

## SECTION 3 - REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Purchaser as follows:

3.1    <u>Organization</u>.  With the exception of DACCS, Inc., all of the other Debtors are entities organized under the laws of Delaware.  DACCS, Inc. was incorporated under the laws of Ohio.

3.2    <u>Authority</u>.  The execution and delivery of this Agreement by Seller and, subject to the entry of the Sale Order, the consummation by Seller of the transaction contemplated by this Agreement are within Seller's authority as granted by the Bankruptcy Court in the Bankruptcy Case.

EAST\96193471.5

3.3    <u>Due Execution; Validly Binding Agreement</u>.  This Agreement has been duly authorized, executed and delivered and constitutes a legal, valid and binding obligation of the Seller upon entry of the Sale Order, enforceable against it in accordance with its terms.

3.4    <u>No Litigation</u>.  There is no known suit, action, litigation or other proceeding or governmental or administrative investigation or inquiry, pending or threatened against the Seller or concerning the Claim that could prevent or prohibit Seller from selling the Claim or from otherwise complying in full with the provisions of this Agreement. Transfer of the Claim pursuant to this Agreement will not breach, violate or otherwise contravene any applicable law, statute, regulation or contractual term.

3.5    <u>Title to Claim; No Liens</u>.  Seller has good, valid and marketable title to the Claim and, upon entry of the Sale Order, may sell the Claim free and clear of any mortgage, pledge, lien, security interest, claim or encumbrance.  Seller has not heretofore transferred the Claim or any interest therein, other than security interests that will no longer attach to the Claim once sold in accordance with the Sale Order.

3.6    <u>Information Provided to Purchaser</u>.  To the best of Seller's knowledge, all information provided to Purchaser by Seller in connection with the sale of the Claim, including, but not limited to, information on dates on which the Seller began accepting Visa and/or MasterCard credit card and/or debit transactions, financial information about the Seller's business (including total United States sales) and any other representations actually or potentially concerning the asset is true, correct and complete in all material respects. Seller has made the following representations or warranties to Purchaser:

   i.    Seller has not had any communications with the District Court, lead counsel for the parties in the Litigation ("<u>Lead Counsel</u>") or any other entity affiliated with the Litigation regarding the Litigation.

   ii.   Should a Settlement Event occur, if asked by the District Court, Lead Counsel, the claims administrator appointed in the Litigation ("<u>CA</u>") or any other entity affiliated with such settlement, Seller hereby warrants that

         1.    Seller never intended to opt-out of the Litigation;

         2.    Seller never gave any entity any indication of an intent to opt-out of the Litigation; and

         3.    Seller never authorized any entity to opt-out of the Litigation on Seller's behalf.

   iii.  Seller warrants that if requested by Purchaser and if a Settlement Event should occur, it will provide, during the period of 30 days immediately following the Closing Date unless otherwise extended in writing by the Parties, an affidavit stating that (1) Seller never intended to opt-out of the Settlement Event; (2) Seller never gave any entity any indication of an intent to opt-out of the Settlement

4

Event; and (3) Seller never authorized any entity to opt-out of the Settlement
Event on Seller's behalf.

    iv.    Seller warrants that it will never take any position inconsistent with the
representations and warranties contained herein.

3.7    <u>Independent Investigation</u>.  Seller acknowledges that it has conducted its own
independent evaluation of the transactions contemplated under this Agreement.  Seller
further acknowledges that it has had an opportunity to conduct its own independent
investigation regarding the Claim and the Litigation. Seller has had an opportunity to
review the documents and information available through publicly available sources of
information.

3.8    <u>No Reliance</u>.  Seller has conducted an independent evaluation of the reasonableness of
the Purchase Price and has decided to enter into this Agreement and undertake the
transactions contemplated hereunder solely in reliance on its own evaluation of the
Purchase Price.  With the exception of any representations and warranties set forth in
Section 4 of this Agreement, Seller is not relying on (i) any information provided to
Seller or written or oral representations, whether express or implied, by Purchaser or its
respective members, shareholders, officers, directors, employees, agents or affiliates or
(ii) any information provided to Seller by Purchaser or its respective shareholders,
officers, directors, employees, agents or affiliates in assessing the reasonableness of the
Purchase Price.  Aside from representations or warranties contained herein, Seller
acknowledges that Purchaser expressly disclaims and has not made any warranties,
guarantees, promises, or representations of any kind whatsoever regarding the value of
the Claim and the anticipated recovery and/or timing of recovery on the Claim.

