## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| dELiA*s, INC., *et al.*, | Case No.  14-23678 (RDD) |
| Debtors.[1] | Jointly Administered |

### NOTICE OF SALE BY AUCTION AND SALE HEARING

**PLEASE TAKE NOTICE** that, on February 18, 2015, dELiA*s, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "Debtors") in the above-captioned jointly administered cases (the "Chapter 11 Cases") filed a motion [Docket No. 256] (the "Bid Procedures Motion") with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") (a) authorizing and approving the bidding procedures with stalking horse bid protections in connection with the sale of the Visa/MasterCard Claim, (b) approving the form and manner of notice of the Auction and Sale Hearing, (c) approving procedures for the assumption and assignment of Assumed Contracts and noticing of related cure amounts, and (d) scheduling an Auction and a Sale Hearing and setting other related dates and deadlines all as further described in the Bid Procedures Motion.  On February 24, 2015, the Bankruptcy Court entered an order [Docket No. 280] (the "Bidding Procedures Order")[2] approving certain bidding procedures, attached thereto as Exhibit 1 (the "Bidding Procedures").

> **Copies of the Bid Procedures Motion, Bidding Procedures Order, and other documents related thereto are available free of charge on the website of the Debtors' noticing and claims agent, Prime Clerk LLC, at http://cases.primeclerk.com/delias, or upon request by contacting Prime Clerk, by telephone at (855) 842-4126, or by e-mail at deliasinfo@primeclerk.com.**

**PLEASE TAKE FURTHER NOTICE** that the Debtors are soliciting offers for the purchase of the Visa/MasterCard Claim (as defined in the Bidding Procedures).  All interested bidders should carefully read the Bidding Procedures and Bidding Procedures Order.  To the extent there are any inconsistencies between this notice and the Bidding Procedures, the latter shall govern in all respects.

**PLEASE TAKE FURTHER NOTICE** that, if the Debtors receive competing Qualified Bids within the requirements and time frame specified by the Bidding Procedures, the Debtors will conduct an auction (the "Auction") of the Visa/MasterCard Claim on March 18, 2015 at 10:00 a.m

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  dELiA*s, Inc. (7172); dELiA*s Distribution Company (9076); A Merchandise, LLC (7639); dELiA*s Operating Company (3765); dELiA*s Retail Company (0036); dELiA*s Group Inc. (4035); AMG Direct, LLC (9236); dELiA*s Assets Corp. (3754); DACCS, Inc. (0225).  The mailing address for the Debtors, solely for purposes of notices and communications, is:  50 West 23rd Street, New York, NY 10010.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Bidding Procedures Order.

(Eastern Time) at the offices of counsel to the Debtors: DLA Piper LLP (US) 1251 Avenue of the Americas, 27th Floor, New, York, New York 10020.

**PLEASE TAKE FURTHER NOTICE** that the Debtors will seek approval of the sale of the Visa/MasterCard Claim at a hearing scheduled to commence on **March 20, 2015 at10:00 a.m. (Eastern Time)** (the "Sale Hearing") or as soon thereafter as counsel may be heard, before the Honorable Robert D. Drain, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, Courtroom 118, White Plains, New York 10601.

**PLEASE TAKE FURTHER NOTICE** that objections to the proposed sale of the Visa/MasterCard Claim, if any, must: (i) be in writing; (ii) conform to the applicable provisions of the Bankruptcy Rules, the Local Bankruptcy Rules and the Order Establishing Certain Notice, Case Management, and Administrative Procedures and Omnibus Hearing Dates [Docket No. 107] entered in these Chapter 11 Cases; (iii) state with particularity the legal and factual basis for the objection and the specific grounds therefor; and (iv) filed with the Court and served so the objection is actually received no later than **March 17, 2015 at 4:00 p.m. (Eastern Time)** (the "Sale Objection Deadline") by the following parties (the "Notice Parties"):

| Debtors | Counsel to the Debtors |
|---|---|
| dELiA*s, Inc.<br>50 West 23rd Street<br>New York, New York 10010<br>Attn:  Ryan A. Schreiber, Esq. | DLA Piper LLP (US)<br>1251 Avenue of the Americas, 25th Floor<br>New, York, New York 10020<br>Attn:  Gregg Galardi, Esq.<br>       Dienna Corrado, Esq. |
| **United States Trustee** | **Counsel to the Committee** |
| Office of the United States Trustee for the<br>Southern District of New York<br>201 Varick Street, Suite 1006<br>New York, New York 10014<br>Attn:  Richard C. Morrissey, Esq.<br>       Serene Nakano, Esq. | Kelley Drye & Warren LLP<br>101 Park Avenue<br>New York, NY 10178<br>Attn:  Robert L. LeHane, Esq.<br>       Gilbert R. Saydah, Jr., Esq. |
| **Counsel to the DIP Agent** | |
| Choate, Hall & Stewart LLP<br>Two International Place<br>Boston, MA 02110<br>Attn:  John F. Ventola, Esq.<br>       Seth Mennillo, Esq. | |

**CONSEQUENCES OF FAILING TO TIMELY FILE AND SERVE AN OBJECTION**

**ANY PARTY OR ENTITY THAT FAILS TO TIMELY FILE AND SERVE AN OBJECTION TO THE SALE OF THE VISA/MASTERCARD CLAIM ON OR BEFORE THE OBJECTION DEADLINE IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER SHALL BE FOREVER BARRED FROM ASSERTING ANY OBJECTION TO SUCH SALE, INCLUDING WITH RESPECT TO THE TRANSFER OF PROPERTY FREE AND CLEAR OF ALL LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS**

**AND THE ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS TO THE SUCCESSFUL BIDDER AND ANY CURE AMOUNTS RELATED THERETO.**

<div style="border:1px solid">

**NO SUCCESSOR OR TRANSFEREE LIABILITY**

**The proposed Order approving the Sale of the Visa/MasterCard Claim provides that the Successful Bidder will have no responsibility for, and the Visa/MasterCard Claim will be sold free and clear of, any successor liability, including: (a) any debt, liability or other obligation of the Debtors of any kind or nature whatsoever of the Debtors or related to the Visa/MasterCard Claim other than as expressly set forth in the Stalking Horse Agreement or (b) any claims against the Debtors or any of their predecessors or affiliates.**

</div>

Dated:  March 3, 2015
    New York, New York

*/s/ Gregg M. Galardi*

Gregg M. Galardi
Dienna Corrado
Arkady A. Goldinstein
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020
Telephone:  (212) 335-4500
Facsimile:  (212) 335-4501

*Counsel for the Debtors and Debtors in Possession*

**EXHIBIT 1**

**BIDDING PROCEDURES**

# UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| dELiA*s, INC., *et al.*, | Case No.  14-23678 (RDD) |
| Debtors.[3] | Jointly Administered |

## BIDDING PROCEDURES

These bidding procedures (the "Bidding Procedures") have been approved by an order of the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered on February 24, 2015 [Docket No. 280] (the "Bidding Procedures Order") in the above-captioned jointly administered Chapter 11 cases of dELiA*s, Inc. and its debtor affiliates (collectively, the "Debtors").

