UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>dELiA*s, INC., *et al.*,<br><br>Debtors.[1] | Chapter 11<br><br>Case No. 14-23678 (RDD)<br><br>Jointly Administered |

**ORDER AUTHORIZING AND APPROVING THE SALE OF CERTAIN ASSETS**

Upon the motion (the "Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors"), for entry of an order pursuant to sections 105(a), 363 and 365 of title 11 of the United States Code, as amended (the "Bankruptcy Code"), Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 6004-1 and 6006-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules") approving the sale of the Acquired Assets and the assumption and assignment of Assumed Contracts, all pursuant to the terms in the agreement attached hereto as Exhibit A (the "APA") with Butterfly Retail Acquisition LLC, an affiliate of HRSH Acquisitions, LLC d/b/a Alloy Apparel & Accessories, LLC, or any designee appointed by Butterfly Retail Acquisition LLC (the "Purchaser"), as more fully set forth in the Motion; and it appearing that notice of the Motion was adequate and proper under the circumstances of these Chapter 11 Cases and that no further or other notice need be given; and upon the record of the hearing held by the Court on the Motion on February 24, 2015; and the Court having determined that the relief requested in the Motion and granted herein is supported by sufficient business

---

[1] The Debtors in these Chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: dELiA*s, Inc. (7172); dELiA*s Distribution Company (9076); A Merchandise, LLC (7639); dELiA*s Operating Company (3765); dELiA*s Retail Company (0036); dELiA*s Group Inc. (4035); AMG Direct, LLC (9236); dELiA*s Assets Corp. (3754); DACCS, Inc. (0225). The mailing address for the Debtors, solely for purposes of notices and communications, is: 50 West 23rd Street, New York, NY 10010.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

EAST\94371626.8

reasons, is in the best interests of the Debtors, their estates, and creditors and that the legal and factual bases set forth in the Motion and at the hearing establish just cause for the relief granted herein; and after due deliberation thereon and good and sufficient cause appearing therefor,

**IT IS HEREBY FURTHER FOUND AND DETERMINED, AS FOLLOWS:**

A.    **Jurisdiction and Venue**: This Court has jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. § 157(a)-(b) and 1334(b). Venue of these Chapter 11 Cases in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B.    **Statutory Predicates**: The statutory bases for the approval of the APA and the sale of the Acquired Assets are sections 105(a), 363, and 365 of title 11 of the United States Code, as amended (the "Bankruptcy Code"), Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and rules 6004-1 and 6006-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules").

C.    **Opportunity to be Heard**: A reasonable opportunity to object or be heard regarding the relief requested in the Motion and the transactions pursuant thereto has been afforded to all interested parties, including without limitation, (i) the Office of the United States Trustee for the Southern District of New York; (ii) counsel to Salus Capital Partners, LLC, as lender and administrative agent under the Debtors' postpetition credit facility (the "DIP Agent"); (iii) counsel to General Electric Capital Corporation as the issuer of the prepetition letter of credit agreement; (iv) counsel for the Committee; (v) the Internal Revenue Service; (vi) the United States Attorney for the Southern District of New York, (vii) the U.S. Securities and Exchange Commission; and (viii) any entities known or reasonably believed to have any such other party entitled to notice pursuant to Bankruptcy Rule 2002 and Local Rule 9013-1(b). The notice provided constitutes good, adequate and sufficient notice of the Motion and the February

24, 2015 hearing on the Motion (the "Sale Hearing") under the circumstances of these Chapter 11 Cases and no other or further notice of the Motion or the Sale Hearing or entry of this Order need be given. Objections, if any, to the Sale Motion have been withdrawn or resolved and, to the extent not withdrawn or resolved, are hereby overruled.

D.    **Marketing Process**: The Debtors have thoroughly marketed the Acquired Assets and have conducted the bidding and auction process in accordance with the Bidding Procedures Order [Docket No. 205]. The Debtors and their advisors have negotiated and undertaken their roles leading to the APA in a diligent, non-collusive, fair and good faith manner.

E.    **Highest and Best Offer**: The APA and the consideration to be realized by the Debtors thereunder (i) is the highest and best offer received by the Debtors, (ii) is fair and reasonable, and (iii) is in the best interests of the Debtors, their estates, their creditors and all other parties in interest. There is no legal or equitable reason to delay entry into the transactions contemplated by the APA.

