**ASSET PURCHASE AND SALE AGREEMENT**

THIS ASSET PURCHASE AND SALE AGREEMENT ("Agreement") is made and entered into this 18th day of March, 2015, by and between Jefferies Leveraged Credit Products, LLC or its designee (the "Purchaser"), and dELiA*s, Inc. and certain of its affiliates, as debtors and debtors in possession (collectively, the "Seller"). Purchaser and Seller are sometimes collectively referred to in this Agreement as "Parties" or individually as "Party."

**RECITALS**

A. Seller may be a Class Member and potential beneficiary of the putative consolidated class action entitled In re Payment Card Interchange Fee and Merchant Discount Antitrust Litigation (Case No. 1:05 md-1720-JG-JO) ("Litigation") pending in the United States District Court for the Eastern District of New York ("District Court"). If the plaintiffs in the Litigation either prevail in the Litigation, such Litigation results in a settlement, or the Litigation is otherwise resolved in any way or by any forum in favor of class members ("Settlement Event"), the Seller may be entitled to a monetary recovery.

B. Seller may have a right, now or in the future, to benefits arising from and/or relating to the Litigation and the injuries alleged therein. These rights to benefits are called the "Claim". The Claim encompasses all rights, title, and ownership interest of any kind, now existing or arising hereafter, to which Seller may be entitled, arising in any way or form, from the Litigation, or the operative facts alleged in the Litigation, including but not limited to the right to monetary benefits, or benefits that may be monetized, from settlements, judgments, or any other form of resolution of the Litigation or the operative facts alleged therein. Whether such recovery will occur is unknown by Seller and Purchaser at the time of this Agreement.

C. Seller is dELiA*s, Inc. and its affiliated debtors and debtors in possession (collectively, the "Debtors")[1], in connection with the Debtors' jointly administered chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"), lead case number 14 23678 (RDD) (the "Bankruptcy Case").

D. On February 24, 2015, the Bankruptcy Court entered the Order (I) Approving Bidding Procedures and Bid Protections in Connection With the Sale of Visa/MasterCard Claim, (II) Approving the Form and Manner of Notice, and (III) Scheduling an Auction and a Sale Hearing (the "Bid Procedures Order").

E. Purchaser desires to purchase the Claim from Seller, and Seller desires to sell the Claim to Purchaser as provided for in this Agreement. The Parties intend to transfer from Seller to Purchaser any and all of the Seller's right, title and interest in and or associated with, or connected in any manner to, any Claim.

---

[1] The Debtors are: dELiA*s, Inc.; dELiA*s Distribution Company; A Merchandise, LLC; dELiA*s Operating Company; dELiA*s Retail Company; dELiA*s Group Inc.; AMG Direct, LLC; dELiA*s Assets Corp.; DACCS, Inc.

EAST\96749000.3

F.      All terms used herein and not defined herein shall have the meanings given such terms in the Litigation filings.

**NOW, THEREFORE**, in consideration of the mutual covenants, agreements, representations and warranties contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

**SECTION 1 – RECITALS INCORPORATED IN AGREEMENT**

1.1     The above recitals are hereby incorporated herein by reference.

**SECTION 2 – TERMS OF PURCHASE AND SALE**

2.1     <u>Sale and Purchase of Claim</u>.  On the terms and subject to the conditions and other provisions set forth in this Agreement, Purchaser agrees to purchase all right, title and interest in the Claim from Seller, and Seller agrees to sell, transfer and assign all right, title and interest in the Claim to Purchaser for the sum of $568,200 (the "<u>Purchase Price</u>").

2.2     <u>Deposit.</u>  Purchaser shall deliver to Seller, within one (1) business day after entry into this Agreement, a good faith deposit equal to 10% of the Purchase Price (the "<u>Deposit</u>"), which Deposit shall be placed in an escrow account and applied by Seller against the Purchase Price at the closing of the sale of the Assets.  The Deposit will be refunded to the Purchaser if the sale of the Claim to the Purchaser is not consummated, other than as a result of a breach by the Purchaser or as otherwise set forth in herein.  The full amount of the Deposit shall be forfeited to the Seller if the Seller terminates this agreement as a result of a breach thereof by the Purchaser.

