# PURCHASE AND SALE AGREEMENT

**THIS PURCHASE AND SALE AGREEMENT** (this "Agreement") is entered into by and between dELiA*s Distribution Company, a Delaware corporation ("Seller"), and Hanover Real Estate Partners LP, a Pennsylvania limited partnership ("Purchaser").

WHEREAS, Seller is the fee owner of certain real property situated in Hanover, Pennsylvania more particularly described on Exhibit A attached hereto and made a part hereof, together with all buildings, improvements, and fixtures owned by the Seller attached to the Property; and all privileges and appurtenances pertaining thereto including any right, title and interest, if any, of Seller in and to adjacent streets, or rights-of-way (the "Property").

WHEREAS, Seller is subject to that certain voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code filed on December 7, 2014 in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") as Case No. 14-23678 (the "Bankruptcy Proceeding").

WHEREAS, Seller believes that the Property should be sold through an orderly sale and/or auction process as part of the Bankruptcy Proceeding.

WHEREAS, Seller desires to sell the Property and Purchaser desires to purchase the Property.

NOW THEREFORE, in consideration of the foregoing recitals and of the undertakings of the parties herein set forth, the parties mutually agree as follows:

**1.    SALE OF PROPERTY:** On the terms and conditions set forth in this Agreement, Seller agrees to sell, and Purchaser agrees to purchase, the Property.

**2.    PURCHASE PRICE**.

A.    Seller is to sell and Purchaser is to purchase the Property for a total of Three Million, Nine Hundred and Fifty Thousand and 00/100ths Dollars ($3,950,000.00) (the "Purchase Price").

B.    The Purchase Price for the Property (exclusive of closing adjustments and costs provided for herein) shall be paid in the following manner:

(i)    A deposit in the amount of $395,000.00 (the "Deposit") is due when Purchaser signs and submits this Agreement and is payable in immediately available funds and shall be delivered to the Seller, who shall hold such Deposit in a segregated, non-interest bearing account (unless Seller is required to pay interest at the banking institution where Seller maintains the account) (the "Account").

(ii)    The balance of the Purchase Price, exclusive of closing adjustments and costs (the "Balance"), is due at the closing of the transaction contemplated hereunder (the "Closing") and is payable in immediately available funds and shall be delivered to the Seller, who shall hold the Balance in the Account.

C.    The acceptance by Purchaser of the delivery of the deed at Closing shall be deemed to be full performance and discharge of every agreement and obligation (either express or implied) on the part of the Seller to be performed pursuant to this Agreement and no representation, warranty or agreement, express or implied, of Seller shall survive the Closing except those which are herein specifically stated to survive the Closing.

3.    **PURCHASE MONIES TO BE HELD BY SELLER:**

A.    Notwithstanding the foregoing or any other provision in this Agreement to the contrary, (x) in the event of any dispute concerning the Deposit, the Seller shall have the right, but not the obligation, to deliver the Deposit to the Bankruptcy Court (where it shall stay subject to further order of the Bankruptcy Court), and (y) all proceeds of the Purchase Price (including the Deposit) payable to the Seller at Closing shall be released from the Account in accordance with the Final Order (I) Authorizing Debtors to Obtain Postpetition Financing and Use Cash Collateral, (II) Granting Adequate Protection and (III) Granting Certain Related Relief entered by the Bankruptcy Court on January 9, 2015 (the "Final DIP Order"), and subject to the Challenge Period (as defined in the Final DIP Order).

B.    The provisions of this Section 3 shall survive the closing or termination of this Agreement.

4.    **ALL-CASH TRANSACTION:**    The parties expressly agree and acknowledge that this is an all-cash sale and purchase. The sale of the Property is NOT contingent upon Purchaser obtaining financing.