3.9    <u>Information</u>.  Seller acknowledges that because a Settlement Event had not taken place
prior to the payment of the Purchase Price, the value of the Claim and the final recovery
on the Claim may not be determined with certainty by Seller or Purchaser as of the time
of execution of this Agreement.  Seller further acknowledges that Purchaser may possess
material information not known to Seller, and Seller agrees that Purchaser shall have no
liability with respect to the non-disclosure of any such information.

3.10    <u>Expectation of Return</u>.  Seller acknowledges that Purchaser's sole intention and
expectation in entering into this Agreement is to earn a positive financial return on the
Claim.  As such, Seller understands that Purchaser's recovery on the Claim may exceed
the Purchase Price.

3.11    <u>Own Advisors</u>.  Seller acknowledges that it has had an opportunity to consult with an
attorney and/or other relevant professional advisors prior to the execution of this
Agreement. Seller acknowledges that Purchaser has advised it that it should seek such
counsel.

3.12    <u>No Fiduciary or Confidential Relationship</u>.  Seller acknowledges that Seller and
Purchaser are not in a fiduciary, confidential, agency or otherwise special relationship,

EAST\96193471.5

including one of trust, confidence or privity, and that Seller and Purchaser are each acting for their own self-interest.

## SECTION 4 – REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser represents and warrants to Seller as follows:

4.1    Organization.  Purchaser is a Limited Liability Company, validly existing and in good standing under the laws of Delaware.

4.2    Authorization.  Purchaser has the requisite power and authority to purchase the Claim from Seller, execute and deliver this Agreement, and to perform the transactions contemplated hereby or thereby.

4.3    Due Execution; Validly Binding.  This Agreement has been duly authorized, executed and delivered and constitutes a legal, valid and binding obligation of the Purchaser, enforceable against it in accordance with its terms, except as may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights in general and subject to general principles of equity.

4.4    No Litigation.  There is no suit, action, litigation or other proceeding or governmental or administrative investigation or inquiry, pending or threatened, against Purchaser that could prevent or prohibit Purchaser from purchasing the Claim or from otherwise complying in full with the provisions of this Agreement.  Transfer of the Claim pursuant to this Agreement will not breach, violate or otherwise contravene any applicable law, statute, regulation or contractual term.

4.5    No Affiliation.  Purchaser is not affiliated with any counsel involved in the Litigation or the District Court relating to the Litigation.

4.6    Purchaser Solvent.  That Purchaser is solvent and has the funds available to pay the Purchase Price.

4.7    Disclaimers: No Representations or Warranties.  Purchaser expressly disclaims and does not make any warranties, guarantees, promises, or representations of any kind whatsoever regarding the Claim, including, but not limited to:  (i) the value of the Claim; and (ii) the anticipated recovery or timing of recovery on the Claim.  Purchaser has advised Seller that it should consult with an attorney and/or other relevant professional advisors prior to the execution of this Agreement.

4.8    Independent Investigation.  Purchaser acknowledges that it has conducted its own independent evaluation of the transactions contemplated under this Agreement. Purchaser further acknowledges that it has had an opportunity to conduct its own independent investigation regarding the Litigation, the possibility of a Settlement Event taking place, and the Claim.  Purchaser has had an opportunity to review the documents and information available through publicly available sources of information.

EAST\96193471.5

4.9    No Reliance.  Purchaser has decided to enter into this Agreement and undertake the
transactions contemplated hereunder solely in reliance on its own evaluation, based on
such information as it has deemed appropriate under the circumstances.  With the
exception of any representations and warranties set forth in Section 3 of this Agreement,
Purchaser is not relying on (i) any information provided to Purchaser or written or oral
representations, whether express or implied, by Seller or its agents or affiliates, or (ii) any
information provided to Purchaser by Seller or its agents or affiliates.  Aside from
representations or warranties contained herein, Purchaser acknowledges that Seller
expressly disclaims and has not made any warranties, guarantees, promises, or
representations of any kind whatsoever regarding the Claim, including, but not limited to:
(i) the value of the Claim, and (ii) the anticipated recovery and/or timing of recovery on
the Claim.