These Bidding Procedures set forth the process by which the Debtors are authorized to conduct the auction (the "Auction") for the sale the ("Sale") of claims (the "Visa/MasterCard Claim") the Debtors hold in the *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation*, Case No. 1:05-md-01720-JG-JO (the "Visa/MasterCard Case") on the terms substantially set forth in that certain Asset Purchase and Sale Agreement, dated as of March 3, 2015, between the Debtors and Cascade Settlement Services LLC (the "Stalking Horse Bidder"), a copy of which is attached hereto as Exhibit A (the "Stalking Horse Agreement").  Please take notice that all capitalized terms used but not otherwise defined herein shall have the meanings set forth in the Stalking Horse Agreement.

> **Copies of the Bidding Procedures Order, and other documents related thereto are available free of charge on the website of the Debtors' noticing and claims agent, Prime Clerk LLC, at http://cases.primeclerk.com/delias, or upon request by contacting Prime Clerk, by telephone at (855) 842-4126, or by e-mail at deliasinfo@primeclerk.com.**

## A.    Approval of Stalking Horse Bid Protections.

The Bidding Procedures Order approved, among other things, the approval of (i) a termination fee payable to a Stalking Horse Bidder of 2% of the purchase price of the Stalking Horse Bidder, which is payable to the Stalking Horse Bidder in the event the Bankruptcy Court approves the Sale of the Visa/MasterCard Claim to any other person or entity other than the Stalking Horse Bidder.

## B.    Participation Requirements.

To participate in the bidding process or otherwise be considered for any purpose hereunder, a person (other than the Stalking Horse Bidder) interested in submitting a Bid must, on or before March 10,

---

[3] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows:  dELiA*s, Inc. (7172); dELiA*s Distribution Company (9076); A Merchandise, LLC (7639); dELiA*s Operating Company (3765); dELiA*s Retail Company (0036); dELiA*s Group Inc. (4035); AMG Direct, LLC (9236); dELiA*s Assets Corp. (3754); DACCS, Inc. (0225).  The mailing address for the Debtors, solely for purposes of notices and communications, is:  50 West 23rd Street, New York, NY 10010.

2015 at 12:00 p.m. (Eastern Time) (the "Preliminary Bid Deadline") deliver (unless previously delivered) the following documents (the "Preliminary Bid Documents"):

    a.    an executed confidentiality agreement on terms reasonably acceptable to the Debtors and containing terms in the aggregate no less favorable to the Debtors in any material respect (other than with respect to the effective periods and the non-disclosure and non-solicitation provisions contained therein, all of which terms shall be commercially reasonable) than those contained in the confidentiality agreement by and among the Stalking Horse Bidder (or its affiliate), the Debtors and certain of their respective affiliates (the "Confidentiality Agreement"); and

    b.    preliminary proof by the Potential Bidder of its financial capacity to close a proposed transaction, which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Potential Bidder (or, if the Potential Bidder is an entity formed for the purpose of acquiring the property to be sold, the party that will bear liability for a breach), the adequacy of which the Debtors and its advisors will determine in consultation with (i) the official committee of unsecured creditors in the Chapter 11 Cases (the "Committee"); and (ii) Salus Capital Partners, LLC, lender and administrative agent under the Debtors' postpetition credit facility (the "DIP Agent", and together with the Committee, the "Consultation Parties").

The Preliminary Bid Documents shall be delivered to the following parties (collectively, the "Notice Parties"):

| Debtors | Counsel to the Debtors |
|---|---|
| dELiA*s, Inc.<br>50 West 23rd Street<br>New York, New York 10010<br>Attn: Ryan A. Schreiber, Esq. | DLA Piper LLP (US)<br>1251 Avenue of the Americas, 25th Floor<br>New, York, New York 10020<br>Attn: Gregg Galardi, Esq.<br>    Dienna Corrado, Esq. |
| **Counsel to the DIP Agent** | **Counsel to the Committee** |
| Choate, Hall & Stewart LLP<br>Two International Place<br>Boston, MA 02110<br>Attn: John F. Ventola, Esq.<br>    Seth Mennillo, Esq. | Kelley Drye & Warren LLP<br>101 Park Avenue<br>New York, NY 10178<br>Attn: Robert L. LeHane, Esq.<br>    Gilbert R. Saydah, Jr., Esq. |

Within two (2) days after a Potential Bidder delivers the Preliminary Bid Documents, the Debtors shall determine, in consultation with its advisors and the Consultation Parties, and notify the Potential Bidder whether such Potential Bidder has submitted acceptable Bid Documents so that the Potential Bidder may conduct a due diligence review with respect to the Visa/MasterCard Claim. Only those Potential Bidders that have submitted acceptable Preliminary Bid Documents (each, an "Acceptable Bidder") may submit bids. The Stalking Horse Bidder shall at all times be deemed an Acceptable Bidder.

**C.    Access to Due Diligence.**

Only Acceptable Bidders shall be eligible to receive due diligence and access to additional non-public information. The Debtors shall provide to each Acceptable Bidder reasonable due diligence information, as requested, as soon as reasonably practicable after such request, which information shall be commensurate with that information given to the Stalking Horse Bidder. To the extent the Debtors provide any information to any Acceptable Bidder that they had not previously provided to the Stalking

Horse Bidder, the Debtors shall promptly provide such information to the Stalking Horse Bidder.  The due diligence period will end on the Bid Deadline (as defined herein) and the Debtors shall have no obligation to furnish any due diligence information after the Bid Deadline.

 In connection with the provision of due diligence information to Acceptable Bidders, the Debtors shall not, except with respect to the Visa/MasterCard Claim, furnish any other confidential information relating to the Debtors, the Debtors' assets or liabilities, or the Sale to any person except an Acceptable Bidder or such Acceptable Bidder's duly-authorized representatives to the extent provided in the applicable Confidentiality Agreement.

 The Debtors along with their advisors shall coordinate all reasonable requests for additional information and due diligence access from Acceptable Bidders; *provided, however,* the Debtors may decline to provide such information to Acceptable Bidders who, in the Debtors' reasonable business judgment and following consultation with the Consultation Parties, have not established that such Acceptable Bidders intend in good faith to, or have the capacity to, consummate their Bid. No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

 Each Acceptable Bidder shall be deemed to acknowledge and represent that it has had an opportunity to conduct any and all due diligence regarding the Debtors' assets and liabilities that are the subject of the Auction prior to making any such bids; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the assets in making its bid; and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise regarding the Debtors' assets or liabilities, or the completeness of any information provided in connection therewith, except as expressly stated in these Bidding Procedures or the Stalking Horse Agreement. Neither the Debtors nor any of their employees, officers, directors, affiliates, subsidiaries, representatives, agents, advisors or professionals are responsible for, and shall bear no liability with respect to, any information obtained by Acceptable Bidders in connection with the Sale.

> The Debtors have designated Ryan Schreiber (rschreiber@deliasinc.com; (212) 590-6204) to coordinate all reasonable requests for additional information and due diligence access.