F.    **Business Judgment**: The Debtors' decision to sell the Acquired Assets and assume and assign the Assumed Contracts is a reasonable exercise of the Debtors' sound business judgment consistent with their fiduciary duties and is in the best interests of the Debtors, their estates, their creditors and all other parties in interest.

G.    **Time of the Essence**: Time is of the essence in effectuating the APA. Based on the record at the Sale Hearing and for the reasons stated on the record at the Sale Hearing, the transactions contemplated by the APA must be closed rapidly following entry of this Order to maximize the value that the Debtors may realize from the sale of the Acquired Assets. Accordingly, cause exists to lift the stay imposed by Bankruptcy Rules 6004(h) and 6006(d) or otherwise and permit the immediate effectiveness of this Order.

H.      **Sale Free and Clear**:  The Acquired Assets may be sold free and clear of all liens, claims and encumbrances of whatever kind or nature (the "Encumbrances"), other than Permitted Encumbrances (as defined in the APA).  A sale of the Acquired Assets other than one free and clear of all Encumbrances, and without the protections of this Order, would hinder the Debtors' ability to obtain the consideration provided for in the Acquired Assets and thus, would impact materially and adversely the value the Debtors' estates would be able to obtain for the sale of the Acquired Assets.  But for the protections afforded to of the Purchaser under the Bankruptcy Code and this Order, the Purchaser would not have offered to pay the consideration contemplated in APA.  In addition, any entity with an Encumbrance (other than Permitted Encumbrances) on the Acquired Assets (a) has consented to the Sale; (b) could be compelled in a legal or equitable proceeding to accept money satisfaction of such interest, or (c) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code, and therefore, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  All Encumbrances on the Acquired Assets will be satisfied or will attach to the proceeds of the sale with the same force, effect and priority as such liens currently have, subject to the rights and defenses, if any, of the Debtors and any party in interest with respect thereto.  Moreover, holders of Encumbrances (other than Permitted Encumbrances) who did not object or who withdrew their objections to the Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  Therefore, approval of the APA and consummation of the transactions contemplated therein free and clear of Encumbrances is appropriate pursuant to section 363(f) of the Bankruptcy Code and is in the best interests of the Debtors' estates, their creditors and other parties in interest.  Notwithstanding the foregoing, subject to the Challenge Period (as defined in the Final DIP Order), that portion of the net proceeds of the sale of the

Acquired Assets that is payable to the Debtors shall be used in accordance with the terms of the DIP Facility and the Final DIP Order.

I. **Arm's-Length Sale**: The consideration to be paid by the Purchaser was each negotiated at arm's-length and constitute reasonably equivalent value and fair and adequate consideration for the Acquired Assets under the Bankruptcy Code, Uniform Fraudulent Transfer Act, the Uniform Fraudulent Conveyance Act and the laws of the United States, any state, territory, possession thereof or the District of Columbia. The terms and conditions set forth in the APA are fair and reasonable under the circumstances and were not entered into for the purpose of, nor do they have the effect of, hindering, delaying or defrauding the Debtors or their creditors under any applicable laws. The APA and the transactions contemplated therein may not be avoided as a fraudulent conveyance.

J. **Good Faith**: The Debtors, the Purchaser and the Agents, and their respective officers, members, management and board of directors, employees, agents and representatives actively participated in the bidding process and acted in good faith. The APA was negotiated and entered into based upon arm's-length bargaining, without collusion or fraud, and in good faith as that term is used in section 363(m) of the Bankruptcy Code. The Purchaser shall be protected by section 363(m) of the Bankruptcy Code in the event this Order is reversed or modified on appeal. The Debtors and the Agents were free to deal with any other party interests in buying the Acquired Assets. The Debtors, the Agents and the Purchaser have not engaged in any conduct that would cause or permit the APA or any related action or transaction contemplated thereby to be avoided under section 363(n) of the Bankruptcy Code, or prevent the application of section 363(m) of the Bankruptcy Code.

K. **Insider Status**: The Purchaser is not an "insider" or "affiliate" of the Debtors as those terms are defined in section 101(31) of the Bankruptcy Code. No common identity of directors or controlling stockholders exists between the Purchaser and the Debtors.

L. **Corporate Authority**: The Debtors have full corporate or other power to (i) execute, deliver and perform their obligations under the APA, (ii) consummate the transactions contemplated by the APA, and (iii) have taken all actions necessary to authorize and approve the APA and the transactions contemplated thereby. No consents or approvals, other than those expressly provided for herein, are required for the Debtors to consummate the transactions contemplated by the APA.