2.3     <u>Bankruptcy Court Approval</u>.  Seller shall seek Bankruptcy Court approval of the sale of the Claim and it shall be a condition precedent to the performance of the obligations of both Seller and Purchaser under this Agreement that the Bankruptcy Court shall have entered an order reasonably satisfactory to each of Seller and Purchaser approving the sale of the Claim pursuant to this Agreement, which order shall be in full force and effect and shall not have been modified, stayed, or reversed (the "<u>Sale Order</u>").  Seller shall use reasonable efforts to obtain entry of the Sale Order no later than March 20, 2015.

2.4     <u>Closing</u>.  The transactions contemplated by this Agreement will be consummated at a closing as follows:

(a)     The Seller and Purchaser will use reasonable efforts to close (the "<u>Closing</u>") no later than on or before March 30, 2015. The date and time the Closing actually occurs are referred to herein as the "<u>Closing Date</u>".  The Closing will be effective as of 12:01 a.m., Eastern Daylight Savings Time, on the Closing Date.

(b)     No later than the first business day prior to the Closing Date, Seller shall execute and deliver to Purchaser the Notice of Assignment, in the form attached hereto as

Exhibit A ("Assignment") and the Authorization to Obtain Transactional Data, in the form attached hereto as Exhibit B ("Data Authorization", with Assignment, the "Ancillary Agreements").

(c) Provided that Seller has fully performed its obligations under Section 2.4(b), including delivering to Purchaser the completed schedules associated with the Ancillary Agreements and the Sale Order has been entered approving the sale of the Claim to Purchaser, Purchaser shall pay to Seller at the Closing an amount equal to the Purchase Price in immediately available funds by confirmed wire transfer to a bank account to be designated by Seller no later than the Closing Date.

2.5  Cooperation of Seller.  Seller understands and acknowledges that in order for Purchaser to verify and/or collect the Claim, Purchaser may require Seller's assistance, and Seller agrees to provide such assistance to Purchaser, during the period of 30 days immediately following the Closing Date unless otherwise extended in writing by the Parties, as may be necessary for the collection of the Claim, including but not limited to the verification of data within Seller's reasonable possession and/or control or that may be obtained with the assistance/authorization of Seller.

2.6  No Assumption of Obligations or Liabilities.  Purchaser shall not assume or in any way become liable for any obligation or liability relating to the Claim or Seller unless explicitly provided for in this Agreement.

## SECTION 3 - REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Purchaser as follows:

3.1  Organization.  With the exception of DACCS, Inc., all of the other Debtors are entities organized under the laws of Delaware.  DACCS, Inc. was incorporated under the laws of Ohio.

3.2  Authority.  The execution and delivery of this Agreement by Seller and, subject to the entry of the Sale Order, the consummation by Seller of the transaction contemplated by this Agreement are within Seller's authority as granted by the Bankruptcy Court in the Bankruptcy Case.

3.3  Due Execution; Validly Binding Agreement.  This Agreement has been duly authorized, executed and delivered and constitutes a legal, valid and binding obligation of the Seller upon entry of the Sale Order, enforceable against it in accordance with its terms.

3.4  No Litigation.  There is no known suit, action, litigation or other proceeding or governmental or administrative investigation or inquiry, pending or threatened against the Seller or concerning the Claim that could prevent or prohibit Seller from selling the Claim or from otherwise complying in full with the provisions of this Agreement. Transfer of the Claim pursuant to this Agreement will not breach, violate or otherwise contravene any applicable law, statute, regulation or contractual term.

3.5  Title to Claim; No Liens.  Seller has good, valid and marketable title to the Claim and, upon entry of the Sale Order, may sell the Claim free and clear of any mortgage, pledge, lien, security interest, claim or encumbrance.  Seller has not heretofore transferred the Claim or any interest therein, other than security interests that will no longer attach to the Claim once sold in accordance with the Sale Order.