5.    **CLOSING DELIVERIES:**

A.    At Closing, Seller shall deliver to Purchaser each of the following, executed and acknowledged, as appropriate: (a) a quit claim deed (in proper statutory form for recording) so as to transfer all of its right, title and interest in and to the Property, (b) an Owner's Title Affidavit in customary form, (c) a settlement sheet, and (d) such other documents as may commercially reasonably be requested by the title company handling the Closing (the "Title Company") and which are consistent with this Agreement and customarily executed in the State of Pennsylvania to effectuate the conveyance of real property.

B.    At Closing, Purchaser shall deliver to Seller each of the following, executed and acknowledged, as appropriate: (a) a settlement sheet, and (b) such other documents reasonably requested by the Title Company and which are consistent with this Agreement and customarily executed in the State of Pennsylvania to effectuate the conveyance of real property. Purchaser shall also deliver the Balance of the Purchase Price in accordance with Section 2 hereof.

2

EAST\97084187.3

**6.**     **CLOSING DATE AND OFFICE:** The Closing shall take place within one (1) business day after entry of an order from the Bankruptcy Court on April 2, 2015 approving the sale (the "Closing Date"), at 10:00 a.m. at the offices of the Seller's attorney, or at such other location as may be mutually agreed by the parties, at a time mutually convenient for all parties. Time is of the essence with respect to Closing.

**7.**     **SUBJECT TO PROVISIONS:** At Closing, Seller shall convey title to the Property, subject to all easements, covenants, restrictions, declarations or agreements of record set forth on Exhibit B attached hereto and made a part hereof, but expressly excluding any mortgages, deeds of trust, tax liens, judgments, mechanics' liens or other monetary encumbrances against the Property ("Permitted Exceptions", and the condition of the title subject only to the Permitted Exceptions is referred to herein as "Acceptable Title").

**8.**     **TITLE COMPANY APPROVAL:** Purchaser shall accept title subject to the Permitted Exceptions. If Purchaser desires to purchase title insurance from the Title Company (or any other title company), Purchaser may do so, at Purchaser's discretion and at its sole cost and expense. Seller shall not be obligated to cause the Title Company to omit any Permitted Exception, including, but not limited to, the satisfaction of any exception to title relating to the filing of Seller's federal or state tax return. Purchaser shall not have the right to terminate this Agreement if Seller is able to provide Acceptable Title.

**9.**     **OTHER RIGHTS:** This sale includes all of Seller's ownership and rights, if any, in any land lying in the bed of any street or highway, opened and proposed, in front or adjoining the Property to the center line thereof. It also includes any right of Seller to any unpaid award by reason of any taking by condemnation and/or for any damage to the Property by reason of change of grade of any street or highway.

**10.**    **ACCEPTANCE OF STATE AND MUNICIPAL DEPARTMENT VIOLATIONS AND ORDERS:** Purchaser accepts the Property subject to all notes or notices of violations, known or unknown, of law or municipal ordinances, orders or requirements noted in or issued by any governmental department having authority as to lands, housing, buildings, fire and health and labor conditions affecting the Property. This provision shall survive Closing.

**11.**    **CLOSING ADJUSTMENTS AND COSTS:**

    A.     Purchaser shall pay the cost of all documentary stamps, recordation taxes, transfer taxes and any other similar tax related to the conveyance of title to Property.

    B.     If at the time of Closing the Property is affected by an assessment which is or may become payable in annual installments, and the first installment is then a lien, or has been paid, then for the purposes of this Agreement all the unpaid installments shall be payable by Purchaser when each installment as to such assessment is due and payable after the Closing.

    C.     Each of the following items are to be apportioned as of midnight the day before Closing: (a) real estate taxes on the basis of the fiscal period for which assessed; (b) special assessment liens in accordance with the preceding paragraph; (c) utilities; (d) water and sewer

3

charges; and (e) any other charges customarily prorated in similar transactions. If Closing shall occur before a new tax rate is fixed, the apportionment of taxes shall be upon the basis of the old tax rate for the preceding period applied to the latest assessed valuation.