4.10    Information.  Purchaser acknowledges that, because a Settlement Event had not taken
place prior to the payment of the Purchase Price, the value of the Claim and the final
recovery on the Claim may not be determined with certainty by Seller or Purchaser as of
the time of execution of this Agreement.  Purchaser further acknowledges that Seller may
possess material information not known to it.  Aside from representations or warranties
contained herein, Purchaser agrees that Seller shall have no liability with respect to the
non-disclosure of any such information.

4.11    Expectation of Return.  Purchaser is in the business of purchasing claims from entities
entitled to recover funds from both existing class action lawsuit settlements and from
pending class action litigation that may or may not result in a settlement.  Purchaser
understands that Purchaser's recovery on the Claim may not exceed the Purchase Price.

4.12    Own Advisors.  Purchaser acknowledges that it has had an opportunity to consult with
an attorney and/or other relevant professional advisors prior to the execution of this
Agreement.  Purchaser acknowledges that Seller has advised it that it should seek such
counsel.

4.13    No Fiduciary or Confidential Relationship.  Purchaser acknowledges that Seller and
Purchaser are not in a fiduciary, confidential, agency or otherwise special relationship,
including one of trust, confidence or privity, and that Seller and Purchaser are each acting
for their own self-interest.

## SECTION 5 - COVENANTS OF SELLER

Seller covenants to Purchaser as follows:

5.1    Further Assurances.  During the period of 30 days immediately following the Closing
Date unless otherwise extended in writing by the Parties, Seller will use commercially
reasonable efforts to provide, duly execute or deliver, or cause to be provided, duly
executed or delivered, to Purchaser such further information and instruments reasonably
available to it or under its possession, custody or control and do and cause to be done
such further acts as may be reasonably necessary or proper to respond to any audit or
inquiry by the CA, Lead Counsel or the District Court regarding the Claim.  To the extent

7

any decision needs to be made or vote taken among the Plaintiffs relating to the Claim and any party does not recognize the Purchaser as the rightful owner of the Claim for any reason, then the Seller agrees, during the period of 30 days immediately following the Closing Date unless otherwise extended in writing by the Parties, to consult with and follow the direction of the Purchaser.

5.2   Waiver of Claims.  To the maximum extent permitted by law, Seller will not assert and hereby waives any and all claims against Purchaser or any of its members, officers, directors, employees, agents or affiliates with respect to this Agreement, any Ancillary Agreement or the transactions contemplated hereby or thereby based on: (i) any claim that Purchaser had superior or additional information material to a decision to sell or buy the Claim; (ii) Purchaser made warranties or representations, expressed or implied, not contained in this Agreement; or (iii) the Claim's value and scope exceeds the Purchase Price.  For the avoidance of doubt, the foregoing shall not be deemed to be a waiver of any representation or warranty expressly set forth herein.

5.3   Covenant Not To Sue.  Seller will not commence or maintain any suit thereon against Purchaser or any of its shareholders, officers, directors, employees, agents or affiliates with respect to this Agreement, or the transactions contemplated hereby, whether at law or in equity, based on: (i) any claim that Purchaser had superior or additional information material to a decision to sell or buy the Claim; (ii) Purchaser made warranties or representations, expressed or implied, not contained in this Agreement; or (iii) the Claim's value and scope exceeds the Purchase Price.  For the avoidance of doubt, the foregoing shall not be deemed to be a waiver of any representation or warranty expressly set forth herein.

5.4   Payment Delivery.  If a CA mistakenly sends total or partial payment directly to Seller, Seller will be deemed to hold such amounts in trust for the benefit of the Purchaser and shall immediately endorse such payment to Purchaser and deliver the payment to Purchaser by personal delivery or by first-class mail, certified, return receipt requested, postage prepaid and addressed to:

> Cascade Settlement Services
> 100 Shoreline Highway, Suite B-125
> Mill Valley, CA 94941
> Attn: John Chilcott

## SECTION 6 – COVENANTS OF PURCHASER

6.1   Waiver of Claims.  To the maximum extent permitted by law, Purchaser will not assert and hereby waives any and all claims against Seller or any of its members, officers, directors, employees, agents or affiliates with respect to this Agreement, any Ancillary Agreement or the transactions contemplated hereby or thereby based on: (i) any claim that Seller had superior or additional information material to a decision to sell or buy the Asset; (ii) Seller made warranties or representations, expressed or implied, not contained in this Agreement; or (iii) the Purchase Price exceeding the Asset's value and scope.  For

8

the avoidance of doubt, the foregoing shall not be deemed to be a waiver of any representations or warranties expressly contained herein.