**D.    Bid Requirements.**

 To be eligible to participate in the Auction, an Acceptable Bidder (other than the Stalking Horse Bidder) must deliver to the Debtors and their counsel, which shall be shared with the other Notice Parties within one (1) business day following receipt thereof, a written, irrevocable offer that must be determined by the Debtors, in consultation with the Consultation Parties, to satisfy each of the following conditions:

  a. **Bid Deposit.**  Each Bid (other than the Stalking Horse Bid) must be accompanied by a 10% cash deposit of the proposed purchase price (the "Good Faith Deposit"), which shall be sent to counsel to the Debtors by wire transfer, which amount shall be deposited in an interest-bearing account;

  b. **Minimum Bid Amount.**  The initial bid increment must be equal to or higher than the aggregate of the Stalking Horse Bid plus the Termination Fee plus $10,000.  Each bid increment thereafter shall be $10,000 or some other amount as determined by the Debtors, in consultation with the Consultation Parties (all of which must be in the form of cash, and/or the assumption of administrative expense liabilities except to the extent of any secured debt that is being credit bid);

c.   **Good Faith Offer.**  Each Bid must constitute a good faith, bona fide offer to purchase the Visa/MasterCard Claim, subject to the Permitted Encumbrances;

d.   **Same or Better Terms/Identification of Assumed Contracts**.  Each Bid must be accompanied by clean and duly executed transaction documents (including schedules and exhibits thereto that identify with particularity which of the Debtors' contracts the Acceptable Bidder seeks to have assigned), along with a copy of the Stalking Horse Agreement that is marked to reflect the amendments and modifications from such agreement, which modifications may not be materially more burdensome to the Debtors than the Stalking Horse Agreement or inconsistent with these Bidding Procedures;

e.   **No Contingencies.**  A Bid must not be conditioned on any contingency, including, among others, on obtaining any of the following: (i) financing, (ii) shareholder, board of directors or other approval, (iii) the outcome or completion of a due diligence review by the Acceptable Bidder; (iv) the Visa/MasterCard Claim free and clear of the Permitted Encumbrances; and/or (v) any third party consents;

f.   **Irrevocable.**  Each Bid must remain irrevocable until 48 hours after the Sale Hearing (as defined below);

g.   **Joint Bids.**  The Debtors will be authorized to approve joint Bids in the Debtors' exercise of their reasonable good faith business judgment, following consultation with the Consultation Parties, on a case-by-case basis;

h.   **Adequate Assurance Information.**  Each Bid must be accompanied by sufficient and adequate financial and other information (the "Adequate Assurance Information") to demonstrate, to the satisfaction of the Debtors, following consultation with the Consultation Parties, that such Acceptable Bidder (i) has the financial wherewithal and ability to consummate in the Sale of the Visa/MasterCard Claim and the assumption of the Debtors' liabilities as set forth the Stalking Horse Agreement, including payment of any cure amount with respect to any contract that may be assigned with respect to the Sale.  The Bid shall also identify a contact person that counterparties to any lease or contract may contact to obtain additional Adequate Assurance Information;

i.   **No Fees.**  The Bids must not be subject to any break up fee, transaction fee, termination fee, expense reimbursement or any similar type of payment or reimbursement.

## E.    Qualified Bids.

Bids, or a combination of one or more Bids, fulfilling all of the preceding requirements shall be deemed to be "Qualified Bids," and those parties submitting Qualified Bids shall be deemed to be "Qualified Bidders."

Within two (2) days after the Bid Deadline, the Debtors, in consultation with the Consultation Parties shall determine which Acceptable Bidders are Qualified Bidders after consultation with their advisors and will notify the Acceptable Bidders whether Bids submitted constitute, alone or together with other Bids, Qualified Bids so as to enable such Qualified Bidders to bid at the Auction (as defined below). Any Bid that is not deemed a "Qualified Bid" shall not be considered by the Debtors.

The Stalking Horse Bidder shall be deemed to be a Qualified Bidder. The Stalking Horse Agreement submitted by the Stalking Horse Bidder shall be deemed a Qualified Bid, qualifying the Stalking Horse Bidder to participate in the Auction.

**F.      Bid Deadline.**

Qualified Bids must be received by each of the Debtors, the Stalking Horse Bidder, their respective advisors and the advisors to the Consultation Parties, in each case so as to be actually **received no later than the March 17, 2015 at 12:00 p.m. (Eastern Time)** (the "Bid Deadline").

**G.      Evaluation of Qualified Bids.**

Prior to the Auction, the Debtors shall evaluate Qualified Bids and, in consultation with their advisors and the Consultation Parties, identify the Qualified Bid that is, in the Debtors' judgment, the highest or otherwise best bid (the "Starting Bid"). Within 24 hours of such determination, but in no event later than one (1) Business Day prior to the date of the Auction, the Debtors' shall notify the Stalking Horse Bidder and the other Qualified Bidders as to which Qualified Bid is the Starting Bid. The Debtors shall distribute copies of the Starting Bid to each Qualified Bidder who has submitted a Qualified Bid.

**H.      No Qualified Bids.**

If no Qualified Bids (other than the Stalking Horse Agreement) are received by the Bid Deadline, then the Debtors may decide to not hold the Auction, the Stalking Horse Agreement may be deemed the Successful Bid (as defined herein) and the Debtors will pursue entry of an order by the Bankruptcy Court approving the Stalking Horse Agreement and authorizing the Sale of the Visa/MasterCard Claim to the Stalking Horse Bidder at the Sale Hearing.

**I.      Auction.**

If one or more Qualified Bids is received by the Bid Deadline, then the Debtors shall conduct the Auction with respect to the Visa/MasterCard Claim. The Auction shall commence on **March 18, 2015 at 10:00 a.m. (Eastern Time)** at the offices of DLA Piper LLP (US), 1251 Avenue of the Americas, 25th Floor, New York, New York 10020, or such later time (after consultation with the Consultation Parties) or other place as the Debtors shall timely notify the Stalking Horse Bidder and all other Qualified Bidders. The Debtors, in consultation with the Consultation Parties, may conduct the auction telephonically.

The Auction will be conducted in accordance with the following procedures (the "Auction Procedures"):

        a.      the Auction will be conducted openly;

        b.      only the Qualified Bidders, including the Stalking Horse Bidder, shall be entitled to bid at the Auction;

        c.      the Qualified Bidders, including the Stalking Horse Bidder, shall appear in person or through duly-authorized representatives at the Auction;

d.      only such authorized representatives of each of the Qualified Bidders, the Stalking Horse Bidder, the Committee, the DIP Agent, the Debtors, and their respective advisors, shall be permitted to attend the Auction;

e.      bidding at the Auction shall begin at the Starting Bid; subsequent Bids at the Auction, including any Bids by Stalking Horse Bidder, shall be made in minimum increments of $10,000 or some other amount as determined by the Debtors, in consultation with the Consultation Parties, to be announced at the Auction;

f.      each Qualified Bidder will be informed of the terms of the previous Bids;

g.      the bidding will be transcribed or videotaped to ensure an accurate recording of the bidding at the Auction;

h.      each Qualified Bidder will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the Sale; and

i.      absent irregularities in the conduct of the Auction, the Bankruptcy Court will not consider Bids made after the Auction is closed; and the Auction shall be governed by such other Auction Procedures as may be announced by the Debtors after consultation with its advisors and the Consultation Parties from time to time on the record at the Auction; provided, that, any such other Auction Procedures shall not be inconsistent with any order of the Bankruptcy Court or with the provisions of the Stalking Horse Agreement with respect to these Bidding Procedures.

**J.      Acceptance of the Successful Bid.**

Upon the conclusion of the Auction (if such Auction is conducted), the Debtors, in the exercise of their reasonable, good-faith business judgment, and in consultation with the Consultation Parties, shall identify the highest or otherwise best Qualified Bid that in the exercise of their fiduciary duties the Debtors in good faith believe is materially more beneficial to the Debtors than the Stalking Horse Bid (the "Successful Bid"), which will be determined by considering, among other things:

a.      the number, type and nature of any changes to the Stalking Horse Agreement as appropriate;

b.      the total expected consideration to be received by the Debtors;

c.      the likelihood of the bidder's ability to close a transaction and the timing thereof; and

d.      the expected net benefit to the estate.