M. **No Successor Liability**: Except as specifically provided for in the APA, no sale, transfer or other disposition of the Acquired Assets to the Purchaser will subject the Purchaser to any liability for, any claims, obligations, debts, liabilities, obligations or expenses of any kind or nature whatsoever of the Debtors or the Agents, by reason of such transfer under any law. None of the Purchasers is a successor to the Debtors or their estates.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. The relief requested in the Motion is granted as set forth herein.

2. Any remaining objections to the Motion or the relief requested in therein that have not been withdrawn, waived, or settled, and all reservation of rights included in such objections are overruled in all respects and denied.

3. The Debtors are authorized to enter into the APA and take all actions necessary to consummate the transactions contemplated thereby. Pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the sale and transfer of the Acquired Assets to the Purchaser pursuant to the APA are legal, valid and effective disposition of the Acquired Assets, and vests the Purchaser

EAST\94371626.8

with all right, title and interest of the Debtors to and in the Acquired Assets free and clear of all Encumbrances (other than Permitted Encumbrances).

4.    All Encumbrances on the Acquired Assets will be satisfied or will attach to the proceeds of the sale with the same force, effect and priority as such liens currently have, subject to the rights and defenses, if any, of the Debtors and any party in interest with respect thereto. Subject to the Challenge Period (as defined in the Final DIP Order), that portion of the net proceeds of the sale of the Acquired Assets that is payable to the Debtors shall be used in accordance with the terms of the DIP Facility and the Final DIP Order.

5.    The Debtors and the Purchaser have provided the counterparties to the Assumed Contracts with adequate assurance of future performance within the meaning of 11 U.S.C. §§ 365(b)(1), 365(b)(3) and 365(f)(2)(b).

6.    The Contract for Purchase and Services, dated December 6, 1995 (as amended, the "JDA Contract") is assumed by the Debtors and assigned to Purchaser (or its affiliate) with the consent of JDA Software, Inc., pursuant to this Order and that certain Schedule 3-A to the JDA Contract, dated as of the Closing Date.  A cure amount of $112,956.09 shall be paid by the Purchaser to JDA Software, Inc. on the Closing Date.

7.    Upon payment of the cure amount for each Assumed Contract (the "Cure Amount") and except as otherwise set forth in this Order and the APA, all persons and entities holding claims of any kind and nature accruing, arising or relating to a period prior to the Closing with respect to the Assumed Contracts are hereby barred from asserting such claims against the Purchasers or any of its affiliates, successors, assigns, officers, directors or employees, agents, representatives, and attorneys.  All other defaults, claims or other obligations

of the Debtors arising or accruing under the Assumed Contracts, if any, shall be deemed cured on or prior to the closing of transactions contemplated by the APA (the "Closing").

8. The assignment of the Assumed Contracts to the Purchaser pursuant to this Order shall be valid and binding upon the Purchaser and the respective counterparties to the Assumed Contracts notwithstanding any provision in the Assumed Contracts that (by reason of the assignment of the Assumed Contracts or the release of the Debtors from liability) (i) restricts, prohibits, conditions or limits the assignment of the Assumed Contracts, (ii) impacts the validity of the Assumed Contracts following the assignment, or (iii) increases or reallocates payments under, imposes any penalty, declares a default with respect to, terminates, modifies or cancels any right or obligation thereunder.  Any such provision shall not be enforceable to restrict condition or limit the assignment of the Assumed Contracts to the Purchaser pursuant to this Order, but shall thereafter be fully binding on the Purchaser and continue in full force and effect upon and after the assignment of the Assumed Contract.

9. Except as specifically provided for in the APA, the sale, transfer or other disposition of the Acquired Assets to the Purchaser will not subject the Purchaser to any liability for, any claims, obligations, debts, liabilities, obligations or expenses of any kind or nature whatsoever of the Debtors or the Agents, by reason of such transfer under any law.

10. The APA and the transactions contemplated thereby, including the assumption, assignment and sale of the Assumed Contracts to Purchaser may not be avoided under 11 U.S.C. § 363(n).