3.6  Information Provided to Purchaser.  To the best of Seller's knowledge, all information provided to Purchaser by Seller in connection with the sale of the Claim, including, but not limited to, information on dates on which the Seller began accepting Visa and/or MasterCard credit card and/or debit transactions, financial information about the Seller's business (including total United States sales) and any other representations actually or potentially concerning the asset is true, correct and complete in all material respects.  Seller has made the following representations or warranties to Purchaser:

    i.  Seller has not had any communications with the District Court, lead counsel for the parties in the Litigation ("Lead Counsel") or any other entity affiliated with the Litigation regarding the Litigation.

    ii.  Should a Settlement Event occur, if asked by the District Court, Lead Counsel, the claims administrator appointed in the Litigation ("CA") or any other entity affiliated with such settlement, Seller hereby warrants that

        1.  Seller never intended to opt-out of the Litigation;

        2.  Seller never gave any entity any indication of an intent to opt-out of the Litigation; and

        3.  Seller never authorized any entity to opt-out of the Litigation on Seller's behalf.

    iii.  Seller warrants that if requested by Purchaser and if a Settlement Event should occur, it will provide, during the period of 30 days immediately following the Closing Date unless otherwise extended in writing by the Parties, an affidavit stating that (1) Seller never intended to opt-out of the Settlement Event; (2) Seller never gave any entity any indication of an intent to opt-out of the Settlement Event; and (3) Seller never authorized any entity to opt-out of the Settlement Event on Seller's behalf.

    iv.  Seller warrants that it will never take any position inconsistent with the representations and warranties contained herein.

3.7  Independent Investigation.  Seller acknowledges that it has conducted its own independent evaluation of the transactions contemplated under this Agreement.  Seller further acknowledges that it has had an opportunity to conduct its own independent investigation regarding the Claim and the Litigation. Seller has had an opportunity to review the documents and information available through publicly available sources of information.

3.8 No Reliance.  Seller has conducted an independent evaluation of the reasonableness of the Purchase Price and has decided to enter into this Agreement and undertake the transactions contemplated hereunder solely in reliance on its own evaluation of the Purchase Price.  With the exception of any representations and warranties set forth in Section 4 of this Agreement, Seller is not relying on (i) any information provided to Seller or written or oral representations, whether express or implied, by Purchaser or its respective members, shareholders, officers, directors, employees, agents or affiliates or (ii) any information provided to Seller by Purchaser or its respective shareholders, officers, directors, employees, agents or affiliates in assessing the reasonableness of the Purchase Price.  Aside from representations or warranties contained herein, Seller acknowledges that Purchaser expressly disclaims and has not made any warranties, guarantees, promises, or representations of any kind whatsoever regarding the value of the Claim and the anticipated recovery and/or timing of recovery on the Claim.

3.9 Information.  Seller acknowledges that because a Settlement Event had not taken place prior to the payment of the Purchase Price, the value of the Claim and the final recovery on the Claim may not be determined with certainty by Seller or Purchaser as of the time of execution of this Agreement.  Seller further acknowledges that Purchaser may possess material information not known to Seller, and Seller agrees that Purchaser shall have no liability with respect to the non-disclosure of any such information.

3.10 Expectation of Return.  Seller acknowledges that Purchaser's sole intention and expectation in entering into this Agreement is to earn a positive financial return on the Claim.  As such, Seller understands that Purchaser's recovery on the Claim may exceed the Purchase Price.

3.11 Own Advisors.  Seller acknowledges that it has had an opportunity to consult with an attorney and/or other relevant professional advisors prior to the execution of this Agreement. Seller acknowledges that Purchaser has advised it that it should seek such counsel.

3.12 No Fiduciary or Confidential Relationship.  Seller acknowledges that Seller and Purchaser are not in a fiduciary, confidential, agency or otherwise special relationship, including one of trust, confidence or privity, and that Seller and Purchaser are each acting for their own self-interest.