**12.    USE OF PURCHASE PRICE TO PAY EMCUMBRANCES:** If there is any monetary encumbrance which is capable of being reduced to a sum certain affecting the sale which Seller is obligated to pay and discharge at Closing pursuant to this Agreement, Seller may, to the extent permitted by the Final DIP Order, use any portion of the balance of the Purchase Price to discharge it. As an alternative, Seller may, to the extent permitted by the Final DIP Order, deposit money with the Title Company in such amount as reasonably required by the Title Company to assure its discharge. Upon request made within a reasonable time before Closing, Purchaser agrees to provide separate certified checks to assist in clearing up these matters.

**13.    PERSONAL PROPERTY:** Notwithstanding anything to the contrary contained herein, the sale does include the personal property, inventory, and other furnishings and equipment located on the Property listed on Exhibit D hereto (the "FF&E"). Purchaser accepts such property in its "as-is" condition, without representation as to quantity, quality, or any other matter.

**14.    EVENTS OF DEFAULT.**

A.    Purchaser shall be in default under this Agreement if Purchaser (1) fails to pay the balance of the Purchase Price on or before the Closing Date, (2) fails to pay, perform or observe any of Purchaser's obligations hereunder, or (3) assigns this Agreement, or records any written instrument regarding this Agreement, without the consents set forth in Section 30 of this Agreement.

B.    If any payment or any other material covenant of this Agreement hereof is not made, tendered or performed by either Seller or Purchaser, as herein provided, then this Agreement, at the option of the party who is not in default, may be terminated by such party.

(i)    In the event of such default by Seller, if Purchaser elects to treat this Agreement as terminated, then, as Purchaser's sole remedy, the Deposit shall be returned to Purchaser and Seller shall be released from any and all liability hereunder. Purchaser expressly waives its right to seek damages in the event of Seller's default hereunder.

(ii)    In the event of such default by Purchaser, if Seller elects to treat this Agreement as terminated, then all payments made hereunder shall be forfeited to and retained by Seller and Seller shall be entitled to the retention of the Deposit as liquidated damages and not a penalty, it being agreed between the parties hereto that the actual damages to Seller in the event of such breach are impractical to ascertain and the amount of the Deposit is a reasonable estimate thereof, and Seller shall retain all rights to bring such other causes of action against seller as are allowed by law as a result of the Purchaser's default.

C.    Notwithstanding the occurrence of an event of default hereunder by Purchaser, the Seller, may, in its sole discretion, keep this Agreement in effect and proceed to Closing.

4

D. If Purchaser breaches this Agreement and Seller institutes a judicial action to enforce its rights or obtain remedies hereunder, the Purchaser shall pay to the Seller the reasonable attorneys' fees, court costs and expenses incurred by the Seller.