6.2     <u>Covenant Not To Sue</u>.  Purchaser will not commence or maintain any suit thereon against Seller or any of its shareholders, officers, directors, employees, agents or affiliates with respect to this Agreement, or the transactions contemplated hereby, whether at law or in equity, based on: (i) any claim that Seller had superior or additional information material to a decision to sell or buy the Asset; (ii) Seller made warranties or representations, expressed or implied, not contained in this Agreement; or (iii) the Purchase Price exceeding the Asset's value and scope.  For the avoidance of doubt, the foregoing shall not be deemed to be a waiver of any representations or warranties expressly contained herein.

## SECTION 7 - GENERAL

7.1     <u>Severability</u>.  In the event that any provision herein becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable or void, this Agreement shall continue in full force and effect without said provision.

7.2     <u>Costs</u>.  The Parties shall each pay their own costs and expenses (including attorney's fees and accountants' fees) incurred or to be incurred in negotiating, preparing and executing this Agreement.

7.3     <u>Entire Agreement</u>.  This Agreement represents the entire agreement and understanding between the Parties regarding the sale and purchase of the Claim and supersedes any and all prior representations, warranties agreements and understandings, whether written or oral, concerning the sale and/or purchase of the Claim.

7.4     <u>No Oral Modification</u>.  This Agreement may only be amended in writing signed by both Parties.

7.5     <u>Assignability of Claim.</u> Notwithstanding anything contained in this Agreement, Purchaser may assign its right, title and interest in and to this Agreement to its joint venture investment partner, Dunhill Asset Services V LLC  without the further consent of Seller.

7.6     <u>Jury Trial Waiver</u>.  The Parties hereby irrevocably and knowingly waive to the fullest extent permitted by law any right to a trial by jury in any action or proceeding arising out of this Agreement. The Parties agree that any such action or proceeding shall be tried before a court and not a jury. In the event the Parties' waiver of a trial by jury is deemed invalid, the Parties hereby agree that any action or claim arising out of any dispute in connection with this agreement, any rights, remedies, obligations, or duties hereunder, or the performance or enforcement hereof or thereof shall be determined by judicial reference.

7.7     <u>Governing Law; Forum</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflict of law

9

rules, principles or provisions of such state or of any other state. The Parties hereby agree that any action or claim arising out of any dispute in connection with this Agreement, any rights, remedies, obligations, or duties hereunder, or the performance or enforcement hereof or thereof shall be subject to the exclusive jurisdiction of the Bankruptcy Court.

7.8     Headings. Section headings are for convenient reference only and will not affect the meaning or have any bearing on the interpretation of any provision of this Agreement.

7.9     Counterparts. This Agreement may be executed in counterparts, and each counterpart shall have the same force and effect as an original and shall constitute an effective, binding agreement. If so signed, the Agreement becomes effective when both signature pages are attached.

7.10    Voluntary Execution of Agreement. This Agreement is executed voluntarily and without any duress or undue influence on the part or on behalf of the Parties hereto.

7.11    Notices. All notices, requests, demands or any other communication made under, pursuant to, or in accordance with this Agreement, except for normal day-to-day business communications, which may be made orally or in a writing, shall be in writing and shall either be delivered personally or deposited in the United States mail and sent by first-class mail, certified, return receipt requested, postage prepaid and addressed properly as follows:

EAST\96193471.5

| If to Purchaser: | If to Seller: |
|---|---|
| Cascade Settlement Services<br>Attention: John Chilcott<br>100 Shoreline Highway<br>Suite B-125<br>Mill Valley, CA 94941<br>Email:<br>chilcott@cascadesettlement.com | dELiA*s, Inc.<br>50 West 23rd Street<br>New York, New York 10010<br>Attn: Ryan A. Schreiber, Esq.<br><br>With a copy to:<br><br>**Counsel for the Debtors**<br>DLA Piper LLP (US)<br>1251 Avenue of the Americas, 25th Floor<br>New, York, New York 10020<br>Attn: Gregg Galardi, Esq.<br>        Dienna Corrado, Esq.<br><br>**Counsel to the DIP Agent**<br>Choate, Hall & Stewart LLP<br>Two International Place<br>Boston, MA 02110<br>Attn: John F. Ventola, Esq.<br>        Seth Mennillo, Esq.<br><br>**Counsel to the Creditors' Committee**<br>Kelley Drye & Warren LLP<br>101 Park Avenue<br>New York, NY 10178<br>Attn: Robert L. LeHane, Esq. |

or to such other address(es) as a Party hereto may indicate to the other Party in the manner provided for herein. Notices given by mail shall be deemed effective and complete forty-eight (48) hours following the time of posting and mailing, and notices delivered personally shall be deemed effective and complete at the time of delivery and the obtaining of a signed receipt.

*[Signature page follows]*

EAST\96193471.5

IN WITNESS WHEREOF, the Agreement has been executed by the Parties as of the date and year provided above.

Cascade Settlement Services LLC

By: _____
Name: Richard Moseley
Title:   Chief Financial Officer

dELiA*s, Inc., on its behalf and on behalf of its affiliated Debtors

By: _____
Name:   Ryan A. Schreiber, Esq.
Title:   President, General Counsel, Secretary

*Form of Notice of Assignment*

**Exhibit A to Claim Purchase and Sale Agreement**

Form of Notice of Assignment

To:    Claims Administrator of Any Settlement Arising from **IN RE: PAYMENT
       CARD INTERCHANGE FEE AND MERCHANT-DISCOUNT
       ANTITRUST LITIGATION** (Case No. 1:05-md-01720-JG-JO)(E.D.N.Y.)

We hereby give notice that pursuant to that certain Asset Purchase and Sale Agreement dated March 3, 2015 (the "Sale Agreement"), between dELiA*s, Inc. and certain of its affiliates (collectively, the "Seller") and Cascade Settlement Services LLC("Purchaser"), and the order of the U.S. Bankruptcy Court for the Southern District of New York in case number 14-23678(RDD), dated March [*], 2015 (attached as Exhibit A) approving the Sale Agreement, Seller has absolutely and unconditionally transferred and assigned to Purchaser all of Seller's right, title and interest in and to or associated with, or connected in any manner to, any claim against and settlement arising from the class action litigation of *In Re: Payment Card Interchange Fee and Merchant-Discount Antitrust Litigation* (Case No 1:05-md-01720-JG-JO) pending in the United States District Court for the Eastern District of New York (the "Settlement"), for the following entities:

| Entity Name | United States Bankruptcy Court for the Southern District of New York Case Number |
|---|---|
| dELiA*s, Inc. | 14-23678 |
| dELiA*s Retail Company | 14-23679 |
| dELiA*s Assets Corp. | 14-23680 |
| dELiA*s Group Inc. | 14-23681 |
| dELiA*s Distribution Company | 14-23682 |
| dELiA*s Operating Company | 14-23683 |
| A Merchandise, LLC | 14-23684 |
| AMG Direct, LLC | 14-23685 |
| DACCS, Inc. | 14-23686 |

The rights assigned to Purchaser include, but are not limited to, Seller's right to file a claim in the Settlement proceedings and to challenge any and all estimates for payment of that claim. Seller has provided Purchaser with merchant identification information listed on and attached hereto as Schedule A.

Purchaser is now the legal and equitable owner of all rights associated with the Settlement. You should deal directly with Purchaser or its duly appointed agents on all matters pertaining to the Seller's rights in the Settlement. Further, in accordance with the Sale Agreement, any and all payments relating to the Settlement should be made payable to Purchaser and sent to the following address:

> Cascade Settlement Services, LLC
> 100 Shoreline Highway, Suite B-125
> Mill Valley, CA 94941
> Attn: John Chilcott

Moreover, any and all correspondence, documents or any other communications pertaining to the Settlement should be directed to Purchaser at the above address.