The Qualified Bidder having submitted a Successful Bid will be deemed the "Successful Bidder". The Successful Bidder and the Debtors  shall, as soon as commercially reasonable and practicable, complete and sign all agreements, contracts, instruments or other documents evidencing and containing the terms upon which such Successful Bid was made.

The Debtors will present the results of the Auction to the Bankruptcy Court at the Sale Hearing (as defined below), at which certain findings will be sought from the Bankruptcy Court regarding the Auction, including, among other things, that (a) the Auction was conducted, and

the Successful Bidder was selected, in accordance with these Bidding Procedures, (b) the Auction was fair in substance and procedure, (c) the Successful Bid was a Qualified Bid as defined in these Bidding Procedures and (d) consummation of the Successful Bid will provide the highest or otherwise best value for the Debtors' assets and is in the best interests of the Debtors' estates.

If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when (1) such Qualified Bid is declared the Successful Bid at the Auction and (2) definitive documentation has been executed in respect thereof.  Such acceptance is conditioned upon approval by the Bankruptcy Court of the Successful Bid and entry of the Sale Order approving such Successful Bid.

**K.      Sale Hearing.**

A hearing to consider approval of the Qualified Bid submitted by the Successful Bidder (or to approve the Stalking Horse Agreement if no Auction is held) (the "Sale Hearing") is presently scheduled to take place on **March 20, 2015 at 10:00 a.m. (prevailing Eastern Time),** or as soon thereafter as counsel may be heard, before the Honorable Robert D. Drain, United States Bankruptcy Judge in the United States Bankruptcy Court for the Southern District of New York, 300 Quarropas Street, Courtroom 118, White Plains, New York 10601.

**The Sale Hearing may be adjourned to a later date by the Debtors, in consultation with the Consultation Parties, by the filing a notice of adjournment or making an announcement at the Sale Hearing.  No further notice of any such continuance will be required to be provided to any party.**

**L.      Designation of Back-Up Bidder.**

If for any reason the Successful Bidder fails to consummate the Qualified Bid within the time permitted after the entry of the Sale Order approving the Sale to the Successful Bidder, then the Qualified Bidder with the second highest or otherwise best Bid (the "Back-Up Bidder"), as determined by the Debtors after consultation with their advisors, and in consultation with the Consultation Parties, at the conclusion of the Auction and announced at that time to all the Qualified Bidders participating therein, will automatically be deemed to have submitted the highest or otherwise best Bid (the "Back-Up Bid").

The Debtors will be authorized, but not required, to consummate the transaction pursuant to the Back-Up Bid as soon as is commercially reasonable without further order of the Bankruptcy Court upon at least twenty-four (24) hours advance notice, which notice will be filed with the Bankruptcy Court; it being understood that nothing herein shall require the Stalking Horse Bidder to be a Back-Up Bidder or its Bid to be a Back-Up Bid.  Upon designation of the Back-Up Bidder at the Auction, the Back-Up Bid shall remain open until the closing of the Successful Bid.

**M.      Break-up Fee.**

In the event that neither the Successful Bid nor the Back-Up Bid is made by the Stalking Horse Bidder and the Debtors shall be obligated to pay to the Stalking Horse Bidder from the proceeds of the purchase price for the Visa/MasterCard Claim, upon the closing of the Successful Bid or the Back-Up Bid (as applicable) and the payment of such purchase price, by wire transfer in immediately available funds to an account designated by the Stalking Horse Bidder, the Termination Fee and any other amounts returnable to the Stalking Horse Bidder, in each instance in accordance with the applicable provisions of the Stalking Horse Agreement.

**N.**     **Return of Good Faith Deposit.**

The Good Faith Deposit of the Successful Bidder shall, upon consummation of the Successful Bid, be credited to the purchase price paid for Debtors' assets and liabilities.  If the Successful Bidder fails to consummate the Successful Bid, then the Good Faith Deposit shall be forfeited to, and retained irrevocably by, the Debtors.

The Good Faith Deposit of any unsuccessful Qualified Bidders will be returned within fifteen (15) days after consummation of the Sale of the Visa/MasterCard Claim.

**O.**     **Reservation of Rights.**

The Debtors reserve their rights to modify these Bidding Procedures, in consultation with the Consultation Parties, in any manner that will best promote the goals of the bidding process (subject to any restrictions set forth in the Stalking Horse Agreement) or impose, in consultation with the Consultation Parties, at or prior to the Auction, additional customary terms and conditions on the Sale of the Visa/MasterCard Claim.

Notwithstanding anything herein or in the Bidding Procedures Order to the contrary, nothing will in any way impair or enhance, alter or otherwise affect any and all rights that any secured lender may have to "credit bid" pursuant to section 363(k) of the Bankruptcy Code or other applicable law.

**EXHIBIT A**

**STALKING HORSE AGREEMENT**

## ASSET PURCHASE AND SALE AGREEMENT

THIS ASSET PURCHASE AND SALE AGREEMENT ("Agreement") is made and entered into this 3rd day of March, 2015, by and between Cascade Settlement Services LLC or its designee (the "Purchaser"), and dELiA*s, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "Seller").  Purchaser and Seller are sometimes collectively referred to in this Agreement as "Parties" or individually as "Party."

## RECITALS

A.    Seller may be a Class Member and potential beneficiary of the putative consolidated class action entitled In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Case No. 1:05 md-1720-JG-JO) ("Litigation") pending in the United States District Court for the Eastern District of New York ("District Court").  If the plaintiffs in the Litigation either prevail in the Litigation, such Litigation results in a settlement, or the Litigation is otherwise resolved in any way or by any forum in favor of class members ("Settlement Event"), the Seller may be entitled to a monetary recovery.

B.    Seller may have a right, now or in the future, to benefits arising from and/or relating to the Litigation and the injuries alleged therein.  These rights to benefits are called the "Claim". The Claim encompasses all rights, title, and ownership interest of any kind, now existing or arising hereafter, to which Seller may be entitled, arising in any way or form, from the Litigation, or the operative facts alleged in the Litigation, including but not limited to the right to monetary benefits, or benefits that may be monetized, from settlements, judgments, or any other form of resolution of the Litigation or the operative facts alleged therein.  Whether such recovery will occur is unknown by Seller and Purchaser at the time of this Agreement.

C.    Seller is dELiA*s, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors")[1], in connection with the Debtors' jointly administered chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), lead case number 14 23678 (RDD) (the "Bankruptcy Case").

D.    On February 24, 2015, the Bankruptcy Court entered the Order (I) Approving Bidding Procedures and Bid Protections in Connection With the Sale of Visa/MasterCard Claim, (II) Approving the Form and Manner of Notice, and (III) Scheduling an Auction and a Sale Hearing (the "Bid Procedures Order").

E.    Purchaser desires to purchase the Claim from Seller, and Seller desires to sell the Claim to Purchaser as provided for in this Agreement.  The Parties intend to transfer from Seller to Purchaser any and all of the Seller's right, title and interest in and or associated with, or connected in any manner to, any Claim.

---

[1] The Debtors are:  dELiA*s, Inc.; dELiA*s Distribution Company; A Merchandise, LLC; dELiA*s Operating Company; dELiA*s Retail Company; dELiA*s Group Inc.; AMG Direct, LLC; dELiA*s Assets Corp.; DACCS, Inc.