11. The Purchaser shall adhere to the terms of the (i) Trademark Licensing Agreement, dated as of February 24, 2003 between dELiA*s Brand LLC and dELiA*s Corp., a predecessor entity to dELiA*s Assets Corp. (the "Trademark Licensing Agreement"); and

(ii) Limited Liability Company Agreement of dELiA*s Brand LLC (the "LLC Agreement"). The Bankruptcy Court shall retain jurisdiction regarding all matters relating to the assignment of the Trademark Licensing Agreement, the transfer of the equity interests in dELiA*s Brand LLC and the Purchaser's compliance with the Trademark Licensing Agreement and the LLC Agreement. In the event that JLP Daisy LLC concludes that the Purchaser shall have failed to adhere to the terms of the Trademark Licensing Agreement or the LLC Agreement, it shall be entitled to an expedited hearing before the Bankruptcy Court to resolve any claims or controversies. Subject to, and conditioned upon, such terms and it being understood that Purchaser's sole rights to the mark "dELiA*s" shall be (i) as set forth in the Trademark Licensing Agreement and (ii) as equity owner of dELiA*S Brand LLC, JLP Daisy LLC expressly consents to the assignment of the Trademark Licensing Agreement to the Purchaser and the transfer of the equity interests in dELiA*S Brand LLC to the Purchaser.

12. Upon the Closing, Purchaser will be deemed to have acted in good faith, as that term is used in 11 U.S.C, § 363(m), with respect to entry into the APA and consummation of the transactions thereby, and no reversal or modification of this Order on appeal will affect the validity of the APA or the transactions contemplated thereby.

13. The APA is hereby amended to reflect the removal of the Amended and Restated Media Services Agreement between Defy Media, LLC and the Debtors as follows:

    a. Deletion of Section 4.1(b)(ii); and

    b. Deletion of Item 5 of Schedule 2.1(b).

14. The APA is hereby further amended as follows:

    a. The amount in Section 3.1(a) shall be $2,150,000.

15. The Debtors are permitted to transfer the Customer Lists to the Purchaser.

16. The Purchaser shall take the Customer Lists as successor-in-interest under the Debtors' Privacy Policy as it was in effect on the Petition Date and shall be liable for any violation of the Privacy Policy by the Purchaser after the Closing.

17. Purchaser may not disclose, sell or transfer customers' Personally Identifiable Information to any third party for use other than (i) to assist the Purchaser in its business or (ii) in connection with the sale of Purchaser's business, subject to compliance by Purchaser with applicable law.

18. After the Closing, in its initial communication to the customers the Purchaser shall provide notice to the customers (i) that their Personally Identifiable Information contained in the Debtors' Customer List database is being transferred to the Purchaser as successor-in-interest under the Debtors' Privacy Policy and (ii) of each customer's right to opt-out of further communications from the Purchaser and to be removed from the Customer List database.

19. Purchaser shall provide such notice (i) by email for those customers with known email addresses and (ii) by regular U.S. mail for those customers with known mailing addresses only. If Purchaser proposes any changes to the Debtor's Privacy Policy or if Purchaser's privacy policy differs from Debtors' Privacy Policy, it must, to the extent required by applicable law, provide customers with notice of the proposed changes to Debtors' Privacy Policy and direct the customers to the Purchaser's privacy policy on its website and the opportunity to opt out of remaining in the Customer List database.

20. Purchaser shall file a notice with the Court stating that it has complied with the foregoing provisions in paragraphs 13 through 17 of this Sale Order within thirty days after entry of this Order.

21. This Order and the APA shall inure to the benefit of and be binding on the Purchaser, the Agents, the Debtors, their estates, their creditors, the counterparties to the Assumed Contracts, and their respective successors and assigns, and any trustees, if any, subsequently appointed in the Debtors' Chapter 11 Case or upon a conversion of the Chapter 11 Cases to Chapter 7 under the Bankruptcy Code.

22. The findings of fact and conclusions of law set forth in this Order regarding the Purchaser and its relationship with and to the Debtors are applicable solely to the APA and the transactions contemplated thereby. Nothing set forth herein shall affect or limit the rights of the Debtors' estates or any party in interest in these Chapter 11 Cases with respect to any other transaction or course of dealing between and among the Purchaser (or any of its affiliates) and the Debtors.

23. To the extent of any inconsistency between this Order or the APA, this Order shall control.

24. This Order shall be effective and enforceable immediately upon entry. The stay otherwise imposed by Bankruptcy Rules 6004(h) and 6006(d) is waived.

25. This Court retains jurisdiction with respect to all matters arising from or related to the implementation of this Order.

Dated: March 16, 2015
       White Plains, New York

                                        /s/ Robert D. Drain
                                        UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

# APA

EAST\94371626.8