**SECTION 4 – REPRESENTATIONS AND WARRANTIES OF PURCHASER**

Purchaser represents and warrants to Seller as follows:

4.1 Organization.  Purchaser is a Limited Liability Company, validly existing and in good standing under the laws of Delaware.

4.2 Authorization.  Purchaser has the requisite power and authority to purchase the Claim from Seller, execute and deliver this Agreement, and to perform the transactions contemplated hereby or thereby.

4.3    Due Execution; Validly Binding.  This Agreement has been duly authorized, executed and delivered and constitutes a legal, valid and binding obligation of the Purchaser, enforceable against it in accordance with its terms, except as may be limited by bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights in general and subject to general principles of equity.

4.4    No Litigation.  There is no suit, action, litigation or other proceeding or governmental or administrative investigation or inquiry, pending or threatened, against Purchaser that could prevent or prohibit Purchaser from purchasing the Claim or from otherwise complying in full with the provisions of this Agreement.  Transfer of the Claim pursuant to this Agreement will not breach, violate or otherwise contravene any applicable law, statute, regulation or contractual term.

4.5    No Affiliation.  Purchaser is not affiliated with any counsel involved in the Litigation or the District Court relating to the Litigation.

4.6    Purchaser Solvent.  That Purchaser is solvent and has the funds available to pay the Purchase Price.

4.7    Disclaimers:  No Representations or Warranties.  Purchaser expressly disclaims and does not make any warranties, guarantees, promises, or representations of any kind whatsoever regarding the Claim, including, but not limited to:  (i) the value of the Claim; and (ii) the anticipated recovery or timing of recovery on the Claim.  Purchaser has advised Seller that it should consult with an attorney and/or other relevant professional advisors prior to the execution of this Agreement.

4.8    Independent Investigation.  Purchaser acknowledges that it has conducted its own independent evaluation of the transactions contemplated under this Agreement.  Purchaser further acknowledges that it has had an opportunity to conduct its own independent investigation regarding the Litigation, the possibility of a Settlement Event taking place, and the Claim.  Purchaser has had an opportunity to review the documents and information available through publicly available sources of information.

4.9    No Reliance.  Purchaser has decided to enter into this Agreement and undertake the transactions contemplated hereunder solely in reliance on its own evaluation, based on such information as it has deemed appropriate under the circumstances.  With the exception of any representations and warranties set forth in Section 3 of this Agreement, Purchaser is not relying on (i) any information provided to Purchaser or written or oral representations, whether express or implied, by Seller or its agents or affiliates, or (ii) any information provided to Purchaser by Seller or its agents or affiliates.  Aside from representations or warranties contained herein, Purchaser acknowledges that Seller expressly disclaims and has not made any warranties, guarantees, promises, or representations of any kind whatsoever regarding the Claim, including, but not limited to: (i) the value of the Claim, and (ii) the anticipated recovery and/or timing of recovery on the Claim.

4.10    Information.  Purchaser acknowledges that, because a Settlement Event had not taken place prior to the payment of the Purchase Price, the value of the Claim and the final recovery on the Claim may not be determined with certainty by Seller or Purchaser as of the time of execution of this Agreement.  Purchaser further acknowledges that Seller may possess material information not known to it.  Aside from representations or warranties contained herein, Purchaser agrees that Seller shall have no liability with respect to the non-disclosure of any such information.

4.11    Expectation of Return.  Purchaser is in the business of purchasing claims from entities entitled to recover funds from both existing class action lawsuit settlements and from pending class action litigation that may or may not result in a settlement.  Purchaser understands that Purchaser's recovery on the Claim may not exceed the Purchase Price.

4.12    Own Advisors.  Purchaser acknowledges that it has had an opportunity to consult with an attorney and/or other relevant professional advisors prior to the execution of this Agreement.  Purchaser acknowledges that Seller has advised it that it should seek such counsel.