15. **NO REPRESENTATION; PURCHASER'S DUTY TO REVIEW:**

IT IS UNDERSTOOD AND AGREED THAT SELLER IS NOT MAKING AND HAS NOT AT ANY TIME MADE ANY WARRANTIES OR REPRESENTATIONS OF ANY KIND OR CHARACTER, EXPRESSED OR IMPLIED, WITH RESPECT TO THE PROPERTY INCLUDING, BUT NOT LIMITED TO, ANY WARRANTIES OR REPRESENTATIONS AS TO HABITABILITY, MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, TITLE, ZONING, TAX CONSEQUENCES, LATENT OR PATENT PHYSICAL OR ENVIRONMENTAL CONDITION, UTILITIES, OPERATING HISTORY OR PROJECTIONS, VALUATION, GOVERNMENTAL APPROVALS, THE COMPLIANCE OF THE PROPERTY WITH GOVERNMENTAL LAWS (INCLUDING, WITHOUT LIMITATION, ACCESSIBILITY FOR HANDICAPPED PERSONS), THE TRUTH, ACCURACY OR COMPLETENESS OF ANY PROPERTY DOCUMENTS OR ANY OTHER INFORMATION PROVIDED BY OR ON BEHALF OF SELLER TO PURCHASER, OR ANY OTHER MATTER OR THING REGARDING THE PROPERTY. PURCHASER ACKNOWLEDGES AND AGREES THAT UPON CLOSING SELLER SHALL SELL AND TRANSFER TO PURCHASER AND PURCHASER SHALL ACCEPT THE PROPERTY "AS IS, WHERE IS, WITH ALL FAULTS", EXCEPT TO THE EXTENT EXPRESSLY PROVIDED OTHERWISE IN THIS AGREEMENT. PURCHASER HAS NOT RELIED AND WILL NOT RELY ON, AND SELLER IS NOT LIABLE FOR OR BOUND BY, ANY EXPRESSED OR IMPLIED WARRANTIES, GUARANTIES, STATEMENTS, REPRESENTATIONS OR INFORMATION PERTAINING TO THE PROPERTY OR RELATING THERETO (INCLUDING SPECIFICALLY, WITHOUT LIMITATION, PROPERTY INFORMATION PACKAGES DISTRIBUTED WITH RESPECT TO THE PROPERTY) MADE OR FURNISHED BY THE SELLER OR ANY REAL ESTATE BROKER OR AGENT REPRESENTING OR PURPORTING TO REPRESENT SELLER, TO WHOMEVER MADE OR GIVEN, DIRECTLY OR INDIRECTLY, ORALLY OR IN WRITING, UNLESS SPECIFICALLY SET FORTH IN THIS AGREEMENT. PURCHASER REPRESENTS TO SELLER THAT PURCHASER HAS CONDUCTED, OR WILL CONDUCT PRIOR TO CLOSING, SUCH INVESTIGATIONS OF THE PROPERTY, INCLUDING BUT NOT LIMITED TO, THE PHYSICAL AND ENVIRONMENTAL CONDITIONS THEREOF, AS PURCHASER DEEMS NECESSARY TO SATISFY ITSELF AS TO THE CONDITION OF THE PROPERTY AND THE EXISTENCE OR NONEXISTENCE OR CURATIVE ACTION TO BE TAKEN WITH RESPECT TO ANY HAZARDOUS OR TOXIC SUBSTANCES ON OR DISCHARGED FROM THE PROPERTY, AND WILL RELY SOLELY UPON SAME AND NOT UPON ANY INFORMATION PROVIDED BY OR ON BEHALF OF SELLER OR ITS AGENTS OR EMPLOYEES WITH RESPECT THERETO, OTHER THAN SUCH REPRESENTATIONS, WARRANTIES AND COVENANTS OF SELLER AS ARE EXPRESSLY SET FORTH IN THIS AGREEMENT. THE PROVISIONS OF THIS PARAGRAPH SHALL SURVIVE THE CLOSING.

**16. BROKER'S COMMISSION:** Any commission or fee of any type due and payable to a broker on behalf of Purchaser as a result of this Agreement or related to the sale of the Property shall be paid solely by Purchaser. Seller shall have no obligation to fund or cause the funding of any commission or fee due to any broker acting on behalf of Purchaser. Purchaser indemnifies Seller and A&G Realty Partners, LLC in this regard including, without limitation, for any such fee and for all expenses incurred in respect of any litigation or claims brought seeking the payment of such fee. This paragraph shall survive Closing.