EAST\96193471.5

*Form of Notice of Assignment*

Dated this ____ day of March 2015.

dELiA*s, Inc. on its behalf and on behalf of its affiliated debtors, Seller

By: _____

    Ryan A. Schreiber, Esq., President, General Counsel, Secretary

EAST\96193471.5

Schedule A

| DEBTOR | ADDRESS | TAX ID |
|---|---|---|
| dELiA*s, Inc. | 50 West 23rd Street, New York, NY 10010 | 20-3397172 |
| dELiA*s Retail Company | 50 West 23rd Street, New York, NY 10010 | 23-2920036 |
| dELiA*s Assets Corp. | 50 West 23rd Street, New York, NY 10010 | 13-3963754 |
| dELiA*s Group Inc. | 50 West 23rd Street, New York, NY 10010 | 13-3914035 |
| dELiA*s Distribution Company | 50 West 23rd Street, New York, NY 10010 | 23-2909076 |
| dELiA*s Operating Company | 50 West 23rd Street, New York, NY 10010 | 13-3953765 |
| A Merchandise, LLC | 50 West 23rd Street, New York, NY 10010 | 27-0037639 |
| AMG Direct, LLC | 50 West 23rd Street, New York, NY 10010 | 20-1129236 |
| DACCS, Inc. | 50 West 23rd Street, New York, NY 10010 | 42-1750225 |

**<u>Exhibit B to Claim Purchase and Sale Agreement</u>**

Form of Authorization to Obtain Transaction Data

<u>AUTHORIZATION TO OBTAIN TRANSACTIONAL DATA</u>

This Authorization to Obtain Transactional Data ( this "<u>Authorization</u>") is made on March [*], 2015 between dELiA*s, Inc. and certain of its affiliates as debtors and debtors in possession (collectively, the "<u>Seller</u>") and Cascade Settlement Services LLC ("<u>Purchaser</u>").

Seller has absolutely and unconditionally transferred and assigned to Purchaser all of Seller's right, title and interest in and to or associated with, or connected in any manner to, any claim against and settlement arising from the class action litigation of *In Re: Payment Card Interchange Fee and Merchant-Discount Antitrust Litigation* (Case No 1:05-md-01720-JG-JO) pending in the United States District Court for the Eastern District of New York.

As used in this Authorization, (a) the term "Transactional Data" means data from or related to credit card or debit card transactions in which Seller received payment for goods sold or services provided, and (b) the term "Processors" means Seller's acquiring banks, credit card processors, any other entity involved in processing or recording credit card or debit card transactions, and any third party holding or possessing any or all of Seller's Transactional Data.

Seller hereby directs and authorizes all Processors to release and provide to Purchaser any and all Transactional Data. Seller hereby authorizes Purchaser to request, demand, obtain and receive from any source all of Seller's Transactional Data, including, but not limited to, the merchant identification information listed on and attached hereto as Schedule A.

The undersigned has executed this Authorization as of the date set forth above.

**dELiA*s, Inc. on its behalf and on behalf of its affiliated debtors**

By: _____
    Ryan A. Schreiber, Esq.
    President, General Counsel and Secretary

Purchaser acknowledges receipt of this Authorization.

**Cascade Settlement Services, LLC**

By: _____
    Richard Moseley
    Chief Financial Officer

EAST\96193471.5

## Schedule A

| DEBTOR | ADDRESS | TAX ID |
|---|---|---|
| dELiA*s, Inc. | 50 West 23rd Street, New York, NY 10010 | 20-3397172 |
| dELiA*s Retail Company | 50 West 23rd Street, New York, NY 10010 | 23-2920036 |
| dELiA*s Assets Corp. | 50 West 23rd Street, New York, NY 10010 | 13-3963754 |
| dELiA*s Group Inc. | 50 West 23rd Street, New York, NY 10010 | 13-3914035 |
| dELiA*s Distribution Company | 50 West 23rd Street, New York, NY 10010 | 23-2909076 |
| dELiA*s Operating Company | 50 West 23rd Street, New York, NY 10010 | 13-3953765 |
| A Merchandise, LLC | 50 West 23rd Street, New York, NY 10010 | 27-0037639 |
| AMG Direct, LLC | 50 West 23rd Street, New York, NY 10010 | 20-1129236 |
| DACCS, Inc. | 50 West 23rd Street, New York, NY 10010 | 42-1750225 |

*Form of Notice of Assignment*