F.     All terms used herein and not defined herein shall have the meanings given such terms in the Litigation filings.

       **NOW, THEREFORE**, in consideration of the mutual covenants, agreements, representations and warranties contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

## SECTION 1 – RECITALS INCORPORATED IN AGREEMENT

1.1    The above recitals are hereby incorporated herein by reference.

## SECTION 2 – TERMS OF PURCHASE AND SALE

2.1    Sale and Purchase of Claim.  On the terms and subject to the conditions and other provisions set forth in this Agreement, Purchaser agrees to purchase all right, title and interest in the Claim from Seller, and Seller agrees to sell, transfer and assign all right, title and interest in the Claim to Purchaser for the sum of $410,000 (the "Purchase Price"), which is subject to higher or otherwise better offers that may be obtained by the Seller pursuant to the bidding procedures approved in the Bid Procedures Order.

2.2    Deposit.  Purchaser shall deliver to Seller, within one (1) business day after entry into this Agreement, a good faith deposit equal to 10% of the Purchase Price (the "Deposit"), which Deposit shall be placed in an escrow account and applied by Seller against the Purchase Price at the closing of the sale of the Assets.  The Deposit will be refunded to the Purchaser if the sale of the Claim to the Purchaser is not consummated, other than as a result of a breach by the Purchaser or as otherwise set forth in herein.  The full amount of the Deposit shall be forfeited to the Seller if the Seller terminates this agreement as a result of a breach thereof by the Purchaser.

2.3    Termination Fee: In the event the Seller consummates an alternative transaction (an "Alternative Transaction") with another party with the highest or otherwise better bid for the Claim, the Purchaser shall be entitled to a termination fee equal to 2% of the Purchase Price, which termination fee shall be payable from the proceeds of the purchase price in such Alternative Transaction.  No other break up fee, expense reimbursement or other bid protections will be provided to the Purchaser.  The Termination Fee will be paid to the Purchaser within five (5) business days after the closing of an Alternative Transaction for the sale of the Claim.

2.4    Bankruptcy Court Approval.  Seller shall seek Bankruptcy Court approval of the sale of the Claim and it shall be a condition precedent to the performance of the obligations of both Seller and Purchaser under this Agreement that the Bankruptcy Court shall have entered an order reasonably satisfactory to each of Seller and Purchaser approving the sale of the Claim pursuant to this Agreement, which order shall be in full force and effect and shall not have been modified, stayed, or reversed (the "Sale Order").  Seller shall use reasonable efforts to obtain entry of the Sale Order no later than March 20, 2015.

EAST\96193471.5

2.5   <u>Closing</u>.  The transactions contemplated by this Agreement will be consummated at a closing as follows:

(a)   The Seller and Purchaser will use reasonable efforts to close (the "<u>Closing</u>") no later than on or before March 30, 2015. The date and time the Closing actually occurs are referred to herein as the "<u>Closing Date</u>".  The Closing will be effective as of 12:01 a.m., Eastern Daylight Savings Time, on the Closing Date.

(b)   No later than the first business day prior to the Closing Date, Seller shall execute and deliver to Purchaser the Notice of Assignment, in the form attached hereto as Exhibit A ("<u>Assignment</u>") and the Authorization to Obtain Transactional Data, in the form attached hereto as Exhibit B ("<u>Data Authorization</u>", with Assignment, the "<u>Ancillary Agreements</u>").

(c)   Provided that Seller has fully performed its obligations under Section 2.5(b), including delivering to Purchaser the completed schedules associated with the Ancillary Agreements and the Sale Order has been entered approving the sale of the Claim to Purchaser, Purchaser shall pay to Seller at the Closing an amount equal to the Purchase Price in immediately available funds by confirmed wire transfer to a bank account to be designated by Seller no later than the second business day prior to the Closing Date.

2.6   <u>Cooperation of Seller</u>.  Seller understands and acknowledges that in order for Purchaser to verify and/or collect the Claim, Purchaser may require Seller's assistance, and Seller agrees to provide such assistance to Purchaser, during the period of 30 days immediately following the Closing Date unless otherwise extended in writing by the Parties, as may be necessary for the collection of the Claim, including but not limited to the verification of data within Seller's reasonable possession and/or control or that may be obtained with the assistance/authorization of Seller.

2.7   <u>No Assumption of Obligations or Liabilities</u>.  Purchaser shall not assume or in any way become liable for any obligation or liability relating to the Claim or Seller unless explicitly provided for in this Agreement.

## SECTION 3 - REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Purchaser as follows:

3.1   <u>Organization</u>.  With the exception of DACCS, Inc., all of the other Debtors are entities organized under the laws of Delaware.  DACCS, Inc. was incorporated under the laws of Ohio.

3.2   <u>Authority</u>.  The execution and delivery of this Agreement by Seller and, subject to the entry of the Sale Order, the consummation by Seller of the transaction contemplated by this Agreement are within Seller's authority as granted by the Bankruptcy Court in the Bankruptcy Case.

EAST\96193471.5

3.3  <u>Due Execution; Validly Binding Agreement</u>.  This Agreement has been duly authorized, executed and delivered and constitutes a legal, valid and binding obligation of the Seller upon entry of the Sale Order, enforceable against it in accordance with its terms.

3.4  <u>No Litigation</u>.  There is no known suit, action, litigation or other proceeding or governmental or administrative investigation or inquiry, pending or threatened against the Seller or concerning the Claim that could prevent or prohibit Seller from selling the Claim or from otherwise complying in full with the provisions of this Agreement. Transfer of the Claim pursuant to this Agreement will not breach, violate or otherwise contravene any applicable law, statute, regulation or contractual term.

3.5  <u>Title to Claim; No Liens</u>.  Seller has good, valid and marketable title to the Claim and, upon entry of the Sale Order, may sell the Claim free and clear of any mortgage, pledge, lien, security interest, claim or encumbrance.  Seller has not heretofore transferred the Claim or any interest therein, other than security interests that will no longer attach to the Claim once sold in accordance with the Sale Order.

3.6  <u>Information Provided to Purchaser</u>.  To the best of Seller's knowledge, all information provided to Purchaser by Seller in connection with the sale of the Claim, including, but not limited to, information on dates on which the Seller began accepting Visa and/or MasterCard credit card and/or debit transactions, financial information about the Seller's business (including total United States sales) and any other representations actually or potentially concerning the asset is true, correct and complete in all material respects. Seller has made the following representations or warranties to Purchaser:

  i.  Seller has not had any communications with the District Court, lead counsel for the parties in the Litigation ("<u>Lead Counsel</u>") or any other entity affiliated with the Litigation regarding the Litigation.

  ii.  Should a Settlement Event occur, if asked by the District Court, Lead Counsel, the claims administrator appointed in the Litigation ("<u>CA</u>") or any other entity affiliated with such settlement, Seller hereby warrants that

      1.  Seller never intended to opt-out of the Litigation;

      2.  Seller never gave any entity any indication of an intent to opt-out of the Litigation; and

      3.  Seller never authorized any entity to opt-out of the Litigation on Seller's behalf.

  iii.  Seller warrants that if requested by Purchaser and if a Settlement Event should occur, it will provide, during the period of 30 days immediately following the Closing Date unless otherwise extended in writing by the Parties, an affidavit stating that (1) Seller never intended to opt-out of the Settlement Event; (2) Seller never gave any entity any indication of an intent to opt-out of the Settlement

Event; and (3) Seller never authorized any entity to opt-out of the Settlement Event on Seller's behalf.

iv.    Seller warrants that it will never take any position inconsistent with the representations and warranties contained herein.