4.13    No Fiduciary or Confidential Relationship.  Purchaser acknowledges that Seller and Purchaser are not in a fiduciary, confidential, agency or otherwise special relationship, including one of trust, confidence or privity, and that Seller and Purchaser are each acting for their own self-interest.

**SECTION 5 - COVENANTS OF SELLER**

Seller covenants to Purchaser as follows:

5.1    Further Assurances.  During the period of 30 days immediately following the Closing Date unless otherwise extended in writing by the Parties, Seller will use commercially reasonable efforts to provide, duly execute or deliver, or cause to be provided, duly executed or delivered, to Purchaser such further information and instruments reasonably available to it or under its possession, custody or control and do and cause to be done such further acts as may be reasonably necessary or proper to respond to any audit or inquiry by the CA, Lead Counsel or the District Court regarding the Claim.  To the extent any decision needs to be made or vote taken among the Plaintiffs relating to the Claim and any party does not recognize the Purchaser as the rightful owner of the Claim for any reason, then the Seller agrees, during the period of 30 days immediately following the Closing Date unless otherwise extended in writing by the Parties, to consult with and follow the direction of the Purchaser.

5.2    Waiver of Claims.  To the maximum extent permitted by law, Seller will not assert and hereby waives any and all claims against Purchaser or any of its members, officers, directors, employees, agents or affiliates with respect to this Agreement, any Ancillary Agreement or the transactions contemplated hereby or thereby based on: (i) any claim that Purchaser had superior or additional information material to a decision to sell or buy the Claim; (ii) Purchaser made warranties or representations, expressed or implied, not contained in this Agreement; or (iii) the Claim's value and scope exceeds the Purchase

Price.  For the avoidance of doubt, the foregoing shall not be deemed to be a waiver of any representation or warranty expressly set forth herein.

5.3    Covenant Not To Sue.  Seller will not commence or maintain any suit thereon against Purchaser or any of its shareholders, officers, directors, employees, agents or affiliates with respect to this Agreement, or the transactions contemplated hereby, whether at law or in equity, based on: (i) any claim that Purchaser had superior or additional information material to a decision to sell or buy the Claim; (ii) Purchaser made warranties or representations, expressed or implied, not contained in this Agreement; or (iii) the Claim's value and scope exceeds the Purchase Price.  For the avoidance of doubt, the foregoing shall not be deemed to be a waiver of any representation or warranty expressly set forth herein.

5.4    Payment Delivery.  If a CA mistakenly sends total or partial payment directly to Seller, Seller will be deemed to hold such amounts in trust for the benefit of the Purchaser and shall immediately endorse such payment to Purchaser and deliver the payment to Purchaser by personal delivery or by first-class mail, certified, return receipt requested, postage prepaid and addressed to:

>   Jefferies LLC
>   101 Hudson Street – 11th Floor
>   Jersey City, NJ 07032

### SECTION 6 – COVENANTS OF PURCHASER

6.1    Waiver of Claims.  To the maximum extent permitted by law, Purchaser will not assert and hereby waives any and all claims against Seller or any of its members, officers, directors, employees, agents or affiliates with respect to this Agreement, any Ancillary Agreement or the transactions contemplated hereby or thereby based on: (i) any claim that Seller had superior or additional information material to a decision to sell or buy the Asset; (ii) Seller made warranties or representations, expressed or implied, not contained in this Agreement; or (iii) the Purchase Price exceeding the Asset's value and scope.  For the avoidance of doubt, the foregoing shall not be deemed to be a waiver of any representations or warranties expressly contained herein.

6.2    Covenant Not To Sue.  Purchaser will not commence or maintain any suit thereon against Seller or any of its shareholders, officers, directors, employees, agents or affiliates with respect to this Agreement, or the transactions contemplated hereby, whether at law or in equity, based on: (i) any claim that Seller had superior or additional information material to a decision to sell or buy the Asset; (ii) Seller made warranties or representations, expressed or implied, not contained in this Agreement; or (iii) the Purchase Price exceeding the Asset's value and scope.  For the avoidance of doubt, the foregoing shall not be deemed to be a waiver of any representations or warranties expressly contained herein.