**17. NOTICES:** Any notice pursuant to this Agreement shall be given in writing by (a) personal delivery, or (b) reputable overnight delivery service with proof of delivery, or (c) United States Mail, postage prepaid, registered or certified mail, return receipt requested, or (d) legible facsimile transmission sent to the intended addressee at the address set forth below, or to such other address or to the attention of such other person as the addressee shall have designated by written notice sent in accordance herewith, and shall be deemed to have been given either at the time of personal delivery, or, in the case of expedited delivery service or mail, as of the date of first attempted delivery at the address and in the manner provided herein, or, in the case of facsimile transmission, as of the date of the facsimile transmission provided that an original of such facsimile is also sent to the intended addressee by means described in clauses (a), (b) or (c) above. Unless changed in accordance with the preceding sentence, the addressees for notices given pursuant to this Agreement shall be as follows:

      If to Seller:      dELiA*s Distribution Company
      c/o Ryan A. Schreiber, Esq.
      President, General Counsel & Secretary
      P.O. Box 821
      Budd Lake, NJ 07828-9998
      rschreiber@deliasinc.com

      With a copy to:

      DLA Piper
      1251 Avenue of the Americas
      New York, NY 10020-1104
      Attn: Gregg M. Galardi, Esq.

      And a copy to counsel to the DIP Agent at:
      Choate, Hall & Stewart LLP
      Two International Place
      Boston, MA 02110
      Attn: John F. Ventola, Esq.
          Seth Mennillo, Esq.

      And a copy to counsel to the Statutory Committee at:
      Kelley Drye & Warren LLP
      101 Park Avenue
      New York, NY 10178
      Attn: Robert L. LeHane, Esq.

6

                                               Gilbert R. Saydah, Jr., Esq.

If to Purchaser:       Hanover Real Estate Partners LP
                                   341 Moulstown Road
                                   Hanover, PA 17331

                                   With a copy to:

                                   G. Steven McKonly
                                   119 Baltimore Street
                                   Hanover, PA 17331

**18.**    **<u>ADDITIONAL PROVISIONS</u>:**

       A.    This Agreement shall be governed and construed in accordance with the laws of the State of Pennsylvania without regard to conflicts of laws principles.

       B.    The parties agree that neither this contract nor any memorandum thereof shall be recorded or filed in the Recorder of Deeds Office for the County of York in the State of Pennsylvania, and such office is instructed to refuse to accept same for recordation or filing.

**19.**    **<u>STRICT COMPLIANCE</u>:** Any failure by either party to insist upon strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of any of the provisions hereof, irrespective of the number of violations or breaches that may occur, and each party, notwithstanding any such failure, shall have the right thereafter to insist upon strict performance by the other of any and all of the provisions of this Agreement.

**20.**    **<u>WAIVER OF JURY TRIAL</u>:** EXCEPT AS PROHIBITED BY LAW, THE PARTIES SHALL, AND THEY HEREBY DO, EXPRESSLY WAIVE TRIAL BY JURY IN ANY LITIGATION ARISING OUT OF, CONNECTED WITH, OR RELATING TO THIS AGREEMENT, OR THE RELATIONSHIP CREATED HEREBY. With respect to any matter for which a jury trial cannot be waived, the parties agree not to assert any such claim as a counterclaim in, nor move to consolidate such claim with, any action or proceeding in which a jury trial is waived.  The parties submit to the exclusive jurisdiction and venue of the Bankruptcy Court with respect to any dispute, claim or issue arising out of this Agreement.

**21.**    **<u>ENTIRE AGREEMENT</u>:** All prior understandings and agreements between Seller and Purchaser are merged in this Agreement. It completely expresses their full agreement; neither party is relying upon any statements made by anyone else that are not set forth in this Agreement.

**22.**    **<u>SINGULAR ALSO MEANS PLURAL</u>:** Any singular word or term herein shall also be read as in the plural whenever the sense of this Agreement may require it.

**23.**   **GENDER:** A reference in this Agreement to any one gender, masculine, feminine or neuter, includes the other two, and the singular includes the plural, and vice versa, unless the context requires otherwise.

**24.**   **CERTAIN REFERENCES:** The term "herein", "hereof" or "hereunder" or similar terms used in this Agreement shall refer to this entire Agreement and not to the particular provision in which the term is used. Unless otherwise stated, all references herein to Paragraphs, subparagraphs or other provisions are references to Paragraph, subparagraphs or other provisions of this Agreement.