3.7    <u>Independent Investigation</u>.  Seller acknowledges that it has conducted its own independent evaluation of the transactions contemplated under this Agreement.  Seller further acknowledges that it has had an opportunity to conduct its own independent investigation regarding the Claim and the Litigation. Seller has had an opportunity to review the documents and information available through publicly available sources of information.

3.8    <u>No Reliance</u>.  Seller has conducted an independent evaluation of the reasonableness of the Purchase Price and has decided to enter into this Agreement and undertake the transactions contemplated hereunder solely in reliance on its own evaluation of the Purchase Price.  With the exception of any representations and warranties set forth in Section 4 of this Agreement, Seller is not relying on (i) any information provided to Seller or written or oral representations, whether express or implied, by Purchaser or its respective members, shareholders, officers, directors, employees, agents or affiliates or (ii) any information provided to Seller by Purchaser or its respective shareholders, officers, directors, employees, agents or affiliates in assessing the reasonableness of the Purchase Price.  Aside from representations or warranties contained herein, Seller acknowledges that Purchaser expressly disclaims and has not made any warranties, guarantees, promises, or representations of any kind whatsoever regarding the value of the Claim and the anticipated recovery and/or timing of recovery on the Claim.

3.9    <u>Information</u>.  Seller acknowledges that because a Settlement Event had not taken place prior to the payment of the Purchase Price, the value of the Claim and the final recovery on the Claim may not be determined with certainty by Seller or Purchaser as of the time of execution of this Agreement.  Seller further acknowledges that Purchaser may possess material information not known to Seller, and Seller agrees that Purchaser shall have no liability with respect to the non-disclosure of any such information.

3.10    <u>Expectation of Return</u>.  Seller acknowledges that Purchaser's sole intention and expectation in entering into this Agreement is to earn a positive financial return on the Claim.  As such, Seller understands that Purchaser's recovery on the Claim may exceed the Purchase Price.

3.11    <u>Own Advisors</u>.  Seller acknowledges that it has had an opportunity to consult with an attorney and/or other relevant professional advisors prior to the execution of this Agreement. Seller acknowledges that Purchaser has advised it that it should seek such counsel.

3.12    <u>No Fiduciary or Confidential Relationship</u>.  Seller acknowledges that Seller and Purchaser are not in a fiduciary, confidential, agency or otherwise special relationship,

EAST\96193471.5

including one of trust, confidence or privity, and that Seller and Purchaser are each acting for their own self-interest.

## SECTION 4 – REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser represents and warrants to Seller as follows:

4.1   Organization.  Purchaser is a Limited Liability Company, validly existing and in good standing under the laws of Delaware.

4.2   Authorization.  Purchaser has the requisite power and authority to purchase the Claim from Seller, execute and deliver this Agreement, and to perform the transactions contemplated hereby or thereby.

4.3   Due Execution; Validly Binding.  This Agreement has been duly authorized, executed and delivered and constitutes a legal, valid and binding obligation of the Purchaser, enforceable against it in accordance with its terms, except as may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights in general and subject to general principles of equity.

4.4   No Litigation.  There is no suit, action, litigation or other proceeding or governmental or administrative investigation or inquiry, pending or threatened, against Purchaser that could prevent or prohibit Purchaser from purchasing the Claim or from otherwise complying in full with the provisions of this Agreement.  Transfer of the Claim pursuant to this Agreement will not breach, violate or otherwise contravene any applicable law, statute, regulation or contractual term.

4.5   No Affiliation.  Purchaser is not affiliated with any counsel involved in the Litigation or the District Court relating to the Litigation.

4.6   Purchaser Solvent.  That Purchaser is solvent and has the funds available to pay the Purchase Price.

4.7   Disclaimers: No Representations or Warranties.  Purchaser expressly disclaims and does not make any warranties, guarantees, promises, or representations of any kind whatsoever regarding the Claim, including, but not limited to:  (i) the value of the Claim; and (ii) the anticipated recovery or timing of recovery on the Claim.  Purchaser has advised Seller that it should consult with an attorney and/or other relevant professional advisors prior to the execution of this Agreement.

4.8   Independent Investigation.  Purchaser acknowledges that it has conducted its own independent evaluation of the transactions contemplated under this Agreement.  Purchaser further acknowledges that it has had an opportunity to conduct its own independent investigation regarding the Litigation, the possibility of a Settlement Event taking place, and the Claim.  Purchaser has had an opportunity to review the documents and information available through publicly available sources of information.

EAST\96193471.5

4.9    No Reliance.  Purchaser has decided to enter into this Agreement and undertake the
transactions contemplated hereunder solely in reliance on its own evaluation, based on
such information as it has deemed appropriate under the circumstances.  With the
exception of any representations and warranties set forth in Section 3 of this Agreement,
Purchaser is not relying on (i) any information provided to Purchaser or written or oral
representations, whether express or implied, by Seller or its agents or affiliates, or (ii) any
information provided to Purchaser by Seller or its agents or affiliates.  Aside from
representations or warranties contained herein, Purchaser acknowledges that Seller
expressly disclaims and has not made any warranties, guarantees, promises, or
representations of any kind whatsoever regarding the Claim, including, but not limited to:
(i) the value of the Claim, and (ii) the anticipated recovery and/or timing of recovery on
the Claim.

4.10    Information.  Purchaser acknowledges that, because a Settlement Event had not taken
place prior to the payment of the Purchase Price, the value of the Claim and the final
recovery on the Claim may not be determined with certainty by Seller or Purchaser as of
the time of execution of this Agreement.  Purchaser further acknowledges that Seller may
possess material information not known to it.  Aside from representations or warranties
contained herein, Purchaser agrees that Seller shall have no liability with respect to the
non-disclosure of any such information.

4.11    Expectation of Return.  Purchaser is in the business of purchasing claims from entities
entitled to recover funds from both existing class action lawsuit settlements and from
pending class action litigation that may or may not result in a settlement.  Purchaser
understands that Purchaser's recovery on the Claim may not exceed the Purchase Price.

4.12    Own Advisors.  Purchaser acknowledges that it has had an opportunity to consult with
an attorney and/or other relevant professional advisors prior to the execution of this
Agreement.  Purchaser acknowledges that Seller has advised it that it should seek such
counsel.

4.13    No Fiduciary or Confidential Relationship.  Purchaser acknowledges that Seller and
Purchaser are not in a fiduciary, confidential, agency or otherwise special relationship,
including one of trust, confidence or privity, and that Seller and Purchaser are each acting
for their own self-interest.

## SECTION 5 - COVENANTS OF SELLER

Seller covenants to Purchaser as follows:

5.1    Further Assurances.  During the period of 30 days immediately following the Closing
Date unless otherwise extended in writing by the Parties, Seller will use commercially
reasonable efforts to provide, duly execute or deliver, or cause to be provided, duly
executed or delivered, to Purchaser such further information and instruments reasonably
available to it or under its possession, custody or control and do and cause to be done
such further acts as may be reasonably necessary or proper to respond to any audit or
inquiry by the CA, Lead Counsel or the District Court regarding the Claim.  To the extent

7

any decision needs to be made or vote taken among the Plaintiffs relating to the Claim and any party does not recognize the Purchaser as the rightful owner of the Claim for any reason, then the Seller agrees, during the period of 30 days immediately following the Closing Date unless otherwise extended in writing by the Parties, to consult with and follow the direction of the Purchaser.