**SECTION 7 - GENERAL**

7.1   Severability.  In the event that any provision herein becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable or void, this Agreement shall continue in full force and effect without said provision.

7.2   Costs.  The Parties shall each pay their own costs and expenses (including attorney's fees and accountants' fees) incurred or to be incurred in negotiating, preparing and executing this Agreement.

7.3   Entire Agreement.  This Agreement represents the entire agreement and understanding between the Parties regarding the sale and purchase of the Claim and supersedes any and all prior representations, warranties agreements and understandings, whether written or oral, concerning the sale and/or purchase of the Claim.

7.4   No Oral Modification.  This Agreement may only be amended in writing signed by both Parties.

7.5   Assignability of Claim.  Notwithstanding anything contained in this Agreement, Purchaser may assign its right, title and interest in and to this Agreement to a third party without the further consent of Seller.

7.6   Jury Trial Waiver.  The Parties hereby irrevocably and knowingly waive to the fullest extent permitted by law any right to a trial by jury in any action or proceeding arising out of this Agreement. The Parties agree that any such action or proceeding shall be tried before a court and not a jury. In the event the Parties' waiver of a trial by jury is deemed invalid, the Parties hereby agree that any action or claim arising out of any dispute in connection with this agreement, any rights, remedies, obligations, or duties hereunder, or the performance or enforcement hereof or thereof shall be determined by judicial reference.

7.7   Governing Law; Forum.  This Agreement shall be governed by and construed in accordance with the laws of the State of New York, without regard to its conflict of law rules, principles or provisions of such state or of any other state.  The Parties hereby agree that any action or claim arising out of any dispute in connection with this Agreement, any rights, remedies, obligations, or duties hereunder, or the performance or enforcement hereof or thereof shall be subject to the exclusive jurisdiction of the Bankruptcy Court.

7.8   Headings.  Section headings are for convenient reference only and will not affect the meaning or have any bearing on the interpretation of any provision of this Agreement.

7.9   Counterparts.  This Agreement may be executed in counterparts, and each counterpart shall have the same force and effect as an original and shall constitute an effective, binding agreement.  If so signed, the Agreement becomes effective when both signature pages are attached.

7.10    <u>Voluntary Execution of Agreement</u>.  This Agreement is executed voluntarily and without any duress or undue influence on the part or on behalf of the Parties hereto.

7.11    <u>Notices</u>.  All notices, requests, demands or any other communication made under, pursuant to, or in accordance with this Agreement, except for normal day-to-day business communications, which may be made orally or in a writing, shall be in writing and shall either be delivered personally or deposited in the United States mail and sent by first-class mail, certified, return receipt requested, postage prepaid and addressed properly as follows:

| If to Purchaser: | If to Seller: |
|---|---|
| Jefferies LLC<br>Attention:  Mike Richards<br>10520 Madison Ave, 3rd Floor<br>New York, NY 10022<br>Email: mrichards@jefferies.com | dELiA*s, Inc.<br>50 West 23rd Street<br>New York, New York 10010<br>Attn: Ryan A. Schreiber, Esq.<br><br>With a copy to:<br><br>**Counsel for the Debtors**<br>DLA Piper LLP (US)<br>1251 Avenue of the Americas, 25th Floor<br>New, York, New York 10020<br>Attn: Gregg Galardi, Esq.<br>         Dienna Corrado, Esq.<br><br>**Counsel to the DIP Agent**<br>Choate, Hall & Stewart LLP<br>Two International Place<br>Boston, MA 02110<br>Attn: John F. Ventola, Esq.<br>         Seth Mennillo, Esq.<br><br>**Counsel to the Creditors' Committee**<br>Kelley Drye & Warren LLP<br>101 Park Avenue<br>New York, NY 10178<br>Attn: Robert L. LeHane, Esq. |

or to such other address(es) as a Party hereto may indicate to the other Party in the manner provided for herein.  Notices given by mail shall be deemed effective and complete forty-eight (48) hours following the time of posting and mailing, and notices delivered personally shall be deemed effective and complete at the time of delivery and the obtaining of a signed receipt.