**25.**   **NO ORAL CHANGES:** This Agreement cannot be changed or any provision waived orally. ANY CHANGES OR ADDITIONAL PROVISIONS OR WAIVERS MUST BE SET FORTH IN A RIDER ATTACHED HERETO OR IN A SEPARATE WRITTEN AGREEMENT SIGNED BY THE PARTIES.

**26.**   **DATE OF PERFORMANCE:** If any date for performance hereunder falls on a Saturday, Sunday or other day which is a federal holiday or holiday under the laws of the state where the Property is located, the date for such performance shall be the next succeeding business day.

**27.**   **SEVERABILITY:** If any clause or provision of this Agreement is held to be invalid or unenforceable by any court of competent jurisdiction as against any person or under any circumstances, the remainder of this Agreement and the applicability of any such clause or provision to other personal or circumstances shall not be affected thereby. All other clauses or provisions of this Agreement, not found invalid and unenforceable, shall be and remain valid and enforceable.

**28.**   **COUNTERPARTS:** This Agreement may be executed in multiple counterparts all of which when taken together shall constitute an Agreement for the sale of real estate under the laws of the State of Pennsylvania. It is binding upon and insures to the benefit of the parties hereto and their respective heirs, devisees, executors, administrators, successors and assigns, and may be canceled, modified or amended only by a written instrument executed by both the Seller and the Purchaser.

**29.**   **FACSIMILE EXECUTION:** For the purposes of executing this Agreement, a document signed and transmitted by facsimile machine or electronic (PDF) mail shall be treated as an original document. The signature of any party thereon shall be considered as an original signature, and the document transmitted shall be considered to have the same binding legal effect as an original signature on an original document. At the request of either party, any facsimile or electronic (PDF) mail document shall be re-executed by both parties in original form. No party hereto may raise the use of a facsimile machine or electronic (PDF) mail or the fact that any signature was transmitted through the use of a facsimile machine or electronic (PDF) mail as a defense to the enforcement of this Agreement or any amendment executed in compliance with this paragraph. This paragraph does not supersede the requirements of the Section 17 hereof.

8

**30.** **ASSIGNMENT:** Purchaser shall not assign this Agreement without the prior written consent of the Seller, the DIP Agent and the Statutory Committee, each such consent to be given in such person's sole discretion.  Any purported assignment by Purchaser in violation of this Agreement shall be voidable at the option of the Seller, the DIP Agent or the Statutory Committee, as the case may be. The refusal of any such person to consent to an assignment shall not entitle Purchaser to cancel this Agreement nor give rise to any claim for damages against the Seller, the DIP Agent or the Statutory Committee.  Any assignment by Purchaser, even if consented to by Seller, the DIP Agent and the Statutory Committee, shall not act to limit, reduce or impact in any way any of Purchaser's obligations to perform all of its obligations under this Agreement including, without limitation, its obligation to pay the Purchase Price.

**31.** **BANKRUPTCY COURT APPROVAL AND SALE ORDER:** The parties' obligations set forth in this Agreement are expressly subject to approval by the Bankruptcy Court ("Bankruptcy Court Approval") pursuant to an Order (the "Sale Order") approving the sale to the Purchaser. The Sale Order shall include factual findings and ordering provisions that provide (i) title to the Property shall be transferred to the Purchaser free and clear of all liens, claims and encumbrances pursuant to Section 363(f) of the Bankruptcy Code, with all such liens, claims and encumbrances to attach to the proceeds of the sale; (ii) the Purchaser is purchasing the Property in "good faith" within the meaning of Section 363(m) of the Bankruptcy Code and, as such, is entitled to the protections offered thereby; (iii) the Agreement was negotiated, proposed, and entered into by the parties without collusion, in good faith and arms' length bargaining position; and (iv) that stay provided under the Rule 6004(g) of the Federal Rules of Bankruptcy Procedure shall be waived to the extent necessary to permit a Closing to occur as soon as possible after entry of the Sale Order.