5.2     <u>Waiver of Claims</u>.  To the maximum extent permitted by law, Seller will not assert and hereby waives any and all claims against Purchaser or any of its members, officers, directors, employees, agents or affiliates with respect to this Agreement, any Ancillary Agreement or the transactions contemplated hereby or thereby based on: (i) any claim that Purchaser had superior or additional information material to a decision to sell or buy the Claim; (ii) Purchaser made warranties or representations, expressed or implied, not contained in this Agreement; or (iii) the Claim's value and scope exceeds the Purchase Price.  For the avoidance of doubt, the foregoing shall not be deemed to be a waiver of any representation or warranty expressly set forth herein.

5.3     <u>Covenant Not To Sue</u>.  Seller will not commence or maintain any suit thereon against Purchaser or any of its shareholders, officers, directors, employees, agents or affiliates with respect to this Agreement, or the transactions contemplated hereby, whether at law or in equity, based on: (i) any claim that Purchaser had superior or additional information material to a decision to sell or buy the Claim; (ii) Purchaser made warranties or representations, expressed or implied, not contained in this Agreement; or (iii) the Claim's value and scope exceeds the Purchase Price.  For the avoidance of doubt, the foregoing shall not be deemed to be a waiver of any representation or warranty expressly set forth herein.

5.4     <u>Payment Delivery</u>.  If a CA mistakenly sends total or partial payment directly to Seller, Seller will be deemed to hold such amounts in trust for the benefit of the Purchaser and shall immediately endorse such payment to Purchaser and deliver the payment to Purchaser by personal delivery or by first-class mail, certified, return receipt requested, postage prepaid and addressed to:

> Cascade Settlement Services
> 100 Shoreline Highway, Suite B-125
> Mill Valley, CA 94941
> Attn: John Chilcott

## SECTION 6 – COVENANTS OF PURCHASER

6.1     <u>Waiver of Claims</u>.  To the maximum extent permitted by law, Purchaser will not assert and hereby waives any and all claims against Seller or any of its members, officers, directors, employees, agents or affiliates with respect to this Agreement, any Ancillary Agreement or the transactions contemplated hereby or thereby based on: (i) any claim that Seller had superior or additional information material to a decision to sell or buy the Asset; (ii) Seller made warranties or representations, expressed or implied, not contained in this Agreement; or (iii) the Purchase Price exceeding the Asset's value and scope.  For

the avoidance of doubt, the foregoing shall not be deemed to be a waiver of any representations or warranties expressly contained herein.

6.2    <u>Covenant Not To Sue</u>.  Purchaser will not commence or maintain any suit thereon against Seller or any of its shareholders, officers, directors, employees, agents or affiliates with respect to this Agreement, or the transactions contemplated hereby, whether at law or in equity, based on: (i) any claim that Seller had superior or additional information material to a decision to sell or buy the Asset; (ii) Seller made warranties or representations, expressed or implied, not contained in this Agreement; or (iii) the Purchase Price exceeding the Asset's value and scope.  For the avoidance of doubt, the foregoing shall not be deemed to be a waiver of any representations or warranties expressly contained herein.

## SECTION 7 - GENERAL

7.1    <u>Severability</u>.  In the event that any provision herein becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable or void, this Agreement shall continue in full force and effect without said provision.

7.2    <u>Costs</u>.  The Parties shall each pay their own costs and expenses (including attorney's fees and accountants' fees) incurred or to be incurred in negotiating, preparing and executing this Agreement.

7.3    <u>Entire Agreement</u>.  This Agreement represents the entire agreement and understanding between the Parties regarding the sale and purchase of the Claim and supersedes any and all prior representations, warranties agreements and understandings, whether written or oral, concerning the sale and/or purchase of the Claim.

7.4    <u>No Oral Modification</u>.  This Agreement may only be amended in writing signed by both Parties.

7.5    <u>Assignability of Claim.</u> Notwithstanding anything contained in this Agreement, Purchaser may assign its right, title and interest in and to this Agreement to its joint venture investment partner, Dunhill Asset Services V LLC  without the further consent of Seller.

7.6    <u>Jury Trial Waiver</u>.  The Parties hereby irrevocably and knowingly waive to the fullest extent permitted by law any right to a trial by jury in any action or proceeding arising out of this Agreement. The Parties agree that any such action or proceeding shall be tried before a court and not a jury. In the event the Parties' waiver of a trial by jury is deemed invalid, the Parties hereby agree that any action or claim arising out of any dispute in connection with this agreement, any rights, remedies, obligations, or duties hereunder, or the performance or enforcement hereof or thereof shall be determined by judicial reference.

7.7    <u>Governing Law; Forum</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflict of law

9

rules, principles or provisions of such state or of any other state.  The Parties hereby agree that any action or claim arising out of any dispute in connection with this Agreement, any rights, remedies, obligations, or duties hereunder, or the performance or enforcement hereof or thereof shall be subject to the exclusive jurisdiction of the Bankruptcy Court.

7.8    Headings.  Section headings are for convenient reference only and will not affect the meaning or have any bearing on the interpretation of any provision of this Agreement.

7.9    Counterparts.  This Agreement may be executed in counterparts, and each counterpart shall have the same force and effect as an original and shall constitute an effective, binding agreement.  If so signed, the Agreement becomes effective when both signature pages are attached.

7.10    Voluntary Execution of Agreement.  This Agreement is executed voluntarily and without any duress or undue influence on the part or on behalf of the Parties hereto.

7.11    Notices.  All notices, requests, demands or any other communication made under, pursuant to, or in accordance with this Agreement, except for normal day-to-day business communications, which may be made orally or in a writing, shall be in writing and shall either be delivered personally or deposited in the United States mail and sent by first-class mail, certified, return receipt requested, postage prepaid and addressed properly as follows:

10

| If to Purchaser: | If to Seller: |
|---|---|
| Cascade Settlement Services<br>Attention:  John Chilcott<br>100 Shoreline Highway<br>Suite B-125<br>Mill Valley, CA 94941<br>Email:<br>chilcott@cascadesettlement.com | dELiA*s, Inc.<br>50 West 23rd Street<br>New York, New York 10010<br>Attn: Ryan A. Schreiber, Esq.<br><br>With a copy to:<br><br>**Counsel for the Debtors**<br>DLA Piper LLP (US)<br>1251 Avenue of the Americas, 25th Floor<br>New, York, New York 10020<br>Attn: Gregg Galardi, Esq.<br>        Dienna Corrado, Esq.<br><br>**Counsel to the DIP Agent**<br>Choate, Hall & Stewart LLP<br>Two International Place<br>Boston, MA 02110<br>Attn: John F. Ventola, Esq.<br>        Seth Mennillo, Esq.<br><br>**Counsel to the Creditors' Committee**<br>Kelley Drye & Warren LLP<br>101 Park Avenue<br>New York, NY 10178<br>Attn: Robert L. LeHane, Esq. |

or to such other address(es) as a Party hereto may indicate to the other Party in the manner provided for herein.  Notices given by mail shall be deemed effective and complete forty-eight (48) hours following the time of posting and mailing, and notices delivered personally shall be deemed effective and complete at the time of delivery and the obtaining of a signed receipt.