[*Signature page follows*]

EAST\96749000.3                                     10

IN WITNESS WHEREOF, the Agreement has been executed by the Parties as of the date and year provided above.

Jefferies Leveraged Credit Products, LLC

By: /s/ William McLoughlin
Name: William McLoughlin
Title: Associate General Counsel

dELiA*s, Inc., on its behalf and on behalf of its affiliated Debtors

By: _____
Name: Ryan A. Schreiber, Esq.
Title: President, General Counsel, Secretary

IN WITNESS WHEREOF, the Agreement has been executed by the Parties as of the date and year provided above.

| Jefferies Leveraged Credit Products | dELiA*s, Inc., on its behalf and on behalf of its affiliated Debtors |
|---|---|
| By: _____<br>Name: William McLoughlin<br>Title: Associate General Counsel | By: _____<br>Name: Ryan A. Schreiber, Esq.<br>Title: President, General Counsel, Secretary |

**Exhibit A to Claim Purchase and Sale Agreement**

Form of Notice of Assignment

To:    Claims Administrator of Any Settlement Arising from **IN RE: PAYMENT CARD INTERCHANGE FEE AND MERCHANT-DISCOUNT ANTITRUST LITIGATION** (Case No. 1:05-md-01720-JG-JO)(E.D.N.Y.)

We hereby give notice that pursuant to that certain Asset Purchase and Sale Agreement dated March 18, 2015 (the "Sale Agreement"), between dELiA*s, Inc. and certain of its affiliates (collectively, the "Seller") and Jefferies Leveraged Credit Products, LLC("Purchaser"), and the order of the U.S. Bankruptcy Court for the Southern District of New York in case number 14-23678(RDD), dated March [*], 2015 (attached as Exhibit A) approving the Sale Agreement, Seller has absolutely and unconditionally transferred and assigned to Purchaser all of Seller's right, title and interest in and to or associated with, or connected in any manner to, any claim against and settlement arising from the class action litigation of *In Re: Payment Card Interchange Fee and Merchant-Discount Antitrust Litigation* (Case No 1:05-md-01720-JG-JO) pending in the United States District Court for the Eastern District of New York (the "Settlement"), for the following entities:

| Entity Name | United States Bankruptcy Court for the Southern District of New York Case Number |
|---|---|
| dELiA*s, Inc. | 14-23678 |
| dELiA*s Retail Company | 14-23679 |
| dELiA*s Assets Corp. | 14-23680 |
| dELiA*s Group Inc. | 14-23681 |
| dELiA*s Distribution Company | 14-23682 |
| dELiA*s Operating Company | 14-23683 |
| A Merchandise, LLC | 14-23684 |
| AMG Direct, LLC | 14-23685 |
| DACCS, Inc. | 14-23686 |

The rights assigned to Purchaser include, but are not limited to, Seller's right to file a claim in the Settlement proceedings and to challenge any and all estimates for payment of that claim. Seller has provided Purchaser with merchant identification information listed on and attached hereto as Schedule A.

Purchaser is now the legal and equitable owner of all rights associated with the Settlement. You should deal directly with Purchaser or its duly appointed agents on all matters pertaining to the Seller's rights in the Settlement. Further, in accordance with the Sale Agreement, any and all payments relating to the Settlement should be made payable to Purchaser and sent to the following address:

> Jefferies Leveraged Credit Products, LLC
> 520 Madison Ave, Third Floor
> New York, NY 10022

Moreover, any and all correspondence, documents or any other communications pertaining to the Settlement should be directed to Purchaser at the above address.