**32.** **BIDDING PROCEDURES ORDER:** The Purchaser's right to purchase the Property is governed by certain procedures established by an order of the Bankruptcy Court (the "Bidding Procedures Order"), attached hereto as Exhibit C. Where the terms of this Agreement and the Bidding Procedures Order conflict, the terms of the Bidding Procedures Order will prevail.

**33.** **IRREVOCABLE OFFER:**  Purchaser further acknowledges that this Agreement is executed and delivered by Purchaser pursuant to a sale and/or auction process conducted on behalf of Seller. In consideration of each of the following: (a) preserving the integrity of the auction process and assuring that all offers are made in conformity therewith and in reliance thereon; (b) the monies spent by Seller to arrange for the auction; (c) the opportunity of the Purchaser to bid for the Property; (d) the promise by the Seller to sell the Property to purchaser if this Agreement is accepted by Seller and approved by the Bankruptcy Court; and (e) for other good and valuable consideration, the receipt and adequacy of which is expressly acknowledged by Purchaser, including the mutual promises made by each party, this Agreement constitutes an irrevocable offer to purchase by Purchaser in accordance with this Agreement.  Such offer to purchase shall not be deemed accepted by Seller until executed by Seller or Seller's duly authorized agent. Notice from Seller or its duly authorized agent to accept or reject Purchaser's offer under this paragraph may be given pursuant to Section 17 hereof, or by telephone and confirmed at a later date by notice given pursuant to Section 17 hereof.

9

In the event Seller rejects this offer, the Deposit shall be returned to Purchaser. The Parties shall then have no further obligation under this Agreement.

**34.    CONSTRUCTION OF AGREEMENT:** This Agreement is a negotiated agreement, as Seller and Purchaser have each been represented, and had the benefit of, legal counsel, and shall not be construed in the event of any ambiguity therein against either party, solely by virtue of the Agreement being drafted by counsel for that party.

*[SIGNATURE PAGE FOLLOWS]*

10

IN WITNESS HEREOF, Purchaser and Seller agree that the date of this Agreement shall be the date the Seller executes this Agreement.

**PURCHASER:**

Hanover Real Estate Partners LP

By: /s/ Kurt E. Dietrich
Kurt E. Dietrich, General Partner

**SELLER:**

dELiA*s Distribution Company, a Delaware corporation

By: _____
Ryan A. Schreiber, Esq., President, General Counsel & Secretary

The attached Exhibits are hereby incorporated herein by reference:

| | | |
|---|---|---|
| Exhibit A | - | Legal Description |
| Exhibit B | - | Permitted Exceptions |
| Exhibit C | - | Bidding Procedures Order |
| Exhibit D | - | List of FF&E |

IN WITNESS HEREOF, Purchaser and Seller agree that the date of this Agreement shall be the date the Seller executes this Agreement.

**PURCHASER:**

Hanover Real Estate Partners LP

By: _____
Kurt E. Dietrich, General Partner

**SELLER:**

dELiA*s Distribution Company, a Delaware corporation

By: _____
Ryan A. Schreiber, Esq., President, General Counsel & Secretary

The attached Exhibits are hereby incorporated herein by reference:

Exhibit A    -    Legal Description
Exhibit B    -    Permitted Exceptions
Exhibit C    -    Bidding Procedures Order
Exhibit D    -    List of FF&E

11

EAST\97084187.3

# EXHIBIT A

## Legal Description

*[See Attached]*

# EXHIBIT B

## Permitted Exceptions

*[See Attached]*

# EXHIBIT C

## Bidding Procedures Order

*[See Attached]*

**EXHIBIT D**

**List of FF&E**

*[See Attached]*