*[Signature page follows]*

EAST\96193471.5

IN WITNESS WHEREOF, the Agreement has been executed by the Parties as of the date and year provided above.

Cascade Settlement Services LLC

dELiA*s, Inc., on its behalf and on behalf of its affiliated Debtors

By: _____

Name: Richard Moseley

Title:   Chief Financial Officer

By: _____

Name:  Ryan A. Schreiber, Esq.

Title:   President, General Counsel, Secretary

*Signature Page*

*Form of Notice of Assignment*

<u>**Exhibit A to Claim Purchase and Sale Agreement**</u>

Form of Notice of Assignment

To:    Claims Administrator of Any Settlement Arising from **IN RE: PAYMENT
CARD INTERCHANGE FEE AND MERCHANT-DISCOUNT
ANTITRUST LITIGATION** (Case No. 1:05-md-01720-JG-JO)(E.D.N.Y.)

We hereby give notice that pursuant to that certain Asset Purchase and Sale Agreement dated
March 3, 2015 (the "Sale Agreement"), between dELiA*s, Inc. and certain of its affiliates
(collectively, the "Seller") and Cascade Settlement Services LLC("Purchaser"), and the order
of the U.S. Bankruptcy Court for the Southern District of New York in case number 14-
23678(RDD), dated March [*], 2015 (attached as Exhibit A) approving the Sale Agreement,
Seller has absolutely and unconditionally transferred and assigned to Purchaser all of Seller's
right, title and interest in and to or associated with, or connected in any manner to, any claim
against and settlement arising from the class action litigation of *In Re: Payment Card
Interchange Fee and Merchant-Discount Antitrust Litigation* (Case No 1:05-md-01720-JG-
JO) pending in the United States District Court for the Eastern District of New York (the
"Settlement"), for the following entities:

| Entity Name | United States Bankruptcy Court for the Southern District of New York Case Number |
|---|---|
| dELiA*s, Inc. | 14-23678 |
| dELiA*s Retail Company | 14-23679 |
| dELiA*s Assets Corp. | 14-23680 |
| dELiA*s Group Inc. | 14-23681 |
| dELiA*s Distribution Company | 14-23682 |
| dELiA*s Operating Company | 14-23683 |
| A Merchandise, LLC | 14-23684 |
| AMG Direct, LLC | 14-23685 |
| DACCS, Inc. | 14-23686 |

The rights assigned to Purchaser include, but are not limited to, Seller's right to file a claim
in the Settlement proceedings and to challenge any and all estimates for payment of that
claim. Seller has provided Purchaser with merchant identification information listed on and
attached hereto as Schedule A.

Purchaser is now the legal and equitable owner of all rights associated with the Settlement.
You should deal directly with Purchaser or its duly appointed agents on all matters pertaining
to the Seller's rights in the Settlement. Further, in accordance with the Sale Agreement, any
and all payments relating to the Settlement should be made payable to Purchaser and sent to
the following address:

> Cascade Settlement Services, LLC
> 100 Shoreline Highway, Suite B-125
> Mill Valley, CA 94941
> Attn: John Chilcott

Moreover, any and all correspondence, documents or any other communications pertaining to
the Settlement should be directed to Purchaser at the above address.

EAST\96193471.5

*Form of Notice of Assignment*

Dated this ___ day of March 2015.


dELiA*s, Inc. on its behalf and on behalf of its affiliated debtors, Seller


By: _____


    Ryan A. Schreiber, Esq., President, General Counsel, Secretary

EAST\96193471.5

Schedule A

| DEBTOR | ADDRESS | TAX ID |
|---|---|---|
| dELiA*s, Inc. | 50 West 23rd Street, New York, NY 10010 | 20-3397172 |
| dELiA*s Retail Company | 50 West 23rd Street, New York, NY 10010 | 23-2920036 |
| dELiA*s Assets Corp. | 50 West 23rd Street, New York, NY 10010 | 13-3963754 |
| dELiA*s Group Inc. | 50 West 23rd Street, New York, NY 10010 | 13-3914035 |
| dELiA*s Distribution Company | 50 West 23rd Street, New York, NY 10010 | 23-2909076 |
| dELiA*s Operating Company | 50 West 23rd Street, New York, NY 10010 | 13-3953765 |
| A Merchandise, LLC | 50 West 23rd Street, New York, NY 10010 | 27-0037639 |
| AMG Direct, LLC | 50 West 23rd Street, New York, NY 10010 | 20-1129236 |
| DACCS, Inc. | 50 West 23rd Street, New York, NY 10010 | 42-1750225 |

## Exhibit B to Claim Purchase and Sale Agreement

Form of Authorization to Obtain Transaction Data

## AUTHORIZATION TO OBTAIN TRANSACTIONAL DATA

This Authorization to Obtain Transactional Data ( this "Authorization") is made on March [*], 2015 between dELiA*s, Inc. and certain of its affiliates as debtors and debtors in possession (collectively, the "Seller") and Cascade Settlement Services LLC ("Purchaser").

Seller has absolutely and unconditionally transferred and assigned to Purchaser all of Seller's right, title and interest in and to or associated with, or connected in any manner to, any claim against and settlement arising from the class action litigation of *In Re: Payment Card Interchange Fee and Merchant-Discount Antitrust Litigation* (Case No 1:05-md-01720-JG-JO) pending in the United States District Court for the Eastern District of New York.

As used in this Authorization, (a) the term "Transactional Data" means data from or related to credit card or debit card transactions in which Seller received payment for goods sold or services provided, and (b) the term "Processors" means Seller's acquiring banks, credit card processors, any other entity involved in processing or recording credit card or debit card transactions, and any third party holding or possessing any or all of Seller's Transactional Data.

Seller hereby directs and authorizes all Processors to release and provide to Purchaser any and all Transactional Data. Seller hereby authorizes Purchaser to request, demand, obtain and receive from any source all of Seller's Transactional Data, including, but not limited to, the merchant identification information listed on and attached hereto as Schedule A.

The undersigned has executed this Authorization as of the date set forth above.

**dELiA*s, Inc. on its behalf and on behalf of its affiliated debtors**

By: _____
    Ryan A. Schreiber, Esq.
    President, General Counsel and Secretary

Purchaser acknowledges receipt of this Authorization.

**Cascade Settlement Services, LLC**

By:_____
    Richard Moseley
    Chief Financial Officer

EAST\96193471.5

Schedule A

| DEBTOR | ADDRESS | TAX ID |
|---|---|---|
| dELiA*s, Inc. | 50 West 23rd Street, New York, NY 10010 | 20-3397172 |
| dELiA*s Retail Company | 50 West 23rd Street, New York, NY 10010 | 23-2920036 |
| dELiA*s Assets Corp. | 50 West 23rd Street, New York, NY 10010 | 13-3963754 |
| dELiA*s Group Inc. | 50 West 23rd Street, New York, NY 10010 | 13-3914035 |
| dELiA*s Distribution Company | 50 West 23rd Street, New York, NY 10010 | 23-2909076 |
| dELiA*s Operating Company | 50 West 23rd Street, New York, NY 10010 | 13-3953765 |
| A Merchandise, LLC | 50 West 23rd Street, New York, NY 10010 | 27-0037639 |
| AMG Direct, LLC | 50 West 23rd Street, New York, NY 10010 | 20-1129236 |
| DACCS, Inc. | 50 West 23rd Street, New York, NY 10010 | 42-1750225 |