Dated this ___ day of March 2015.

dELiA*s, Inc. on its behalf and on behalf of its affiliated debtors, Seller

By: _____

    Ryan A. Schreiber, Esq., President, General Counsel, Secretary

**Schedule A**

| DEBTOR | ADDRESS | TAX ID |
|---|---|---|
| dELiA*s, Inc. | 50 West 23rd Street, New York, NY 10010 | 20-3397172 |
| dELiA*s Retail Company | 50 West 23rd Street, New York, NY 10010 | 23-2920036 |
| dELiA*s Assets Corp. | 50 West 23rd Street, New York, NY 10010 | 13-3963754 |
| dELiA*s Group Inc. | 50 West 23rd Street, New York, NY 10010 | 13-3914035 |
| dELiA*s Distribution Company | 50 West 23rd Street, New York, NY 10010 | 23-2909076 |
| dELiA*s Operating Company | 50 West 23rd Street, New York, NY 10010 | 13-3953765 |
| A Merchandise, LLC | 50 West 23rd Street, New York, NY 10010 | 27-0037639 |
| AMG Direct, LLC | 50 West 23rd Street, New York, NY 10010 | 20-1129236 |
| DACCS, Inc. | 50 West 23rd Street, New York, NY 10010 | 42-1750225 |

**Exhibit B to Claim Purchase and Sale Agreement**

Form of Authorization to Obtain Transaction Data

EAST\96749000.3

## AUTHORIZATION TO OBTAIN TRANSACTIONAL DATA

This Authorization to Obtain Transactional Data ( this "Authorization") is made on March [*], 2015 between dELiA*s, Inc. and certain of its affiliates as debtors and debtors in possession (collectively, the "Seller") and Jefferies Leveraged Credit Products, LLC ("Purchaser").

Seller has absolutely and unconditionally transferred and assigned to Purchaser all of Seller's right, title and interest in and to or associated with, or connected in any manner to, any claim against and settlement arising from the class action litigation of *In Re: Payment Card Interchange Fee and Merchant-Discount Antitrust Litigation* (Case No 1:05-md-01720-JG-JO) pending in the United States District Court for the Eastern District of New York.

As used in this Authorization, (a) the term "Transactional Data" means data from or related to credit card or debit card transactions in which Seller received payment for goods sold or services provided, and (b) the term "Processors" means Seller's acquiring banks, credit card processors, any other entity involved in processing or recording credit card or debit card transactions, and any third party holding or possessing any or all of Seller's Transactional Data.

Seller hereby directs and authorizes all Processors to release and provide to Purchaser any and all Transactional Data. Seller hereby authorizes Purchaser to request, demand, obtain and receive from any source all of Seller's Transactional Data, including, but not limited to, the merchant identification information listed on and attached hereto as Schedule A.

The undersigned has executed this Authorization as of the date set forth above.

**dELiA*s, Inc. on its behalf and on behalf of its affiliated debtors**

By: _____
     Ryan A. Schreiber, Esq.
     President, General Counsel and Secretary

Purchaser acknowledges receipt of this Authorization.

**Jefferies Leveraged Credit Products, LLC**

By: _____
     William McLoughlin
     Chief Financial Officer

EAST\96749000.3

## Schedule A

| **DEBTOR** | **ADDRESS** | **TAX ID** |
|---|---|---|
| dELiA*s, Inc. | 50 West 23rd Street, New York, NY 10010 | 20-3397172 |
| dELiA*s Retail Company | 50 West 23rd Street, New York, NY 10010 | 23-2920036 |
| dELiA*s Assets Corp. | 50 West 23rd Street, New York, NY 10010 | 13-3963754 |
| dELiA*s Group Inc. | 50 West 23rd Street, New York, NY 10010 | 13-3914035 |
| dELiA*s Distribution Company | 50 West 23rd Street, New York, NY 10010 | 23-2909076 |
| dELiA*s Operating Company | 50 West 23rd Street, New York, NY 10010 | 13-3953765 |
| A Merchandise, LLC | 50 West 23rd Street, New York, NY 10010 | 27-0037639 |
| AMG Direct, LLC | 50 West 23rd Street, New York, NY 10010 | 20-1129236 |
| DACCS, Inc. | 50 West 23rd Street, New York, NY 10010 | 42-1750225 |